IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | No. 92-580 |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**REPLY OF THE UNITED STATES TO SPARTON'S OPPOSITION TO THE GOVERNMENT'S MOTION TO PRECLUDE PROFESSOR NASH FROM OFFERING TESTIMONY AT TRIAL**

In its motion, the United States requested that Professor Ralph Nash be barred from providing testimony at trial because he failed to provide an expert report pursuant to RCFC 26(a)(2) at the time required by the Court's orders. Sparton responded that Professor Nash did provide a report, that the Government was on notice as to the substance of his testimony, that Sparton was not required to provide a report, and, in any event, the Government caused Sparton's failure to provide a timely report. Sparton Corp.'s Response to the Def's Mot. to Preclude Professor Nash from Offering Testimony at Tr. [Docket No. 276] (hereinafter Sparton's Opposition or Opp.). As discussed below, Sparton's arguments lack merit.

**1. Professor Nash Has Not Provided an Adequate Report**

Sparton first asserts that Professor Nash's declaration of March 15, 1999 (Sparton's Opp., Exhibit A) is an adequate expert report. Sparton's Opp. at 2. Sparton specifically asserts that

paragraphs 14-21, and more specifically paragraph 19, of that declaration are pertinent paragraphs to this inquiry. Sparton's Opp. at 2.

In addressing the adequacy of the report, the Court must first identify the issues to be addressed at trial, and must then compare the asserted trial testimony to the opinions disclosed in the report. In this instance, Sparton has repeatedly stated that Professor Nash will testify "**as an expert in government contract matters, particularly those matters between Sparton and the Navy as they relate to the issues of** validity (on sale) and **license**." Sparton Corp.'s Response to Def's Mot. to Preclude Prof. Nash from Offering Test. at Tr. [Docket No. 276] (hereinafter Sparton's Opp.), at 2 (citing Sparton's Pretrial Submissions, dated Jan. 29, 1999; emphasis in original). Thus, the question raised by the Government's motion is whether Professor Nash has discussed both "validity (on-sale)" and "license" in paragraphs 14-21 of his declaration. The short answer is that Sparton is precluded from having Professor Nash testify as to "validity (on-sale)" by the Court's prior order and precluded from having him testify about "license" because Professor Nash's declaration does not address that subject.

The issue of "validity (on-sale)" was, of course, the subject of the Government's earlier motion to strike the testimony of Professor Nash. And the Court did strike the declaration because it failed to meet the reliability standard of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Order* [Docket No. 219] at 2-3 (Dec. 19, 2002). Nonetheless, Sparton asserts that Professor Nash's declaration was only struck because the Professor was not a patent attorney. *See* Sparton's Opp. at 1. This is not a correct reading of the Court's opinion, but neither does it assist Sparton.

Even if it were true that the Court struck the declaration only because Professor Nash was not a patent attorney (which it did not), the declaration would be no more admissible today on the issue of "validity (on-sale)" than it was on the day the Court struck it. The doctrine of law of the case provides ample reason for not revisiting that decision. *Jamesbury Corp. v. Litton Industrial. Prods., Inc.*, 839 F.2d 1544, 1550 (Fed. Cir.), *cert. denied*, 488 U.S. 828 (1988) ("The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts."), *overruled in other respects, A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir.1992).

Turning then to the issue of "license,"[1] the Court will find a different problem: Professor Nash's declaration simply fails to address the "license" issue. Indeed, the word "license" or variants thereof only appear once in the declaration: in a discussion of the facts underlying *Mas-Hamilton Group, Inc. v. Lagard Inc.*, 156 F.3d 1206 (Fed. Cir. 1998). Nash Decl. at 5 ("the on-sale issue centered around a November 1989 meeting between the inventor, La Gard, and a potential licensee"). And Professor Nash does not address the *Christian* doctrine at all. Nor does

---

[1] The "license" issue is in actuality a limitation on the statutory cause of action. Section 1498 provides a remedy only where the use or manufacture is "without license of the owner thereof or lawful right to use or manufacture the same." 35 U.S.C. § 1498(a). Thus, where the government *does* have a license or other lawful right to manufacture and use the invention, no cause of action exists. The Government contends that it has a lawful right to use the inventions because they were conceived or first reduced to practice in the course of government research and development contracts: the Beartrap contract and the '-0465 contract. And, while the latter of the two contracts does not list a patent rights clause as being incorporated by reference, the Government contends that the patent rights clause is incorporated by operation of law under the *Christian* doctrine. *G.L. Christian & Assoc. v. United States*, 312 F.2d 418 (Ct. Cl. 1963) (a mandatory contract clause that expresses a significant or deeply ingrained strand of public procurement policy must be deemed to be included in a contract by operation of law where the governing regulations would so require).

he address whether the Government has a license or other lawful right to use the inventions as a result of the any Government contract. In short, the Professor Nash's declaration simply does not address any prospective testimony on the issue of whether the Government has a license or other right to use the claimed inventions.

