IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 92-580C |
| v. | ) | |
| | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**OPPOSITION OF THE UNITED STATES TO SPARTON'S MOTION TO COMPEL ANSWERS TO ITS REQUESTS FOR ADMISSIONS AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 92-580C |
| THE UNITED STATES, | ) | Judge James F. Merow |
| Defendant. | ) | |

**DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS NOS. 17-204**

Defendant, the United States (hereafter "the government") objects and responds to "Plaintiff's Requests for Production of Documents Nos. 17-204," served May 4, 1994, pursuant to Rule 34 of the Rules of the United States Court of Federal Claims (RCFC). The government's response includes that of the Department of Justice and incorporates by reference the accompanying "Responses on Behalf of the Department of the Navy to Plaintiff's Requests for Production Nos. 17-204."

Pursuant to RCFC 34, the government will make available for inspection and copying by plaintiff all non-privileged, non-classified portions of the documents and things, not subject to any objection, which are responsive to plaintiff's requests for production. The documents and things will be produced at the location(s) noted in the responses of the Department of the Navy, in the manner in which they are normally kept, at a mutually convenient time to be arranged through government counsel.

The government's investigation in response to these requests for production is ongoing. The government and its agencies

reserve the right to supplement their responses should additional responsive documents or things be located.

The government's objections to each request for production are stated herein. The government's identification or production of any document or thing in response to any request for production is not to be considered as a waiver of any objection stated herein, or as a waiver of any claim that other documents or things are covered by attorney-client privilege or attorney work-product immunity or otherwise protected from discovery in whole or in part.

The following General Objections are expressly referred to in the government's specific objections to each request for production, and should be deemed as incorporated by reference where noted.

## GENERAL OBJECTIONS

The government, on behalf of itself, the Department of Justice, and the Department of the Navy, generally objects pursuant to RCFC 34(b) to plaintiff's requests for production on the following general grounds:

I. The government objects to plaintiff's requests for production to the extent that they seek documents or things which are protected from discovery by any evidentiary privilege, restriction or exemption including but not limited to attorney-client privilege or attorney work-product immunity.

II. The government objects to plaintiff's requests for production to the extent that they seek documents or things which are classified for reasons of national security.

III. The government objects to plaintiff's requests for production as unduly burdensome to the extent that they seek documents or things which:

(a) plaintiff has or should have;

(b) the government has previously produced to plaintiff during this lawsuit;

(c) is or will be equally available to plaintiff, particularly after the government's production of documents;

(d) requires the government to perform an analysis which can be as easily performed by plaintiff;

(e) requires an investigation of or discovery from a non-party, such as a contractor; or

(f) requires an investigation beyond the scope of discovery permitted by RCFC 26(b).

IV. The government objects to plaintiff's requests for production as unduly burdensome in scope to the extent that plaintiff defines the terms "sonobuoy," "sonobuoy release plate," and "sonobuoy related hardware" to encompass subject matter other than that claimed in the patents in suit.

V. The government objects to plaintiff's requests for production to the extent that plaintiff defines the term "purchased" as defined by U.C.C. § 1-201(32) (1990). The Uniform

Commercial Code is not binding on the federal government. See Marine Midland Bank v. United States, 687 F.2d 395, 401 n.5 (Ct. Cl. 1982), cert. denied, 460 U.S. 1037 (1983); Hubbs v. United States, 20 Cl. Ct. 423, 427 (1990), aff'd, 925 F.2d 1480 (Fed. Cir. 1991) (Table).

**Request for Production No. 69:**

As to each contract for either sonobuoy(s) or sonobuoy release plate(s) between the government and Magnavox Government and Industrial Electronics Company (see government's Amended Answer, paragraph 7) within the period from and including November 18, 1975 through and including June 14, 1994, produce:

(a) the executed contract including technical specifications, performance specifications and statement(s) of work;

(b) contract modification(s), engineering change proposal(s), change order(s) and contract change proposals;

(c) documents submitted as required by a Contract Data Requirement List(s) (CDRL) under the contract;

(d) technical descriptions referring to or relating to the sonobuoy(s);

(e) technical descriptions referring to or relating to the sonobuoy release plate(s);

(f) operational description(s) referring to or relating to the sonobuoy(s);

