IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SPARTON CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant. | No. 92-580C<br>Chief Judge Edward Damich |

**SPARTON CORPORATION'S REPLY TO OPPOSITION OF THE UNITED STATES TO SPARTON'S MOTION TO COMPEL SUFFICIENT ANSWERS TO REQUESTS FOR ADMISSIONS PURSUANT TO RCFC 36(a) AND THE PRODUCTION OF DOCUMENTS PURSUANT TO RCFC 34(b)**

Now comes the Sparton Corporation ("Sparton"), through its counsel, and replies to the defendant's opposition to Sparton's motion to compel.

**Production Request 5003:**

Defendant's opposition to this request for documents regarding the Magnavox AN/SSQ-53B allegedly non-infringing alternative sonobuoy is grounded upon the premise that it seeks fact discovery after the January 3, 2006 close of fact discovery and does not relate to expert discovery which closed on September 19, 2006 (except for this motion to compel which was to be (and was timely) filed by October 3, 2006). Defendant cites Shell Petroleum, Inc. v. United States, 46 Fed. Cl. 583 (2000)(Damich, J.). Def. Opp. 4-5. In Shell, this Court distinguished between fact and "expert" discovery, analyzed the underlying discovery requests and

concluded that three of four areas of inquiry were factual and thus not subject to a timely discovery request. Id. at 586. Shell is completely inapposite to the case at bar. As of January 3, 2006, when fact discovery closed, the Magnavox AN/SSQ-53B sonobuoy was not at issue in this case. It was not placed in issue in this case until defendant, through the expert witness McGavock May 2006 expert report, raised it as an issue as a non-infringing alternative in his calculation of lost profits and a reasonable royalty. See Sparton Motion, pages 24, 36-37 and 55-57 of confidential Exhibit D. An analysis of this production request underscores its timeliness. This production request encompasses documents relating to the Magnavox AN/SSQ-53B sonobuoy's "(a) … inability to satisfy the Navy specification for that sonobuoy, (b) … inability to perform satisfactorily at a 1000 foot depth, [and Magnavox'] (c) … request to obtain a waiver from the Navy because said sonobuoy could not satisfy the Navy specification for said sonobuoy, (d) … obtention [sic] of a waiver from the Navy due to the performance of said sonobuoy, [and defendant's] (e) correspondence relating to the performance of said sonobuoy, and (f) Magnavox correspondence relating to the performance of said sonobuoy." The requested documents deal directly with Mr. McGavock's May 2006 expert report application of the Magnavox AN/SSQ-53B sonobuoy as a non-

infringing alternative. Accordingly, Sparton could not have requested the documents now sought prior to January 3, 2006 because they were not relevant at that time. Defendant made them relevant in May 2006.

Defendant addresses this point at page 6 of its opposition where it argues that "… Sparton had sufficient information [from the Magnavox employee Logar deposition and document inspections at the Crane, Indianapolis and PMA-264 naval facilities] from which to "**logically deduce"** that it [the Magnavox AN/SSQ-53B sonobuoy] would likely be raised as a non-infringing alternative for at least some of the accused sonobuoys since the Magnavox AN/SSQ-53B did not infringe." Emphasis added. Defendant is incorrect. Sparton should not be required to guess at defendant's legal positions. Defendant did not place Sparton on notice of its position regarding the use of the Magnavox AN/SSQ-53B sonobuoy as a non-infringing alternative prior to January 3, 2006, notwithstanding that seven years earlier (in 1999) Sparton submitted its pretrial statement to defendant identifying lost profits as a measure of its asserted damages. Accordingly, Shell is inapposite.

Defendant further contends that all responsive documents were made available for Sparton's at the Crane, Indianapolis and PMA-264 naval facilities. Defendant is again incorrect. The documents presently requested were

neither requested nor produced previously. The requested documents relate to Magnavox AN/SSQ-53B sonobuoy performance, Navy waivers therefor and Magnavox correspondence relating thereto. They do not relate to the Magnavox AN/SSQ-53B sonobuoy design and contracts under which this sonobuoy was procured. Defendant only produced contract files and drawings. It is not believed that the Navy previously searched for said requested documents.

