IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SPARTON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 92-580C<br>Chief Judge Edward Damich |

**SPARTON CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE THE TESTIMONY OF PROFESSOR NASH**

Now comes the Sparton Corporation ("Sparton"), through its counsel, and opposes the defendant's motion to preclude the testimony of Professor Nash pursuant to Fed. R. Evid. 702, RCFC 37(c)(1), and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) and its progeny.

The defendant correctly notes that Professor Nash is an expert in government contracts law, and his expert report addresses the applicability to this case of the government contract Christian doctrine, *G.L. Christian & Assoc. v. United States*, 312 F.2d 418, *aff'd on reh'g*, 320 F.2d 345 (1963), and in particular the application of the Armed Forces Procurement Regulations, §§7.301, 7.302, 7.302-23 and 9.107 (especially 9.107-1, 9.107-4 and 9.107-5) (1968-1972) to the Navy-Sparton government contract N00019-69-C-0465 ("0465 contract") including Mod. 4 thereof incorporating ECP 0465-2. Thus, defendant concedes that Professor Nash's testimony relates directly to a government contract issue in his government contract field of expertise. Mot. 1-2, 7.

**I. <u>Defendant's Contentions</u>**

First, defendant contends that Professor Nash's proposed testimony, i.e. as gleaned from his expert report, fails to comply with RCFC 26(a)(2)(B) in light of *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) because the Nash report fails to provide the "basis and reasons" for his opinions. Mot. 4. In particular, defendant contends that Professor Nash provides "little basis or rationale" for the conclusions that (a) defendant did not obtain a license under the Christian doctrine, (b) the Navy exercised its discretion not to include a Patent Rights clause in the 0465 contract as a result of long established Navy policy, (c) Mod. 4 was properly issued under the Changes clause to a supply contract which the Christian doctrine does not transform into a research and development contract, and (d) the parties' contemporaneous actions support the conclusion that a Patent Rights clause should not be incorporated into the 0465 contract, including Mod. 4 thereto. Defendant attempts to support its above contention by arguing that the Nash report lacks citations to documents produced in this case or from any other source for his facts. Mot. 4-5.

Second, defendant contends that Professor Nash's opinions are legal arguments, i.e. the application of law to facts, dressed as expert testimony. In support of this

contention, defendant states that Professor Nash has no personal knowledge of the facts in this case, and his opinions, as to Navy policies, are based upon facts he has read in documents. Defendant complains that Professor Nash does not use any scientific method to support his opinions, and his report fails to establish that his views are widely held or established in the field. Mot. 6-7.

Third, defendant contends that Professor Nash's testimony should be precluded because it does not address any contract terms of art requiring construction, any ambiguous contract, whether the procurement regulations were evaded and whether the Patent Rights clause should have been included in the 0465 contract as a matter of law or policy. Mot. 7-8. Defendant argues that Professor Nash misses the point, i.e. the application of the Christian doctrine, when he points to the Navy policy of using production funds for 0465 contract work and the parties' contemporaneous actions, because defendant is not bound by its agents who act beyond their authority. Mot. 8-9. In essence, defendant attacks the Nash report on the basis that it contains "markedly incorrect law[,]" which should only be presented by Sparton in its briefs and not on the witness stand. Mot. 11.

Fourth, defendant contends that Professor Nash's testimony will not be helpful to the Court because (a) it is not directed to facts or an understanding of the evidence,

but rather is directed to the law, (b) the Nash testimony invades the province of the Court, which has expertise in government contract law, inasmuch as it applies government contract law to facts provided by Sparton's counsel or otherwise learned through Professor Nash's employment in this case, and (c) the Nash testimony will waste valuable trial time and possibly confuse the issues, a result that can be prevented by the Court reading the parties' briefs and hearing the facts at trial. Mot. 12.

