# In the United States Court of Federal Claims

No. 92-580C

(Filed: April 18, 2007)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|   |   |
|---|---|
| **SPARTON CORPORATION,** | Exclusion of expert testimony; *Daubert*; specialized knowledge; government contract expert; legal conclusions; ultimate issue; patent infringement; *Christian* doctrine; Patent Rights clause; sonobuoys |
| Plaintiff, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Steven Kreiss*, of Washington, D.C., for Plaintiff.

*Gary L. Hausken*, with whom were *John Fargo*, Director, and *Peter D. Keisler*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION**

**DAMICH**, Chief Judge.

Before the Court in this patent infringement case is Defendant's Motion to Preclude the Testimony of Professor Ralph C. Nash. In the motion, Defendant argues that the expert report provided by Plaintiff on behalf of Professor Nash fails to comply with the Rule 26 of the Rules of the U.S. Court of Federal Claims ("RCFC"), Rule 702 of the Federal Rules of Evidence ("Fed. R. Evid."), and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). For the reasons set forth below, Defendant's motion is GRANTED.

**I.     Background**

Sparton Corporation ("Sparton") filed this complaint, alleging infringement under 28 U.S.C. § 1498 of two patents by the U.S. Department of Navy.  Comp. ¶ 1.  U.S. Patent No. 3,921,120 is directed to a sonobuoy[1] deployment system comprising a float actuated release mechanism and U.S. Patent No. 4,029,233 is directed to a sonobuoy retainer plate.  *Id*. ¶ 4-5.  Plaintiff alleges that sonobuoys procured by the government from several contractors infringe the patents.  *Id*. ¶ 7.

Fact discovery closed in this case on January 3, 2006.  Before the close of expert discovery on September 19, 2006, Defendant filed a Motion to Preclude Professor Nash from Offering Testimony at Trial.  In the motion, Defendant stated that during a conference between the parties, Plaintiff informed Defendant that it may call Professor Ralph C. Nash to testify at trial.  Yet, Defendant argued that no expert report by Professor Nash had been served on Defendant as required by RCFC 26(a)(2)(B).  The Court granted Defendant's motion and ordered Plaintiff to produce an expert report by Professor Nash.

In the expert report, dated October 10, 2006, Professor Nash addresses Defendant's Answer to Plaintiff's Interrogatory No. 1.  Plaintiff's Interrogatory No. 1 requests:

> For each of U.S. Patent Nos. 3,921,120 and 4,029,233, Sparton requests the United States to identify the basis for the contention that Sparton has granted to the United States a license or lawful right to use or manufacture the subject matter of the claims of the '120 and '233 patents, including but not limited to:
> (a)   identification of the basis in statute and case law upon which the United states [sic] contends an implied license or right to use was established;
> (b)   identification of all documents or other evidence which the United States contends establishes the existence of an implied license or right to use/manufacture, and specifically how such evidence establishes the existence of an implied license or right to use/manufacture; and
> (c)   identification of the dates through which the United states [sic] contends an implied license or right to use/manufacture existed.

Def.'s App. at A2.  Defendant's Answer to Interrogatory No. 1 is as follows:

> (a)   The legal basis for defendant's defense of a lawful right to use the inventions claimed in the '120 and '233 patents is the

---

[1] A sonobuoy is a sonar device used to detect underwater objects such as submarines.

