# In the United States Court of Federal Claims

No. 92-580C
(Filed Under Seal: April 18, 2007)
(Reissued for Publication: June 18, 2007)[1]

*****************************************
| | |
|---|---|
| **SPARTON CORPORATION,** | Requests for production of |
| | documents; requests for admission; |
| Plaintiff, | RCFC 34; RCFC 36; timeliness; |
| | fact discovery vs. expert discovery; |
| v. | prior production of documents; |
| | requests for admission shall be |
| | separately set forth; unduly |
| **THE UNITED STATES,** | burdensome; 28 U.S.C. section 1498; |
| | patent infringement; sonobuoys |
| Defendant. | |
*****************************************

*Steven Kreiss*, of Washington, D.C., for Plaintiff.

*Gary L. Hausken*, with whom were *John Fargo*, Director, and *Peter D. Keisler*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

---

### OPINION AND ORDER

---

**DAMICH**, Chief Judge.

Before the Court is Plaintiff's Motion to Compel Sufficient Answers to Requests for Admission and Production of Documents. Nine months after the close of fact discovery and just prior to the close of expert discovery, Plaintiff filed several requests for production of documents and several requests for admission. When Defendant objected to the requests or did not fully

---

[1] The Court afforded the parties an opportunity to propose redactions in the opinion prior to publication, but no such redactions were proposed. Accordingly the opinion is herein reissued for publication, unsealed.

respond, Plaintiff filed its motion to compel.  For the reasons set forth below, Plaintiff's motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.   Background

Sparton Corporation ("Sparton") filed this complaint, alleging infringement under 28 U.S.C. § 1498 of two patents by the U.S. Department of the Navy.  Comp. ¶ 1-3, 6.  U.S. Patent No. 3,921,120 is directed to a sonobuoy[2] deployment system comprising a float actuated release mechanism and U.S. Patent No. 4,029,233 is directed to a sonobuoy retainer plate.  *Id.* ¶ 4-5. Plaintiff alleges that sonobuoys procured by the government from several contractors, including Magnavox, Hazeltine, Hermes Electronics, North American Rockwell, Sippican, and Raytheon, infringe the patents.  *Id.* ¶ 7.

Fact discovery closed in this case on January 3, 2006.  Just prior to the close of expert discovery, on September 19, 2006, Plaintiff served Defendant several requests for production of documents and several requests for admission.  The relevant requests for production of documents are Request for Production Nos. ("RFPs") 5003, 5006, and 5007, which request the following documents:

> RFP 5003:
> All documents, other than those previously produced, relating to Magnavox'[s] AN/SSQ-53B sonobuoy, including but not limited to (a) said sonobuoy's inability to satisfy the Navy specification for that sonobuoy, (b) said sonobuoy's inability to perform satisfactorily at a 1000 foot depth, (c) Magnavox'[s] request to obtain a waiver from the Navy because said sonobuoy could not satisfy the Navy specification for said sonobuoy, (d) Magnavox'[s] obtention [sic] of a waiver from the Navy due to the performance of said sonobuoy, (e) correspondence relating to the performance of said sonobuoy, and (f) Magnavox correspondence relating to the performance of said sonobuoy.

> RFP 5006:
> All documents showing a Navy policy to utilize the changes clause in its fixed price supply contracts to obtain development work from its contractor without including in said contracts, or need to include in said contracts, a patent rights clause granting the government a royalty free license to utilize inventions conceived or first actually reduced to practice in the performance of said contracts.

---

[2] A sonobuoy is a sonar device used to detect underwater objects such as submarines.

RFP 5007:
All documents showing the Navy appropriations for the purchase of production sonobuoys and for the separate purchase of research and development work regarding sonobuoys in the period January 1, 1965 to January 1, 1994.

App. to Pl.'s Mot. to Compel (Pl.'s App.), ex. B, at 5-6, 8 (brackets in original).

The relevant requests for admission are Requests for Admission Nos. ("RFAs") 2001-2006 and 2008-2009, which state as follows:

RFA 2001:
Admit each sentence in Sparton Corporations's Statement of Relevant Facts 1-27 contained on pages 30 through 45 of Sparton's Pretrial Submissions.[3]

RFA 2002:
Admit each sentence in Sparton Corporations's Statement of Relevant Facts 30 contained on page 48 of Sparton's Pretrial Submissions, bearing in mind that the word "immediately" in the first sentence (second line) is temporally defined as April 1972.

RFA 2003:
Admit each sentence in Sparton Corporation's Statement of Relevant Facts 31 through 53 contained on pages 48 through 63 of Sparton's Pretrial Submissions.

RFA 2004:
Admit with regard to each accused device identified in the two accounting base charts included as exhibit 24 to Appendix I To Pretrial Submissions Volume II of Sparton's Pretrial Submissions, that at least one of each such device was used by or for defendant in each of the following time periods:

(a).    October 8, 1981 to August 24, 1992;
(b).    October 8, 1981 to August 25, 1992;
(c).    October 8, 1981 to June 14, 1994;
(d).    October 8, 1981 to November 18, 1992;
(e).    August 25, 1980 to June 14, 1994;
(f).    August 25, 1980 to November 18, 1992.

