# Appendix A

# Government Patent Policy, 1969

## Memorandum of October 10, 1963

### [GOVERNMENT PATENT POLICY]

*Memorandum for the Heads of Executive Departments and Agencies*

Over the years, through Executive and Legislative actions, a variety of practices has developed within the Executive Branch affecting the disposition of rights to inventions made under contracts with outside organizations. It is not feasible to have complete uniformity of practice throughout the Government in view of the differing missions and statutory responsibilities of the several departments and agencies engaged in research and development. Nevertheless, there is need for greater consistency in agency practices in order to further the governmental and public interests in promoting the utilization of federally financed inventions and to avoid difficulties caused by different approaches by the agencies when dealing with the same class of organizations in comparable patent situations.

From the extensive and fruitful national discussions of government patent practices, significant common ground has come into view. First, a single presumption of ownership does not provide a satisfactory basis for government-wide policy on the allocation of rights to inventions. Another common ground of understanding is that the Government has a responsibility to foster the fullest exploitation of the inventions for the public benefit.

Attached for your guidance is a statement of government patent policy, which I have approved, identifying common objectives and criteria and setting forth the minimum rights that government agencies should acquire with regard to inventions made under their grants and contracts. This statement of policy seeks to protect the public interest by encouraging the Government to acquire the principal rights to inventions in situations where the nature of the work to be undertaken or the Government's past investment in the field of work favors full public access to resulting inventions. On the other hand, the policy recognizes that the public interest might also be served by according exclusive commercial rights to the contractor in situations where the contractor has an established non-governmental commercial position and where there is greater likelihood that the invention would be worked and put into civilian use than would be the case if the invention were made more freely available.

Wherever the contractor retains more than a non-exclusive license, the policy would guard against failure to practice the invention by requiring that the contractor take effective steps within three years after the patent issues to bring the invention to the point of practical application or to make it available for licensing on reasonable terms. The Government would also have the right to insist on the granting of a license to others to the extent that the invention is required for public use by governmental regulations or to fulfill a health need, irrespective of the purpose of the contract.

The attached statement of policy will be reviewed after a reasonable period of trial in the light of the facts and experience accumulated. Accordingly, there should be continuing efforts to monitor, record, and evaluate the practices of the agencies pursuant to the policy guidelines.

This memorandum and the statement of policy shall be published in the FEDERAL REGISTER.

JOHN F. KENNEDY

### STATEMENT OF GOVERNMENT PATENT POLICY

#### BASIC CONSIDERATIONS

A. The government expends large sums for the conduct of research and development which results in a considerable number of inventions and discoveries.

B. The inventions in scientific and technological fields resulting from work performed under government contracts constitute a valuable national resource.

C. The use and practice of these inventions and discoveries should stimulate inventors, meet the needs of the government, recognize the equities of the contractor, and serve the public interest.

D. The public interest in a dynamic and efficient economy requires that efforts be made to encourage the expeditious development and civilian use of these inventions. Both the need for incentives to draw forth private initiatives to this end, and the need to promote healthy competition in industry must be weighed in the disposition of patent rights under government contracts. Where exclusive rights are acquired by the contractor, he remains subject to the provisions of the antitrust laws.

E. The public interest is also served by sharing of benefits of government-financed research and development with foreign countries to a degree consistent with our international programs and with the objectives of U.S. foreign policy.

F. There is growing importance attaching to the acquisition of foreign patent rights in furtherance of the interests of U.S. industry and the government.

G. The prudent administration of government research and development calls for a government-wide policy on the disposition of inventions made under government contracts reflecting common principles and objectives, to the extent consistent with the missions of the respective agencies. The policy must recognize the need for flexibility to accommodate special situations.

POLICY

SECTION 1. The following basic policy is established for all government agencies with respect to inventions or discoveries made in the course of or under any contract of any government agency, subject to specific statutes governing the disposition of patent rights of certain government agencies.

