IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SPARTON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 92-580C<br>Chief Judge Edward Damich |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE [DOCKET NO. 301] TO PLAINTIFF'S MOTION IN LIMINE [DOCKET NO. 295]**

Sparton Corporation ("Sparton"), replies to defendant's response ("DR") to Sparton's motion in limine to exclude any evidence relating to two of defendant's claims: (1) defendant's claim that it possesses a license under the suit patents by virtue of contract No. N00019-70-C-0133 ("0133 contract"); and (2) defendant's claim that it possesses data rights to the suit patents as a result of Contract N00019-69-C-0465 or "…an unrestricted right to use the data presented to the government either in the accepted [ECP 0465-2] proposal or in plaintiff's contractually-required [0465 contract] submissions." DR 4-5.

In the first two pages of defendant's response, defendant addresses the legal principles of judicial estoppel and the law of the case doctrine. DR 1-3. These legal principles are irrelevant and inapplicable to the basis of plaintiff's motion in limine. Plaintiff's motion in limine is based upon the following: (a) defendant's license claim under the 0133 contract was first advanced by

defendant on December 15, 2006 subsequent to the close of discovery; (b) no discovery was permitted by this Court after the close of discovery, and none was taken by Sparton in regard to the 0133 contract license defense (prejudice to Sparton); and (c) the documents on which defendant has relied in support of this defense were produced well over ten years from the date defendant first asserted its license claim under the 0133 contract. See P295.4.

In its response on page two, defendant states:

> On June 27, 2006, the Government amended its earlier answers and objection to provide a more complete explanation of the government's license defense. … In that answer the government added: "With respect to the '120 patent, the Government may also assert a defense of lawful right based solely on the contractual provisions of Contract No. N00019-70-C-0133." **P295.5** (Bold and/or underscored material is for emphasis supplied).

Defendant's citation to **P295.5** is not to defendant's June 27, 2006 amended interrogatory answers, but instead is to defendant's December 15, 2006 amended interrogatory answers which for the first time (and after the close of discovery) identified the 0133 contract as a basis for a license defense. Thus, this Court should not be left with the impression that defendant timely asserted its 0133 contract license defense. It did not.

On page three of defendant's response, defendant addresses Professor Nash and Sparton's Christian doctrine discussion, but not the 0133 contract license defense. This

Court’s order regarding Professor Nash and Sparton’s Christian doctrine discussion have no bearing upon the 0133 contract license defense. Professor Nash was not proffered to address the 0133 contract license defense.

On page four of defendant’s response, defendant attempts to explain the delay in asserting the 0133 contract license defense. Defendant contends that the “Beartrap Sensor Study” had “…recently been declassified at plaintiff’s request.” DR 4. In support of its contention, defendant cites P295.1 and P295.4-.5 These citations do not support defendant’s contention. On page P295.1, defendant merely states that “[w]ith this letter, we have provided a compact disc containing two documents, portions of which were declassified for use in this proceeding.” Defendant does not indicate in its present response and did not indicate in its interrogatory answer when the document, the “Beartrap Sensor Study[,]” was first reviewed by defendant, when it was declassified and when such declassification had been requested. This litigation was over fourteen years old when the defendant first identified its 0133 contract license defense. Discovery was closed at that time. While the 0133 contract was addressed in Sparton’s administrative claim, the Navy did not assert the 0133 contract as a basis for a license defense or for denying Sparton’s claim. Sparton had no reason to believe defendant would resurrect

this 0133 contract to support a frivolous license defense. Since defendant did not assert the 0133 contract as a basis for a license defense prior to the close of discovery, Sparton was not placed upon proper notice of this defense in order to use this Court's discovery tools to flesh out and defend against this defense.

