IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SPARTON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 92-580C<br>Chief Judge Edward Damich |

**SPARTON CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE SETTLEMENT OFFER AS EVIDENCE OF REASONABLE COMPENSATION**

Sparton Corporation ("Sparton") opposes defendant's motion in limine to preclude Sparton's alleged settlement offer as evidence of reasonable compensation. See Doc. 306. By this Court's Order, defendant was required to justify the filing of this motion in view of the Court's Order, Doc. 290, requiring the filing of motions in limine by January 22, 2008. Sparton's opposition traverses defendant's (a) justification for untimely filing this motion in violation of this Court's Order (Doc. 290), and (b) motion on substantive grounds.

## I. Defendant Has No Justification For Filing Its Motion

Defendant claims that the Court's Order (Doc. 290) sets no date for the filing of motions in limine relating to matters presented in pretrial briefs, but instead imposed a deadline for the filing of motions in limine regarding "… the opposing party's proposed witnesses or exhibits." Mot. 1. Defendant further argues that plaintiff's expert did not

rely upon the 5% settlement offer at issue here, but instead provided his own analysis, and not until Sparton's brief was filed on February 6, 2008 did Sparton rely on the settlement offer as part of its accounting analysis. Mot. 1-2.

Defendant's argument is frivolous, and the Court should so find. That defendant's subject motion in limine relates directly to "… the opposing party's proposed witnesses or exhibits" is established as follows. The 5% settlement offer at issue here is the subject of Joint Exhibit 80 ("J80"), "[l]etter to Office of Naval Research from John Bodde, dated February 11, 1981 (Def. Summ. J. Ex. 42, A000517-A000519)." See Doc. 299, p. 20. Plaintiff's two experts, contrary to defendant's frivolous allegation, did rely upon the 5% settlement offer at issue in their reports. In Donald Martin's report at P248.15, he states:

> It is also my understanding that in the initial period of infringement, Sparton offered a settlement license to the U.S. Navy at a royalty rate of 5%. **This royalty rate** was offered in settlement for a claim for infringement, in the face of a market depressed by the presence of infringing competitors, and **should be thought of only as a floor for the reasonable royalty rate.** (Emphasis added).

Gerald Martin's expert report at P246.3 and P246.5 states:

> Other facts and conclusions/opinions I will present in connection with the reasonable royalty calculus are that: (1) **Sparton offered the Navy a settlement license about February 11, 1981 at a 5% rate** on all sales of sonobuoys or other products utilizing the patented inventions.
>
> * * *
>
> **These facts** and conclusions and/or opinions

> [set forth in his report] **justify a substantial increase in the 5% rate Sparton offered the Navy** on February 11, 1981 …. (Emphasis added).

Defendant's statement that plaintiff's expert did not rely upon the 5% settlement offer at issue here is clearly wrong. Defendant's statement that it was not until Sparton's brief was filed on February 6, 2008 that it was aware that Sparton relied upon the settlement offer as part of its accounting analysis is also clearly wrong. Mot. 1-2. Evidentiary document exhibits J80, P246.3 and P248.15 are to the contrary and establish a lack of justification for the filing of defendant's motion in limine. The motion is frivolous and should be so found by the Court.

## II. Factual Background

Defendant is correct that Sparton filed an administrative claim on February 11, 1981 indicating that it was entitled to a 5% royalty. Mot. 1. Defendant then states that the Navy and Sparton failed to resolve the claim. Id. This statement fails, however, to present the reality of what transpired during the administrative claim.

After Sparton filed its administrative claim, the Navy raised the on-sale defense on February 9, 1982, just as defendant did years later in the case at bar. Ex. A, P500.1 (Ex. A attached hereto contains 19 pages consisting of multiple letters by or between Sparton and the Navy). On April 13, 1982, Sparton traversed the Navy's on-sale defense

position. Ex. A, P500.2-3. By November 2, 1984, Navy attorney Louis Allahut was assigned to investigate Sparton's administrative claim. Ex. A, P500.4. Sparton's contracts manager John Bodde had been assigned by Sparton to pursue Sparton's administrative claim. Id.

John Bodde reached an agreement with Navy attorney Louis Allahut, as set forth and memorialized in writing by letter dated February 5, 1987, that a royalty rate of 5.5% was to be applied to the alleged infringement. Ex. A, P500.5-.6. This 5.5% rate was .5% higher than Sparton had proposed in its February 11, 1981 letter initiating Sparton's administrative claim because the parties were attempting to cost out sonobuoy parts they believed were covered by the patent claims. Id. By letter dated April 22, 1988, Navy attorney Louis Allahut utilized the 5.5% royalty rate in computing the royalties owed to Sparton and communicated same to Sparton. Ex. A, P500.7-.9. By letter dated May 27, 1988, Sparton concurred with Navy attorney Louis Allahut's utilization of the 5.5% royalty rate in computing the royalties owed to Sparton. Ex. A, P500.10.

An agreement on the royalty rate was reached by John Bodde of Sparton and Navy attorney Louis Allahut as of July 18, 1988, and in this regard, Navy attorney Louis Allahut submitted a memorandum to the Navy Office of Counsel on July 18, 1988, over seven years after Sparton's claim had been

initiated, stating: "Pursuant to DoD FAR Supplement 8.7002, **settlement of a claim against the Government has been negotiated**." (Emphasis added). Ex. A, P500.11. Navy attorney Louis Allahut by this July 18, 1988 memorandum sought funds from the Navy to settle Sparton's administrative claim. Id. Notwithstanding Navy attorney Louis Allahut's negotiated settlement recommendation, the Navy Office of Counsel by June 26, 1989 decided to revisit the on-sale defense in view of UMC Electronics Co. v. United States, 816 F.2d 647 (Fed. Cir. 1987), RCA Corp. v. Data General Corp., 887 F.2d 1056 (Fed. Cir. 1989), and Envirotech Corp. v. Westech Engineering, Inc., 904 F.2d 1571 (Fed. Cir. 1990), instead of finalizing settlement and committing funds. Ex. A, P500.12. Sparton again traversed this on-sale defense. Ex. A, P500.13-.16.

