IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | No. 92-580 |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S FIRST AMENDED RESPONSE TO PLAINTIFF'S MOTION IN LIMINE [DOCKET NO. 295]**

Plaintiff, Sparton Corporation, seeks to limit the testimony at trial by moving to exclude any evidence of two topics: (1) the government's defense that it "possesses a license under the suit patents by virtue of contract No. N00019-70-C-0133," and (2) defendant's "claim that it possesses data rights to the suit patents as a result of Contract No. N000-69-C-0465." Sparton Corp.'s Mot in Limine, Docket No. 295 at 1.

**A. The License Defense**

This portion of the motion in limine deals with a potential defense that the government stated in its amended answers to plaintiff's first set of interrogatories (the contention interrogatories). That license defense deals not with the '-0465 contract and Mod 4, but with Contract No. N00019-70-C-0133 (the "Beartrap Sensor contract"). *See* DX-219, 235, 239, 240; DPFF 114, 115, 117, 118, 159, 160, 161, 185-189, 192. As we currently understand plaintiff's position, the inventions of both the '-120 and '-233 patents, were conceived no earlier than

July 29, 1971 and no later than November 23, 1971, "when the single piece release plate was conceived for use in the dual depth sonobuoy." D17.13 The government submits, plaintiff is precluded from modifying the legal and factual positions that plaintiff proffered in support of its appeal of this court's summary judgment either by judicial estoppel or by the law of case doctrine. *See New Hampshire v. Maine*, 532 U.S. 742 (2001) (judicial estoppel prevents a party in a later proceeding from taking a "clearly inconsistent position" with an earlier position in the same litigation that threatens judicial integrity under circumstances where the party taking inconsistent positions could "derive an unfair advantage or impose an unfair detriment" on the opposing party); *Toro Co. v. White Consolidated Inds*, 383 F.3d 1326, 1335 (Fed Cir. 2004) (the law of the case doctrine prevents a party from litigating issues "actually decided, either explicitly or by necessary implication, in the earlier litigation").

On June 27, 2006, the Government amended its earlier answers and objection to provide a more complete explanation of the government's license defense. Exhibit 1. In that answer the government added: "With respect to the '120 patent, the Government may also assert a defense of lawful right based solely on the contractual provisions of Contract No. N00019-70-C-0133." *Id.*

Then, on December 15, 2006, the government again amended its responses, expanding on the earlier statement and asserting:

> Items *viii* through *x*, above, establish that the invention claimed in the '120 patent – a sonobuoy as described with a "releaseable retaining means" – was conceived during the performance of the '-0133 contract. Item *vii* demonstrates that the '[-0]133 contract contains a patent rights clause in accordance with cited regulations. Accordingly, the Government has a royalty free license for the manufacture and use of the inventions claimed in the '-120 patent.

P295.5.

After the first amended interrogatory answers, but before the second, plaintiff's counsel responded to the government's motion to preclude Professor Nash from testifying as an expert witness. Sparton Corp.'s Opp. to Def. Mot. to Preclude the Testimony of Prof. Nash, Docket No. 284 (Nov. 9, 2006) ("Docket No. 284"). In that opposition, plaintiff's counsel acknowledged:

> The defendant correctly notes that Professor Nash is an expert in government contracts law, and his expert report addresses the applicability to this case of the government contract Christian doctrine, G.L. Christian & Assoc. v. United States, 312 F.2d 418, aff'd on reh'g, 320 F.2d 345 (1963), and in particular the application of the Armed Forces Procurement Regulations, §§7.301, 7.302, 7.302-23 and 9.107 (especially 9.107-1, 9.107-4 and 9.107-5) (1968-1972) to the Navy-Sparton government contract N00019-69-C-0465 ("0465 contract") including Mod. 4 thereof incorporating ECP 0465-2. Thus, defendant concedes that Professor Nash's testimony relates directly to a government contract issue in his government contract field of expertise. Mot. 1-2, 7.

*Id.* at 1. Notably, Sparton did not address the government's assertion of a defense based on the Beartrap Sensor contract, addressed in the first amended interrogatory answers, but only the '-0465 contract. Sparton further noted:

> [T]he court addressed as relevant government [sic] long established policy and the parties' actions in regard thereto. Christian supra 312 F.2d at 426-27 and 320 F.2d at 355; see also S.J. Amoroso Constr. Co. v. United States, 12 F.3d 1072, 1075-77 (Fed. Cir. 1993) (parties' contemporaneous actions relevant under application of Christian doctrine) and IBI Security Service, Inc. v. United States, 19 Cl. Ct. 106, 110 (1989) (deference is given to an administrative agency's interpretation of an administrative regulation).

*Id.* at 7. Thus, although plaintiff was aware of this alternative basis, it did not address that basis in its response to the motion to preclude Professor Nash's testimony.

The expansion of the government's bases for its defense resulted from the availability of the "Beartrap Sensor Study," which had recently been declassified at plaintiff's request. *See* P295.1 & P295.4 - .5. Plaintiff was aware, from at least 1991, of the significance of this project to the Government. As part of its administrative claim investigation, the Navy requested that

Sparton provide a copy of a document entitled "Mechanical Feasibility Design for Sound Reference Sonobuoy," by J. Widenhofer and C. Werner. *See* D94.1. Sparton had asked to retain that document at the end of the '-0133 contract. D14.1. But, during the adminstrative claim, it could no longer locate a copy. D94.2. That document is purported to contain the earliest documentation of the "upside-down" or "inverse" deployment system. D.19.2. Thus, plaintiff has known for well over 17 years that the government was interested in establishing whether the '-0133 contract could form a basis, in whole or in part, for a defense.

