**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 92-580C

Chief Judge Edward J. Damich

SPARTON CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE UNDER FED. R. EVID. 408

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN FARGO
Director

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

Attorneys for Defendant, United States

March 21, 2008

## TABLE OF CONTENTS


I. THE COURT SHOULD HEAR DEFENDANT'S MOTION. . . . . . . . . . . . . . . . . . . . . . . 2

A. THE GOVERNMENT'S MOTION WAS TIMELY FILED. . . . . . . . . . . . . . . . . . . . . . . . . 2

B. PLAINTIFF'S ASSERTION OF "LACK OF JUSTIFICATION" IS UNAVAILING. . . . . . . . . 4

II. PLAINTIFF WOULD HAVE THE COURT IGNORE RULE 408. . . . . . . . . . . . . . . . . . 5

A. PLAINTIFF CONFLATES RULE 408 WITH *CHEYENNE RIVER SOUIX* AND *WARD BAKING*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. USING THE SETTLEMENT OFFER AS A "FLOOR" IS IMPERMISSIBLE. . . . . . . . . . . . . . 7

C. PLAINTIFF'S CITATIONS OF AUTHORITY ARE MISLEADING. . . . . . . . . . . . . . . . . . . 8

III. PLAINTIFF'S REQUEST FOR SANCTIONS IS MERITLESS. . . . . . . . . . . . . . . . . . . 10

A. PLAINTIFF FAILS TO ESTABLISH ANY BASIS FOR SANCTIONS.. . . . . . . . . . . . . . . . . 11

B. THE GOVERNMENT'S MOTION IS NOT FRIVOLOUS.. . . . . . . . . . . . . . . . . . . . . . . . 12

C. THE REQUESTED SANCTION IS UNREASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . 13

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF CASES**

*Cheyenne River Sioux Tribe v. United States*,
806 F.2d 1046 (Fed. Cir. 1986) .......... 5, 6

*de Graffenried v. United States*,
25 Cl. Ct. 209 (1992).......... 9

*Finch v. Hughes Aircraft Co.*,
926 F.2d 1574 (Fed. Cir. 1991)........... 11-13

*Hughes Aircraft Co. v. United States*,
31 Fed. Cl. 481(1994),
*aff'd*, 86 F.3d 1566 (Fed. Cir. 1996),
*vacated and remanded*, 520 U.S. 1183 (1997),
*aff'd*, 140 F.3d 1470 (Fed. Cir. 1998). .......... 8

*ITT Corp. v. United States*,
17 Cl. Ct. 199 (1989).......... 9, 10

*Leesona Corp. v. United States*,
220 Ct. Cl. 234, 599 F.2d 958 (1979). .......... 7

*Micro Chemical, Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003).......... 3

*Penda Corp. v. United States*,
29 Fed. Cl. 533 (1993) .......... 9, 10

*Pitcairn v. United States*,
212 Ct. Cl. 168, 547 F.2d 1106 (1978). .......... 7, 9

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
324 F.3d 1346, 1358-59 (Fed. Cir. 2003). .......... 10

*Roberts Dairy Co. v. United States*,
208 Ct. Cl. 830, 530 F.2d 1342 (1976) .......... 6

*Tektronix, Inc. v. United States*,
213 Ct. Cl. 257, 552 F.2d 343 (1977).......... 7

*United States v. Ward Baking Co.*,
376 U.S. 327 (1964)........... 5, 6

## OTHER AUTHORITIES

28 U.S.C. § 1498. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

Fed. R. Evid. 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-6, 8-10, 12, 13

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE UNDER FED. R. EVID. 408**

The United States herein responds to "Sparton Corporation's Oppostion to Defendant's Motion in Limine to Preclude Settlement Offer as Evidence of Reasonable Compensation," (Plaintiff's Opposition or Pl. Opp.), Docket No. 321 (March 10, 2008). Plaintiff's Opposition argues both the merits of the motion and the procedural issue of whether it was timely filed. As to the merits, plaintiff's argument flies in the face of the unambiguous language of Federal Rule of Evidenc 408 and therefore must be rejected. Further, plaintiff's argument is contrary to established precedent of the Supreme Court and the Federal Circuit. On the procedural issue, plaintiff relies on the statements of its experts, Messrs. Donald Martin and Gerald Martin. Neither statement, however, evinces any intention by *plaintiff* to rely on the information at trial. To be sure, Donald Martin's statement is merely a passing reference in a footnote, and Gerald Martin stated during his deposition that he had never seen any of documents related to the settlement and only heard about through another of plaintiff's employees, John Bodde.

