**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 92-580 C |
| v. | ) | |
| | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION BY THE UNITED STATES FOR EXPEDITED RELIEF IN THE FORM OF AN ORDER ENTERING MS. ROWE AS A QUALIFIED PERSON UNDER THE STIPULATED PROTECTIVE ORDER**

On April 8, 2008, Defendant moved for emergency, expedited relief because plaintiff had objected to permitting Ms. Julia Rowe, an assistant to Mr. McGavock, access to protected information in accordance with the Stipulated Protective Order (May 26, 1996). The court ordered plaintiff to respond no later than April 11, 2008. Order, April 10, 2008 [Docket No. 329]. Plaintiff responded on April 11, as ordered. Pl's Response to Def's "Emergency Mot. … for … an Order Entering Ms. Rowe as a Qualified Person under the Stipulated Protective Order" [Docket No. 328], Docket No. 330 (Pl. Opp.). Plaintiff's response demonstrates that defendant's concerns were justified.

**PLAINTIFF'S OBJECTION SHOULD BE OVERRULED AS LACKING ANY BASIS**

Plaintiff does not attempt to provide any basis for its objections to Ms. Rowe's qualifications. Rather, plaintiff simply argues that Ms. Rowe would be an additional person under the Stipulated Protective Order and, therefore, plaintiff should be entitled to add three people with access pursuant to the Stipulated Protective Order, regardless of their qualifications. The logic of this "trade request" (Pl. Opp. at 3) escapes us.

Plaintiff asserts that the defendant's motion fails to provide the "entire 'picture.'" Pl. Opp. at 1. Plaintiff is correct: when defendant filed its motion, plaintiff was only requesting that two of its attorneys be provided access under the protective order, Messrs. Thomson and Lindsey. The day after the motion was filed, plaintiff requested that Mr. Gerald Martin also be granted access to proprietary information. Plaintiff now says the price of Julia Rowe's admission is not two, but three people of Sparton's choosing: Messrs. Thomson, Lindsey and Martin. *See* Pl. Opp. at 5. But plaintiff's argument amounts to no more than a request that the court abdicate reason in favor of barter. *See* Pl. Opp. at 6 ("Sparton submits that defendant's motion should be denied or declared moot by the designation of all herebefore named individuals under the stipulated protective order"). Quite simply, plaintiff looks not to the applicant's potential conflicts that may lead to inappropriate disclosure of the protected information. Rather, plaintiff asks "a trade" of its counsel and former employee for Ms. Rowe.

In response to the court's Order, Plaintiff for the first time suggests that its objection is due to the number of assistants that Mr. McGavock has working on the case. Yet, even now, plaintiff does not affirmatively state such an objection. Rather, as if by slight of hand, plaintiff

argues that "[d]efendant has not explained to Sparton why Mr. McGavock now needs four, instead of the original three, assistants to assist him." Neither plaintiff's initial response letter of April 7, 2008 (Def. App. at A1) nor plaintiff's further response letter of April 8, 2008 (Pl. Exihibit B) contained *any* objection based on the number of assistants previously qualified.

Nor should defendant be compelled at this late date to explain the need where, as here, plaintiff failed to state *any* basis for its original objection. Nonetheless, the answer is that Mr. Bailey is no longer working on this case and Ms. Rowe replaces him.

Plaintiff's reference to the proposed actions of Messrs Thomson and Lindsey is simply a diversion. The government has not objected to Messrs Thomson and Lindsey having access under the Stipulated Protective Order.[1] We think that, in this case, each attorney's agreement to submit to the court's authority is sufficient to check any possible misconduct. Notably, this court now has the power to sanction Messrs. Thomson and Lindsey for any misconduct, can disbar them from this court, and, more importantly, can refer any complaints to any state bar to which either is admitted for the full range of disciplinary actions available to that bar.

However, plaintiff for the first time informs the court and defendant that "Messrs. Thomson and Lindsey are attorneys with a local firm in Jackson, Michigan, *which represents Sparton*." Pl. Opp. at 4 (emphasis added). This fact was conspicuously absent from plaintiff's April 7, 2008 letter. Def. App. at A1. But plaintiff then immediately turns and asserts: "They are neither patent attorneys nor knowledgeable of the substantive issues in this case. *They are not*

[1] We note that Sparton's in-house counsel was previously granted access to proprietary information by consent of the Government. But there is a substantial difference between a party's former employees, like Mr. Gerald Martin, who have loyalty to the employing party, and counsel or outside consultants, such as Mr. McGavock and his staff, for whom breaches of protective orders can affect not only their professional standing, but their livelihood.

*assisting Sparton's counsel.* They are only assisting Mr. Boyle." *Id.* (emphasis added). Messrs. Thomson and Lindsey are obviously not assisting Mr. Boyle out of magnanimity or duty to the legal profession, but because of their loyalty to Sparton Corporation. Their representation of Sparton was certainly a relevant fact that should have been disclosed initially.