**2. The Government Was Not Provided Notice of Professor Nash's Prospective Testimony Through His Declaration**

Sparton next contends that the "Professor Nash's testimony is certainly no surprise to defendant" because he was listed on the witness list as a witness who will "testify on the license issue." Sparton's Opp. at 8. Here, Sparton construes RCFC 26(a)(2)(B) contrary to its terms and its purpose. The purpose of the rule is set forth in the Advisory Committee's Comment to the 1993 Amendment to the Fed. R. Civ. P. 26(a)(2)(B):

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony … must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed. … [T]he report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

What Sparton has provided is not the detailed written report described in the Advisory Committee's Comment – *i.e.*, knowledge of the *substance* of Professor Nash's expected testimony – but merely that Professor Nash was expected to testify about "license." The notice provided by the witness list fails to comply with the requirements of RCFC 26(a)(2)(B).

### 3. Sparton Was Required to Provide a Report by Professor Nash

Sparton further contends that it was not required to provide a report by Professor Nash. Sparton's Opp. at 6. Sparton reasons that since the Government did not provide a report on the "issue of license," there was nothing to rebut and, therefore, no requirement to provide any report from Professor Nash on the "issue of license." *Id*. Sparton misconstrues both Rule 26(a)(2)(B) and the Court's orders. Neither the rule nor the Court's orders support Sparton's contention.

As an initial matter, the requirement for a report applies to *any* expert who is *retained or specially employed* to provide testimony. RCFC 26(a)(2)(B). There is no question that Professor Nash was retained or specially employed and that he is to provide testimony in this case. It is beyond cavil that Professor Nash is not a regular employee of Sparton, and therefore must have been "retained or specially employed" to provide testimony in this case.[2] Sparton has also affirmatively stated that it will call Professor Nash at trial to testify regarding the "issue of license." Sparton's Pretrial Submissions at 27. Thus, RCFC 26(a)(2)(B) requires that Sparton and Professor Nash provide a report to the Government of his prospective testimony.

"Expert reports" under the terms of the rule and Court's Orders are to include "a complete statement of *all opinions expressed* and the basis and reasons therefore …." RCFC 26(a)(2)(B) (emphasis added). "Rebuttal reports" are those identified in RCFC 26(a)(2)(C): "In the absence of other directions from the court …, the disclosures shall be made …, if the evidence is intended solely to contradict or rebut evidence on the same subject identified by another party paragraph (2)(B), within 30 days after the disclosure made by the other party."

---

[2] We note, however, that Professor Nash has failed to state the rate at which he is compensated, as required by the rule.

Both the Court's Order of February 2, 2006 (Docket No. 256), at ¶ 4, and the Court's Order of March 28, 2006 (Docket No. 266), at ¶ 3, address the dates in terms of when "expert reports" are due and when "expert rebuttal reports" are due. As Sparton readily acknowledges, the Government did not provide a expert report relating to the "on-sale" or "license" issues.[3] Thus, Sparton cannot be offering Professor Nash's report to "contradict or rebut" evidence identified in a nonexistent Government report; Sparton is offering it as affirmative evidence. Accordingly, Professor Nash's declaration does not qualify as a"rebuttal report" under RCFC 26(a)(2)(C). Rather, the governing provision is the definition in RCFC 26(a)(2)(B) of when a expert's testimony must be disclosed. Under term of the rules and the Court's orders, Professor Nash's report was due on April 17,[4] not June 17.

Nor does the Advisory Committee Comment help Sparton. While the Advisory Committee contemplated that "*in most cases* the party with the burden of proof on an issue *should* disclose its expert testimony," the rule does not require that the party with the burden must go first. Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee's Comment to the 1993 Amendment (emphasis added). If Sparton's construction were correct, any time the party bearing the burden of proof does not offer expert testimony on an issue, but rests its case on legal interpretation of facts, no other party would have to prepare an expert report, regardless of the

[3] We will address our legal analysis of the issue through attorney argument, not by having an "expert," in effect, read our brief into the record.

[4] Sparton asserts that the Government "misrepresents" the due date for Sparton's reports after it sought and received a 45-day enlargement of time. Sparton is correct that Sparton's submissions were due on April 17, 2006. Contrary to Sparton's assertion, however, the Government's Motion, at 4, specifically states that Sparton sought an enlargement until April 17. Thus, the reference later in the brief to April 19 is clearly a typographical error. In any event, the Government's motion addresses the adequacy of the Professor Nash's "report," not its timeliness.

number of expert witnesses the responding party intended to call on the issue or whether the testimony rebutted previous testimony or addressed matter not previously addressed. In short, whether a report was required would be determined by the opposing party's trial strategy, not the that of the employing party. The clear wording of the rule, requiring reports from all retained or specially employed experts, belies Sparton's construction.