(g) operational description(s) referring to or relating to the sonobuoy release plate(s);

(h) drawings, including engineering drawings, referring to or relating to the sonobuoy(s);

(i) drawings, including engineering drawings, referring to or relating to the sonobuoy release plate(s);

(j) documents referring to or relating to performance testing and evaluation for the sonobuoy(s);

(k) documents referring to or relating to performance testing and evaluation for the sonobuoy release plate(s);

(l) documents referring or relating to acceptance criteria for the sonobuoy(s);

(m) documents referring or relating to acceptance criteria for the sonobuoy release plate(s);

(n) documents referring or relating to bills of material under the contract;

(o) documents referring or relating to engineering test procedures;

(p) documents referring or relating to production test procedures;

(q) documents referring or relating to billing;

(r) documents referring or relating to payments made to the contractor;

(s) documents referring or relating to acceptance by the government of the sonobuoy(s) under the contract;

(t) documents referring or relating to acceptance by the government of the sonobuoy release plate(s) under the contract;

(u) documents referring or relating to acceptance by the government of the sonobuoy related hardware under the contract;

(v) documents referring or relating to delivery of sonobuoy(s) under the contract;

(w) documents referring or relating to delivery of sonobuoy release plate(s) under the contract;

(x) documents referring or relating to delivery of sonobuoy related hardware under the contract;

(y) documents referring or relating to the quantity of sonobuoy(s) delivered or to be delivered under the contract;

(z) documents referring or relating to the quantity of sonobuoy release plate(s) delivered or to be delivered under the contract;

(aa) documents referring or relating to the quantity of sonobuoy related hardware delivered or to be delivered under the contract;

(bb) a representative sample of each type or model of sonobuoy delivered or to be delivered under the contract;

(cc) a representative sample of each type of sonobuoy release plate delivered or to be delivered under the contract; and

(dd) a representative sample of each item of sonobuoy related hardware delivered or to be delivered under the contract.

**Response to Request for Production No. 69:**

General Objections I-IV are made to Request for Production No. 69.

The government further objects to Request for Production No. 69 on the ground that it is duplicative of Requests for Production Nos. 67-68.

The government further objects to Request for Production No. 69 on the ground that it is unduly burdensome to the extent that production is sought of documents and things having an effective date prior to plaintiff's recovery period, which plaintiff has stated begins on February 11, 1981.

The government objects to subparts (j)-(m) and (o)-(p) of this request for production as vague and ambiguous. Plaintiff does not define nor distinguish the terms "performance testing and evaluation," "acceptance criteria," "engineering test," and "production test."

**Request for Production No. 70:**

As to each contract for either sonobuoy(s) or sonobuoy release plate(s) between the government and Magnavox Electronics Systems Company (see government's Amended Answer, paragraph 7) within the period from and including November 18, 1975 through and including June 14, 1994, produce:

(a) the executed contract including technical specifications, performance specifications and statement(s) of work;

(b) contract modification(s), engineering change proposal(s), change order(s) and contract change proposals;

(c) documents submitted as required by a Contract Data Requirement List(s) (CDRL) under the contract;

(d) technical descriptions referring to or relating to the sonobuoy(s);

(e) technical descriptions referring to or relating to the sonobuoy release plate(s);

(f) operational description(s) referring to or relating to the sonobuoy(s);

(g) operational description(s) referring to or relating to the sonobuoy release plate(s);

(h) drawings, including engineering drawings, referring to or relating to the sonobuoy(s);

(i) drawings, including engineering drawings, referring to or relating to the sonobuoy release plate(s);

(j) documents referring to or relating to performance testing and evaluation for the sonobuoy(s);

(k) documents referring to or relating to performance testing and evaluation for the sonobuoy release plate(s);

(l) documents referring or relating to acceptance criteria for the sonobuoy(s);

(m) documents referring or relating to acceptance criteria for the sonobuoy release plate(s);

(n) documents referring or relating to bills of material under the contract;

(o) documents referring or relating to engineering test procedures;

(p) documents referring or relating to production test procedures;

(q) documents referring or relating to billing;

(r) documents referring or relating to payments made to the contractor;

(s) documents referring or relating to acceptance by the government of the sonobuoy(s) under the contract;

(t) documents referring or relating to acceptance by the government of the sonobuoy release plate(s) under the contract;