Sparton now turns to the defendant's objection to producing two identified requested documents (from Magnavox) on the basis of the joint defense doctrine which extends the attorney client privilege to third parties (the defendant here) who received such documents. Defendant relies upon B.E. Meyers & Co., Inc. v. United States, 41 Fed. Cl. 729, 734 (1998)(Bruggink, J.), Capital Properties, Inc. v. United States, 49 Fed. Cl. 607, 613 (Merow, J.), United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989), and Eisenberg v. Gagnon, 766 F.2d 770, 787 (3d Cir.), cert. denied, 474 U.S. 946 (1985). Defendant's reliance upon these cases is misplaced. Capital Properties, supra at 613-14 articulates some legal principles concerning the joint defense doctrine, but notes that the communication at issue must still qualify as privileged, must be identified with specificity and may not be used as an independent shield. In Capital Properties, the communication was not identified with

specificity and thus the court made no determination of whether it was privileged.

In B.E. Meyers, this court held that communications by a contractor's attorneys to government attorneys in a 28 U.S.C. §1498 case were privileged under the joint defense doctrine when the contractor had an identical, common, legal interest with the Government in the form of a patent indemnity agreement. The court in B.E. Meyers articulated rules of construction in applying the attorney client privilege and hence the joint defense doctrine. For example, the attorney client privilege is strictly construed by the Court of Federal Claims. Id. at 731. The party asserting the privilege bears the burden of proving it and must show that the communication was given in confidence, the client reasonably understood it to be given in confidence, was not waived and an identical interest was shared by the parties if the joint defense doctrine is asserted. Id. at 732-33 and Schwimmer, supra at 244 (a party to a government investigation providing information to an accountant hired by a second party to that same government investigation can claim a joint defense privilege when the parties' attorneys agreed to cooperate with one another and advised the parties that said information was confidential). In B.E. Meyers, the court found an identical interest between the government and Insight, the government

contractor, to exist because Insight had indemnified the government (under a government contract which contained indemnity, notice and assistance and authorization clauses) and assumed any liability resulting from the litigation. Accord, Eisenberg, supra at 787 where interests coincided, but some adverse interest existed. The joint defense doctrine is inapplicable, however, if there is no common interest or joint strategy, such as when the attorney is performing business or commercial functions as distinguished from providing legal advice. Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 7-8 (N.D. Ill. 1980); Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 19 n.3 (E.D.N.Y. 1996); In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 922-23 (8th Cir. 1997); Reed v. Baxter, 134 F.3d 351, 357-58(6th Cir. 1998); and United States v. Weissman, 195 F.3d 96, 99-100 (2d Cir. 1999).

In the case at bar, the Government procured sonobuoys from Magnavox under contracts that contained notice and assistance and authorization and consent clauses. Magnavox had a commercial obligation to provide the Government with assistance in this litigation. Nevertheless, its contracts in issue did not contain a patent indemnity clause. Magnavox is thus not liable in this case and has no common interest with the Government as concerns this litigation. It has not been established by defendant that the

communications in issue were provided to defendant in confidence as distinguished from compliance with its commercial obligations. The defendant has thus not satisfied its burden of proof with respect to the privilege issue at bar. The documents should be provided to the Court to determine if they were provided in confidence to establish a joint strategy in furtherance of a common interest. See Capital Properties, supra at 614, Schwimmer, supra at 245, Pacific Gas, supra at 813.