**II. Defendant's Contentions Are Meritless**

At the outset, Sparton submits that expert testimony is liberally admissible under the Federal Rules of Evidence, and the presumption under these Rules is that expert testimony is admissible. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, §702.02[1], p. 702-6 (Joseph M. McLaughlin, ed., Mathew Bender 2d ed. 2005). Defendant's contentions should be considered in the context of whether the presumption has been overcome.

Defendant's first contention is meritless because Professor Nash provided the basis and reasons for his opinions. He analyzed defendant's answer to Interrogatory 1, which required defendant to identify the evidence on which it relies to establish a license and how such evidence establishes the existence of such license, and applied the Christian doctrine to defendant's interrogatory answer. Mot.

Ex. 1, p. A2-4. He relied upon the documents noted in defendant's interrogatory answer as well as the documents he identified in the Declaration he previously executed in this case. Id. at A6 and see Exhibit A. Those documents include the 0465 contract, ECP 0465-2, Sparton's March 17, 1971 letter including its attached technical proposal, documents SPA 2779-2993 regarding Sparton work before and after the execution of ECP 0465-2, government background documents 000002-17, 1054-66, 1082-92, 1120, 16166, 16182-83, 16187, 16453-57, 16475, 16497-16523, 16525-26, 21503-05, 21529, 23223-54, a deposition transcript, documents establishing Navy practice such as 016311, 016349-50, 016463-73, 017019-28, 017088-89, 020521-26, 021043-52, 022518-26, and another Navy-Sparton contract and related documents such as 001969-74, 001981-82, 002099-2116, 002118, 002257-61, 002272-78, 011370, 011374, 011571, 011579, 012182-96, 012239-42, 012248-012302, 012818, 012975-80. In other words, Professor Nash was knowledgeable of facts in this case (not assumed ones) as well as the documents defendant identified in support of its license defense under the Christian doctrine.

Based upon his knowledge of the documents relevant to an application of the Christian doctrine and his expertise in government contract law as noted in paragraphs 1 and 2 of Exhibit A (which includes texts on Government Contract Changes and Patents and Technical Data), his opinions are

relevant, reliable and fully supported. For example, his specialized government contract knowledge, knowledge of the 0465 contract and knowledge of the relevant procurement regulations he cited in his report enabled him to determine (a) the type of contract (fixed price supply) at issue, (b) that the inclusion of a Patent Rights clause in the 0465 contract was discretionary in 1969, (c) that the Navy properly exercised its discretion not to include said clause in said supply contract (none was included in the 0465 contract) and properly issued Mod. 4 under the Changes clause of said contract (as noted in the contract documents) to obtain the development work called for by Mod. 4 in accordance with Navy long established policy as reflected in paragraph 19 of Exhibit A, and (d) the issuance of Mod. 4 under the supply contract’s Changes clause does not transform this supply contract into a research and development contract. Defendant’s contention that the Nash report lacks citations to documents produced in this case is directly contradicted by Professor Nash’s reference to the 0465 contract and Mod. 4 thereof incorporating ECP 0465-2, the documents identified in Exhibit A hereto and in particular paragraph 19 thereof. Mot. Ex. 1, pp. A4, A6.

Defendant’s attack on Professor Nash’s reference to and determination of Navy long established policy and the parties’ contemporaneous actions is thwarted by an analysis

of the Christian case. There, the court addressed as relevant government long established policy and the parties' actions in regard thereto. Christian supra 312 F.2d at 426-27 and 320 F.2d at 355; see also S.J. Amoroso Constr. Co. v. United States, 12 F.3d 1072, 1075-77 (Fed. Cir. 1993)(parties' contemporaneous actions relevant under application of Christian doctrine) and IBI Security Service, Inc. v. United States, 19 Cl. Ct. 106, 110 (1989)(deference is given to an administrative agency's interpretation of an administrative regulation). Since defendant correctly concedes that expert testimony embracing an ultimate issue is not *per se* inadmissible under Fed. R. Evid. 704, its contention that Professor Nash's testimony, i.e. that defendant did not obtain a license under the Christian doctrine, should be excluded is misplaced.