>> *Christian* Doctrine, see *G.L. Christian & Associates v. United States*, 312 F.2d 418, *aff'd on reh'g*, 320 F.2d 345 (1963), and Armed Forces Procurement Regulation,[2] §§ 7.301, 7.302, 7.302-23 and 9.107 (especially 9.107-1, 9.107-4 and 9.107-5) (1968-1972). With respect to the '120 patent, the Government may also assert a defense of lawful right based solely on the contractual provisions of Contract No. N00019-70-C-0133.
>
> (b) The principal documents on which the United States will rely at trial to prove a lawful right to use the inventions claimed in the '120 and '233 patents are:
>     i. The '0465 contract;
>     ii. ECP 0465-2;
>     iii. Plaintiff's briefs in opposition to the motion for summary judgment on the issue [sic] of invalidity;
>     iv. Plaintiff's briefs on its appeal to the Court of Appeals for the Federal Circuit;
>     v. The opinion of the 2005 Federal Circuit in this case;
>     vi. Exhibits 1-53 to Defendant's Motion for Partial Summary Judgment, filed on October 3, 1997;
>     vii. Contract No. N00019-70-C-0133;
>     viii. The following documents: SPA42084-SPA42088, SPA30734, SPA30710-SPA30712; and
>     ix. Defendant's Summary Judgment Exhibit 10.
>
> (c) The entire life of the patents-in-suit, November 18, 1975 - June 14, 1994.

*Id*. at A2-A3 (brackets in original). Professor Nash's expert report states in relevant part:

> I have analyzed the *Christian* Doctrine and Armed Forces Procurement Regulations, §§ 7.301, 7.302, 7.302-23 and 9.107 (especially 9.107-1, 9.107-4 and 9.107-5) (1968-1972), in light of the cited documents, and have formed the opinion that they do not provide the defendant with a license or lawful right to use the inventions claimed in the '120 and '233 patents. . . . [T]he Government's argument appears to be that the Patent Rights clause is a mandatory clause in the supply contract 0465 under which ECP 0465-2 was implemented through mod. 4 thereof. I have been

---

[2] Defendant apparently refers to the Armed Services Procurement Regulations ("ASPR"). *See* Def.'s Mot. at 5, 6, Pl.'s Opp. at 9. The ASPR have since been replaced by the Defense Acquisition Regulations ("DAR"), which were in turn replaced by the Federal Acquisition Regulations ("FAR"). *See FMC Corp. v. United States*, 853 F.2d 882, 884 n.2 (Fed. Cir. 1988).

> unable to find any support for this argument in the ASPR or evidence that I have reviewed in this case. . . . [T]he inclusion of the Patent Rights clause in fixed price supply contracts [was] discretionary in January 1969 and therefore not subject to the *Christian* doctrine. It appears that the Navy properly exercised this discretion not to include the Patent Rights clause in the 0465 fixed-price supply contract for sonobuoys. . . . This appears in accordance with Navy sonobuoy PMA 264 program office long established policy. . . . Since Mod. 4 was properly issued under the authority of the Changes clause, it can not be construed as a research and development contract. It was clearly a proper modification to a supply contract which the *Christian* doctrine does not transform into a research and development contract. . . . The parties' contemporaneous actions during the performance of the subject contract support the conclusion that a Patent Rights clause should not be incorporated therein under the *Christian* doctrine.

*Id*. at A4-A5. After Professor Nash's expert report was served on Defendant, Defendant filed its Motion to Preclude the Testimony of Professor Nash.

## II.     Analysis

### A.     Compliance with RCFC 26(a)(2)(B)

Defendant contends that the expert report provided by Professor Nash fails to comply with RCFC 26(a)(2)(B) in that it does not provide the basis and reasons for his opinions. According to Defendant, the report is largely conclusory and does not explain the reasoning behind the opinions expressed. Defendant points to several examples:

- "I have analyzed the *Christian* Doctrine and Armed Forces Procurement Regulations, . . . in light of the cited documents, and have formed the opinion that they do not provide the defendant with a license or lawful right to use the inventions claimed in the '120 and '233 patents."
- "It appears that the Navy properly exercised this discretion not to include the Patent Rights clause in the 0465 fixed-price supply contract for sonobuoys."
- "Since Mod. 4 was properly issued under the authority of the Changes clause, it can not be construed as a research and development contract."
- "The parties' contemporaneous actions during the performance of the subject contract support the

> conclusion that a Patent Rights clause should not be incorporated therein under the *Christian* doctrine."