_____

[3] Plaintiff's Pretrial Submissions, which are undated, are provided by Plaintiff at Pl.'s App., ex. F.

RFA 2005:
Admit, with regard to each accused device and for each contract identified in the two accounting base charts included as exhibit 24 to Appendix I to Pretrial Submissions Volume II of Sparton's Pretrial Submissions, that the period of deliveries for each said accused device and for each said contract in said charts is correct.

RFA 2006:
Admit, with regard to each accused device and for each contract identified in the two accounting base charts included as exhibit 24 to Appendix I to Pretrial Submissions Volume II of Sparton's Pretrial Submissions, that the contract value for each contract specified in said charts is correct.

RFA 2008:
Admit, with regard to each device and for each contract identified in the three page analysis showing profit requested by Sparton under fifteen Sparton contract bids identified in the first three pages of exhibit 26 to Appendix I to Pretrial Submissions Volume II of Sparton's Pretrial Submissions, that the selling price, number of quoted sonobuoys, fee, cost of money, total cost through G&A and requested profit percentages for each said contract and/or bid specified in said analysis is correct.

RFA 2009:
Admit that the Magnavox SSQ-53B sonobuoy was not proposed by Magnavox or the Navy as an alternative to the accused sonobuoys manufactured for the Navy by the contractors identified in the two accounting base charts included as Exhibit 24 to Appendix I to Pretiral Submissions Volume II of Sparton's Pretrial Submissions.

Pl.'s App., ex. C, at 4, 6, 8, 10, 12, 13, 16, 18.

In response to each of the requests for production of documents, Defendant objected on the basis that the requests were submitted after the close of fact discovery and did not relate to expert discovery. Pl.'s App., ex. B, at 6, 8-9. Defendant further objected to RFP 5003 on the grounds that responsive documents had already been made available for inspection and copying "at Crane or within the records of the Department of Navy office known as 'PMA-264,' which were copied and produced early in this case." *Id.* at 6. In response to RFP 5006 and RFP 5007, Defendant stated that no documents responsive to the request are known to exist, but that all documents relating to Navy policy regarding sonobuoy procurement had been previously made available for inspection and copying. *Id.* at 8-9.

4

Defendant also objected to all of the requests for admission on several grounds.  First, Defendant stated that the requests duplicate requests for admission which were served by Plaintiff on January 3, 2006, and which were fully responded to by Defendant.  Second, Defendant objected because the requests failed to comply with RCFC 36(a).  Third, Defendant objected because the requests were unduly burdensome in that they failed to identify separately each of the matters discussed in the numerous paragraphs and pages and/or in that they failed to provide citations for any of the statements made.  Finally, Defendant objected because the requests were submitted after the close of fact discovery and did not relate to expert discovery.[4]

Plantiff's motion to compel production of documents and to compel answers to its requests for admission followed.

## II.   Analysis

### A.      Requests for Production of Documents

In its motion, Plaintiff contends that Defendant's responses to RFPs 5003, 5006, and 5007 were deficient pursuant to Rule 34(b) of the Rules of the U.S. Court of Federal Claims

---

[4] In addition to the general objections, Defendant specifically objected to RFA 2002 due to Plaintiff's definition of "immediately" as "April 1972,"  RFAs 2005-2006 because the term "accused device" was ambiguous, and RFA 2009 because the request was confusing.

("RCFC").[5]  Therefore, Plaintiff asks the Court to compel Defendant to produce the requested documents.

In response to Plaintiff's motion, Defendant advances the same arguments that it made in objecting to Plaintiff's requests for production of documents, namely, that the requests were untimely and that documents responsive to the requests had previously been made available by Defendant.

### 1.      Timeliness

Defendant argues that Plaintiff improperly served RFP 5003 during expert discovery and well after the close of fact discovery.  Therefore, Defendant contends that the request for production was untimely.  Defendant notes that in 1998 Plaintiff took the deposition of Chuck Logar, an employee of Magnavox, and questioned Mr. Logar about the AN/SSQ-53B sonobuoy.  App. to Def.'s Resp. to Pl.'s Mot. to Compel ("Def.'s App."), ex. 7, at A53-54.  Defendant further notes that Plaintiff's answer to Defendant's Interrogatory No. 5 indicated that Plaintiff did not consider the AN/SSQ-53B sonobuoy to infringe the patents in suit.  *Id*., ex. 8, at A60.  Therefore, Defendant contends that Plaintiff had every reason to anticipate that the Magnavox AN/SSQ-53B sonobuoy would be used as evidence of a non-infringing alternative by Defendant and had ample opportunity to conduct fact discovery on the AN/SSQ-53B sonobuoy.  According to Defendant, the purpose of expert discovery is to insure the full disclosure of opinions, bases for those opinions and the data or information that the expert relied on to support the opinions.  Here, Defendant asserts, Plaintiff is not seeking the opinions of Defendant's expert, Daniel M.

---

[5] RCFC 34(b) sets forth the procedure to be followed for requests for production of documents.  The rule provides in relevant part:

> The request shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity.  The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts. . . .  The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. . . . The party submitting the request may move for an order under RCFC 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested.