(a) Where

(1) a principal purpose of the contract is to create, develop or improve products, processes, or methods which are intended for commercial use (or which are otherwise intended to be made available for use) by the general public at home or abroad, or which will be required for such use by governmental regulations; or

(2) a principal purpose of the contract is for exploration into fields which directly concern the public health or public welfare; or

(3) the contract is in a field of science or technology in which there has been little significant experience outside of work funded by the government, or where the government has been the principal developer of the field, and the acquisition of exclusive rights at the time of contracting might confer on the contractor a preferred or dominant position; or

(4) the services of the contractor are

(i) for the operation of a government-owned research or production facility; or

(ii) for coordinating and directing the work of others,

the government shall normally acquire or reserve the right to acquire the principal or exclusive rights throughout the world in and to any inventions made in the course of or under the contract. In exceptional circumstances the contractor may acquire greater rights than a nonexclusive license at the time of contracting, where the head of the department or agency certifies that such action will best serve the public interest. Greater rights may also be acquired by the contractor after the invention has been identified, where the invention when made in the course of or under the contract is not a primary object of the contract, *provided* the acquisition of such greater rights is consistent with the intent of this Section 1(a) and is a necessary incentive to call forth private risk capital and expense to bring the invention to the point of practical application.

(b) In other situations, where the purpose of the contract is to build upon existing knowledge or technology to develop information, products, processes, or methods for use by the government, and the work called for by the contract is in a field of technology in which the contractor has acquired technical competence (demonstrated by factors such as know-how, experience, and patent position) directly related to an area in which the contractor has an established nongovernmental commercial position, the contractor shall normally acquire the principal or exclusive rights throughout the world in and to any resulting inventions, subject to the government acquiring at least an irrevocable non-exclusive royalty free license throughout the world for governmental purposes.

(c) Where the commercial interests of the contractor are not sufficiently established to be covered by the criteria specified in Section 1(b), above, the determination of rights shall be made by the agency after the invention has been identified, in a manner deemed most likely to serve the public interest as expressed in this policy statement, taking particularly into account the intentions of the contractor to bring the invention to the point of commercial application and the guidelines of Section 1(a) hereof, *provided* that the agency may prescribe by regulation special situations where the public interest in the availability of the inventions would best be served by permitting the contractor to acquire at the time of contracting greater rights than a non-exclusive license. In any case the government shall acquire at least a non-exclusive royalty free license throughout the world for governmental purposes.

(d) In the situation specified in Sections 1(b) and 1(c), when two or more potential contractors are judged to have presented proposals of equivalent merit, willingness to grant the government principal or exclusive rights in resulting inventions will be an additional factor in the evaluation of the proposals.

(e) Where the principal or exclusive (except as against the government) rights in an invention remain in the contractor, he should agree to provide written reports at reasonable intervals, when requested by the government, on the commercial use that is being made or is intended to be made of inventions made under government contracts.

(f) Where the principal or exclusive (except as against the government) rights in an invention remain in the contractor, unless the contractor, his licensee, or his assignee has taken effective steps within three years after a patent issues on the invention to bring the invention to the point of practical application or has made the invention available for licensing royalty free or on terms that are reasonable in the circumstances, or can show cause why he should retain the principal or exclusive rights for a further period of time, the government shall have the right to require the granting of a license to an applicant on a non-exclusive royalty free basis.

(g) Where the principal or exclusive (except as against the government) rights to an invention are acquired by the contractor, the government shall have the right to require the granting of a license to an applicant royalty free or on terms that are reasonable in the circumstances to the extent that the invention is required for public use by governmental regulations or as may be necessary to fulfill health needs, or for other public purposes stipulated in the contract.

(h) Where the government may acquire the principal rights and does not elect to secure a patent in a foreign country, the contractor may file and retain the principal or exclusive foreign rights subject to retention by the government of at least a royalty free license for governmental purposes and on behalf of any foreign government pursuant to any existing or future treaty or agreement with the United States.

SEC. 2. Government-owned patents shall be made available and the technological advances covered thereby brought into being in the shortest time possible through dedication or licensing and shall be listed in official government publications or otherwise.

SEC. 3. The Federal Council for Science and Technology in consultation with the Department of Justice shall prepare at least annually a report concerning the effectiveness of this policy, including recommendations for revision or modification as necessary in light of the practices and determinations of the agencies in the disposition of patent rights under their contracts. A patent advisory panel is to be established under the Federal Council for Science and Technology to

(a) develop by mutual consultation and coordination with the agencies common guidelines for the implementation of this policy, consistent with existing statutes, and to provide over-all guidance as to disposition of inventions and patents in which the government has any right or interest; and

(b) encourage the acquisition of data by government agencies on the disposition of patent rights to inventions resulting from federally-financed research and development and on the use and practice of such inventions, to serve as basis for policy review and development; and

(c) make recommendations for advancing the use and exploitation of government-owned domestic and foreign patents.