Notwithstanding the above, the defendant's last contention on this issue should provide the Court with a sound basis for granting Sparton's motion in limine regarding the 0133 contract license defense. On page four of its response, defendant admits "… that it will have no need to raise Beartrap Sensor [0133] contract as part of its defense based on lawful right to use the invention ***unless*** **the court allows plaintiff to adopt an interpretation of the "releasable retaining means" limitation that is broad enough to capture Sparton's prior multi-piece retaining means.**" Defendant ignores the controlling fact that this Court has already construed the claims of the suit patents, including the "releasable retaining means" limitation. Defendant's assertion of a license defense based upon the 0133 contract is not and can not be contingent upon the Court **reinterpreting** any claim limitation, including the "releasable retaining means" claim limitation. Since the Court has already construed the suit patent claims, the remaining task for the Court to perform is to determine

literal infringement (comparing claim corresponding structure to the structure in the accused devices) under the following controlling precedent requiring identity of function and the same or equivalent structure of a section 112¶6 claim element, the insubstantial differences test. Chuminatta Concrete Concepts Inc. v. Cardinal Industries Inc., 145 F.3d 1303 (Fed. Cir. 1998); WMS Gaming Inc. v. International Game Tech, 184 F.3d 1339 (Fed. Cir. 1999) (equivalent structure found); Al-Site Corp. v. VSI International Inc., 174 F.3d 1308 (Fed. Cir. 1999) (button and hole fastener equivalent to a hole fastener); Telemac Cellular Corp. v. Topp Telecom Inc., 247 F.3d 1316 (Fed. Cir. 2001) (literal infringement of 112¶6 claim limitation requires that accused device have structure for performing identical function identified in means clause and accused device incorporates same or equivalent structure to structure in specification for performing function); Micro Chem Inc. v. Great Plains Chem. Co., 194 F.3d 1250 (Fed. Cir. 1999) (112¶6 does not permit incorporation of structure from patent specification beyond that necessary to perform claimed function); Rite-Hite Corp. v. Kelley Co., Inc., 819 F.2d 1120 (Fed. Cir. 1987) (interchangeability is a useful consideration when determining whether two specific structures are equivalent); McGinley v. Franklin Sports Inc., 262 F.3d 1339 (Fed. Cir. 2001) (structural equivalents

found based upon insubstantial differences test); Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259 (Fed. Cir. 1999); and Vulcan Eng'g Co., Inc. v. Fata Alum. Inc., 278 F.3d 1366 (Fed. Cir. 2002) (when a claimed function is performed in the accused system by the same or equivalent structure, literal infringement is established even though the claim element has capabilities in addition to that stated in claim). If literal infringement is not found, then the doctrine of equivalents must be applied by this Court. Defendant's assertion of a license defense under the 0133 contract is unrelated to and separate from the Court's infringement analysis. Defendant's reference to the Court's infringement analysis to springboard a contingent license defense and thus exacerbate litigation cost and waste court time firmly supports the granting of this motion.

The second part of plaintiff's motion in limine addresses defendant's claim that it has "…an unrestricted right to use the data presented to the government either in the accepted [ECP 0465-2] proposal or in plaintiff's contractually-required [0465 contract] submissions." DR 4-5. Defendant makes this claim on the theory that plaintiff will assert that it exercised control over the data produced under the ECP/Mod. 4 change to the 0465 contract to establish "experimental use." DR 5. Defendant further argues that the data rights provisions of the contract and

procurement regulations counter plaintiff's claim. Id. First, the data rights provision of the 0465 fixed price supply contract, not the ECP or Mod. 4, is totally irrelevant to the issue of who controlled the testing under a modification to that contract, i.e. "experimental use." Second, defendant has deprived Sparton of its right to undertake discovery in connection with defendant's assertion of an unrestricted right to use the data allegedly presented to the government under ECP 0465-2 or the 0465 contract because such assertion was not made until about October 2007 (after the close of discovery) when defendant served its proposed findings of fact upon plaintiff. If defendant had timely presented this data rights theory to Sparton, then Sparton may have found it useful to have Professor Nash or a Sparton employee knowledgeable of this issue testify in regard thereto. What defendant did was to first disqualify Professor Nash as a witness and then assert a new defense, albeit unsupportable, knowing that Sparton had already been precluded from presenting evidence from the most renowned expert, Professor Nash, in the data rights field to defend against the defendant's frivolous theory. Such litigation tactics should not be condoned by this Court and spawn prejudice. The entire motion in limine should be granted.

Respectfully submitted,
Sparton Corporation, Plaintiff

Dated: February 19, 2008

s/Steven Kreiss
Steven Kreiss
Attorney for Plaintiff
1120 Connecticut Avenue NW
Suite 433
Washington D.C. 20036
Telephone: (202) 347-6382
Facsimile: (202) 347-7711