Sparton complained to the Navy's chief counsel, Margaret Olsen, on October 3, 1990 about the Navy's reversal in settlement position after the claim had been negotiated and pending for over 9 years. Ex. A, P500.17-.18. Navy counsel Olsen stated on November 16, 1990 in response to Sparton's complaint: "Incidentally, we can find **no evidence** in the record available to us **that anyone with authority to settle patent infringement claims actually agreed on a value of your claim** that you should be paid." Ex. A, P500.19. (Emphasis added). This lawsuit was filed in this Court on

August 25, 1992, and defendant's on-sale defense has been dismissed. Complaint and 399 F.3d 1321 (Fed. Cir. 2005).

Since defendant decided to continue purchasing infringing sonobuoys, thereby further depressing Sparton's market, and litigate the on-sale defense to a conclusion, instead of reaching an amicable settlement with Sparton, the 5% and/or 5.5% royalty rate should be considered a royalty rate floor when determining a reasonable royalty. Otherwise, defendant will have no incentive to settle any 28 U.S.C. §1498 case prior to the completion of litigation. As Sparton's expert said: "This royalty rate [5%] was offered in settlement …, in the face of a market depressed by the presence of infringing competitors, and should be thought of only as a floor for the reasonable royalty rate." P248.15. Sparton's 5% and/or 5.5% proffered royalty rate is evidence of Sparton's valuation of its patented inventions in the face of a depressed, infringing competitor market, and should be considered a royalty rate floor when determining a reasonable royalty (a) in view thereof and (b) in further view of defendant's action in litigating the on-sale defense to a conclusion instead of reaching an amicable settlement with Sparton. This evidence is relevant to the accounting due Sparton and is thus admissible.

**III. Legal Analysis of Defendant's Position**

Defendant contends that Sparton's administrative claim settlement offer is barred by Fed. R. Evid. 408 because it is offered to prove the value of defendant's liability, i.e. liability or the claim amount. Mot. 3-4. In support of its contention, defendant relies upon Cheyenne River Sioux Tribe v. United States, 806 F.2d 1046, 1050-52 (Fed. Cir. 1986) and United States v. Ward Baking Co., 376 U.S. 327 (1964). Mot. 3-5. The rational behind these cases is twofold. A trial court should not imposes upon parties a settlement to which they had not agreed (1) because "… permitting consideration of settlement offers as reflecting an admission of liability in the amount of the offer would seriously discourage parties from discussing settlement or making settlement offers [which the law favors]" and (2) if one of the parties has not yet introduced all its trial evidence because the court will have "… failed to perform its obligations to determine the case on the basis of the evidence." 806 F.2d at 1050 and Ward Baking, supra at 334 ("[w]e decide only that where the Government seeks an item of relief to which evidence adduced at trial may show that it is entitled, the District Court may not enter a 'consent' judgment without the actual consent of the Government.")

Defendant draws a distinction between these two above cases and Hughes Aircraft Co. v. United States, 31 Fed. Cl. 481, 487 (1994), aff'd, 86 F.3d 1566 (Fed. Cir. 1996),

vacated, 520 U.S. 1183 (1997), aff'd in part on remand, 140 F.3d 1470 (Fed. Cir. 1998), which permitted settlement offers in evidence for other purposes as Rule 408 permits, i.e. to establish a patent owner's invention valuation for a reasonable royalty determination. See also Ramada Development Co. v. Rauch, 644 F.2d 1097, 1107 (5th Cir. 1981). In this connection, defendant asserts that certain administrative claim documents it will offer in evidence (e.g. the Widenhofer and Depew affidavits), are relevant to other case issues and are thus admissible. Mot. 6-7.

Defendant's contention that Rule 408 precludes the Court's consideration of Sparton's administrative claim settlement offer is in error. The twofold rational behind Cheyenne River and Ward Baking is inapplicable to the case at bar. Trial begins April 21, 2008. Defendant is not being precluded, as it was by the lower courts in Cheyenne River and Ward Baking, from presenting its reasonable royalty evidence at trial. Furthermore, a patent owner's disclosure to the Navy of his valuation of his patent does not have a chilling effect upon a claim settlement. Rather, it enhances a settlement negotiation and is required by Navy regulation to process a claim.

This Court in Hughes, 31 Fed. Cl. at 487-88, also rejected the application of Rule 408 to Hughes' licensing offers. The basis of the rejection was that Hughes' offers

were not offered to prove anything concerning its infringement claims against Philco-Ford or MBB, but rather were offered for "another purpose[,]" i.e. to establish Hughes' own valuation of the patent there in suit. This Court found Hughes' historical offers "highly significant" and quoted with approval Pitcairn v. United States, 212 Ct. Cl. 168, 186 (1978) in which the Court of Claims stated: "[T]here is no reason why the [patent]owner himself should not be held to his own offer[s]…. It is appropriate to take them into account and to give them great weight." Id. at 488. The Federal Circuit likewise reviewed Hughes' offers and affirmed this Court's consideration of Hughes' licensing offers. 86 F.3d at 1572-74. Other cases in this Court have likewise considered licensing offers. See de Graffenried v. United States, 25 Cl. Ct. 209 (1992) (de Graffenried's offers to Westinghouse, Bethlehem Steel, Streak, Inc., and the government Arsenal facility considered in determining a reasonable royalty); ITT Corp. v. United States, 17 Cl. Ct. 199 (1989) (proposals to Hughes and Bendix considered in determining a reasonable royalty); and Penda Corp. v. United States, 29 Fed. Cl. 533 (1993) (license offered to Shuert-Oakland considered in determining a reasonable royalty).