That having been said, the government submits that it will have no need to raise the Beartrap Sensor contract as part of its defense based on lawful right to use the invention *unless* the court allows plaintiff to adopt an interpretation of the "releaseable retaining means" limitation that is broad enough to capture Sparton's prior multi-piece retaining means. Such a broad interpretation would allow plaintiff to capture multi-piece retaining mechanisms such as the "spider plate" of the deep depth sonobuoy project and the "Depew device" of the ECP, as well as those of several accused manufacturers. Such a reading, however, is now precluded by either law of the case or judicial estoppel. Nonetheless, defendant would urge the court to withhold ruling on the motion at this time. Rather, resolution of the motion should await the proofs that the parties' provide at trial and, specifically, whether plaintiff seeks to alter its position.

**B. The Data Rights Clause**

Plaintiff also asserts that defendant "claims it possesses data rights to the suit patent" as a result of the '-0465 contract. Mot. at 1. Plaintiff is mistaken. What the government claims is an

unrestricted right to use the data presented to the government either in the accepted proposal or in plaintiff's contractually-required submissions.

Plaintiff is expected to claim that it exercised control over the data produced under the ECP and the Mod 4 contract as part of an assertion that the Mod 4 contract was a cost-remibursement agreement for "experimental use" of the claimed inventions. The data rights provisions of the contract and procurement regulations counter plaintiff's claim. Under those provisions, the Navy had an unlimited right to distribute the data once it entered the contract.

Plaintiff's should be denied relief on this second ground.

**C. Conclusion**

Plaintiff's first ground for relief will require further development of the party's positions at trial because it is contingent upon the contentions to be made at trial. That portion of the motion should be denied, with leave to refile if the need arises.

Plaintiff's second ground lacks merit and should be denied.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN FARGO
Director

*s/Gary L. Hausken*

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

Attorneys for Defendant, United States

March 17, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | No. 92-580 |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE [DOCKET NO. 295]**

# EXHIBIT 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 92-580 C |
| v. | ) | |
| | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S FIRST AMENDED ANSWERS TO PLAINTIFF'S INTERROGATORIES 1-6**

In light of this Court's interpretation of similar interrogatories in *Zoltek Corp. v. United States*, Court of Fed. Claims No. 96-166, and to clarify Defendant's answers in light of the expert reports produced by the parties, the United States hereby provides amended answers to plaintiff's interrogatories nos. 1-6.

Interrogatory No. 1

For each of U.S. Patent Nos. 3,921,120 and 4,029,233, Sparton requests the United States to identify the basis for the contention that Sparton has granted to the United States a license or lawful right to use or manufacture the subject matter of the claims of the '120 and '233 patents, including but not limited to:

(a) identification of the basis in statute and case law upon which the United States contends an implied license or right to use was established;

(b) identification of all documents or other evidence which the United States contends

establishes the existence of an implied license or right to use/manufacture, and specifically how such evidence establishes the existence of an implied license or right to use/manufacture; and

(c) identification of the dates through which the United States contends an implied license or right to use/manufacture existed.

*Answer to Interrogatory No. 1*

(a) The legal basis for defendant's defense of a lawful right to use the inventions claimed in the '120 and '233 patents is the *Christian* Doctrine, *see G.L. Christian & Associates v. United States*, 312 F.2d 418, *aff'd on reh'g*, 320 F.2d 345 (1963), and Armed Forces Procurement Regulation, §§ 7.301, 7.302, 7.302-23 and 9.107 (especially 9.107-1, 9.107-4 and 9.107-5) (1968-1972). With respect to the '120 patent, the Government may also assert a defense of lawful right based solely on the contractual provisions of Contract No. N00019-70-C-0133.

(b) The principal documents on which the United States will rely at trial to prove a lawful right to use the inventions claimed in the '120 and '233 patents are:

*i.*. the '-0465 contract;

*ii.* ECP 0465-2;

*iii.* Plaintiff's briefs in opposition to the motion for summary judgment on the issued of invalidity;

*iv.* Plaintiff's briefs on its appeal to the Court of Appeals for the Federal Circuit;

*v.* the opinion of the 2005 Federal Circuit in this case;

*vi.* Exhibits 1-53 to Defendant's Motion for Partial Summary Judgment, filed on October 3, 1997;

*vii.* Contract No. N00019-70-C-0133;

*viii.* the following documents: SPA42084-SPA42088, SPA30734, SPA30710-SPA30712; and

*ix.* Defendant's Summary Judgment Exhibit 10.

(c) The entire life of the patents-in-suit, *i.e.*, November 18, 1975 - June 14, 1994.

<u>Interrogatory No. 2</u>

Identify each basis for which the United States contends U.S. Patent No. 3,921,120 is invalid under 35 USC § 102(b) as asserted in paragraph 12 of the First Amended Answer.

*Answer to Interrogatory No. 2*

The United States responds that the basis for asserting invalidity of the '120 patent under 35 U.S.C. §102( b) in paragraph 12 of the First Amended Answer was the offer for sale that was the subject of Defendant's summary judgment motion filed on October 3, 1997.

<u>Interrogatory No. 3</u>

Identify each basis for which the United States contends U.S. Patent No. 4,029,233 is invalid under 35 USC § 102(b) as asserted in paragraph 12 of the First Amended Answer.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

June 27, 2006

Attorneys for the United States

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **"Defendant's First Amended Answers to Plaintiff's Interrogatories 1-6"** was forwarded by facsimile and first class mail, this 27th day of June, 2006, to:

Steven Kreiss, Esquire
1120 Connecticut Avenue, N.W.
Suite 240
Washington, D.C. 20036

Mary Mattocks
Mary Mattocks
Staff Assistant