Plaintiff further attacks the defendant's motion as being "frivolous" and seeks, as a sanction, the entry of 12 documents[1] that plaintiff failed to include in its exhibit list and for which it has never previously identified as potential trial exhibits.

---

[1] For reasons that are not explained, plaintiff has bundled all twelve documents into a single exhibit, identified as No. 500. The exhibit is neither a single document nor a complete grouping of related documents. Rather, plaintiff has selected documents based on unidentified criteria.

## I. THE COURT SHOULD HEAR DEFENDANT'S MOTION

The court should hear defendant's motion because it was timely filed. The motion does not seek to deny all use of the exhibits, but only the use of the settlement offer as evidence of the quantum of damages.

### A. THE GOVERNMENT'S MOTION WAS TIMELY FILED

The court's Pre-Trial Order, Docket No. 290 (June 20, 2007) sets two distinct dates for filing motions in limine. Paragraph 2.c.i(4) required that all motions in limine objecting to the opposing party's witnesses or exhibits be filed by January 22, 2008.[2] And paragraph 3.b.iii requires that all other motions in limine be filed "at least two weeks before the pretrial conference," *i.e.*, no later than March 6, 2008.

The motion filed by defendant is of the latter variety. The government does not seek to exclude the exhibits and, indeed, has agreed that they are admissible for other purposes. *See* Def. Mot. in Limine to Preclude Use of Pl's Settlement Offer as Evid. of Reasonable Compensation, Docket No. 311, 6-8 (Feb. 20, 2008) (Defendant's Motion). Defendant's motion is limited to barring the use of the evidence for a specific purpose: proof of damages.

While plaintiff opposes the government's motion, its argument is confined to factual matters and does not address the application of those facts to the court's order or to Federal Rule of Evidence 408. Sparton Corp's Opp. to Def's Mot. in Limine to Preclude Settlement Offer as Evid. of Reasonable Compensation, Docket No. 321, 1-3 (Mar. 10, 2008) (Plaintiff's Opposition). Plaintiff's "analysis" amounts to no more than serial allegations of frivolity.

---

[2] This date was not affected by the court's Revised Pre-Trial Order, Docket No. 298 (Jan. 28, 2008), which reset the dates for other filings.

Nor do the facts assist plaintiff. Plaintiff correctly notes that two of its experts commented on the settlement offer. Pl. Opp. at 3. Dr. Donald Martin mentions it in a footnote of his report. PX-248 at P248.15 n.16. Mr. Gerald Martin also identifies the settlement amount as a factor. But these reports are not plaintiff's position at trial. And while the experts are misinformed, the use of the settlement figures in their reports only goes to the weight of their testimony not its admissibility.[3]

The court's "gatekeeper" function is not to be exercised to exclude testimony merely because there are disputes over what information is relevant. Rather, the "gatekeeper" function is to be exercised only where the expert's methods, or the principles and concepts underlying those methods, lack reliability. *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("[d]efendants confuse the requirement for sufficient facts and data with the necessity for a reliable foundation in principles and method, and end up complaining that [the expert's] testimony was not based on 'reliable facts'"). As the Federal Circuit further noted:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

*Id.* In this instance, the dispute is not over the principles and methods used by Dr. Donald Martin and Mr. Gerald Martin in reaching their conclusions: the dispute is over the conclusions reached and the admissibility of facts underlying those conclusions. *Micro Chemical* teaches that, under

---

[3] If this case were being tried to a jury, the reports themselves should be excluded due to the danger of unfair prejudice. Since this case is being tried to the judge alone, the danger of unfair prejudice is removed. In any event, the court has already been informed of amount as part of this motion and the court can certainly ignore that portion of the reports dealing with the settlement in this instance.

the present facts, the better course is to resolve the issues as to admissibility of the evidence, but allow the expert to testify.