Further, Sparton's statements in response to this motion are strangely at odds with Sparton's own contentions as to why it thought such a "trade" was necessary in the first place. Plaintiff now asserts that Messrs. Thomson's or Lindsey's access to protected information is only to "prevent any innocent violation of the protective order." Pl. Opp. at 3. To be sure, plaintiff originally asserted that Messrs Thomson and Lindsey required access to proprietary information without any qualification. Def. App. at A1. Indeed, that is why Messrs. Thomson and Lindsey completed declarations in compliance with the Stipulated Protective Order. Def. App. at A2-A5. Now, plaintiff asserts that

> Mr. Thomson or Mr. Lindsey will merely assist Mr. Boyle in removing or replacing documents from the referenced loose leaf binders already supplied to this Court. In other words, *Mr. Thomson or Mr. Lindsey will not review any confidential information contained in documents marked confidential or proprietary under the protective order.*

Pl. Opp. at 3 (emphasis added). Notably, Sparton never made this argument in its correspondence with the government. Def. App. at A1; Pl. Exhibit B. Plaintiff's statement is strange in that it claims that no confidential information will be reviewed. Presumably, therefore, all Messrs. Thomson and Lindsey needed was permission to be present "inside the bar." But plaintiff's counsel never addressed Mr. Boyle's need for assistance at trial, or the attendance of an attorney in Ann Arbor to assist Mr. Boyle, in any of the several conversations that this court has had with plaintiff to schedule Mr. Boyle's testimony. To be sure, plaintiff never informed

the court of its plan to have someone assist Mr. Boyle, and certainly did not indicate that a lawyer would be present, in Ann Arbor during the March 20, 2008 pretrial conference.

Plaintiff's newly stated objection to Ms. Rowe is meritless. The objection should be overruled and Ms. Rowe should be permitted access to protected information in accordance with the Stipulated Protective Order.

**PLAINTIFF HAS FAILED TO MOVE FOR AN ORDER OVERRULING DEFENDANT'S OBJECTIONS TO MR. MARTIN**

Unfortunately, this court's work is not finished with determination of the motion at hand. Near the end of its opposition, plaintiff makes an additional suggestion: "In view of the foregoing, Sparton submits that defendant's motion should be denied or declared moot by the designation of all herebefore named individuals under the stipulated protective order." Pl. Opp. at 6. With that statement, plaintiff seems to request that the court overrule defendants objections to Mr. Martin and allow him access to protected information. Plaintiff, however, has never affirmatively moved for such relief, as required by the court's rules. *See* RCFC 7(b)(1) ("An application to the court for an order shall be by motion which … shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought").

Even if the court were to consider plaintiff's improper request, it should not grant the relief sought. Plaintiff asks the court to grant Mr. Gerald Martin access to protected information because: "he then can review Mr. McGavock's expert report and testify in regard thereto, especially with respect to the royalty base." Pl. Opp. at 5. And plaintiff further states that Gerald Martin "is the only expert proferred by Sparton in regard to the royalty base issue." *Id.* While

that may be true, Sparton has also hired an outside expert, Dr. Donald Martin, to whom the government would not object. But, Sparton does not choose to have its outside expert gain access to proprietary information. Rather it chooses to have its "in-house" expert do that job. Sparton's choice should doom its request for relief.

Finally, Sparton argues "Mr. McGavock's expert report was marked confidential[[2]] by defendant." Pl. Opp. at 5. True, but that is because Mr. McGavock relies on information from many sources, including the Government's contractors, the Navy and Sparton.[3] And plaintiff has known that Mr. McGavock's report contained protected information for two years and yet did nothing to provide Gerald Martin with access to it. That Mr. McGavock's report is marked as containing proprietary information provides no basis for plaintiff's belated request for Gerald Martin to have access to protected information.

---

[2] "Confidential" as used in the Stipulated Protective Order and in the papers relating to this motion refers to proprietary and other business information that is subject to protection by the Order. It does not include information in the lowest tier of "classified information" under the national security laws of the United States.

[3] We also note that virtually every document produced by Sparton is marked as proprietary, including documents not originating with Sparton. *See, e.g.*, PX-236 (Mr. Martin's calculation of profit margins on Sparton contracts marked "Confidential"); DX-160 (Magnavox Report obtained by Sparton from DTIC marked as "Confidential" by Sparton). Sparton has previously complained that the Government's contractors should remove their protective markings. *See* Tr. at 46 (Feb. 5, 2006). But Sparton is apparently unwilling to remove is own protective markings. If Mr. McGavock's report is the only document at issue, defendant is willing to reconsider those markings and remove them in whole or in part. However, Sparton's own markings may be an impediment to that effort since Mr. McGavock relies on Sparton documents as well as those of other contractors.

## CONCLUSION

For the reasons stated above, defendant requests that the court overrule plaintiff's objections to Ms. Rowe and grant her access to protected information as provided in the stipulated protective order. Plaintiff has failed to present a motion for relief with respect to Mr. Gerald Martin and therefore the court should not entertain plaintiff's suggestion to grant access to Mr. Martin.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN FARGO
Director

*s/Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

April 14, 2008

Attorneys for Defendant, United States