**4. The Government Has Been Harmed by Sparton's Refusal to Comply With The Court's Orders And Rules**

In a nonsensical argument,[5] Sparton appears to assert that the Government has not been harmed and then suggests that through expert discovery, "Defendant can thus cure any potential prejudice it believes it is experiencing, even if that belief is misplaced." Sparton's Opp. at 9. Sparton again suffers from a misconception of the terms of RCFC 26(a)(2)(B).

Two stated purposes of the rule are to avoid the need for depositions of every expert witness, and to allow a more effective examination of those whose deposition is requested:

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during

---

[5] In the paragraph that spans pages 8 and 9 of it brief, Sparton presents a number of unrelated concepts and fails to tie any of them together. The paragraph begins with a recitation of certain factors recognized as being relevant to determining whether to exclude evidence in *Tritek Tech., Inc. v. United States*, 63 Fed. Cl. 740, 750 (2005). Sparton then proceeds to a footnote in *Tritek*, discussing how each parties obligations are independent of one another. From there, Sparton jumps to a conclusion that "Professor Nash's testimony is certainly no surprise," and suggests a basis for that lack of surprise without any citation to supporting authority as to either the testimony or why it would not be surprising. Continuing in the same paragraph, Sparton announces that the "use by the Navy of the changes clause does not convert a supply contract …to a fixed price research contract." But the supporting citation for that proposition, deals with an entirely different subject: propriety of exclusion of evidence. Finally, Sparton concludes by arguing, without citation to authority, that the Government has "ignored those cases holding the nondisclosure to be harmless," without addressing "those cases."

> direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed.

Advisory Committee's Comment to 1993 Amendment of Fed. R. Civ. P. 26(a)(2)(B). Thus, the harm is inherent whenever an adequate report is not provided, since absent an adequate report, the party opposing the expert must prepare its cross-examination without the benefit of a report that was specifically intended to assist in such preparation.

Sparton also contends that allowing Professor Nash to testify will not interfere with the target trial dates, because "no interference will occur regardless of whether or not defendant deposes [P]rofessor Nash." Sparton Opp. 9. While Sparton's conclusion is true, it is so for a reason that Sparton apparently does not comprehend. As was discussed during the July 19, 2006 status conference, if the Government requires additional time to prepare its examination of Professor Nash, Sparton has already agreed to enlarge the time for such discovery. But, that enlargement does not mean that the trial schedule will remain targeted at "December 2006 or January 2007." Rather it means that the trial schedule will likely be pushed back an extra month caused by the need for additional time to examine Professor Nash.

**5. The Government Did Not Contribute to Sparton's Failure**

Sparton further suggests that the Government caused Sparton's failure because the Government has not provided an expert report for Sparton to rebut. Sparton's Opp. at 10 (citing *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000) for the proposition, *inter alia*, that the "court abused its discretion … where … both sides were at fault …."). Here, however, the Government

bears no part of the fault. Evidence such as that proffered by Sparton through Professor Nash's declaration is the epitome of testimony which the Court's "gatekeeper authority" is meant to bar. *Hebert v. Lisle Corp.* 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, *see Daubert v. Merrell Dow Pharmaceuticals, Inc*., but markedly incorrect law."). Presenting legal arguments from the witness stand in the guise of expert testimony is simply improper. In essence, Sparton wants Professor Nash (and possibly Mr. Colianni) to provide legal argument, rather than evidence, from the witness stand.

The Federal Circuit has cautioned trial judges to be wary of lawyers parading as "legal experts." In *Endress + Hauser GmbH v. Hawk Measurement Systems*, 122 F.3d 1040, 1042 (Fed. Cir. 1997), the court responded to the appellant's argument that the patent owner's expert was unqualified because the expert was not a patent lawyer. The court stated:

> [T]his court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretations of a claim as a matter of law, the ultimate issue for the court to decide.

122 F.3d at 1042. While the *Endress* was specifically addressing the propriety of expert testimony by a patent attorney about claim construction, it should apply *a fortiori* to a government contract attorney testifying about the "without license or other lawful right" limitation in 28 U.S.C. § 1498.

Further, the determination of whether the Government has a license or other lawful right to use the claimed inventions, in general, and the application of the *Christian* doctrine, in particular, are ultimate issues to be determined by the Court upon review of the factual evidence. In the present context, both are issues of patent law, since they arise from the interpretation of the

limitation in § 1498 requiring that the claim be for use by the Government "without license or other lawful right." We see no reason why the Court should supplant its own reasoning for that of a paid expert when interpreting and applying this statutory language. Indeed allowing parties to parade "legal experts" before the court for the purpose of telling judges how to construe statutes could diminish the proper role of the judge.

**CONCLUSION**

For the reasons stated, the United States requests that the Court preclude Professor Nash from testifying at trial.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

s/*Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

August 10, 2006