(u) documents referring or relating to acceptance by the government of the sonobuoy related hardware under the contract;

(v) documents referring or relating to delivery of sonobuoy(s) under the contract;

(w) documents referring or relating to delivery of sonobuoy release plate(s) under the contract;

(x) documents referring or relating to delivery of sonobuoy related hardware under the contract;

(y) documents referring or relating to the quantity of sonobuoy(s) delivered or to be delivered under the contract;

(z) documents referring or relating to the quantity of sonobuoy release plate(s) delivered or to be delivered under the contract;

(aa) documents referring or relating to the quantity of sonobuoy related hardware delivered or to be delivered under the contract;

(bb) a representative sample of each type or model of sonobuoy delivered or to be delivered under the contract;

(cc) a representative sample of each type of sonobuoy release plate delivered or to be delivered under the contract; and

(dd) a representative sample of each item of sonobuoy related hardware delivered or to be delivered under the contract.

**Response to Request for Production No. 70:**

General Objections I-IV are made to Request for Production No. 70.

The government further objects to Request for Production No. 70 on the ground that it is duplicative of Requests for Production Nos. 67-68.

The government further objects to Request for Production No. 70 on the ground that it is unduly burdensome to the extent that production is sought of documents and things having an effective date prior to plaintiff's recovery period, which plaintiff has stated begins on February 11, 1981.

The government objects to subparts (j)-(m) and (o)-(p) of this request for production as vague and ambiguous. Plaintiff does not define nor distinguish the terms "performance testing and evaluation," "acceptance criteria," "engineering test," and "production test."

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

VITO J. DiPIETRO
Director

JANICE M. MUELLER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
(202) 616-8116

June 3, 1994

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 92-580C |

RESPONSES ON BEHALF OF THE DEPARTMENT OF THE NAVY TO PLAINTIFF'S REQUESTS FOR PRODUCTION Nos. 17-204

In response to Plaintiff's Requests for Production to Defendant, The United States, the Department of the Navy provides the following responses to Requests for Production Nos. 17-68, 76-82, 88 and 89 as far as they pertain to the Department of the Navy (including the Marine Corps). It is understood that the Department of Justice will respond and/or object to certain of Plaintiff's Requests for Production. Information relating to the residential addresses of persons may not be disclosed in accordance with the Privacy Act, Title 5 U.S.C. 552a.

Responses are limited to records and things in the possession, custody or control of the Department of the Navy in accordance with the Rules of the United States of Court Federal Claims. A diligent search has been made of those Navy activities

likely to use sonobouys. Documents and things responsive to the requests for production will be produced pursuant to Rule 34(b) of the United States of Court Federal Claims, in the manner in which they are kept in the usual course of business, at the locations noted herein. Such production is not a waiver of Defendant's right to exclude any document which is subject to attorney-client, attorney work-product, state secrets, or any other evidentiary privilege.

In response to those Requests for Production where specific documents are produced, production of the documents is not to be considered as a waiver of any claim that such document or any information contained therein is immune from discovery in whole or in part.

Some documents which are subject to Plaintiff's Requests for Production may contain information which is of a business confidential nature and may only be produced subject to proper limitation. See 18 U.S.C. 1905. Accordingly, the Government's production of such documents for inspection will be subject to the condition that any third party, who claims such document or information to be proprietary or confidential, agrees to the disclosure of such documents or information or is ordered by the Court to comply with a suitable protective order.

Some of the documents responsive to Plaintiff's Requests for Production may contain classified information. Production of such documents will be made only to persons with proper security clearances and authorization. Any copying of such documents must be subject to the applicable Government regulations governing the handling of classified material.

The search for responsive documents and things by the Department of the Navy is on-going, and these responses may be supplemented if necessary as additional documents and things are located.