**Production Requests 5006 and 5007:**

These production request relate directly to the defendant's license defense under the Christian doctrine, set forth in G. L. Christian & Associates v. United States, 312 F.2d 418, aff'd on reh'g, 320 F.2d 345 (Ct. Cl. 1963). The defendant argues that (a) these requests were submitted after the close of discovery and do not relate to expert discovery and (b) it did not change the "theory" under which it claims the Government has a license. Def. Opp. 10-15. The problem with defendant's argument is that said "theory" can not be gleaned from defendant's interrogatory answers. Defendant is apparently not providing expert testimony on this issue and will instead present pretrial attorney argument. The requested discovery is timely and relevant to expert discovery inasmuch as defendant's counsel will present a license defense in his forthcoming pretrial brief

to which Professor Nash may need to further respond. Assuming arguendo that defendant's counsel attempts to transform the Sparton-Navy fixed price supply contract into a research and development contract, then Sparton should be provided the requested documents to contest defendant's counsel's futuristic attempt.

**Request For Admissions Nos. 2001-2006, 2008, 2009**:

Defendant contends that the requested admissions are objectionable under RCFC 36(a) as to form, i.e. they are not separately set forth. This contention is meritless. So long as the requested admission can be answered with a simple admit or deny without an explanation, or in certain instances permit a qualification, they are proper. Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003). Before treating defendant's specific contentions, however, a review of basic principles relating to requests for admissions is relevant. While the basic purpose of discovery is to elicit facts and information and to obtain document production, Rule 36 is not designed for this purpose. Instead, requests for admission are used to establish admission of facts about which there is no real dispute. See James Wm. Moore, Moore's Federal Practice, §36.02[1], p. 36-7 (3d ed. 2002). The benefit of requests for admission is that litigation can be expedited and streamlined by narrowing issues for trial and reducing

expense that otherwise would be required to prove non-disputed facts. Id. at 36-8. Anticipated pretrial stipulations should not be relied on as a substitute as defendant contends at Opp. 21-22. Id. at 36-10. It is not necessary to establish any evidence or authority for an admission as defendant argues at Opp. 21-22. Id. at §36.11[5][a], p. 36-31. A party may admit in part a requested admission and deny in part that admission. Id. at §36.11[5][b], p. 36-31. The responding party must make a reasonable inquiry from person's and documents within the responding party's relative control (inquiry of those with some identity of interest) in its attempt to respond to the request for admission. Id. at §36.11[5][d], p. 36-35, 37. The party objecting to the request has the burden of persuasion. Id. at §36.12[1], p. 36-38.

Defendant points to the number of matters and number of paragraphs in the requested admissions to support its contention that the requested admissions fail to separately state each matter to be admitted. Def. Opp. 17. The number of matters and paragraphs are irrelevant since the requested admissions can be answered simply by an admission or denial. Although defendant states that RFA 2004-2006 and 2009 reference six stated accounting period permutations, defendant is incorrect as noted in Sparton's motion, page 7. Defendant references data points for RFA 2009. There are

none. Defendant can answer this requested admission by merely asking Magnavox whether it proposed the Magnavox AN/SSQ-53B sonobuoy design for any of the other sonobuoy contracts let to it. Defendant is claiming a joint defense privilege for Magnavox documents. It should be required to answer RFA 2009 in light of its claim. Although defendant contends that Shell, supra, applies to the requested admissions, Sparton submits that the requested admissions bear directly on defendant's expert reports, whether they relate to an admission of the structures of the accused devices addressed in the defendant's Hudson expert report or contract information contained in the defendant's McGavock expert report. By permitting the requested admissions to be answered, time and expense at trial will certainly be reduced. Defendant's contention that the requests are unduly burdensome is misplaced because defendant has not satisfied its burden of proof. Def. Opp. 19-22.

In view of the above, Sparton respectfully requests that its motion be granted.

Respectfully submitted,

Date: November 3, 2006

s/Steven Kreiss
Attorney for Plaintiff
1120 Connecticut Avenue, N.W. #240
Washington D.C. 20036
(202) 347-6382; Fax (202) 347-7711