Defendant's second contention is likewise meritless. Defendant's argument that Professor Nash's opinions are legal argument because he has no personal knowledge of the facts in this case and his opinions, as to Navy policies, are gleaned from documents he has read is at odds with legal precedent. As stated by Judge Weinstein: "Unlike lay witnesses, who must testify based upon personal knowledge, expert witnesses do not need to have personal knowledge of the underlying facts; they may testify to opinions based upon facts perceived by or made known to the expert at or

before the hearing." Weinstein's Federal Evidence, supra, §702.02[2], p. 702-8 and cases cited therein. Accordingly, Professor Nash's opinion as to Navy policies and determinations based upon his review of relevant facts contained within government and contract documents is relevant, highly reliable, and within the scope of his expertise and common expert witness testimony. Id.

The simple answer to defendant's third contention is that Professor Nash considered the type of evidence that was considered in the Christian, Amoroso and IBI cases, supra. Although defendant argues that Professor Nash does not employ a scientific method to support his opinions, Sparton notes that Professor Nash is not testifying as a technical expert, but is proffered as a government contracts expert. Defendant's third contention is nothing more than defendant's assertion of a view contrary to the one taken by Professor Nash. In this context, Professor Nash's testimony goes to the weight, not the admissibility, of the evidence and should be tested in the crucible of adversarial proceedings. Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F3d 1209 (Fed. Cir. 2006) and United States v. 14.38 Access of Land Sit. In Leflore Cty. Ms., 80 F.3d 1074 (5th Cir. 1996).

Defendant's last contention boils down to whether Professor Nash's testimony will be helpful to the Court.

Expert testimony is admissible regarding subjects beyond the average person's lay knowledge. 3 Weinstein's Federal Evidence, supra, §702.03[1], pp. 702-31 to 702-37. A determination of Navy long standing policy, the custom in the trade, the proper use of a government contract Changes clause, the Navy discretion or mandate under appropriate regulations for inclusion of a Patent Rights clause, the interpretation of the ASPR §7-301 terms "fixed price research and development contract" and "modifications not affecting new procurement[,]" as the latter relates to the Changes clause, and an analysis of the parties' contemporaneous actions are certainly beyond the average person's lay knowledge. Significantly, the nexus between these determinations and Professor Nash's expertise and the high degree of relevance and reliability of these determinations to the ultimate issue to be adjudicated establish the helpfulness of this testimonial evidence to the Court. Endress + Hauser, Inc. v. Hawk Measurement Sys. Ltd., 122 F.3d 1040 (Fed. Cir. 1997). Professor Nash's testimony, contrary to defendant's contention, is directed to facts and an understanding of the evidence vis-à-vis the pertinent armed service procurement regulations. It will be of immense help to the Court. Expert testimony concerning specialized meanings of contract terms and specifications is

also admissible as being helpful to a fact finder. Id. at §702.03[3], p. 702-44.

In conclusion, Sparton turns to defendant's comment that Professor Nash "… alleges an absence of support for the Government's argument …" and "[t]he absence of support [in defendant's interrogatory answer] is not surprising since the time for the United States to file its pretrial brief has not yet arrived." Mot. 4 and fn. 1. The defendant appears to have forgotten that this Court ordered defendant to answer above noted Interrogatory 1. See May 6, 2005 Order Scheduling Discovery. Defendant was required to specify its support, evidence and application of this evidence in its interrogatory answer. Obviously, it did not based upon footnote 1 in its subject motion. Mot. 4. Defendant's admitted nondisclosure tactics, in the face of a court order, constitute trial by ambush. Sparton hopes that this Court will not countenance such litigation tactics. An additional expert report from Professor Nash will unnecessarily increase Sparton's litigation expenses. In view of the above, Sparton respectfully requests that the defendant's motion be denied.

Respectfully submitted,

Date: November 9, 2006

s/Steven Kreiss
Attorney for Plaintiff
1120 Connecticut Avenue, N.W. #240
Washington D.C. 20036
(202) 347-6382; Fax (202) 347-7711