According to Defendant, none of these conclusions is supported by anything but additional conclusory statements. Defendant argues that Professor Nash does not establish any basis for his opinions and does not provide any source for the facts. All of the facts were apparently provided to him; they are not facts about which he has any knowledge. The expert report is also devoid of citations. Therefore, Defendant urges the Court to exclude the testimony of Professor Nash as a sanction for Plaintiff's failure to comply with the expert disclosure requirements.[3]

The rules of the U.S. Court of Federal Claims require full and complete disclosure of the testimony of any expert witness in an expert report:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. *The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions . . .*

RCFC 26(a)(2)(B) (emphasis added).[4] The purpose served by the rule is as follows:

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the "substance" of

---

[3] The sanction of exclusion is provided for in RCFC 37(c)(1), which states: "A party that without substantial justification fails to disclose information required by RCFC 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed."

[4] RCFC 26 is substantially identical to Fed. R. Civ. P. 26 and interpretation of Fed. R. Civ. P. 26 informs the Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

>   expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed.

Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amendments, reprinted in Thomson/West, Federal Judicial Procedure and Rules, at 161 (2005).

      Plaintiff asserts that Professor Nash did indeed provide the bases and reasons for his opinions. Professor Nash analyzed Defendant's answer to Interrogatory No. 1 and applied the *Christian* doctrine to that answer. In doing so, Plaintiff avers, he relied on documents in Defendant's answer as well as documents referenced in his earlier declaration[5] and thus he was clearly knowledgeable of the facts in the case. Plaintiff argues that Professor Nash need not have personal knowledge of the underlying facts, but may instead give his opinion based on facts made known to him. According to Plaintiff, his expertise in government contracts enabled him to provide helpful guidance to the Court on: (1) what type of contract the 0465 contract is; (2) whether inclusion of the Patent Rights clause in the contract was discretionary; (3) whether the Navy properly exercised its discretion not to include the Patent Rights clause in the contract and properly issued Mod. 4 in accordance with Navy long-established policy; and (4) whether the issuance of Mod. 4 transformed the contract into a research and development contract. Therefore, Plaintiff avers that Professor Nash's testimony will be both relevant and reliable.[6]

      Defendant counters that although Plaintiff provides a long list of documents presumptively used by Professor Nash in generating the expert report, none of the documents are referenced in the expert report. Moreover, Defendant argues that, to the extent the documents were cited in Professor Nash's declaration, they were cited with respect to a patent invalidity issue (an alleged on-sale bar under 35 U.S.C. § 102), not with respect to the application of the *Christian* doctrine to a license defense to patent infringement. Defendant contends that Plaintiff

---

[5] *See* Pl.'s App., ex. A. The declaration was filed on March 23, 1999, attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. The Court struck the declaration, in an opinion issued December 19, 2002, because the Court found that the testimony on a patent law issue by Professor Nash, a government contract expert, failed to meet the reliability standard required by *Daubert*.

[6] Plaintiff further asserts that the presumption under the Federal Rules of Evidence is that expert testimony is admissible and therefore it is incumbent upon Defendant to overcome that presumption. However, the presumption under the Federal Rules of Evidence only comes into play when the Court considers the substance of the expert testimony and whether it meets the admissibility standards set forth in *Daubert*. First, however, the Court must determine whether the expert report is in proper form, containing the information required by RCFC 26(a)(2)(B).

merely reiterates the conclusions made by Professor Nash, but fails to point to where Professor Nash explains how he reached those conclusions. According to Defendant, two of the cases cited by Plaintiff (*S.J. Amoroso Constr. Co. v. United States*, 12 F.3d 1072 (Fed. Cir. 1993), and *IBI Security Serv., Inc. v. United States*, 19 Cl. Ct. 106 (1989)) were not cited in the expert report and, therefore, do not provide support for Professor Nash's conclusions. With respect to the other case (*G.L. Christian & Assoc. v. United States*, 312 F.2d 418, *aff'd on reh'g*, 320 F.2d 345 (1963)), the expert report fails to explain how Professor Nash's conclusions were reached using that authority.