RCFC 34 is identical to Fed. R. Civ. P. 34 and interpretation of Fed. R. Civ. P. 34 informs the Court's analysis.  *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

McGavock, or evidence forming the basis of his opinions, but rather evidence to rebut his opinions.  Defendant avers that the proper time to seek such evidence was during fact discovery.

Plaintiff contends that RFP 5003 does indeed relate to expert discovery in that Mr. McGavock referred to the Magnavox AN/SSQ-53B sonobuoy as a non-infringing alternative in his calculation of lost profits and reasonable royalty in his May 15, 2006, expert report.  Pl.'s App., ex. D, at 24, 37, 55-57.  According to Plaintiff, Defendant did not put Plaintiff on notice of its intent to use Magnavox AN/SSQ-53B as a non-infringing alternative until the McGavock expert report was served, well after the close of fact discovery.  Plaintiff asserts that it should not be required to guess as to Defendant's legal positions.

The distinction between expert discovery and fact discovery, as set forth in a scheduling order, has been previously discussed by this Court:

> The order differentiated between "fact discovery" and "expert discovery."  The purpose of this distinction was to allow the parties to investigate, completely, all "facts" before the parties proceeded to expert discovery.  During expert discovery, the parties would have an opportunity to learn about the experts' opinions, which the Court perceived as different from the facts of the case.  If the experts know (or should know) all the facts before setting out their opinions in expert reports, then the opinions should not change because of the discovery of "new" facts.

*Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 583, 584 (2000).  In other words, expert opinions are to be distinguished from the facts upon which they rely.  Requests for production of documents are provided for in RCFC 34(a).  In contrast, expert discovery is provided for in RCFC 26(a)(2)(B), (b)(4)(A)-(B).  In interpreting the interplay between the two rules, the Court finds the analysis in *Arkansas Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426, 429-30 (2006) to be sound.  Therein, the court considered whether the government's request to enter upon land under RCFC 34(a), in order to test and measure conditions using piezometers, constituted fact discovery or expert discovery—and therefore, whether the request was untimely after the close of fact discovery.  The court explained:

> The **fact discovery** addressed by RCFC 34(a) differs from the **expert discovery** covered by RCFC 26, which provides that **expert discovery** will be carried out through mandatory disclosure of the reports of experts expected to testify at trial, and through interrogatories or depositions. . . . In this case, the government's experts might ultimately render opinions based on the data obtained from the piezometers, and those opinions would be subject to the rules relating to expert discovery.  *See* RCFC 26(a)(2)(B), (b)(4)(A)-(B).  The unevaluated data from the piezometers, however, would not

7

be expert "opinions to be expressed and the basis and reasons therefor," RCFC 26(a)(2)(B), even though the results of testing by the piezometers might well become "data or other information considered by the [expert] in forming the opinions," *id.*, or "facts known . . . by an expert." RCFC 26(b)(4)(B).

*Arkansas Game*, 74 Fed. Cl. at 429-30 (emphasis in original).

In RFP 5003, Plaintiff seeks documents relating to Magnavox's AN/SSQ-53B sonobuoy. Although such documents may contain factual information upon which expert opinions may be rendered, the documents themselves do not constitute expert discovery. They are not "opinions to be expressed and the basis and reasons therefor," even though the documents might well become information considered by an expert in forming his opinion or information known by an expert. Since RFP 5003 was served well after the close of fact discovery, the Court finds that it was untimely.

Plaintiff contends that RFP 5006 and RFP 5007 relate to Defendant's license defense which was not raised until June 2006, after the close of fact discovery, when Defendant served its amended answer to Plaintiff's Interrogatory No. 1. Plaintiff asserts that Defendant's license theory could not be gleaned from its original answer to Interrogatory No. 1. According to Plaintiff, RFP 5006 and RFP 5007 are relevant to expert discovery because Defendant may present a license defense in its pretrial brief and Plaintiff's expert, Professor Nash, will need to respond. Plaintiff asserts that the information sought in the request is necessary for Professor Nash to formulate his opinion in response to Defendant's license defense.

Defendant counters that Plaintiff is not pursuing discovery of Defendant's expert, but rather is pursuing discovery in order for Plaintiff's expert, Professor Nash, to formulate his opinion. Defendant contends that the information sought by Plaintiff in RFP 5006 relates to factual information, i.e., an alleged Navy policy to use the Changes clause in its contracts. Similarly, the information sought in RFP 5007 is also factual information, i.e., budget information. Defendant further avers that the amendment to its answer to Interrogatory No. 1 did not change the theory behind its license defense, which was presented in its original answer before the close of fact discovery. In both the original and in the amended answer, Defendant relied on the *Christian* doctrine as the basis for its license defense.[6] Therefore, Defendant contends that Plaintiff was fully aware of Defendant's theory and had time to request the documents set forth in RFP 5006 and RFP 5007 well before the close of fact discovery. Consequently, Defendant asserts that Plaintiff's discovery requests were untimely.

---

[6] The *Christian* doctrine stems from *G.L. Christian & Assocs. v. United States*, 312 F.2d 418 (Ct. Cl. 1963), *aff'd on reh'g*, 320 F.2d 345, which provides that certain clauses that are required to be included in, but are omitted from, government contracts are nonetheless read into the contract as if they were in fact included.