SEC. 4. *Definitions:* As used in this policy statement, the stated terms in singular and plural are defined as follows for the purposes hereof:

(a) Government agency—includes any Executive department, independent commission, board, office, agency, administration, authority, or other government establishment of the Executive Branch of the Government of the United States of America.

(b) "Invention" or "Invention or discovery"—includes any art, machine, manufacture, design, or composition of matter, or any new and useful improvement thereof, or any variety of plant, which is or may be patentable under the Patent Laws of the United States of America or any foreign country.

(c) Contractor—means any individual, partnership, public or private corporation, association, institution, or other entity which is a party to the contract.

(d) Contract—means any actual or proposed contract, agreement, grant, or other arrangement, or sub-contract entered into with or for the benefit of the government where a purpose of the contract is the conduct of experimental, developmental, or research work.

(e) "Made"—when used in relation to any invention or discovery means the conception or first actual reduction to practice of such invention in the course of or under the contract.

(f) Governmental purpose—means the right of the Government of the United States (including any agency thereof, state, or domestic municipal government) to practice and have practiced (made or have made, used or have used, sold or have sold) throughout the world by or on behalf of the Government of the United States.

(g) "To the point of practical application"—means to manufacture in the case of a composition or product, to practice in the case of a process, or to operate in the case of a machine and under such conditions as to establish that the invention is being worked and that its benefits are reasonably accessible to the public.

[F.R. Doc. 63-10888; Filed, Oct. 11, 1963; 9:21 a.m.]

# Appendix B

# Government Patent Policy, 1971

# Presidential Documents

## Title 3—The President

MEMORANDUM OF AUGUST 23, 1971

## Government Patent Policy

**Memorandum for Heads of Executive Departments and Agencies**

THE WHITE HOUSE,
*Washington, August 23, 1971.*

On October 10, 1963, President Kennedy forwarded to the Heads of Executive Departments and Agencies a Memorandum and Statement of Government Patent Policy for their guidance in determining the disposition of rights to inventions made under Government-sponsored grants and contracts. On the basis of the knowledge and experience then available, this Statement first established Government-wide objectives and criteria, within existing legislative constraints, for the allocation of rights to inventions between the Government and its contractors.

It was recognized that actual experience under the Policy could indicate the need for revision or modification. Accordingly, a Patent Advisory Panel was established under the Federal Council for Science and Technology for the purpose of assisting the agencies in implementing the Policy, acquiring data on the agencies' operations under the Policy, and making recommendations regarding the utilization of Government-owned patents. In December 1965, the Federal Council established the Committee on Government Patent Policy to assess how this Policy was working in practice, and to acquire and analyze additional information that could contribute to the reaffirmation or modification of the Policy.

The efforts of both the Committee and the Panel have provided increased knowledge of the effects of Government patent policy on the public interest. More specifically, the studies and experience over the past 7 years have indicated that:

(a) A single presumption of ownership of patent rights to Government-sponsored inventions either in the Government or in its contractors is not a satisfactory basis for Government patent policy, and that a flexible, Government-wide policy best serves the public interest;

(b) The commercial utilization of Government-sponsored inventions, the participation of industry in Government research and development programs, and commercial competition can be influenced by the following factors: the mission of the contracting agency; the purpose and nature of the contract; the commercial applicability and market potential of the invention; the extent to which the invention is developed by the contracting agency; the promotional activities of the contracting agency; the commercial orientation of the contractor and the extent of his privately

financed research in the related technology; and the size, nature and research orientation of the pertinent industry;

(c) In general, the above factors are reflected in the basic principles of the 1963 Presidential Policy Statement.

Based on the results of the studies and experience gained under the 1963 Policy Statement certain improvements in the Policy have been recommended which would provide (1) agency heads with additional authority to permit contractors to obtain greater rights to inventions where necessary to achieve utilization or where equitable circumstances would justify such allocation of rights, (2) additional guidance to the agencies in promoting the utilization of Government-sponsored inventions, (3) clarification of the rights of States and municipal governments in inventions in which the Federal Government acquires a license, and (4) a more definitive data base for evaluating the administration and effectiveness of the Policy and the feasibility and desirability of further refinement or modification of the Policy.

I have approved the above recommendations and have attached a revised Statement of Government Patent Policy for your guidance. As with the 1963 Policy Statement, the Federal Council shall make a continuing effort to record, monitor and evaluate the effects of this Policy Statement. A Committee on Government Patent Policy, operating under the aegis of the Federal Council for Science and Technology, shall assist the Federal Council in these matters.

This memorandum and statement of policy shall be published in the Federal Register.