In the case at bar, Sparton is offering the administrative claim settlement offer as evidence of the patents' value to it shortly after (1981) the time the

infringement began (~1977), i.e. a floor to the royalty rate as stated above. Under Rule 408, this evidence is admissible as "otherwise discoverable" and/or for "another purpose." This type of evidence has been routinely admitted in this Court's proceedings in other cases in connection with the reasonable royalty determination. The policy reasons behind Rule 408 are inapplicable here.

In view of the above, defendant's motion should be denied because (a) it did not have any justification for its filing and (b) the weight of authority in this Court is plainly against defendant's position. Sparton requests that exhibit PX 500, pages P500.1-.19 be added to its document list as a sanction upon defendant for the filing of this frivolous motion.

Respectfully submitted,
Sparton Corporation, Plaintiff

Dated: March 10, 2008

s/Steven Kreiss
Steven Kreiss
Attorney for Plaintiff
1120 Connecticut Avenue NW
Suite 433
Washington D.C. 20036
Telephone: (202) 347-6382
Facsimile: (202) 347-7711

EXHIBIT A

DEPARTMENT OF THE NAVY
OFFICE OF NAVAL RESEARCH
ARLINGTON, VIRGINIA 22217

IN REPLY REFER TO
ONR:311:JPT:rrh

FEB 9 1982

Sparton Corporation
2400 East Ganson Street
Jackson, Michigan 49202

Attention: Mr. John H. Bodde
Manager, Contract Administration

Re: Claim by Sparton Corporation for Compensation based on U.S. Patents 3,921,120 and 4,029,233 both patents having a filing date of 29 March 1973 (S-153)

Gentlemen:

It has come to our attention that Sparton Corporation offered to modify many sonobuoys to be delivered under contract N00019-69-C-0465 to include the inventions of the '120 and '233 patents. The offer was made by Sparton letter having serial no. 7356-13, and being dated 17 March 1971. An Engineering Change Proposal (ECP) 0465-2 was cited by and enclosed with the letter. The ECP describes the proposed modifications to be made to the sonobuoys so as to include the inventions of the '120 and '233 patents. The letter was addressed to DCASR-Detroit and received by DCASR on 19 March 1971.

35 USC 102(b) states that "a person shall be entitled to a patent unless... (b) the invention was...on sale in this country, more than one year prior to the date of the application for patent in the United States." Either a single sale or a single offer to sell is sufficient to invalidate a patent under section 102(b) of the Patent Act.

Therefore it appears that the above-cited offer has caused the '120 and '233 patents to be invalid. This circumstance seems to be a sufficient ground for denial of the subject administrative claim. It is requested that a determination be made as to whether Sparton Corporation desires to pursue the administrative claim further or to withdraw it.

Very truly yours,

K. W. Dobyns

K. W. DOBYNS
By direction of the
Chief of Naval Research

CONFIDENTIAL
Subject to Protective Order
Sparton Corporation
v.
The United States
Civil Action No. 92-580-C

RECEIVED
CONTRACTS DEPT.
15 FEB 1982
SPARTON ELECTRONICS
JACKSON, MICH.

Patent Claim File

Sparton electronics
division of SPARTON CORPORATION

13 April 1982
JHB-82-0137-L

Naval Air Systems Command
Department of the Navy
Washington, D.C. 20361

Attention: Mr. W. C. Garvert
Patent Counsel

Subject: Claim by Sparton Corporation for Compensation based on U.S. Patents 3,921,120 and 4,029,233 (S-153)

Re: ONR:311:JPT:rrh, February 9, 1982

Dear Mr. Garvert:

In response to the referenced letter, Sparton advises that we do not intend to withdraw the administrative claim submitted in our letter of 11 February 1981. Sparton does not concur with the Department of the Navy's position regarding the validity of the subject patents. Our reasoning for this disagreement is outlined in the paragraphs below:

ECP 0465-2 contains a written description and drawing of a sonobuoy which utilizes a weighted housing that falls through the water and deploys the sonobuoy components from the housing as it descends. Sparton does concur that this document (ECP 0465-2) includes many details of patent number 3,921,120. It does not show the release plate or any of its details so, therefore, did not offer "for sale" the features of patent number 4,029,233.

Sparton also takes exception to the Navy's position that ECP 0465-2 actually constitutes an "on sale" condition. In an industry where contracts are usually issued quantities of 20,000 to 100,000 units, it is difficult to say that a 300 unit quantity constitutes as offer to sell. Sparton offered the U.S. Navy the opporunity of evaluating 300 experimental units which were designed to solve a difficult deployment problem. ECP 0465-2 was offered to U.S. Navy to give them an opporunity to review a significant technical breakthrough. It did not offer the buoys "for sale" as a submarine search device, but instead only "made available" for evaluation a vastly different concept in sonobuoy deployment. The requirements for an "on sale" situation existed only after the first production contract for AN/SSQ-53A was proposed. This did not take place until 1974.

2400 EAST GANSON STREET, JACKSON, MICHIGAN 49202 □ PHONE (517) 787-8600 □ TWX: 810-253-1925

SPARTON

Mr. W. C. Garvert
JHB-82-0137-L
13 April 1982



Sparton questions the U.S. Navy's motives when it attempts to invalidate a private industry developed patent which resulted from a legitimate company funded effort. Sparton, in good faith, sought to find a solution to the problem of rapid deep depth sonobuoy deployment. As a result of our effort, we successfully developed a system drastically different then anything ever used on a sonobuoy. Our system was so successful that it is now being utilized by all other sonobuoy manufacturers as a means of obtaining rapid deep depth sonobuoy deployment. The Navy, instead of recognizing and compensating us for our efforts, has been using every imaginable delay tactic to avoid a fair and reasonable settlement.