### B. Plaintiff's Assertion of "Lack of Justification" is Unavailing

Plaintiff's claim that defendant has not justified the filing of its motion is drawn narrowly around the amount of notice that the government was afforded. In essence, plaintiff asserts that because the references to the settlement figure appears in the reports of Dr. Donald Martin and Mr. Gerald Martin, the government should have known that it would argue that the settlement agreement would be used as a basis for plaintiff's contentions.

While Dr. Donald Martin does address the settlement offer, he does so only in a footnote. PX-248 at P248.15 n.16. There is no indication in the remainder of his report that *his opinion* is based on that settlement offer. PX-248.

Mr. Gerald Martin, on the other hand, unquestionably relies on the settlement offer as part of his opinion. PX-246 at P246.3. But, during his deposition, Mr. Martin acknowledged that he had not seen any documents related to that settlement offer and that it had been related to him only by Mr. John Bodde, a former Sparton employee. Attachment 3 at A33-34.

In any event, this motion was presented well before trial and well before the March 6, 2008 date for all motions in limine under paragraph 3.b.iii of the Pre-Trial Order. Further, as explained below, plaintiff's use of the settlement offer to establish the amount of compensation is clearly barred by Federal Rule of Evidence 408. Thus, defendant's entitlement to relief is clear and plaintiff has failed to demonstrate any prejudice from the timing of the motion.

## II. PLAINTIFF WOULD HAVE THE COURT IGNORE RULE 408

Turning to the merits of the motion, plaintiff baldly argues that the court should ignore Rule 408 because the "two-fold rational [sic] behind *Cheyenne River* [*Sioux Tribe v. United States*, 806 F.2d 1046 (Fed. Cir. 1986)] and [*United States v.*]*Ward Baking* [*Co.*, 376 U.S. 327 (1964)] is inapplicable to the case at bar." Pl. Opp. at 8. Plaintiff's argument would vitiate both Rule 408 and the *Ward Baking/Cheyenne River Sioux* doctrine.

### A. PLAINTIFF CONFLATES RULE 408 WITH *CHEYENNE RIVER SOUIX* AND *WARD BAKING*

Plaintiff asserts that, because this case does not fall into the "rationale" of *Ward Baking* and *Cheyenne Souix Tribe*, Rule 408 does not apply. In doing so, plaintiff confuses and conflates two separate, but corollary rules. First, Rule 408 determines, in general, the admissibility of evidence obtained during settlement negotiations. That rule provides:

> (a) Prohibited uses. – Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> > (1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or statements made in compromise negotiations regarding the claim, ….
>
> (b) Permitted uses. – This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. Second, the *Cheyenne River Sioux* and *Ward Baking* doctrine is a narrower, common law rule. That doctrine specifically precludes the enforcement of a settlement offer to which the parties have not agreed, particularly where the government is party. *See Ward Baking*, 376 U.S. at 333-35; *Cheyenne River Sioux*, 806 F.2d at 1050.

Here, plaintiff concedes that it is offering the evidence specifically for the purpose of establishing a "floor" on the royalty rate. Pl. Opp. at 4. Thus, the evidence is clearly being "offered to prove liability for … or amount of a claim" as proscribed by Rule 408 and is therefore inadmissible.

But, even if plaintiff was correct that the rate evidence was somehow admissible under Rule 408, *Ward Baking* would nonetheless preclude the enforcement of the settlement offer.[4] Thus, plaintiff's arguments based on the settlement offer are still contrary to law.

To be admissible, the evidence proffered for proof of settlement rates and amounts must meet both the requirements of Rule 408 and doctrine expressed in *Ward Baking* and *Cheyenne River Sioux*. The evidence proffered here meets neither.

[4] We note that plaintiff states that the Mr. Bodde and Mr. Allahut reached an agreement, although the Navy later denied any binding agreement was entered. *See* Pl. Opp. at 4-5. To the extent that this argument could be read to suggest that there was an enforceable agreement between the parties, it would remove this court's jurisdiction over the claim. *See Roberts Dairy Co. v. United States*, 208 Ct. Cl. 830, 530 F.2d 1342, 1358 (1976) (court has no jurisdiction over § 1498 claim if the alleged infringement was performed under a license or other lawful right to use the invention, even if required royalties were not paid). Accordingly, plaintiff's argument can only be read to suggest that Messrs Bodde and Alahut reached a tentative agreement that was subject to the approval of the duly authorized officers of plaintiff and the government.