**Request No. 67:**

Other than those contracts which are the subject of **Production Request Nos. 17-66** above, as to each contract entered into by the government for either sonobuoy(s) or sonobuoy release plate(s), entered into by the government within the period from and including November 18, 1975 through and including June 14, 1994, produce:

(a) the executed contract including technical specifications, performance specifications and statement(s) of work;

(b) contract modification(s), engineering change proposal(s), change order(s) and contract change proposals;

(c) documents submitted as required by a Contract Data Requirement List(s) (CDRL) under the contract;

(d) technical descriptions referring to or relating to the sonobuoy(s);

(e) technical descriptions referring to or relating to the sonobuoy release plate(s);

(f) operational description(s) referring to or relating to the sonobuoy(s);

(g) operational description(s) referring to or relating to the sonobuoy release plate(s);

(h) drawings, including engineering drawings, referring to or relating to the sonobuoy(s);

(i) drawings, including engineering drawings, referring to or relating to the sonobuoy release plate(s);

(j) documents referring to or relating to performance testing and evaluation for the sonobuoy(s);

(k) documents referring to or relating to performance testing and evaluation for the sonobuoy release plate(s);

(l) documents referring or relating to acceptance criteria for the sonobuoy(s);

(m) documents referring or relating to acceptance criteria for the sonobuoy release plate(s);

(n) documents referring or relating to bills of material under the contract;

(o) documents referring or relating to engineering test procedures;

(p) documents referring or relating to production test procedures;

(q) documents referring or relating to billing;

(r) documents referring or relating to payments made to the contractor;

(s) documents referring or relating to acceptance by the government of the sonobuoy(s) under the contract;

(t) documents referring or relating to acceptance by the government of the sonobuoy release plate(s) under the contract;

(u) documents referring or relating to acceptance by the government of the sonobuoy related hardware under the contract;

(v) documents referring or relating to delivery of sonobuoy(s) under the contract;

(w) documents referring or relating to delivery of sonobuoy release plate(s) under the contract;

(x) documents referring or relating to delivery of sonobuoy related hardware under the contract;

(y) documents referring or relating to the quantity of sonobuoy(s) delivered or to be delivered under the contract;

(z) documents referring or relating to the quantity of sonobuoy release plate(s) delivered or to be delivered under the contract;

(aa) documents referring or relating to the quantity of sonobuoy related hardware delivered or to be delivered under the contract;

(bb) a representative sample of each type or model of sonobuoy delivered or to be delivered under the contract;

(cc) a representative sample of each type of sonobuoy release plate delivered or to be delivered under the contract; and

(dd) a representative sample of each item of sonobuoy related hardware delivered or to be delivered under the contract.

**Response by the Department of the Navy to Request No. 67**

See Table 1. A search of Department of the Navy records has located documents which may be responsive to this Request for Production. Existing documents satisfying this Request for Production will be made available at the Naval Air Warfare Center, Aircraft Division, Indianapolis facility.

The following contracts listed in Table 1 (excluding Sparton contracts) were destroyed subsequent to six years and three months after final payment in accordance with FAR 4.805:

N00019-79-C-0162

N00019-79-C-0163

N00163-79-C-0161

N00163-79-C-0220

N00163-80-C-0213 ( The contract was destroyed, however the coorespondance file is available.)

The following contracts listed in Table 1 (excluding Sparton contracts) cannot be located and were presumed to have been destroyed six years and three months after final payment in accordance with FAR 4.805:

N00019-76-C-0228

N00019-76-C-0234

N00019-77-C-0066

N00019-77-C-0167

N00019-77-C-0168

N00019-78-C-0056

N00019-78-C-0128

N00019-78-C-0199

N00163-78-C-0112

N00163-81-C-0287

N00163-82-C-0067

N00163-83-C-0003

The Department of the Navy is unable to locate the following contracts:

N00163-87-C-0001

N00163-89-C-0010

**Request No. 68:**

Other than those contracts which are the subject of **Production Request Nos. 17-67** above, as to each contract entered into by the government for either sonobuoy(s) or sonobuoy release plate(s), for which delivery of either sonobuoy(s) or sonobuoy release plate(s) under the contract is or would be within the period from and including November 18, 1975 through and including June 14, 1994, produce:

(a) the executed contract including technical specifications, performance specifications and statement(s) of work;

(b) contract modification(s), engineering change proposal(s), change order(s) and contract change proposals;

(c) documents submitted as required by a Contract Data Requirement List(s) (CDRL) under the contract;

(d) technical descriptions referring to or relating to the sonobuoy(s);

(e) technical descriptions referring to or relating to the sonobuoy release plate(s);

(f) operational description(s) referring to or relating to the sonobuoy(s);