The Court finds that the expert report provided by Plaintiff, though perhaps not as comprehensive and helpful as might be desired, suffices to meet the requirements of RCFC 26(a)(2)(B). The substance of Professor Nash's testimony is that, based on the evidence before him, Defendant does not have a license under the *Christian* doctrine to practice the patented invention. There is no need for Professor Nash himself to provide evidence or facts, rather he can instead rely on facts of record in rendering his opinion. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) ("Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). The supporting basis for Professor Nash's conclusion that Defendant does not have a license under the *Christian* doctrine is that the ASPR provides that the Patents Rights clause is a discretionary clause, not a mandatory clause, and Defendant exercised its discretion not to include the Patent Rights clause in the contract. Professor Nash provides two additional reasons for his conclusion that the *Christian* doctrine does not apply: (1) the fact that Mod.4 appears to have been issued under the Changes clause in accordance with long-established Navy policy; and (2) the parties' actions during contract performance.

Although Professor Nash does not provide much depth to his analysis of the procurement regulations, his interpretation of the contract clauses, and his assessment of Navy policy—and does not offer any supporting documents or cases—his expert report is not so sketchy and vague that it would be of little help to Defendant in preparing for Professor Nash's deposition. The Court finds that Defendant can glean enough information from the expert report to effectively cross-examine Professor Nash at trial and that Defendant has not been prejudiced by the deficiencies in the report. Moreover, the Court is somewhat sympathetic to the dilemma faced by Plaintiff in attempting to provide details in an expert report in anticipation of its response to Defendant's license defense before even hearing the substance of that defense.[7] Accordingly, the Court concludes that Professor Nash's expert report adequately complies with the formal

---

[7] Apparently, Defendant does not intend to offer expert testimony on its license defense and, therefore, has provided no expert report to Plaintiff, detailing the basis and reasons for that defense. The Court finds, however, Plaintiff's allegation of "trial by ambush," due to Defendant's failure to include supporting evidence with its answer to Interrogatory No. 1, to be unfounded. If Plaintiff indeed found Defendant's answer to Interrogatory No. 1 to be deficient, Plaintiff should have complied with the requirements set forth in RCFC 37(a)(2)(A), rather than raise the issue in the midst of briefing on Defendant's motion to exclude expert testimony.

requirements of the rule, or is at least adequate enough so as not to be harmful to Defendant. *See Banks v. United States*, 75 Fed. Cl. 294, 298 (2007) (declining to strike expert report when there was no showing of surprise, prejudice or bad faith, and when allowing the evidence would not disrupt the efficient trial of the case); *Alost v. United States*, 73 Fed. Cl. 480, 504 (2006) (finding failure of expert report to comply with RCFC 26(a)(2)(B) to be harmless); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 1535686 (Fed. Cl. June 28, 2004) (finding that inadequacies in expert report can be addressed by *voir dire* before evidence is presented or by cross-examination).

### B. Legal Arguments Dressed as Expert Testimony

Defendant next asserts that the proffered testimony of Professor Nash does not comply with Federal Rule of Evidence 702 and with *Daubert* because it is not based on scientific, technical or other specialized methodology that will assist the trier of fact. Instead, Defendant avers that Professor Nash's opinions are legal arguments in the guise of expert testimony.[8] Although Defendant acknowledges that a government contract expert may offer testimony to assist the Court in construing terms that have acquired a special meaning through trade practice and custom, Defendant asserts that the expert report fails to establish that Professor Nash is qualified to speak about trade practice and custom, nor is there any indication that any contract terms require construction based on trade practice and custom. Defendant contends that Professor Nash does not provide testimony on how to construe contract terms, rather he tells the Court how to decide the issue. While expert testimony that embraces an ultimate issue is not inadmissible under Fed. R. Evid. 704, such testimony need not be admitted under Fed. R. Evid. 702. Defendant contends that Professor Nash's testimony is not helpful, would merely reiterate arguments advanced by Plaintiff's counsel, and would waste valuable trial time. Defendant argues that there is no need for his testimony regarding application of the *Christian* doctrine to the facts of this case and, in fact, his testimony invades the province of the Court. Plaintiff is not entitled to present its legal arguments from the witness stand in the guise of expert testimony and the weight of authority recommends exclusion of the testimony under these circumstances. Therefore, Defendant urges the Court to use its gatekeeper authority to exclude Professor Nash's testimony.