Here, again, the Court finds that the requests for production of documents constitute fact discovery and not expert discovery.  RFP 5006 seeks documents showing a Navy policy to utilize the Changes clause in its fixed price supply contract.  RFP 5007 seeks documents showing Navy appropriations for sonobuoys.  Navy policy documents and appropriation documents are not "opinions to be expressed and the basis and reasons therefor," even if such documents may at some later date be considered by an expert in rendering his opinion.  Accordingly, the Court concludes that Plaintiff's requests for production of documents were untimely.

## 2.      Previous Production of Documents

Defendant argues that documents responsive to RFP 5003 had already been made available for inspection by Defendant.  Specifically, Defendant contends that requests served as part of Plaintiff's Third Request for Production of Documents and Things (RFPs 69 and 70) sought copies of all sonobuoy contracts entered into between the Navy and Magnavox during the period from November 18, 1975 to June 14, 1994, which would encompass contracts covering the Magnavox AN/SSQ-53B sonobuoy.  Def.'s App., ex. 1, at A6, A10.  In response to those requests, Defendant avers that it made documents available for inspection and copying.[7]  Defendant contends that Plaintiff's current and prior counsel made numerous trips to the Naval Air Warfare Center in Indianapolis, the Naval Surface Warfare Center, Crane Division, and the Naval office PMA-264 to inspect documents.  Id., exs. 2-5.  In fact, Defendant notes that during one trip to PMA-264 Plaintiff's counsel specifically requested documents related to the Magnavox AN/SSQ-53B.  Id., ex. 3, at A36.  Defendant argues that, pursuant to RCFC 34(b), the responding party may either label the documents to correspond to the request or produce the documents as they are kept in the usual course of business.  Here, Defendant chose the latter.  Therefore, Defendant contends, the burden was on Plaintiff to screen through the documents to locate those documents that were responsive to its request.

Plaintiff replies that the documents requested in RFP 5003 relate to Magnavox AN/SSQ-53B sonobuoy performance, Navy waivers for such performance, and Magnavox correspondence related thereto, whereas documents previously produced by Defendant pertained only to designs and contracts for the Magnavox AN/SSQ-53B sonobuoy.  Plaintiff further asserts that documents responsive to the instant document request were not specifically segregated by Defendant from other documents made available for inspection and copying at the Navy Crane facility and at the Navy PMA 264 office.[8]

---

[7] Although Defendant objected to Requests for Production Nos. 69 and 70 as being duplicative of Requests for Production Nos. 67 and 68, Defendant agreed to make documents responsive to Nos. 67 and 68 available for inspection and copying.  Id., ex. 1, at A21, A27.

[8] Plaintiff also contends that, during prior production of documents, Defendant improperly withheld two documents (Bates Nos. 000151 and 010975) under the joint defense (or common interest) privilege and the attorney work product doctrine and Plaintiff urges the Court to make an *in camera* inspection of the two documents.  The Court is stunned that Plaintiff

RCFC 34(b) provides: "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." This sentence was added to the federal rule in 1980 to eliminate reported abuses by which responding parties deliberately mixed critical documents with others in the hope of obscuring their significance. Fed. R. Civ. P. 34, Advisory Committee Notes, 1980 Amendment, reprinted in Thomson/West, Federal Judicial Procedure and Rules at 189 (2005); *see* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2213, at 429 (2d ed. 1994). The amendment has been interpreted by federal courts to require responding parties to provide documents in some kind of organized, indexed fashion rather than as a mass of undifferentiated, unlabeled documents. *See In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 362-63 (N.D. Ill. 2005); *Doe v. District of Columbia*, 231 F.R.D. 27, 35-36 (D.D.C. 2005); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610-11 (D. Neb. 2001); *Stiller v. Arnold*, 167 F.R.D. 68, 70-71 (N.D. Ind. 1996); *T. N. Taube Corp. v. Marine Midland Mortgage Corp.*, 136 F.R.D. 449, 456 (W.D.N.C. 1991). In *Renda Marine, Inc. v. United States*, the court explained the import of the amendment. 58 Fed. Cl. 57, 64 (2003). While acknowledging that a split in authority exists regarding whether or not the amendment gives the producing party an absolute privilege to produce documents either according to the categories in the request or as kept in the usual course of business, the court found the pivotal consideration for compliance with RCFC 34(b) to be whether the documents are so disorganized that it would be unreasonable for the requesting party to review the documents. *Id*.

Plaintiff does not complain that Defendant did not produce the documents in an organized fashion, but rather that they were not organized according to Plaintiff's requests, in particular in response to RFP 5003. However, RCFC 34(b) makes no such requirement. Therefore, based on how Defendant organized its earlier responses to document requests, the Court does not find them to be deficient. Still, the Court cannot conclusively determine that all documents responsive to RFP 5003 were contained within the earlier documents produced by Defendant. Although Defendant apparently made available to Plaintiff contracts between the Navy and Magnavox pertaining to the AN/SSQ-53B sonobuoy, it is not clear that all documents responsive to RFP 5003 were produced. The Court need not resolve whether or not Defendant provided all