Richard Nixon

## Statement of Government Patent Policy

### Basic Considerations

A. The Government expends large sums for the conduct of research and development which results in a considerable number of inventions and discoveries.

B. The inventions in scientific and technological fields resulting from work performed under Government contracts constitute a valuable national resource.

C. The use and practice of these inventions and discoveries should stimulate inventors, meet the needs of the Government, recognize the equities of the contractor, and serve the public interest.

D. The public interest in a dynamic and efficient economy requires that efforts be made to encourage the expeditious development and civilian use of these inventions. Both the need for incentives to draw forth private initiatives to this end, and the need to promote healthy competition in industry must be weighed in the disposition of patent rights under Government contracts. Where exclusive rights are acquired by the contractor, he remains subject to the provisions of the antitrust laws.

E. The public interest is also served by sharing of benefits of Government-financed research and development with foreign countries to a degree consistent with our international programs and with the objectives of U.S. foreign policy.

F. There is growing importance attaching to the acquisition of foreign patent rights in furtherance of the interests of U.S. industry and the Government.

G. The prudent administration of Government research and development calls for a Government-wide policy on the disposition of inventions made under Government contracts reflecting common principles and objectives, to the extent consistent with the missions of the respective agencies. The policy must recognize the need for flexibility to accommodate special situations.

### Policy

Section 1. The following basic policy is established for all Government agencies with respect to inventions or discoveries made in the course of or under any contract of any Government agency, subject to specific statutes governing the disposition of patent rights of certain Government agencies.

(a) Where

(1) a principal purpose of the contract is to create, develop or improve products, processes, or methods which are intended for commercial use (or which are otherwise intended to be made available for use) by the general public at home or abroad, or which will be required for such use by governmental regulations; or

(2) a principal purpose of the contract is for exploration into fields which directly concern the public health, public safety, or public welfare; or

(3) the contract is in a field of science or technology in which there has been little significant experience outside of work funded by the Government, or where the Government has been the principal developer of the field, and the acquisition of exclusive rights at the time of contracting might confer on the contractor a preferred or dominant position; or

(4) the services of the contractor are

(i) for the operation of a Government-owned research or production facility; or

(ii) for coordinating and directing the work of others,

the Government shall normally acquire or reserve the right to acquire the principal or exclusive rights throughout the world in and to any inventions made in the course of or under the contract.

In exceptional circumstances the contractor may acquire greater rights than a nonexclusive license at the time of contracting where the head of the department or agency certifies that such action will best serve the public interest. Greater rights may also be acquired by the contractor after the invention has been identified where the head of the department or agency determines that the acquisition of such greater rights is consistent with the intent of this Section 1(a) and is either a necessary incentive to call forth private risk capital and expense to bring the invention to the point of practical application or that the Government's contribution to the invention is small compared to that of the contractor. Where an identified invention made in the course of or under the contract is not a primary object of the contract, greater rights may also be acquired by the contractor under the criteria of Section 1(c).

(b) In other situations, where the purpose of the contract is to build upon existing knowledge or technology, to develop information, products, processes, or methods for use by the Government, and the work called for by the contract is in a field of technology in which the contractor has acquired technical competence (demonstrated by factors such as know-how, experience, and patent position) directly related to an area in which the contractor has an established nongovernmental commercial position, the contractor shall normally acquire the principal or exclusive rights throughout the world in and to any resulting inventions.

(c) Where the commercial interests of the contractor are not sufficiently established to be covered by the criteria specified in Section 1(b) above, the determination of rights shall be made by the agency after the invention has been identified, in a manner deemed most likely to serve the public interest as expressed in this policy statement, taking particularly into account the intentions of the contractor to bring the invention to the point of commercial application and the guidelines of Section 1(a) hereof, provided that the agency may prescribe by regulation special situations where the public interest in the availability of the inventions would best be served by permitting the contractor to acquire at the time of contracting greater rights than a nonexclusive license.

(d) In the situations specified in Sections 1(b) and 1(c), when two or more potential contractors are judged to have presented proposals of equivalent merit, willingness to grant the Government principal or exclusive rights in resulting inventions will be an additional factor in the evaluation of the proposals.

(e) Where the principal or exclusive rights in an invention remain in the contractor, he should agree to provide written reports at reasonable intervals, when requested by the Government, on the commercial use that is being made or is intended to be made of inventions made under Government contracts.