The tactics displayed in the referenced letter and prior ONR correspondence are completely contrary to the intent of the DAR requirements which has been established as a way of compensating contractors who have made significant technical contributions to defense programs. It is this approach, which makes it almost impossible for prudent corporate management to ever justify any company funded development effort for Department of Defense Programs.

Subsequent to our original claim, Sparton has determined that another infringement has occurred on the Magnavox AN/SSQ-62A sonobuoy design. Contract N00019-79-C-0593 has been issued in the amount of $17,185,208.10. There would, therefore, increase our claim by $859,260. Our claim is now as follows:

| | |
|---|---|
| As of 11 February 1981 | $2,600,000 |
| As of 22 July 1981 | 450,000 |
| As of 22 July 1981 | 266,780 |
| As of this letter | 859,260 |
| (Total claim (Less interest) | $4,176,040 |

In addition to the above, Sparton is entitled to interest at 14.75 percent applied to the above for the applicable time of payment delay.

Sparton requests that we be paid for the above claim in the most expeditious manner.

Sincerely,

John H. Bodde
Manager, Contract
Administration

JHB/mkb

P500.3

DEPARTMENT OF THE NAVY
NAVAL AIR SYSTEMS COMMAND
NAVAL AIR SYSTEMS COMMAND HEADQUARTERS
WASHINGTON, DC 20361

IN REPLY REFER TO
5870-OOP
Ser 1/E
2 NOV 1984

Sparton Electronics
2400 East Ganson Street
Jackson, Michigan 49202

Attn: Mr. John H. Bodde
Manager, Contract Administration

Re: Sparton Corporation Infringement Claim S153
U.S. Patent Nos. 3,921,120 and 4,029,233

Dear Mr. Bodde:

Mr. Townsend asked me to respond to your 2 October 1984 letter requesting the status of the above referenced claim. As explained to Mr. Earl Rice and yourself, during your 25 October 1984 visit to our offices, we are presently assembling the last few contract details needed before we can discuss the extent of the Government's use and liability in this matter. We expect to have these details shortly and to be able to discuss settlement of this claim in the very near future.

It was a pleasure for Mr. Townsend and myself to meet with you and Mr. Rice and your offer of assistance is appreciated.

Very truly yours,

Louis Allahut

LOUIS ALLAHUT
Deputy Patent Counsel
By direction of the Commander
Naval Air Systems Command

cc: R. Nichols
B. Thompson
C. Boyce
E. Rice

SPARTON ELECTRONICS

2400 EAST GANSON STREET
JACKSON, MICHIGAN 49202
Telephone: (517) 787-8600
Twx: 810-253-1925

5 February 1987
JHB-87-0041

Department of the Navy
Naval Air Systems Command
Naval Air Systems Command Headquarters
Washington, DC 20361

Attention: Mr. Louis Allahut, Patent Council

Subject: Sparton Corporation Administrative Claim S153 U.S. Patent Nos. 3,921,120 and 4,029,233

Dear Mr. Allahut:

In accordance with our discussions of 29 January 1987, Sparton is pleased to provide the following:

1. Enclosure I - This enclosure, Schedule of Amounts Subject to Claim, reflects the infringed parts value for contracts issued through Fiscal Year 1985. Attachments BI through BVII of Enclosure II have all been reviewed and revised as appropriate as of January 29, 1987. The value of the infringed parts is $34,072,145.

2. Enclosure II - Summary of Fiscal Year 1986/1987 Awards. The infringed parts value of these awards is $14,595,266.11. In addition to this summary, Sparton provides Attachments A through D showing the individual contracts and the calculation for arriving at the infringed parts value. We have also included copies of contracts:

   N00163-86-C-0010
   N00163-87-C-0006
   N00163-86-C-0202
   N00163-87-C-0007
   N00163-86-C-0008
   N00163-85-C-0005 (3 year multi-year contract)

3. Enclosure III - Rationale for Calculation of Future Value for Infringed Parts (FY 1986 through 1989). This enclosure provides an explanation of how the calculation for determining the FY 1988 and 1989 infringed parts value was developed. This value, $6,384,535.71, when added to the infringed parts value for FY 1986 and 1987 ($14,595,266.11) gives a value $20,797,761.82. The budget information in the Defense News Publication provided the FY 1988 and 1989 forecast. This article is provided as an attachment to Enclosure III.

In accordance with our discussions of the above date, we agreed that a 5.5% fee would be appropriate as an amount to be applied to the infringed parts value.

P500.5

SPARTON



Based on the above:

| | |
|---|---|
| Value of infringed parts through FY 1985 | $34,072,145 |
| Value of infringed parts FY 1986 through 1989 | $20,979,762 |
| Total value of infringed parts through 1989 | $55,051,907 |
| Total amount of claim (5.5% of $55,051,907) | $3,027,854 |

In consideration of this settlement, Sparton is willing to relinquish any interest claim which we might have against the Government from the time we submitted our original claim on 11 February 1981 to the time actual payment is made. In addition, Sparton is willing to grant the Government the right to use the ~~payment~~ Patents in the future at no additional cost. It should be noted that Sparton's patents were issued in 1975 and 1977, therefore, the expiration dates would be 1992 and 1994 respectfully.

If Sparton can assist you in any manner regarding the above, pleae contact the undersigned at (517) 787-8600, Ext. 244.