### B. Using the Settlement Offer as a "Floor" is Impermissible

Plaintiff next argues that because of the conduct of the government in continuing to procure allegedly infringing sonobuoys and in "litigating the on-sale defense to a conclusion instead of reaching an amicable settlement," the offered rate "should be considered a rate floor." Pl. Opp. at 6. Plaintiff's argument seeks impermissible enhancement to the damages for the alleged conduct of the government.

It has been well established for over 25 years that a plaintiff suing under § 1498 is not entitled to enhanced damages for the manner in which the use of the invention occurred:

> An aggrieved party is entitled to receive only reasonable and entire compensation, not more than that. *Tektronix, Inc. v. United States*, [] 552 F.2d [343,] 351, 213 Ct.Cl. [257,] 272 [(1977). Unlike his counterpart in a private infringement suit, he is not entitled to be the recipient of increased damages heaped on other parties as punishment or deterrence.

*Leesona Corp. v. United States*, 220 Ct. Cl. 234, 599 F.2d 958, 969 (1979). But that is what plaintiff seeks here: it asks for an amount in excess of what it deemed reasonable during the administrative claim.

And plaintiff's argument is also logically flawed. Plaintiff's settlement offer can easily be viewed as a ceiling rather than a floor. *See Pitcairn v. United States*, 212 Ct. Cl. 168, 547 F.2d 1106, 1118 (1978). It was the highest amount that plaintiff was prepared to offer during the settlement negotiation and plaintiff was prepared to accept that amount in settlement of its claims.[5] Logically, the government would have opened negotiations with a smaller amount, and any potential settlement would have occurred between the two figures. As one would expect, the

---

[5] Notably, it was also a paid-up license for the 5-7 years remaining term of the patents. Pl. Opp., Exhibit A at P500.6.

patent owner's opening offer would thus be a ceiling, the prospective licensee's opening offer would be the floor and a final agreement would be between the two.

### C. PLAINTIFF'S CITATIONS OF AUTHORITY ARE MISLEADING

Plaintiff proceeds to cite a number of cases from this court, the Federal Circuit and the Court of Claims for the proposition that this court regularly allows admission of settlement offers as evidence of the quantum of compensation due in cases under § 1498. Plaintiff is misleading: none of the cases plaintiff presents involved *settlement offers or settlements.*

Plaintiff concluding statement summarizes its argument: "This type of evidence has been routinely admitted in this Court's proceedings in other cases in connection with the reasonable royalty determination. The policy reasons behind Rule 408 are inapplicable here." Pl. Opp. at 10. Plaintiff's argument suggests that the "other cases" also involved the application of Rule 408. They did not.

Plaintiff starts off with *Hughes Aircraft Co. v. United States*, 31 Fed. Cl. 481, 487 (1994), *aff'd*, 86 F.3d 1566 (Fed. Cir. 1996), *vacated and remanded*, 520 U.S. 1183 (1997), *aff'd*, 140 F.3d 1470 (Fed. Cir. 1998). In that case, Hughes Aircraft had made three license offers: to Philco-Ford, TRW and Messerschmitt-Bolkow-Blohm (MBB). 31 Fed. Cl. at 486-87. The court found that the offers Philco-Ford and TRW were not settlement offers, but traditional licensing negotiations and therefore allowed evidence of those offers to be presented. *Id.* The court then found that the MBB negotiation was a settlement negotiation, but only admitted a letter from Hughes that stated Hughes' "normal royalty rate" for the patent in suit. *Id.* The two offers and the letter in *Hughes* were admitted because each was not within the scope of Rule 408. The

offers were found to be licensing negotiations or statements of "normal" rates, not offers to settle litigation.

Plaintiff also cites *Pitcairn*, 547 F.2d at 1118. In that case, the patent owner entered a license agreement with United Aircraft and made the same rate available to all other manufacturers. 547 F.2d at 1116-17. Here, again, the license was made outside the context of litigation, and thus the information did not relate to settlement. This prompted the court to write:

> As for the offers not translated into actual agreements, the authorities which reject such use concern attempts by the condemnee to seek a higher award on the basis of offers made by or to him (or to utilize a third-party offer with respect to comparable property to gain a higher award). They do not involve an effort by the condemnor to rely on an offer made by the condemnee as proof of the value of the property. It is obvious that, although the inherent defects of offers made by condemnee-owners prevent the opposite party, the condemnor, from being bound by such offers, there is no reason why the owner himself should not be held to his own offer. In this instance, the post-1946 offers were not casual or ad hoc but were circulated 'fairly widely' in the industry. It is appropriate to take them into account and to give them great weight.