(g) operational description(s) referring to or relating to the sonobuoy release plate(s);

(h) drawings, including engineering drawings, referring to or relating to the sonobuoy(s);

(i) drawings, including engineering drawings, referring to or relating to the sonobuoy release plate(s);

(j) documents referring to or relating to performance testing and evaluation for the sonobuoy(s);

(k) documents referring to or relating to performance testing and evaluation for the sonobuoy release plate(s);

(l) documents referring or relating to acceptance criteria for the sonobuoy(s);

(m) documents referring or relating to acceptance criteria for the sonobuoy release plate(s);

(n) documents referring or relating to bills of material under the contract;

(o) documents referring or relating to engineering test procedures;

(p) documents referring or relating to production test procedures;

(q) documents referring or relating to billing;

(r) documents referring or relating to payments made to the contractor;

(s) documents referring or relating to acceptance by the government of the sonobuoy(s) under the contract;

(t) documents referring or relating to acceptance by the government of the sonobuoy release plate(s) under the contract;

(u) documents referring or relating to acceptance by the government of the sonobuoy related hardware under the contract;

(v) documents referring or relating to delivery of sonobuoy(s) under the contract;

(w) documents referring or relating to delivery of sonobuoy release plate(s) under the contract;

(x) documents referring or relating to delivery of sonobuoy related hardware under the contract;

(y) documents referring or relating to the quantity of sonobuoy(s) delivered or to be delivered under the contract;

(z) documents referring or relating to the quantity of sonobuoy release plate(s) delivered or to be delivered under the contract;

(aa) documents referring or relating to the quantity of sonobuoy related hardware delivered or to be delivered under the contract;

(bb) a representative sample of each type or model of sonobuoy delivered or to be delivered under the contract;

(cc) a representative sample of each type of sonobuoy release plate delivered or to be delivered under the contract; and

(dd) a representative sample of each item of sonobuoy related hardware delivered or to be delivered under the contract.

**Response by the Department of the Navy to Request No. 68:**

Same response as to Request for Production No. 67

**Request No. 89:**

All Documents relied upon in answering Interrogatory No. 83.

**Response by the Department of the Navy to Request No. 89:**

The Department of the Navy is unable to respond to this Request for Production at this time. If necessary, the Navy's response to Request for Production will be supplemented at a later date.

Frank G. Nieman

FRANK G. NIEMAN

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 92-580C<br><br>Chief Judge Edward J. Damich |

**OPPOSITION OF THE UNITED STATES TO SPARTON'S MOTION TO COMPEL ANSWERS TO ITS REQUESTS FOR ADMISSIONS AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

# EXHIBIT 2

OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT, P.C.
ATTORNEYS AT LAW
FOURTH FLOOR
1755 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VIRGINIA 22202 U. S. A.
TELEPHONE
(703) 413-3000
FACSIMILE
(703) 413-2220
TELEX
248855 OPAT UR

NORMAN F. OBLON
MARVIN J. SPIVAK
C. IRVIN McCLELLAND
GREGORY J. MAIER
ARTHUR I. NEUSTADT
ROBERT C. MILLER
RICHARD D. KELLY
JAMES D. HAMILTON
ECKHARD H. KUESTERS
ROBERT T. POUS
DAVID J. KERA
CHARLES L. GHOLZ
VINCENT J. SUNDERDICK*
WILLIAM E. BEAUMONT
STEVEN B. KELBER*
STUART D. DWORK
ROBERT F. GNUSE
JEAN-PAUL LAVALLEYE, PH.D.
JEFFREY H. KAUFMAN
BRIAN D. ANDERSON*
ROBERTA S. BREN
WILLIAM B. WALKER*
TIMOTHY R. SCHWARTZ, PH.D
JOHN H. WEBER
STEPHEN G. BAXTER, PH.D.
GILBERTO M. VILLACORTA, PH.D.*