Plaintiff responds that Professor Nash is not testifying as a technical expert, but is offered as a government contract expert. Therefore, he need not employ scientific methods to support his opinions. Plaintiff argues that since testimony embracing an ultimate issue is not per se

---

[8] For example, Defendant points to Professor Nash's interpretation of the *Christian* doctrine and ASPR 7-301, which Defendant contends are purely legal opinions. Defendant further explains that Professor Nash's opinion that the "Navy properly exercised [its] discretion not to include a Patent Rights clause in the 0465 fixed-price supply contract" is substantively a legal opinion regarding whether the Patent Rights clause was mandatory or whether the Navy had discretion to exclude the clause. And, Defendant asserts that any remaining opinions by Professor Nash consist of application of the law to the facts.

inadmissible under Fed. R. Evid. 704, Defendant's contention that Professor Nash's testimony should be excluded is misplaced. Plaintiff asserts that expert testimony is admissible if directed to subjects beyond the average lay person's knowledge. Here, Plaintiff avers that Professor Nash can contribute helpful testimony to the court concerning: (1) long-standing Navy policy; (2) custom in the trade; (3) the proper use of government contract Changes clause; (4) Navy discretion or mandate to include Patent Rights clause under the regulations; (5) interpretation of ASPR (Armed Services Procurement Regulations) § 7-301 terms "fixed price research and development contract" and "modifications not affecting new procurement"; and (6) analysis of the parties' contemporaneous actions. According to Plaintiff, Professor Nash is testifying as to the same type of evidence offered in the *Christian*, *Amoroso*, and *IBI* cases. Plaintiff contends that Professor Nash's testimony is relevant, highly reliable, and within the scope of his expertise. He will testify regarding Navy policies and his determinations based on relevant facts contained in government and contract documents. Given the nexus between these determinations and Professor Nash's expertise, and the relevance of these determinations to the ultimate issue, Plaintiff avers that Professor Nash's testimony will indeed be helpful to the Court. Plaintiff contends in particular that testimony directed to understanding the evidence in light of the ASPR and regarding specialized meanings of contract terms is both helpful and admissible. Lastly, Plaintiff argues that the Court, at this stage, need not consider the weight of the testimony, rather only its admissibility.

    Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule imposes an obligation upon the trial judge to ensure that expert testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert*, 509 U.S. at 589). The subject of an expert's testimony must be grounded in the methods and procedures of science and must be more than subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 589-90. Federal courts have admitted expert testimony in a number of subject areas when the expert could provide information beyond the knowledge of the average lay person. *United States v. Tucker*, 345 F.3d 320 (5th Cir. 2003) (exclusion of expert testimony regarding the meaning of "invest" in the securities industry was improper); *United States v. Long*, 328 F.3d 655, 667 (D.C. Cir. 2003) (allowing expert testimony on modus operandi of certain types of criminal offenders); *United States v. Mansoori*, 304 F.3d 635, 653-54 (7th Cir. 2002) (expert testimony permitted on the history, leadership and operations of street gangs); *United States v. Patterson*, 292 F.3d 615, 628-29 (9th Cir. 2002) (expert testimony by plant physiologist

on development of plant root systems was properly admitted); *United States v. Lopez-Lopez*, 282 F.3d 1, 15 (1st Cir. 2002) (allowing expert testimony on the role of GPS and cellular telephones in marine drug importation schemes); *United States v. Mulder*, 273 F.3d 91, 101-02 (2nd Cir. 2001) (permitting expert testimony on the history, structure and tactics of labor coalitions). The testimony of Professor Nash pertains to government contract law, certainly not a subject within the purview of the average lay person. Although not scientific or technical, the testimony definitely encompasses a specialized area of knowledge. The Court must next determine whether the expert testimony is relevant and reliable.