---

would challenge an assertion of privilege more than eight years after the fact. The proper time to have objected to the assertion of privilege was when Plaintiff received Defendant's privilege log or, if not then, certainly before the close of fact discovery. Plaintiff's challenge to Defendant's claim of privilege is plainly out of time. Further, the Court finds no basis for questioning Defendant's assertion of the joint defense privilege. The two documents clearly pertained to the instant litigation, not to a business purpose, and constituted communications between counsel for Magnavox and for Defendant. There is no requirement that Magnavox and Defendant have an indemnity agreement, as urged by Plaintiff. All that is required is that they share a common legal interest. *See In re Regents of Univ. of Cal.*, 101 F.3d 1386 1390 (Fed. Cir. 1996); *Capital Props., Inc. v. United States*, 49 Fed. Cl. 607, 613 (2001); *B.E. Meyers & Co. v. United States*, 41 Fed. Cl. 729, 732-33 (1998).

documents responsive to RFP 5003 during earlier production of documents, however, because the Court finds that RFP 5003 was untimely for the reasons discussed above.

Plaintiff asserts that no previous document requests were directed to the documents requested in RFP 5006 and that no search was made by Defendant to ascertain whether documents responsive to this request existed.  Defendant contends that it previously made procurement records available for inspection and copying on numerous occasions and that Plaintiff bore the burden of screening the documents to identify those documents relevant to its case.  Def.'s App., exs. 2-5.  In fact, Defendant contends that the March 15, 1999, declaration by Plaintiff's expert, Ralph C. Nash, which describes an alleged Navy practice of using engineering change proposals ("ECPs") to improve the performance of sonobuoys, cites several documents which had earlier been produced by Defendant.  *Id*., exs. 9-11.  Lastly, Defendant identifies two other documents produced by Defendant which discuss a Navy policy regarding procurement of sonobuoys.  *Id*., exs. 12-13.  Hence, Defendant avers that all documents responsive to Request for Production No. 5006 had previously been made available to Plaintiff.  The Court finds Defendant's arguments compelling.  Plaintiff fails to show that documents responsive to RFP 5006 are distinct from those which were previously produced by Defendant.  There is simply no requirement for Defendant to reproduce documents that had already been produced, nor to specifically identify documents responsive to RFP 5006 that were included in responses to earlier requests.

Finally, Plaintiff asserts that no previous document requests were directed to the documents requested in RFP 5007.  Plaintiff speculates that the Navy receives separate appropriations for purchase of sonobuoys and for purchase of sonobuoy research and development work and, therefore, Plaintiff contends that documents responsive to RFP 5007 are likely to exist.  Defendant counters that Plaintiff's argument is based on a flawed assumption that procurement of production sonobuoys and sonobuoy research and development are separate and distinct government appropriations.  Defendant cites the Department of Defense Appropriations Act of 1991 to demonstrate that procurement of sonobuoys has traditionally not been the subject of a line item appropriation.  As a result, Defendant contends that its answer to Request for Production No. 5007 was accurate since the government does not appropriate a fixed amount specifically for sonobuoys, either for procurement or for research and development.  To the extent that Plaintiff sought all documents relating to procurement of sonobuoys, Defendant asserts that such documents have already been made available to Plaintiff for inspection and copying.  Moreover, Defendant argues that all government appropriations are part of the public record and can be obtained via print media or the internet.  The Court finds Defendant's arguments compelling.  Plaintiff fails to establish that there are separate appropriations for Navy purchase of sonobuoys and sonobuoy research and development, and the Appropriations Act of 1991 suggests otherwise.  Furthermore, Plaintiff fails to convince the Court that there are documents responsive to RFP 5007 that were not produced by Defendant in response to prior document requests.

The Court concludes that Defendant has fully responded to RFP 5006 and RFP 5007 by virtue of its earlier responses to document requests. To the extent that Defendant may not have fully responded to RFP 5003, the Court will not compel Defendant to respond because the request for production of documents was filed long after the close of fact discovery and was therefore untimely. Because the Court finds that RFPs 5003, 5006 and 5007 were improperly served well after the close of fact discovery and documents responsive to the requests had largely, if not entirely, already been produced, the Court denies Plaintiff's motion to compel production of documents.

### B.      Requests for Admission

In its motion to compel, Plaintiff also contends that Defendant's objections to the requests for admission are baseless and, therefore, Plaintiff urges the Court to order Defendant to answer the requests for admission. In response to Plaintiff's motion, Defendant sets forth essentially the same arguments that it made in objecting to the requests for admission. Specifically, Defendant asserts that the requests fail to comply with RCFC 36(a), that they are unduly burdensome, and that they are untimely.

### 1.      RCFC 36(a)

Defendant contends that the requests for admission fail to comply with RCFC 36(a) in that they do not separately set forth each matter for which an admission is requested. According to Defendant, RFA 2001 requests Defendant to admit each sentence contained on fifteen pages, which constitutes a minimum of seventy-five different matters. Similarly, RFA No. 2002 requests Defendant to admit each of five sentences and RFA No. 2003 requests Defendant to admit each sentence contained on sixteen pages. RFA Nos. 2004-2006 and 2009 request admissions regarding multiple data points for sixty-two sonobuoy contracts. And RFA No. 2008 requests admissions regarding ninety data points relating to fifteen bids. Hence, Defendant contends that the requests for admission fail to comply with RCFC 36(a), which requires that "[e]ach matter of which an admission is requested shall be separately set forth." RCFC 36(a).[9] Defendant asserts that it cannot possibly respond to each of the requests with a simple "admit" or "deny."