(f) Where the principal or exclusive rights in an invention remain in the contractor, unless the contractor, his licensee, or his assignee has taken effective steps within three years after a patent issues on the invention to bring the invention to the point of practical application or has made the invention available for licensing royalty-free or on terms that are reasonable in the circumstances, or can show cause why he should retain the principal or exclusive rights for a further period of time, the Government shall have the right to require the granting of a nonexclusive or exclusive license to a responsible applicant(s) on terms that are reasonable under the circumstances.

(g) Where the principal or exclusive rights to an invention are acquired by the contractor, the Government shall have the right to require the granting of a nonexclusive or exclusive license to a responsible applicant(s) on terms that are reasonable in the circumstances (i) to the extent that the invention is required for public use by governmental regulations, or (ii) as may be necessary to fulfill health or safety needs, or (iii) for other public purposes stipulated in the contract.

(h) Whenever the principal or exclusive rights in an invention remain in the contractor, the Government shall normally acquire, in addition to the rights set forth in Sections 1(e), 1(f), and 1(g),

(1) at least a nonexclusive, nontransferable, paid-up license to make, use, and sell the invention throughout the world by or on behalf of the Government of the United States (including any Government agency) and States and domestic municipal governments, unless the agency head determines that it would not be in the public interest to acquire the license for the States and domestic municipal governments; and

(2) the right to sublicense any foreign government pursuant to any existing or future treaty or agreement if the agency head determines it would be in the national interest to acquire this right; and

(3) the principal or exclusive rights to the invention in any country in which the contractor does not elect to secure a patent.

(i) Whenever the principal or exclusive rights in an invention are acquired by the Government, there may be reserved to the contractor a revocable or irrevocable nonexclusive royalty-free license for the practice of the invention throughout the world; an agency may reserve the right to revoke such license so that it might grant an exclusive license when it determines that some degree of exclusivity may be necessary to encourage further development and commercialization of the invention. Where the Government has a right to acquire the principal or exclusive rights to an invention and does not elect to secure a patent in a foreign country, the Government may permit the contractor to acquire such rights in any foreign country in which he elects to secure a patent, subject to the Government's rights set forth in Section 1(h).

SEC. 2. Under regulations prescribed by the Administrator of General Services, Government-owned patents shall be made available and the technological advances covered thereby brought into being in the shortest time possible through dedication or licensing, either exclusive or nonexclusive, and shall be listed in official Government publications or otherwise.

SEC. 3. The Federal Council for Science and Technology in consultation with the Department of Justice shall prepare at least annually a report concerning the effectiveness of this policy, including recommendations for revision or modification as necessary in light of the practices and determinations of the agencies in the disposition of patent rights under their contracts. The Federal Council for Science and Technology shall continue to

(a) develop by mutual consultation and coordination with the agencies common guidelines for the implementation of this policy, consistent with existing statutes, and to provide overall guidance as to disposition of inventions and patents in which the Government has any right or interest; and

(b) acquire data from the Government agencies on the disposition of patent rights to inventions resulting from federally financed research and development and on the use and practice of such inventions to serve as bases for policy review and development; and

(c) make recommendations for advancing the use and exploitation of Government-owned domestic and foreign patents.

Each agency shall record the basis for its actions with respect to inventions and appropriate contracts under this statement.

SEC. 4. Definitions: As used in this policy statement, the stated terms in singular and plural are defined as follows for the purposes hereof:

(a) *Government agency*—includes any executive department, independent commission, board, office, agency, administration, authority, Government corporation, or other Government establishment of the executive branch of the Government of the United States of America.

(b) *States*—means the States of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam and the Trust Territory of the Pacific Islands.

(c) *Invention, or Invention or discovery*—includes any art, machine, manufacture, design, or composition of matter, or any new and useful improvement thereof, or any variety of plant, which is or may be patentable under the Patent Laws of the United States of America or any foreign country.

(d) *Contractor*—means any individual, partnership, public or private corporation, association, institution, or other entity which is a party to the contract.

(e) *Contract*—means any actual or proposed contract, agreement, grant, or other arrangement, or subcontract entered into with or for the benefit of the Government where a purpose of the contract is the conduct of experimental, developmental, or research work.

(f) *Made*—when used in relation to any invention or discovery means the conception or first actual reduction to practice of such invention in the course of or under the contract.

(g) *To the point of practical application*—means to manufacture in the case of a composition or product, to practice in the case of a process, or to operate in the case of a machine and under such conditions as to establish that the invention is being worked and that its benefits are reasonably accessible to the public.

[FR Doc.71-12623 Filed 8-25-71;10:41 am]