Sincerely,

John H. Bodde
Sr. R & D Contract
Specialist

JHB:clb

Enclosures

bcc: E. Beaudrie
B. Thompson

DEPARTMENT OF THE NAVY
NAVAL AIR SYSTEMS COMMAND
NAVAL AIR SYSTEMS COMMAND HEADQUARTERS
WASHINGTON, DC 20361

IN REPLY REFER TO
5870
AIR-OOC5/LA/kb
22 Apr 88

Sparton Electronics
ATTN: John H. Bodde, Sr. R&D Contract Specialist
2400 East Ganson Street
Jackson, Michigan 49202

Re: Sparton Corporation Administrative Claim S153 U.S. Patent Nos. 3,921,120 and 4,029,233

Dear Mr. Bodde:

Your letter, JHB-88-0009, of 12 January 1988, addressed to this office and requesting a status report on the above referenced administrative claim, has been received. In response thereto I am forwarding copies of the tabulations and calculations by which I derived a total royalty figure for settlement of the above reference administrative claim. Although this new figure reduces somewhat the figure calculated during our discussion of a year ago I believe you will find it acceptable. The new total royalty is $2,638,903.99.

Based on our discussion of a year ago, enclosure (1) is a tabulation of all of the contracts considered for the purposes of resolving Sparton's administrative claim. This list differs from that of our discussion by one contract. Sippican contract N00163-84-C-0117, for the AN/SSQ-77A sonobuoy, is not tabulated on enclosure (1). I have been informed that this contract was not a production contract. The contract only provided for the testing of units which were provided as government furnished equipment. All other contracts tabulated on enclosure (1) are those we discussed.

Enclosure (2) sets forth for those tabulated contracts the quantity and unit price of the sonobuoys delivered under each contract. This list also differs from that of our discussion by one contract. Rockwell contract N00163-83-C-0068, for the AN/SSQ-53B sonobuoy, originally provided for the delivery of 20,397 units. Modification to the contract, P00006 and P00009, changed that quantity to 1,310 units. Actually, the contract was terminated sometime before full delivery of this reduced quantity, but I am willing to go with this reduced figure.

Enclosure (3) tabulates the specific cost of the deployment components for the three types of sonobuoys. Enclosure (3) also indicates for each type of sonobuoy the percentage of the total cost which can be allocated to the cost of the components claimed

in Sparton's patents. This percentage includes the cost of assembly but does not include the cost of the windflap which, though assembled with the other components, is not claimed in Sparton's patents as an infringing item. This exclusion of the windflap from the percentage calculation also differs from that of our discussion.

In enclosure (4) the pertinent material from enclosure (2) is extracted, the quantity and unit price are multiplied to get the total price of the sonobuoys that were procured under each contract, and the percentage figure from enclosure (3) is factored in to obtain a cost for the deployment components of those sonobuoys. The total cost for the components is $29,183,949.79.

As agreed in our discussion, a 5.5% royalty was figured on the cost of the components for each contract. The total of the royalties for all contracts is $1,605,117.18.

The previous calculations are based on contracts issued up until 1985.

Enclosure (5) tabulates pertinent information for contracts issued in 1986 and 1987. For those years the total cost of all infringing components is $13,076,474.26 and the total of the 5.5% royalties on each contract is $719,206.07.

To calculate future procurement, during our discussion we agreed to use the 1988-1989 procurement programs as presented in the January 26, 1987 issue of Defense News. Those figures are tabulated in enclosure (6). As indicated in subpart A, for the years 1986 and 1987 the total procurement of sonobuoys is listed as 886,414 units. As inidcated in subpart B, for the year 1988 and 1989 the total procurement of sonobuoys is listed as 387,754 units. Subpart C indicates that the procurement for 1988-1989 is 43.74% of the procurement for 1986-1987.

From enclosure (5) the cost of infringing components for contracts let in 1986 and 1987 was calculated as to be $13,076,474.26.

From enclosure (6) the 1988-1989 procurement was calculated to be 43.74% of the 1986-1987 procurement.

Using the same percentage of the 1986-1987 infringing components, enclosure (7) calculates the cost of the 1988-1989 infringing components to be $5,719,649.83. A 5.5% royalty on the 1988-1989 components is calculated to be $314,580.74.

Enclosure (8) calculates the total royalty. For past procurement up until 1985, for 1986-1987 procurement and for 1988-1989 procurement, the total royalty is $2,638,903.99.

The above total royalty figure reduces by $389,403.51 the $3,028,307.50 figure arrived at during our previous discussion. As indicated, this reduction resulted from three changes to facts assumed during our discussion. In view of the indicated changes the revised total royalty figure appears justified.

I would welcome any comments you might have concerning the above figures and calculations. At you earliest convenience, please contact me at (202) 692-3418.

Sincerely

Louis Allahut

LOUIS ALLAHUT
(Patent Claims & Litigation)

Bodde

SPARTON ELECTRONICS

ASW TECHNICAL CENTER
2400 EAST GANSON STREET
JACKSON, MICHIGAN 49202
Telephone: (517) 787-8600
Twx: 810-253-1925

27 May 1988
JHB-88-0275

Department of the Navy
Naval Air Systems Command
Naval Air Systems Command Headquarters
Washington D.C. 20361

Attention: Mr. Louis Allahut, Patent Council

Subject: Sparton Corporation Administrative Claim S153
U.S. Patent Nos. 3,921,120 and 4,029,233

Reference: Naval Air Systems Command Letter 5870
AIR-0065/LA/Kb dated 22 April 1988

Dear Mr. Allahut:

Sparton has reviewed the referenced letter and, after consideration of the proposed changes, we concur with the conclusion contained therein.

If I can assist you further in this claim, please contact me at the above number.