547 F.2d at 1116-17 (citation of authority omitted).

The *Pitcairn* court's statement is apropos here. Notably, here it is plaintiff trying to use its own litigation-based offer to gain a higher award from the court; the government is not trying to use the evidence against plaintiff. Thus, this case falls squarely in the class of cases where the *Pitcairn* court would deny admission of the evidence.

Plaintiff's remaining citations – *de Graffenried v. United States*, 25 Cl. Ct. 209 (1992); *ITT Corp. v. United States*, 17 Cl. Ct. 199 (1989); and *Penda Corp. v. United States*, 29 Fed. Cl. 533 (1993) – also involved license offers, not settlement offers. For example, in *de Grafenried*, the court looked to the patent owners past licensing negotiations. 25 Cl. Ct. at 218, 222. The court did not discuss whether those negotiations involved settlement of a dispute or whether the negotiations fell within Rule 408. Similarly, Rule 408 is not discussed in *ITT*. 17 Cl. Ct. at 203-

07. Contrary to plaintiff's speculation, the *ITT* opinion offers no basis for concluding that either the ITT/Hughes or the ITT/Allied Corp. licenses at issue there were the result of a settlement. Finally, the court never discussed whether the agreements at issue in *Penda*, with Cadillac Products and Shuert-Oakland, were subject to Rule 408, but treated the agreements as commercial licenses. 29 Fed. Cl. at 575.

None of these cases support plaintiff's contention that evidence of settlement discussion as to rates or amounts can be admitted as "otherwise discoverable" or for "another purpose,"[6] nor do the cases stand for the proposition that the court is free to ignore the Rule 408, as plaintiff suggests.

## III. PLAINTIFF'S REQUEST FOR SANCTIONS IS MERITLESS

Finally, plaintiff asserts that the government's motion was without "justification" and that the "weight of authority in the Court is plainly against" the motion. Therefore, plaintiff asks the court to allow plaintiff to add the documents attached to its Opposition to its exhibit list as a sanction that allegedly "unjustified" acts. Plaintiff is wrong on all counts.

Plaintiff's first and second bases are, in actuality only one. This is so because plaintiff has failed to assert any lack of "justification" other than the asserted lack of precedent. And, even if some argument could be made with respect to the alleged lack of justification – and plaintiff has not – the requested sanction is not a reasonable remedy for the allege misconduct.

---

[6] We note that a baseless assertion of frivolity can be itself frivolous and sanctionable. *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1358-59 (Fed. Cir. 2003).

### A. PLAINTIFF FAILS TO ESTABLISH ANY BASIS FOR SANCTIONS

Plaintiff's does not present a legal basis for which it seeks sanctions. Sanctions may be awarded under at least three theories. RCFC 11 and 37 both provide for sanctions. The third basis for sanctions would be the inherent power of the court to punish contempts. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

RCFC 37 is only applicable to discovery matters, and therefore cannot form the basis for the present motion. That leaves either Rule 11 or the inherent power of the court as the basis for the present sanctions request. Rule 11 requires that requests for sanctions be made by separate motion, that the motion "describe the specific conduct alleged to violate subdivision (b)" of Rule 11 (which defines four categories of conduct that are sanctionable), and that it be served at least 21 days prior to filing. RCFC 11. Plaintiff has not complied with any of these requirements and, accordingly, the motion cannot be considered as grounded on that rule.

The remaining possible base is the inherent power of the court. Because the inherent power is potent, it must be used with "restraint and discretion." *Chambers*, 501 U.S. at 44. Further, the inherent power should be exercised only where remedies in the Rules are inadequate. 501 U.S. at 50. At this point, we turn to the alleged wrong that is to be sanctioned.

Plaintiff has alleged two bases for the claim of frivolity. First, plaintiff asserts that the defendant's justification for the timing of the motion is "clearly wrong" and therefore "frivolous." Pl. Opp. at 3, 10. Second, plaintiff suggests that, on the merits, the "weight of authority in this court is plainly against defendant's position." Pl. Opp. at 10.