MILTON STERMAN*
SAMUEL H. BLECH*
JOHN O. TRESANSKY*
ALTON D. ROLLINS

JOHN H.O. CLARKE*
JAMES R. BOLER*
JOHN T. GOOLKASIAN*

DAVID A. NOVAIS
MARTIN M. ZOLTICK
CARL E. SCHLIER
STEVEN P. WEIHROUCH
P. JAY HINES
BARRY P. MILLER
SURINDER SACHAR
JAMES J. KULBASKI
TIMOTHY L. SCOTT*
CHRISTOPHER W. WELLS
CATHERINE M. BAX*
WILLIAM G. CONGER*
ANNETTE L. BADE*
JOHN C. BROSKY
MARC ASPERAS
FREDERICK D. VASTINE, PH.D.*
MURRAY TILLMAN*
ROBERT W. HAHL, PH.D.*
RICHARD L. CHINN, PH.D.*
ANDREW D. FORTNEY, PH.D.*
MARC R. LABGOLD, PH.D.*
RICHARD A. NEIFELD, PH.D.*
J. DEREK MASON, PH.D.*
KENNETH B. WELLS*
ANDREW B. GRIFFIS*
RICHARD L. TREANOR, PH.D.*
KAREN L. SHANNON, PH.D.*

PATENT, TRADEMARK AND COPYRIGHT LAW
AND RELATED FEDERAL AND ITC LITIGATION

WEST COAST OFFICE
224 AIRPORT PARKWAY, SUITE 300
SAN JOSE, CALIFORNIA 95110
TELEPHONE
(408) 436-2070
FACSIMILE
(408) 436-2075

*BAR MEMBERSHIP OTHER THAN VIRGINIA
*REGISTERED PATENT AGENT

July 11, 1994
via facsimile

CONFIRMATION

Steve Ahlrich
ALCO Management Services
440 N. Meridian
Indianapolis, IN 46204

Re: On-site document inspections

Dear Steve:

In accordance with our recent telephone conversations, I am requesting your services for two on-site document inspections at the Naval Avionics Center in Indianapolis, IN and the Naval Surface Warfare Center in Crane, IN. We have agreed to place two copy machines with operators from you offices at both facilities. The copy operators can begin copying at 9:30 a.m. on July 13 in Indianapolis and 12:00 p.m. on July 18 in Crane. Thereafter the operators will be allowed to copy Monday - Friday, 7:30 a.m. - 4:30 p.m., until the job is complete. They are to make one copy of all documents which will be flagged with a "post it" note. Any two-sided documents are to be converted to one-sided. All oversize documents should be reduced to 8-1/2" X 11" where possible. Those which cannot be reduced to that size shall be copied size-for-size.

We have estimated that given my description of the type of copying involved and the potential number of documents, that it will take two operators, each copying an estimated 2500 pages/day, approximately two weeks at each site to complete the project (the actual number of documents will not be known until the inspection has commenced). You quoted me a rough cost estimate of $.15/page based on statements I made to you regarding the nature of the job. The cost of installing and remc--ing the copy machines is a flat rate of $200 per machine. In addition, travel charges for your operators will consist of a mileage cost of $.30/mile.

In order to facilitate the Navy's security requirements, a list of the operators which you intend to place at each facility will be necessary. On Friday you identified three potential operators for the Indianapolis facility. Please fax to me this afternoon a complete verification list of operators for both facilities so that it can forwarded to the Government's attorney. I will meet you at the Naval Avionics facility in Indianapolis, IN at 9:30 a.m. on July 13 so that you may review the type of documents to be copied.

As we also discussed, I am requesting that upon completion of copying every three boxes, that they be forwarded to my office so that we may begin to process them. Should you have any questions, please do not hesitate to contact me. My direct dial number is (703) 412-6004. Thank you for your assistance in this matter.

Very truly yours,

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.

Kevin M. Bell

Kevin M. Bell
Senior Legal Assistant

cc: Janice M. Mueller, Esq.
KMB/dsb

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 92-580C<br><br>Chief Judge Edward J. Damich |

**OPPOSITION OF THE UNITED STATES TO SPARTON'S MOTION TO COMPEL ANSWERS TO ITS REQUESTS FOR ADMISSIONS AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

# EXHIBIT 3

**Steven Kreiss**
Attorney at Law

1275 Pennsylvania Avenue N.W., Suite 1100, Washington, DC 20004
Telephone (202) 347-6382 Facsimile (202) 347-7711

November 16, 1996

Suzanne Michel, Esq.
Carl M. DeFranco Jr., Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Washington D.C. 20530