The court in *Daubert* sets forth a list of factors to be considered in evaluating the validity and relevance of evidence introduced through expert testimony including (1) whether the methodology can and has been tested, (2) whether the methodology is subject to peer review, (3) the potential rate of error, and (4) the general acceptance of the methodology. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006) (citing *Daubert*, 509 U.S. at 593-94). However, the list is not exhaustive and the factors used to determine reliability may vary depending on the type of expert. *Kumho Tire*, 526 U.S. at 141-42; *see also* Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments, reprinted in Thomson/West, Federal Judicial Procedure and Rules at 431-32 (2005). Here, where the expert is not planning to testify on scientific or technical issues, but rather on government contract law, the Court will need to consider factors other than the *Daubert* factors to evaluate the admissibility of the testimony.

In general, federal courts have found expert testimony on issues of law, either giving a legal conclusion or discussing the legal implications of evidence, to be inadmissible. *See Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999); *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993); *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *United States v. Jungles*, 903 F.2d 468, 477 (7th Cir. 1990). Although Fed. R. Evid. 704 was amended so as not to preclude expert testimony on the ultimate issue,[9] the amendment was not intended to allow an expert to advise the court on what outcome to reach. Fed. R. Evid. 704, Advisory Committee Notes, 1972 Proposed Rules, reprinted in Thomson/West, Federal Judicial Procedure and Rules at 436 (2005). While patent law experts have occasionally been used in bench trials to inform the judge on the intricacies of patent law, "[a]n expert's opinion on the ultimate legal issue is neither required nor indeed 'evidence' at all." *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1574 & n.17 (Fed. Cir. 1993) (quoting *Nutrition 21 v. United States*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991). And, the Federal Circuit "has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide." *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997).

---

[9] Fed. R. Evid. 704 states in relevant part: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Government contract experts have been allowed to testify in federal courts regarding the meaning of contract terms when the meaning depends on trade practice. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); *WH Smith Hotel Servs, Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (no error in admitting expert testimony regarding customary and usual meaning of rent provisions in the commercial real estate industry); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (expert testimony admissible to interpret accounting provisions in light of specialized usage and meaning in the oil and gas industry); *Soo Line R.R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1375 (8th Cir. 1977) (expert testimony properly admitted to interpret complex technical construction specifications based on building practices in the railroad trade); *cf. TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329,1340 (Fed. Cir. 2006) (declining to admit expert testimony which did not assist in interpreting a term of art).  The reason to allow such testimony is that extrinsic evidence of trade practice and custom may "illuminate the context for the parties' contract negotiations and agreements," *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999), when a contract term has a industry meaning which was omitted from the contract or which differs from its ordinary meaning. *Hunt Constr. Group, Inc. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002); *Jowett, Inc. v. United States*, 234 F.3d 1365, 1369 (Fed. Cir. 2000). In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language. *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549-50 (6th Cir. 1981); *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977); *Loeb v. Hammond*, 407 F.2d 779,781 (7th Cir. 1969); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 364-65 (D. Del. 2006); *Landmark Builders, Inc. v. Cottages of Anderson*, LP, IP 01-C-1592-C-M/S, 2003 WL 21508118, at *2-3 (S.D. Ind. May 20, 2003); *United States ex rel. Mossey v. PaL-Tech, Inc.*, 231 F. Supp. 2d 94, 98-99 (D.D.C. 2002); *Breezy Point Coop., Inc. v. Cigna Prop. & Cas. Co.*, 868 F. Supp. 33, 36 (E.D.N.Y. 1994).