Plaintiff counters that the number of matters or paragraphs in a request for admission is irrelevant. Plaintiff contends that RFAs 2001-2003 are substantially similar to the Proposed Stipulations offered by Defendant on July 26, 2006, Pl.'s App., ex. G, and the stipulated facts attached to the expert report of Defendant's expert, Alan Hudson. *Id.*, ex. H. Plaintiff points to specific paragraphs in Sparton's Pretrial Submission and in Hudson's expert report to support

---

[9] RCFC 36 is identical to Fed. R. Civ. P. 36 and interpretation of Fed. R. Civ. P. 36 informs the Court's analysis. *See supra* note 4.

this contention.[10]  Further, Plaintiff argues that paragraph 51 of the Pretrial Submission identifies the same exhibits depicting the accused devices to which Hudson offered his opinion. Accordingly, Plaintiff urges that because the requests for admission are relevant, they are also proper.  For similar reasons, Plaintiff contends that Defendant's objections to RFAs 2004-2006, 2008 and 2009 are meritless.  As long as a request for admission can be answered with a simple admit or deny, or, in certain instances, with a qualification, Plaintiff avers that it is proper.  For example, Plaintiff contends that RFA 2009 can be answered by asking Magnavox whether it proposed the AN/SSQ-53B sonobuoy design for any of the other sonobuoy contracts.

The requirement that each matter be separately set forth in a request for admission was added to Rule 36 during the 1970 amendment, but was already well established as a requirement by prior case law.  Wright et al. § 2258, at 546 n.8.  Federal courts have long required that requests for admission be simple, direct, and concise so that they can be admitted or denied with little or no explanation or qualification.  *United Coal Co. v. Powell Constr. Co.*, 839 F.2d 958, 967-68 (3d Cir. 1988); *Henry v. Champlains Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003); *Fulhorst v. United Techs. Automotive, Inc.*, No. CIV. A. 96-577-JJF, 1997 WL 873548, at *1 (D. Del. Nov. 17, 1997); *Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992); *United States v. Chevron USA, Inc.*, No. CIV. A. No. 88-6681, 1989 WL 100927 (E.D. Pa. Aug. 30, 1989); *Havenfield Corp. v. H&R Block, Inc.*, 67 F.R.D. 93, 96 (W.D. Mo. 1973); *SEC v. Micro-Moisture Controls, Inc.*, 21 F.R.D. 164, 165 (S.D.N.Y. 1957); *Baldwin v. Hartford Accident & Indem. Co.*, 15 F.R.D. 84, 85 (D. Neb. 1953) (finding that request for admission expressed in approximately 560 words covering operations over a period of about ten years was improper). Accordingly, incorporation by reference of another document in a request for admission has generally been held improper.  *See, e.g., SEC*, 21 F.R.D. at 166 (holding that a request to admit which referenced multi-page affidavits and stock purchase transactions was improper); *United States v. Watchmakers of Switzerland Info. Ctr., Inc.*, 25 F.R.D. 197, 200 (S.D.N.Y. 1959) (stating that objections to requests for admission on the grounds that they incorporate by reference other documents are generally sustained, although limited incorporation by reference may be allowed under exceptional circumstances).

The Court agrees with Defendant that Plaintiff's requests for admission are much too complicated to answer with a simple admit or deny.  Plaintiff incorporates by reference its voluminous Pretrial Submission and asks Defendant to admit to large sections of the document. Because the referenced sections of the document contain numerous different facts, Defendant cannot possibly be expected to respond with a simple admit or deny, without explanation or qualification.  The fact that similar information may be contained in Defendant's proposed stipulations does not obviate Plaintiff's failure to comply with the rules for requests for admission.  Moreover, the relevancy of Plaintiff's requests for admission is immaterial to

---

[10] Although Plaintiff also alleges that the McGavock expert report calculated a percent royalty similar to that in paragraphs 48-49 of Sparton's Pretrial Submission, the Court notes that Requests for Admission Nos. 2001-2003 do not refer to paragraphs 48-49, but only to paragraphs 1-27 and 30-53.  Therefore, this argument has no merit.

whether or not the requests are in proper form.  Accordingly, the Court concludes that Plaintiff's requests for admission fail to comply with RCFC 36(a).

### 2.    Unduly Burdensome

To the extent that Plaintiff fails to state each fact separately, Defendant contends that Plaintiff's requests for admission are unduly burdensome in that they require Defendant to parse out facts and separately admit or deny each fact.  Defendant contends that it should not be required to respond to the requests for admission because they are unduly burdensome.

Plaintiff asserts that RFAs 2001-2003 are not unduly burdensome because they are contained on 33 pages, as compared to the 118 pages offered by Defendant in its Proposed Stipulations.  Plaintiff similarly contends that Defendant's objections to RFAs 2004-2006, 2008, and 2009 are meritless.  Plaintiff notes that the party objecting to a request for admission has the burden of persuasion, but here, Plaintiff asserts Defendant has not met that burden.