Sincerely,

John H. Bodde
Sr. R & D Contract Specialist

JHB/lml

P500.10

NAVAL AIR SYSTEMS COMMAND HEADQUARTERS
WASHINGTON, DC 20361

IN REPLY REFER TO
5890
AIR-00C5/LA/kb
18 Jul 88

MEMORANDUM

From: Office of Counsel
To: AIR-08

Subj: FUNDS FOR SETTLEMENT OF A CLAIM AGAINST THE GOVERNMENT (Claim S-153)

1. Pursuant to DoD FAR Supplement 8.7002, settlement of a claim against the Government has been negotiated. The claim was made by Sparton Electronics, a division of Sparton Corporation, 2400 East Ganson Street, Jackson, Michigan 49202 and was for compensation for use of an invention covered by U.S. Patent Nos. 3,921,120 and 4,029,233.

2. The invention pertains to a float actuated release and to the retaining plate contained therein used in the following sonobuoys when procured from the following contractors:

| Sonobuoy | | Contractor |
|---|---|---|
| AN/SSQ-53A | - | Magnavox |
| AN/SSQ-53B | - | Rockwell |
| AN/SSQ-53B | - | Hermes |
| AN/SSQ-62 | - | Raytheon |
| AN/SSQ-62A | - | Magnavox |
| AN/SSQ-62B | - | Magnavox |
| AN/SSQ-77A | - | Magnavox |
| AN/SSQ-77A | - | Sippician |

3. By the terms of the settlement agreement, the government is required to pay $2,638,903.99 for a release from liability for all past, present and future liability.

4. Please advise me as to whether you are aware of any problem which would prevent your providing funds in the amount of $2,638, 903.99 for performance of the Navy's part of the settlement agreement. It is expected that such funds would be provided from "M" funds. I would appreciate being informed as soon as possible, if "M" funds are not available for this purpose. Payment pursuant to the agreement will be made under a SECNAV contract through the Deputy Counsel (Navy Intellectual Property), and it is anticipated that a formal request for a citiation of funds will be made within the next several months.

Louis Allahut

LOUIS ALLAHUT
Associate Counsel
(Patent Claims & Litigation)

P500.11

6/26/89

Lou

Thank you for the information on the UMC and other cases.

A review of our files discloses the attached series of prior correspondence covering the applicability of the "on sale" bar to our claim. The Comptroller of the Navy's office is obviously revisiting a topic which has already been considered.

If we can be of further help please let us know.

Sincerely

John H Bodde

CONFIDENTIAL
Subject to Protective Order
Sparton Corporation
v.
The United States
Civil Action No. 92-580-C

bcc: B. Thompson

Faxed to Washington on 6/26/89 (LL)

SPARTON

DEFENSE ELECTRONICS

30 April 1990
JHB-90-0112

Department of the Navy
Naval Air Systems Command
Naval Air Systems Command Headquarters
Washington DC 20361

Attention: Mr. Louis Allahut, Patent Council

Subject: Sparton Corporation Administrative Claim
S153 U.S. Patent Nos. 9,921,120 and 4,029,233

Dear Mr. Allahut:

Mr. Thompson and I wish to express our appreciation for the opportunity to meet with you on 29 March 1990 to discuss the subject claim. As discussed in the above meeting, we do not believe the "On-Sale Bar" provisions which played a role in the RCA Corp. vs Data General Corp., Envirotech Corp. vs Westech Engineering Inc. and UMC Electronic Company vs U.S. cases are relevant to Sparton's claim. The distinct differences we see between the above cases and Sparton's situation are described below.

1. In the Envirotech case, the bid provided on May 8, 1980 was made with the intention of exploiting the hydroballast invention and with full knowledge of how the invention would perform. In Sparton's submittal of ECP 0465-2, a limited quantity of modified units were offered to the U.S. Navy for "experimental purposes" only. We did not have knowledge of how the invention would perform. Sparton was not in a position to recommend any date for production of the items as indicited in the effectivity block.

2. In UMC Electronics Co. vs U.S. it was determined that the inventor was satisfied that the invention would perform the intended purpose. In Sparton's case the inventor was not satisfied that the invention would fulfill it's intended purpose. Had Sparton been completely satisfied that the invention would work we would have proposed a production effectivity (an incorporation point) for the ECP.

3. The UMC case makes the point that "the sale must be primarily for profit rather than for experimental purposes". Sparton obviously did not submit the ECP for profit. If profit were the motive, we would have proposed to modify all 9000 units under contract N00019-69-C-0465 rather than only 300 units. We would not have submitted the ECP for "test and evaluation" if the sale was for profit rather than for "experimental purposes".

4. In the RCA Corp. vs Data General case, RCA offered their invention to the FAA by responding to a formal request for proposal. This was a definite offer to sell. RCA's offer contained an invention which they knew would meet the FAA requirements (it had been reduced to practice). In Sparton's case, there was no firm requirement for the features presented by ECP 0465-2. Sparton offered the Navy the opportunity to test and evaluate a technical approach which might be of value (if the invention worked) for a future application.

CONFIDENTIAL
Subject to Protective Order
Sparton Corporation
v.
The United States
Civil Action No. 92-580-C

SPA 28535

Sparton Defense Electronics ☐ ASW Technical Center ☐2400 E. Ganson St.☐ Jackson, MI 49202 ☐517-787-8600 ☐TWX 810-253-1925 ☐ FAX 517-787-8C

SPARTON

NASC-Mr. Allahut
JHB-90-0112
30 April 1990
Page 2

5. In the RCA case, the District Court decided that the Cole invention had been reduced to practice prior to the FAA bid. In Sparton's case we were not able to offer a production effectivity point because of the experimental nature of the invention and the invention had not been reduced to practice.