The Federal Circuit has defined two types of frivolity. *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574 (Fed. Cir. 1991). While these two types have been defined in terms of appeals, the categories apply equally well to trial courts. The first category of frivolous action is where the

"legal authority contrary to [the] position [of the party charged with frivolous behavior is] so clear that there really is no [justicable] issue," *i.e.*, the position taken is contrary to authority, lacking support in law or fact, or "'brought without the slightest chance of success.'" *Finch*, 926 F.2d at 1579 (citations omitted). Such instances are denominated "frivolous as filed." The second variety is where the charged party's contentions are frivolous, even if a genuine justiciable issue may exist. *Id.* The Federal Circuit has found the following types of conduct to be encompassed by the latter type: "submitting rambling briefs"; "filing numerous documents containing irrelevant arguments and authority"; "seeking to relitigate issues already adjudicated"; failing to "present clear or cogent arguments"; "failing to exclude … individual opponents as to whom there is no basis for [further action]"; "rearguing frivolous positions for which sanctions had already been imposed"; "citation of inapplicable or irrelevant authorities"; and "misrepresenting facts or law to the court." *Finch*, 926 F.2d at 1579. These instances are demoninated "frivolous as argued."

Other than bandying about the word "frivolous," plaintiff does not explain what conduct plaintiff finds so egregious as to require sanctions. Plaintiff has not provided the court with an adequate basis in law or fact for the requested sanctions.

## B. The Government's Motion Is Not Frivolous

The only contentions that plaintiff seems to raise are that (1) defendant was lacking *any* justification for filing the motion, and (2) on the merits, the "weight of authority in this court is plainly against defendant's position." Pl. Opp. at 10. Defendant's motion seeks to have the court enforce Federal Rule of Evidence 408. The motion is supported by cogent argument and appropriate citations to both the Rule and precedential case law. And, at less than 10 pages, the

motion is not rambling, incoherent, or prolix. Thus, plaintiff seems to suggest that it is asserting the "as filed" type of frivolity.

Turning first to plaintiff's contention that the "weight of authority" is against defendant, we note that plaintiff's argument is insufficient to warrant sanctions. In order to warrant sanctions for being frivolous as filed, the filing must "lacking support in law or fact," or be "'brought without the slightest chance of success.'" *Finch*, 926 F.2d at 1579. Defendant's motion is neither. As discussed above, the motion certainly finds ample support in Rule 408. It is also supported by both *Cheyenne River Sioux* and *Ward Baking*. Plaintiff has not shown that these authorities are so contrary to defendant's position that the motion was "'brought without the slightest chance of success.'" *Finch*, 926 F.2d at 1579. Indeed, the cited authorities do support defendant's argument. Accordingly, the request for sanctions must be denied as to this basis.

We turn finally to the plaintiff's claim that defendant "did not have any justification for its filing" of the motion. Pl. Opp. at 10. Here, again, we disagree with plaintiff. Defendant has presented its reason for the timing of the filing both in the original motion and in this reply, above. While plaintiff's position is to the contrary, defendant's position is not so devoid of reasoning as to be "without the slightest chance of success." *Finch*, 926 F.2d at 1579. Thus, here again, plaintiff has failed to establish that the motion was frivolous as filed. Indeed, the motion is not frivolous and no sanctions should be awarded.

### C. THE REQUESTED SANCTION IS UNREASONABLE

Even if sanctions were to be awarded, plaintiff's proposed sanction, allowing plaintiff to add twelve more documents (collectively PX-500) to its exhibit list, lacks any rational basis. In

substance, plaintiff requests that the court excuse plaintiff's tardiness in identifying the additional documents as a reward for the alleged failure of the government to bring its motion at an earlier time. Such a ruling court, would not encourage compliance with the court's rules and orders, and would grant a windfall to plaintiff. To be sure, should the court find that the motion was not timely filed, the customary sanction is merely to refuse to hear the motion. Such a ruling deters belated filings by denying relief.

Here, however, plaintiff does not ask that the court refuse to hear the motion. Rather, it asks that court allow plaintiff to belatedly file additional exhibits. This "tit-for-tat" approach fails to find any support in logic or law. Plaintiff cites no authority for its request to add the exhibits *as a sanction*. Rather it simply argues for the result. But, of far greater import, plaintiff's request would not encourage compliance with the court's Rules, it would encourage gamesmanship.