Re: Sparton Corporation v. United States,
Court of Federal Claims No. 92-580C

Dear Suzanne and Carl:

This letter is to confirm my recent discussions with Suzanne regarding: (a) Sparton's document inspection at the Navy's PMA-264 facility; (b) my request for a security clearance; (c) Sparton's request to the Justice Department for assistance in obtaining from Hermes Electronics, Inc. ("Hermes"), a division of Ultra Electronics Limited, total compliance with the subpoena Sparton served upon Hermes dated April 29, 1996, particularly the production of complete engineering or technical drawings of the Hermes' sonobuoy devices which were procured by the Navy and are identified on the list attached to the subpoena (also attached hereto as Exhibit A), DD-250 forms or, in the absence of same, internal Hermes contract or other accounting documentation indicating or evidencing the delivery dates of said sonobuoy devices sold by Hermes to the Navy; (d) the Hazeltine and Sippican proposed protective orders sent to the Justice Department by Sparton and Sippican on September 9 and 10, 1996 respectively; and (e) Sparton's Navy document inspection at the Crane, Indiana naval facility which is tentatively scheduled for the first week in December 1996.

In connection with (a) above, Suzanne has arranged for me to visit PMA-264 (in Crystal City, Virginia) on November 26, 1996 and inspect contracts, budget requests, technical information and a few notebooks which are available at that location. If a second or third day is needed to complete

this inspection, then Suzanne and I will amicably arrange for a further inspection at PMA-264 later in December 1996.

With regard to (b) above, many of the documents already produced in this case were at one time classified inasmuch as the patents and accused devices relate to ASW (antisubmarine warfare) technology. Some of the contract and technical information requested by Sparton from the Government relates to very recently (1990-1994) prepared documentation because the last to expire Sparton suit patent expired on June 14, 1994. Thus, it is quite possible, if not very likely, at some point in the present or future document production or deposition phase of this case that relevant classified information may be requested and need to be inspected by Sparton's counsel. Furthermore, the Justice Department may already have refused to produce some previously requested documentation on the ground that the requested document(s) is classified. As a result, to avoid any future delay and needless expense in the retaking of depositions or reinspection of documents, I request, as Sparton's counsel of record, a security clearance for purposes of this case only. Please process this request and let me know whether I can obtain a security clearance and what steps, if any, must be taken or documents executed for a security clearance to be issued to me.

As you know, in regard to (c) above, for many months Sparton attempted informally in late 1995 and early 1996 and then formally through subpoena dated April 29, 1996 to obtain relevant documentation from Hermes. In partial compliance with the subpoena, Hermes produced some of the requested contracts. Nevertheless, none of the requested DD-250 forms or other Hermes documentation relating to the delivery dates of the Hermes sonobuoy devices procured by the Government under the contracts identified in the attachment to the subpoena were produced in compliance with the subpoena. Furthermore, Hermes also refused to produce its technical drawings, (see as Exhibit B the attached Hermes May 13, 1996 letter) despite Sparton's protest and repeated requests for Hermes to produce sufficient drawings (see Sparton's May 16, 30 and June 5, 1996 letters attached hereto as Exhibit B). Finally, Hermes produced on June 11, 1996 one incomplete drawing allegedly of the sonobuoy devices it manufactured for the Government under the contracts identified on the list attached to the subpoena (see as Exhibit B the attached Hermes June 11 and Sparton June 13, 1996 letters). Given Hermes' recalcitrance in complying with Sparton's April 29, 1996 subpoena, Sparton believes that Hermes will be more cooperative in producing the requested documents if the Government either gives its

blessing to Hermes to produce the requested documentation under Sparton's subpoena or requests the same documentation from Hermes under its Notice and Assistance clause. Hermes has indeed indicated in its May 14, 1996 letter, attached as Exhibit B, that its drawings "could be supplied for court review ... [or to] an individual who is deemed acceptable to Hermes in writing." Sparton wishes to stress, moreover, that it will agree to pay Hermes its reasonable expenses incurred in copying the requested documentation. Sparton is not attempting to shift any document production burden upon the Government through this request even though the contracts and technical drawings requested under its subpoena served upon Hermes were indeed previously requested from the Government in this case in May 1994, over two years ago. If the Government does invoke its Notice and Assistance clause in response to Sparton's request and obtains the requested documentation (i) the Government will bear no expense in requiring its contractor to provide Sparton with this relevant documentation (either under the subpoena or Notice and Assistance clause), (ii) the case will not be delayed by court proceedings aimed at compelling Hermes to produce the requested documentation, (iii) the Court will not be unduly burdened by subpoena enforcement proceedings which could have been avoided if the Government had invoked its Notice and Assistance clause, (iv) the Government will not tarnish the credibility of any trial witness from Hermes, and (v) the Justice Department ("DOJ") can ascertain the Government's potential exposure by determining which accused devices fall within the potential accounting periods in this case. This information will be highly relevant to any future settlement discussions engaged in by the parties in this suit.