Whereas, in a jury trial, expert testimony on the law may be excluded in part to prevent jury confusion, the primary reason for exclusion of such testimony in a bench trial is that it invades the province of the court and is not helpful. *Marx*, 550 F.2d at 509-10; *Loeb*, 407 F.2d at 781; *Cryovac*, 430 F. Supp. 2d at 362-63; *Landmark Builders*, 2003 WL 21508118, at *2; *Breezy Point Coop.*, 868 F. Supp. at 36.  The discretion of the court to exclude expert testimony that is unhelpful is supported by the Federal Rules of Evidence:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403; *see Cryovac*, 430 F. Supp. 2d at 362-63; *Breezy Point Coop.*, 868 F. Supp. at 36.

11

Professor Nash is a Professor Emeritus of Law at George Washington University. He founded the University's Government Contracts Program. He actively consults for government agencies, private corporations and law firms on government contract matters and is a widely-published author on government contracts, including textbooks used in law schools across the nation. Given his impressive credentials, the Court recognizes that Professor Nash is well-qualified to testify on government contract matters. In fact, the Court of Federal Claims even recognized his contribution to government contract law by bestowing on him its "Golden Eagle" Award in 2005. Nevertheless, the substance of Professor Nash's testimony consists of his legal conclusions based on the evidence of record. Specifically, he testifies as to whether inclusion of the Patent Rights clause was discretionary or mandatory based on the procurement regulations, whether Mod. 4 was issued under the Changes clause, whether Mod. 4 transformed the contract into a research and development contract, whether the parties' actions during contract performance support incorporation of the Patent Rights clause into the contract, and whether the *Christian* doctrine applies so as to import the Patent Rights clause into the contract as a matter of law. Professor Nash's testimony is not directed to interpretation of contract terms based on trade practice or usage, nor does the expert report suggest that there are any contract terms with specialized meaning. To the extent that Professor Nash's testimony touches on whether the failure to include the Patent Rights clause was in accordance with long-established Navy policy, the expert report offers no evidence to support his conclusions and the Court does not find Professor Nash to be particularly well-suited to testify regarding Navy policy.[10] In essence, the Court finds Professor Nash's testimony to serve the sole purpose of advising the Court on how to interpret the ASPR and the contract provisions and whether to apply the *Christian* doctrine. Such legal conclusions are the province of the Court. Expert testimony is an improper mechanism for offering legal arguments to the Court. Plaintiff's counsel can make each of the arguments proffered by Professor Nash during the trial. It would be unfair to Defendant for the Court to award Plaintiff's legal arguments the elevated stamp of "expert." *See Marx*, 550 F.2d at 510 ([A]dmission of . . . testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case."); *Breezy Point Coop.*, 868 F. Supp. at 36 (The expert, "however qualified as an attorney, is not qualified to compete with the judge.") (citation omitted). Accordingly, the Court deems it proper to exclude the testimony of Professor Nash.[11]

---

[10] According to the expert report, his only experience working for the Navy was from 1953 to 1959, well before the contract in dispute.

[11] Defendant also challenges several of the legal conclusions reached by Professor Nash as improper and cites *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996), for the notion that the trial court should exercise its gatekeeper authority to exclude expert witnesses who proffer testimony comprising incorrect law. The Court, however, cannot evaluate the correctness of Professor Nash's legal conclusions without getting to the heart of the license defense. There is no need to do so now for the Court finds the testimony of Professor Nash to be inadmissible on its face. It is wholly inappropriate for legal arguments to be presented to the Court in the form of expert testimony.

**III.    Conclusion**

Defendant's Motion to Preclude the Testimony of Professor Nash is GRANTED.

  s/ Edward J. Damich  
EDWARD J. DAMICH  
Chief Judge