The Advisory Committee Note to the 1970 amendment to Rule 36(a) suggests the proper avenue to be followed in contesting requests for admission as unduly burdensome:  "[R]equests to admit may be so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome.  If so, the responding party may obtain a protective order under Rule 26(c)."  Fed. R. Civ. P. 36, Advisory Committee Notes, 1970 Amendment, reprinted in Thomson/West, Federal Judicial Procedure and Rules, at 193 (2005).  Here, Defendant did not seek a protective order upon receiving the requests for admission, but instead objected to the requests.[11]  How the issue arrived before the Court, however, has little practical effect on the Court's determination whether or not the requests for admission are unduly burdensome.  Other federal courts have found requests for admission to be unduly burdensome when they are excessive in number, complicated, or ambiguous.  *See, e.g.*, *Gannon v. United States*, No. 03-6626, 2006 WL 2927639, at *1 (E.D. Pa. Oct. 6, 2006); *United States ex rel. Regan v. Medtronic, Inc.*, Nos. 95-1236-MLB, 96-1309-MLB, 2000 WL 1478476, at *5 (D. Kan. July 13, 2000); *Leonard v. Univ. of Del.*, No. 96-360, 1997 WL 158280, at *7 (D. Del. Feb. 20, 1997); *Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204, 205-06 (D. Md. 1985) (finding that requests for admission containing multiple parts or covering multiple issues are unduly burdensome); *Haley v. Harbin*, 933 So.2d 261, 263 (Miss. 2005) (finding that requests for admission that are excessive in number, confusing and ambiguous are unduly burdensome).

Defendant does not object to the overall magnitude of the requests for admission, and hence Plaintiff's comparison to Defendant's proposed stipulations has no moment.  Instead, Defendant objects to Plaintiff's requests for admission because the requests each refer to entire sections of its Pretrial Submissions.  The Court finds that for Defendant to respond to Plaintiff's

---

[11] During the status conference held on September 12, 2006, Defendant specifically proposed that, in the interest of time, it would make objections rather than move for a protective order and the Court consented.

requests will present an unduly burdensome "task of identifying what is in dispute and what is not." To the extent that the requests for admission cover multiple issues and are complex, therefore, the Court concludes that the requests for admission are unduly burdensome.

Defendant further avers that, because Plaintiff fails to provide citations for any of the asserted facts, Defendant is required to determine the source of the information before Defendant can determine its accuracy.[12] On that basis, Defendant contends that the requests for admission are also unduly burdensome. Plaintiff counters, citing 7 James Wm. Moore, Moore's Federal Practice § 36.11[5][a], at 36-31 (3d ed. 2006), that the requesting party need not establish any evidence or authority for an admission. The cited section of Moore's, however, does not address what is required of the requesting party but only what is required of the responding party. Nevertheless, at least one appellate court has recognized that Rule 36 does not require that the source of data in a request for admission be designated. *U. S. ex rel. Seals v. Wiman*, 304 F.2d 53, 63 (5th Cir. 1962), cert. denied, 372 U.S. 915 and 372 U.S. 924 (1963). This Court agrees that the rule makes no such requirement. Accordingly, the Court concludes that the requests for admission are unduly burdensome as a result of their complexity and multiplicity of issues, but not on account of their failure to state sources for the facts contained in the requests.

### 3. Timeliness

Defendant contends that, like the requests for production of documents, each of the requests for admission is untimely because it was served after the close of fact discovery. According to Defendant, the requests seek admission of facts on which Defendant's expert relied and do not seek information regarding the expert opinions themselves. Defendant asserts that, in contrast to its Proposed Stipulations, which were in compliance with this Court's Proposed Trial Preparation Order, Plaintiff's requests for admission were served well after the close of fact discovery, yet seek admissions as to the truth of certain facts, rather than the subject matter of Defendant's expert opinions or the bases for those opinions. Because Plaintiff seeks fact discovery rather than expert discovery, Defendant contends that the requests for admission are improper.

Plaintiff argues, in contrast, that the requested admissions bear directly on subject matter in Defendant's expert reports, either the structure of the accused devices which was addressed in the expert report of Mr. Hudson or contract information contained in the expert report of Mr. McGavock. In particular, Plaintiff contends that RFAs 2001-2003 relate to the expert report of

---

[12] Defendant notes that the failure to provide citations is in stark contrast to the requirements for proposed findings of fact set forth in the Court's Proposed Trial Preparation Order, which requires each party to identify the basis for each asserted fact. The requirements of the Court's Proposed Trial Preparation Order are, however, irrelevant to the requirements of RCFC 36.

Mr. Hudson, i.e., the facts upon which he relied, and are therefore timely.[13]  Plaintiff further contends that RFA 2004 relates directly to Mr. McGavock's expert report and the period over which he calculated the royalty base.  Therefore, Plaintiff contends that RFA 2004 has been timely served.  In addition, Plaintiff contends that RFAs 2005-2006 relate to Exhibit 24 of Plaintiff's Pretrial Submissions, containing the time period for delivery and contract value for the accused devices, which was relied upon by Mr. McGavock in his expert report.  Plaintiff argues that RFA 2008 relates to Plaintiff's bids to the Navy for procurement of sonobuoys, including contract values, quantities and profit percentages.  And Plaintiff contends that RFA 2009 also relates to the expert report of Mr. McGavock, which refers to the SSQ-53B sonobuoy as a non-infringing alternative.  Therefore, Plaintiff asserts that all of the requests for admission were timely served before the close of expert discovery.  Moreover, even if the requests are untimely, Plaintiff contends that the purpose of requests for admission is to establish facts about which there is no real dispute to reduce the expense and time for trial.  Plaintiff urges the Court to compel Defendant to answer the requests for admission to serve that purpose.