6. In the RCA case, the District Court decided that the proposal to the FAA was a definite offer to sell for commercial gain. The total quantities offered by RCA were intended for the FAA's regular use. In Sparton's case, a limited quantity was offered to the U.S. Navy for "experimental purposes" only. No units were offered for the Navy's regular use. The attached ECP, D465-2 under the "Developmental Requirements" column clearly states the units are submitted for test and evaluation.

7. In the RCA case, the FAA sent Request for Proposals (RFPs) to ten companies. In Sparton's case, no RFP existed. No requirement existed, and Sparton was the only company to offer a proposal which was for experimentation only.

8. In the RCA case, it was determined that RCA intended to use the Cole invention to fulfill the RFP requirements if they were awarded a contract. In Sparton's case, we offered to supply 300 units for "test and evaluation". No offer was made to modify the other 8700 units produced under contract N00019-69-C-0465 nor did we offer any production incorporation into future contracts for regular fleet use.

9. In UMC's case, the Court decided that "an invention cannot be offered for sale within the meaning of section 102 (b) if the offeror has only a mere concept of the invention". At the time of submittal of ECP 0465-2, Sparton had not progressed beyond the conceptual stage of the invention. This is evidenced by our offering the ECP for "test and evaluation" and our inability to offer a production effectivity.

10. As held in the UMC case, the actual reduction to practice means that an actual embodiment which includes all elements of the claim have been built. All elements of Sparton's claim had not been built at the time of the ECP submittal. In fact, none of the 300 units contained the features of Patent No. 4,029,233.

11. In the RCA case, it was determined that "completing an invention to the point of determining that it will work for it's intented purpose ends with an actual reduction to practice". In Sparton's case, we were not at this point when we submitted ECP 0465-2 as we could not recommend a production effectivity, nor were we convinced it would work for the intended purpose.

12. The RCA case also points out that, "an offer may not constitute a bar because of policy considerations which allow an inventor to engage in experimentation to develop his invention". In Sparton's situation, Sparton was engaged in experimentation to develop an invention and requested that the Navy permit it to modify a small number of sonobuoys to be dropped from the Navy's aircraft to test feasibility of the invention. There was no other purpose for the test. Sparton was attempting to solve the problem of rapid descent to deep depth.

CONFIDENTIAL
Subject to Protective Order
Sparton Corporation
v.
The United States
Civil Action No. 92-580-C

SPA 28536

SPARTON

NASC-Mr. Allahut
JHB-90-0112
30 April 1990
Page 3

To further substantiate our contention that the units under 0465-2 were for experimental purposes, Sparton requests your consideration of the following:

a. Only 300 units out of 9000 units contracted were modified,
b. The Navy did not require any operation manuals for the modified units (This shows that fleet personnel would never use the units).
c. Navy testing activities utilized (for all practical purposes) all of the units for experimental purposes. None were left for fleet usage.
d. The Navy did not assign any Federal or National Stock Numbers to the units. Fleet usage would have required stock numbers.

We trust the above will be of assistance to you in expediting favorable resolution of our claim. In Sparton's letter JHB-87-0041 dated 5 February 1987, Sparton agreed to relinquish any interest relative to our claim. In light of the continued delay in resolving this issue, we feel accrual of interest from the date of this letter forward is appropriate.

Sparton again wishes to express our appreciation for the opportunity of discussing this issue with you. If we can assist further regarding this matter, please contact me at the number listed below.

Sincerely,

John H. Bodde
Manager, Contracts Administration

JHB/lml

Enclosure

bcc: R. Nichols
B. Thompson
A. Luempert

CONFIDENTIAL
Subject to Protective Order
Sparton Corporation
v.
The United States
Civil Action No. 92-580-C

| FIRM NAME AND ADDRESS | ENGINEERING CHANGE PROPOSAL (FOR USE WITH ANA BULLETIN NO. 445) | DATE |
|---|---|---|
| Sparton Electronics<br>2400 E. Ganson Street<br>Jackson, Michigan 49202 | Form Approved Budget Bureau No. 22-R096 | 17 Mar. 1971 |

**ECP DESIGNATION**

| MODEL OR TYPE DESIGNATION | MFG CODE | SYSTEM DESIGNATION | ECP NO. | TYPE | REV | CORREC. |
|---|---|---|---|---|---|---|
| AN/SSQ-53 | 82268 | DIFAR | 0465-2 | P | ---- | ----- |

CONTRACTOR'S RECOMMENDED PRIORITY ☐ EMERGENCY ☐ URGENT ☒ ROUTINE ☐ COMPATIBILITY

| CONTRACT NO. | CONTRACT END ITEM NOMENCLATURE | CONTRACT SPECIFICATION: SPEC NO. / DWG NO. | AFFECTED |
|---|---|---|---|
| N00019-69-C-0465 | Sonobuoy | MIL-S-81487 (AS) | ☐ Yes ☒ No |

| NAME OF PART OR LOWEST ASSY AFFECTED | PART NO. OR TYPE DESIGNATION | IN PROD. |
|---|---|---|
| Sonobuoy AN/SSQ-53 | | ☒ Yes ☐ No |

TITLE OF CHANGE

Incorporation of Dual Depth Capability

DESCRIPTION OF CHANGE

See Attached ECP 0465-2

CONFIDENTIAL
Subject to Protective Order
Sparton Corporation
v.
The United States
Civil Action No. 92-580-C

JUSTIFICATION FOR CHANGE

The proposed change will add the capability to the AN/SSQ-53 to operate at 1,000 ft. depth as well as 90 ft.

☐ REQUESTED BY PROCURING ACTIVITY PER:
☐ REF:

INITIATED BY CONTRACTOR FOR:
1. COMPLIANCE WITH NEW OR REVISED SPEC.
2. FIX FOR UNSATISFACTORY REPORT NO.
3. OTHER to add capability

DEVELOPMENTAL REQUIREMENTS It is recommended that 300 completed AN/SSQ-53 units be modified as described in proposal and submitted for test and evaluation.