What plaintiff seeks is the court's permission for plaintiff to ignore the court's Revised Pretrial Order, Docket No. 298, which required plaintiff to file its exhibit list and exhibits by February 4, 2008. Plaintiff essentially asks that the court allow plaintiff to violate the court's orders and Rules as a sanction for defendant's alleged misbehavior. We fail to see how plaintiff's argument furthers the interest of justice in any way.

Finally, Plaintiff's Propose Exhibit 500 is incomplete. We note that plaintiff brief argues for two separate rates found in the proposed Plaintiff's Exhibit 500: the initial 5 % rate and a subsequent 5.5% rate. Plaintiff's proffered exhibit indicates that the royalty base for the 5.5 % rate was smaller than the royalty base for the 5 % rate, *see* P500.7 (basing 5.5 % royalty on cost of "deployment components"). However, plaintiff has not provided the documents necessary to determine precisely which parts are to be included in the smaller base used with the 5.5 % rate.

If the court were to enter Plaintiff's Exhibit 500, the attachments to the letters that describe the parts in the royalty base should be included in accordance with Fed. R. Evid. 106.

## IV. CONCLUSION

For the reasons stated above, we request that the court grant defendant's motion in limine to preclude the use of the settlement negotiations as evidence of the amount of compensation to be awarded. Plaintiff's request for sanction must be denied for failure to state any basis for granting the sanction and because the relief sought is not warranted.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN FARGO
Director

*s/ Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

March 21, 2008

Attorneys for Defendant, United States

# ATTACHMENT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COPY

SPARTON CORPORATION,
Plaintiff,
-vs-
CASE NO. 92-580C
THE UNITED STATES
Defendant.

* * * * * * * * * * * * * * * * * * * *

DEPOSITION OF: GERALD MARTIN
DATE TAKEN: SEPTEMBER 7, 2006
TIME: 8:53 A.M.
PLACE: SPARTON CORPORATION
5612 JOHNSON LAKE ROAD
DELEON SPRINGS, FLORIDA 32130
REPORTED BY: SUSAN MCGEE, RPR, RMR,
AND NOTARY PUBLIC

* * * * * * * * * * * * * * * * * * * *

APPEARANCES:

STEVEN KREISS, ESQUIRE
1120 CONNECTICUT AVENUE, N.W., SUITE 240
WASHINGTON, DC 20036

APPEARING ON BEHALF OF THE PLAINTIFF

GARY L. HAUSKEN, ESQUIRE
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
COMMERCIAL LITIGATION BRANCH
1100 L. STREET, NW, ROOM 11114
WASHINGTON, DC 20005

APPEARING ON BEHALF OF THE DEFENDANT

patents in order to meet the specs.

Q Do you know that, or is that something that has been told to you?

A I rely on the testimony of people like Charlie Boyle. That's the only way they could have done it.

Q Okay. And that's -- that's something that's not in your expertise?

A That's correct.

Q Okay. So I'll get to ask him about that.

A Yeah.

Q Okay. Let's go down to the next paragraph then. Again, this is kind of lengthy. So what I would like to do is kind of break it up and just ask you about some of these parenthetically numbered sections.

The first one, Sparton offered the Navy a settlement license about February 11, 1981 at a 5 percent rate on all sales of sonobuoys or other products utilizing the patented inventions.

Do you see that?

A Yes.

Q Now, this was -- it said February 11th, 1981 -- was a period in time when you were not employed by Sparton?

A That's correct.
Q Have you seen any documents that describe that offer?
A No.
Q Were you told about that offer?
A Yes.
Q By whom?
A John Bode.
Q How -- what, to the best of your recollection, did he tell you about that offer?
A As I recall, he said they made the offer and the Navy was in the process of accepting it, and then someone up the ladder stopped the whole thing and said we're not gonna pay them a penny. That's the way it was told to me.
Q Okay.
A And there's no more negotiations. It's flat rejected.
Q And did he -- he was the one that told you that that happened in approximately February of -- February 11th of 1981?
A He said it was about that time period, yes. I -- I -- if -- I assume he had some sort of offer on the table --
Q Uh-huh.