In connection with the proposed protective orders identified in (d) above, they were sent to the Justice Department over two months ago (see attached Exhibit C) and relate to the Sippican and Hazeltine documents subpoenaed on March 3 and 11, 1996 respectively. Would you kindly process and execute these proposed protective orders so that they can be filed with the Court. If you do not wish to file them because it was Sparton who requested the discovery, then please return an executed original of them to me so that Sparton can file them with the Court. We would like to timely obtain the requested documents from these contractors so that the depositions relating thereto can go forward. As you may recall, the Government did not produce any requested drawings relating to these two contractors' sonobuoys despite Sparton's previous request for same which was made upon the Government over two years ago (see Sparton's May 1994 production requests Nos. 44, 57, 58, 63, 72, 76, 77, 79

and 82 for example). In order to obtain the requested, but not previously produced, documents, these protective orders need to be executed by the Government and approved by and filed with the Court.

In connection with (e) above, Sparton would like to inspect the following contract documents and files:

i. The herebelow identified Magnavox contracts for the procurement of the AN/SSQ-53B sonobuoy:

1. N00163-83-C-0001
2. " 85-C-0002
3. " 87-C-0002
4. " 84-C-0001
5. " 86-C-0006
6. " 88-C-0002
7. " 89-C-0012
8. " 84-C-0008.

ii. The herebelow identified Sippican contract for the procurement of the AN/SSQ-77A sonobuoy:

1. Sippican N00163-81-C-0372.

iii. All contracts listed in Exhibit D hereto which were also identified in Exhibit C to my letter to DOJ of October 6, 1995 and DOJ's December 6, 1995 response (for those contracts designated by the Navy as being destroyed, we would appreciate another search to confirm said reported destruction).

iv. The herebelow identified Hermes contracts for the procurement of the AN/SSQ-53B, 58E and 77A sonobuoys:

1. N00163-87-C-0155
2. N00163-91-C-0243
3. N00163-87-C-0007.

v. All DD-250 forms or other government accounting documentation indicating or evidencing all delivery dates for the sonobuoys procured under the contracts identified in (a) Exhibit E hereto, and (b) "i." above relating to the procurement by the Navy of Magnavox AN/SSQ-53B sonobuoys.

vi. All files for the contracts noted below:

1. Magnavox' (PIP) contract for the 53A sonobuoy which we believe was N00019-72-C-0590

2. Sanders' (PIP) contract for the 53A sonobuoy for which we do not have a contract number, but believe said number should be within the following contract number sequence: N00019-72-C-0580 to N00019-72-C-0600

3. Magnavox' (SSQ-53A) N00019-76-C-0267 contract

4. Hermes' (SSQ-53A/B) N00019-76-C-0507 contract

5. Rockwell's (SSQ-53B) N00163-82-C-0115 contract

6. Raytheon's (SSQ-62) N00019-77-C-0224 contract

7. Hazeltine's (SSQ-77) N00163-79-C-0516 contract

8. Magnavox' (SSQ-53E) N00163-91-C-0244 contract

9. Magnavox' (SSQ-53) N00019-71-C-0349 contract

10. Sanders' (SSQ-53) N00019-70-C-0432 contract.

We believe that the contracts noted above with the prefix N00163 may be located at Crane while those having the prefix N00019 may be located locally. Accordingly, please inform me of the identity of the documents that will be provided at Crane and those which we may inspect elsewhere. I will attend the inspection at Crane, along with John Bodde, to prevent any problem with the inspection of proprietary information. We look forward to your response.

Very truly yours,

Steven Kreiss