The distinction between expert discovery and fact discovery was reviewed above in section II.A.1.  Requests for admission may relate to "the truth of any matters within the scope of RCFC 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact."  RCFC 36(a).[14]  Requests for admission, like other fact discovery methods such as depositions and interrogatories, may be limited in scope or number pursuant to RCFC 26(b)(2).  As acknowledged by Plaintiff, the purpose of requests for admission is to establish facts about which there is no real dispute in order to expedite litigation and save the time and money that would otherwise be spent on unnecessary discovery and proof of facts at trial.  *Printy v. Crochet & Borel Servs.*, 196 F.R.D. 46, 49 (E.D. Tex. 2000); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998); *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 42-43 (S.D.N.Y. 1997); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 123 F.R.D. 97, 102 (D. Del. 1988); *Kershner v. Beloit Corp.*, 106 F.R.D. 498, 499 (D. Me. 1985); Moore et al. § 36.02[1], at 36-7 to -9.  Therefore, requests for admission clearly relate to factual information.  Still, some federal courts have not considered requests for admission to be discovery devices per se and have allowed requests for admission even after the close of fact discovery in order to reap the benefits at trial.  *See*, *e.g.*, *Safeco*, 181 F.R.D. at 445; *Kershner*, 106 F.R.D. at 499; *T. Rowe Price*, 174 F.R.D. at 42; Wright et al.

---

[13] Defendant contends that Mr. Hudson's expert report is irrelevant to the instant dispute about the timeliness of Plaintiff's requests for admission.  According to Defendant, whether Mr. Hudson was advised by Defendant's counsel to rely on certain facts has no bearing on whether Plaintiff's requests for admission were timely and on whether Defendant should be required to answer.

[14] RCFC 26(b)(1) is the general provision governing the scope of discovery.  It provides that discovery may be obtained for any matter relevant to the claim "including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter."

§ 2253, at 524-25 & n.9.   In this case, the requests for admission were served at the end of expert discovery and hence they could not serve to eliminate time and money spent on discovery, but they could streamline the presentation of evidence at trial.

Defendant avers that denying Plaintiff's motion to compel responses to its requests for admission will not impede the progress in this case because the Court requires the parties to discuss proposed stipulations as part of its Proposed Trial Preparation Order.   Plaintiff cites Moore et al. § 36.02[2], at 36-10 & n.6, to argue that anticipated pretrial stipulations should not be relied on as a substitute for requests for admission.   The single case referenced in Moore's to support the proposition advanced by Plaintiff is *United States v. Watchmakers of Switzerland Info. Ctr., Inc.*, 25 F.R.D. 346, 347 (S.D.N.Y. 1960).   In that case, the responding party objected to the requests for admission on several grounds including that the requests could be accomplished more expeditiously at a pre-trial hearing.   The district court overruled all of the objections to the requests for admission and concluded that answering the requests would expedite trial in the case.   In contrast, here, the Court finds that the requests for admission fail to comply with the formal requirements of RCFC 36(a) and are unduly burdensome.   Discovery has closed and the parties are beginning pre-trial preparations.   Consequently, the Court believes that a more reasonable solution is for Plaintiff to recast its requests for admission in proper form as proposed stipulations for trial.

Plaintiff's motion to compel answers to its requests for admission is granted-in-part and denied-in-part.   Plaintiff's motion to compel answers to its requests for admission in their present form is denied.   Plaintiff may redraft the requests for admission in proper form as proposed stipulations for trial and Defendant will be required to answer the proposed stipulations.

## III.   Conclusion

Plaintiff's Motion to Compel Sufficient Answers to Requests for Admission and Production of Documents is GRANTED-IN-PART and DENIED-IN-PART.   Plaintiff's motion to compel answers to its requests for admission is granted to the extent that the Court will allow Plaintiff to recast its requests for admission in proper form as proposed stipulations and require Defendant to answer the proposed stipulations.   Plaintiff's motion to compel production of documents is denied.

On or before **May 4, 2007**, Plaintiff shall recast its requests for admission in proper form and serve them on Defendant as proposed stipulations.

On or before **May 18, 2007**, Defendant shall respond to Plaintiff's proposed stipulations. The parties shall then discuss both the stipulations proposed by Defendant and those proposed by Plaintiff.

On or before **June 1, 2007**, the parties shall file a Joint Status Report, discussing in detail their progress with respect to:  agreement on stipulations for trial; declassification of documents

or portions thereof; and removal of proprietary legends.  The Parties shall attach a draft of the Proposed Trial Preparation Order (available at http://www.uscfc.uscourts.gov/Biosnew.htm) with the dates completed.

 s/ Edward J. Damich

EDWARD J. DAMICH

Chief Judge