ALTERNATIVE SOLUTIONS

None

PRODUCTION EFFECTIVITY

Future Procurement (If evaluation tests prove proposed merits)

ESTIMATED COST FOR CHANGE IN PRODUCTION

$198,000 for 300 buoy program

RECOMMENDATIONS FOR RETROFIT

None

| RETROACTIVE EFFECTIVITY | SC/M WO/TCTO REQD. |
|---|---|
| None | ☐ Yes ☒ No |

ME-1017

SPA 28538

P500.16

SPARTON

SPARTON CORPORATION

3 October 1990
JHB-90-0363

Ms. Margaret A. Olsen
Counsel
AIR-00C
Naval Air Systems Command
Washington, D.C. 20361-0002

Subject: Claim No. S153, Buoy Deployment Patents

Dear Ms. Olsen:

I am writing to make you aware of a claim that has been in process for over nine (9) years, and request your support in an expeditious resolution.

The enclosure shows that since our original filing of an Administrative Claim for Patent Infringement on 11 February 1981, it took six (6) years to agree on the value of our claim. Following that agreement, the next three (3) years passed with the only action being that the Navy is too busy to process and pay the claim.

In March 1990, the Navy Comptroller advised Sparton, via the Patent Claim Investigator, that the Navy was reviewing the case on the basis of the "on sale bar" issue and cited design similarities of our claim with an AN/SSQ-39 buoy. In April and August 1990 Sparton refuted the "on the bar" issue and provided amplifying data showing point-by-point why the alleged similarities do not exist.

Sparton has produced over 4,000,000 buoys during its Corporate life, and is one of only two (2) U.S. manufacturers of a product that is used by the U.S. Navy to locate and identify submarines. One might consider that both companies are in the class of a national asset with regard to this product. The cost of the product, despite inflation and incorporation of numerous technical advantages, has experienced a reduction each year of at least 1% or 2%. This cost reduction is achieved by two (2) factors:

1. Competition

2. Incorporation of technical advances, to meet new requirements, such as the case under discussion, and other innovative techniques required to remain competitive.

For the record, Sonobuoys are procured on a fixed price basis, and we win our share of the market by incorporation of innovative designs such as this, while at the same time making them simple enough to be affordable and still be competitive.

Sparton Corporation ☐ 2400 East Ganson Street ☐ Jackson, MI 49202 ☐ (517) 787-8600 ☐ TWX (810) 253-1925 ☐ FAX (517) 787-8046

SPARTON



For over 25 years we have survived in this extremely competitive market and are dedicated to the continuation of being a supplier of this unique product. The Department of the Navy executives continually encourage industry to offer new ideas, and support the Department of Defense, but we cannot afford to remain a dedicated supplier of a unique product, and allow the Navy to "shop around" our company developed competitive edge without being compensated.

I present these thoughts to put the case of compensation for our inventions in perspective. Sparton has no objections to sharing its inventions with other suppliers, since the benefits to the Navy are reduced unit cost. However, the inventing company must be compensated for this Navy benefit. To continue this approach without compensation could eventually lead to any company, not only Sparton, abandoning the Defense business. Many companies already have.

In summary, I feel that the six (6) years required by the Navy to come to the conclusion that we should establish a value of the claim, plus three (3) years of almost no activity is more than an adequate period in which this could have been settled. To revisit the case for a review of the same rationale, already resolved, appears to be avoiding the issue. I sincerely request that you consider my remarks here and initiate a speedy resolution of this claim.

Very truly yours,

David Hockenbrocht

David Hockenbrocht
President

RLM/pas

1. ADMIN PROCEDURE
2. COURT OF CLAIMS
3. VALUE $2.9 MIL NET OF ANY INTEREST.

DEPARTMENT OF THE NAVY
NAVAL AIR SYSTEMS COMMAND
NAVAL AIR SYSTEMS COMMAND HEADQUARTERS
WASHINGTON, DC 20361

IN REPLY REFER TO

5870
Ser AIR-OOC/JF/cdt

NOV 16 1990

Rec'd 11/26/90

Mr. David Hockenbrocht
President
Sparton Corporation
2400 East Ganson St.
Jackson, MI 49202

Re: ADMINISTRATIVE PATENT CLAIM NO. S153, BUOY DEPLOYMENT PATENTS

Dear Mr. Hockenbrocht:

Thank you for your letter of October 19, 1990 bringing to my attention your long standing administrative claim alleging that the Navy has infringed your company's patents (USP 3,921,120 and USP 4,029,233) relating to sonobuoys. Nine years is clearly too long for your claim to remain under review by the Navy.

I have assigned one of my patent attorneys to give your claim his full attention. Mr. John Stowe may be contacting you or your offices or employees to obtain additional information. I would appreciate any assistance you can give him. As I am sure you can appreciate, we must be satisfied that we have explored all the government's defenses to the claim before agreeing to any settlement. To the extent the record already contains all the information necessary to resolve the issues, then our review will be brief. Incidentally, we can find no evidence in the record available to us that anyone with authority to settle patent infringement claims actually agreed on a value of your claim that you should be paid. Anything that you can add that would enlighten us would be most helpful.

Let me assure you that we will devote our energies to assuring that you have a decision on your claim long before another nine years passes. If you believe that we are failing in this endeavor, please do not hesitate to let me know.

Sincerely,

Margaret A Olsen

Margaret A. Olsen
Counsel, Naval Air Systems Command

cc Baker – Prepare answer 11/26
Nichols
McNulla
Davenport

1/16 Boddle R
prepare a draft
response 10 yr
… of claim

P500.19