Appendix C

Extract of Armed Services Procurement Regulation,
32 C.F.R., Part 9 (1969)

# CODE OF FEDERAL REGULATIONS

## TITLE 32

### Parts 9 to 39

### Revised as of January 1, 1969

CONTAINING A CODIFICATION OF DOCUMENTS OF GENERAL APPLICABILITY AND FUTURE EFFECT AS OF JANUARY 1, 1969

***With Ancillaries***

Published by the Office of the Federal Register, National Archives and Records Service
General Services Administration, as a Special Edition of the Federal Register
Pursuant to Section 11 of the Federal Register Act as Amended

51



# SUBCHAPTER A—ARMED SERVICES PROCUREMENT REGULATIONS—(Continued)

## PART 9—PATENTS, DATA, AND COPYRIGHTS


Sec.
9.000 Scope of part.

Subpart A—Patents

9.100 Scope of subpart.
9.101 [Reserved]
9.102 Authorization and consent.
9.102–1 Authorization and consent in contracts for supplies or services.
9.102–2 Authorization and consent in contracts for research or development.
9.103 Patent indemnification of Government by contractor.
9.103–1 Patent indemnification in formally advertised contracts—commercial status predetermined.
9.103–3 Patent indemnification in negotiated contracts.
9.103–4 Waiver of indemnity by the Government.
9.104 Notice and assistance.
9.106 Classified contracts.
9.106–1 Classified contracts—contracting officer's duties.
9.106–2 Classified contracts relating to atomic energy.
9.107 Patent rights under contracts for research and development.
9.107–1 Introduction.
9.107–2 General.
9.107–3 Policy.
9.107–4 Procedures.
9.107–5 Clauses for domestic contracts.
9.107–6 Clause for foreign contracts.
9.107–7 Contracts relating to atomic energy.
9.107–8 Contracts placed for NASA.
9.107–9 Contracts relating to space.
9.108 Patent rights under contracts for personal services.
9.109 Administration of patent rights clauses.
9.109–1 Applicability.
9.109–2 Follow-up by Government.
9.109–3 Maintenance and use of records of performance.
9.109–4 Conveyance of invention rights to Government.
9.109–5 Register of Government rights in inventions.
9.110 Reporting of royalties—anticipated or paid.
9.111 Refund of royalties.
9.112 Adjustment of royalties.

Subpart B—Data and Copyrights

9.200 Scope of subpart.
9.201 Definitions.
9.202 Acquisition of rights in technical data.
9.202–1 Background.
9.202–2 Policy.
9.202–3 Procedures.
9.203 Contract clauses.
9.204 Contract clauses; special.
9.204–1 Limitation on Government's right of publication for sale to the general public.
9.204–2 Production of motion pictures, histories, and other works.
9.204–3 Histories and other works.
9.205 Contracts for acquisition of existing works.
9.205–1 Off-the-shelf purchase of books and similar items.
9.205–2 Purchase of existing motion pictures or television recordings.
9.206 Contracts to be performed outside the United States.
9.207 Data—Withholding of payment.
9.207–1 General.
9.207–2 Clauses.

Subpart C—Foreign License and Technical Assistance Agreements

9.301 General.
9.301–1 Background.
9.301–2 Policy.
9.302 Foreign license and technical assistance agreements between the Government and domestic concerns.
9.303 Supply contracts between the Government and a foreign government or concern.
9.304 Foreign license and technical assistance agreements between domestic concern and foreign government or concern.
9.304–1 International Traffic in Arms Regulations.
9.304–2 Review of agreements.

Subpart D—Processing of Licenses, Assignments, and Infringement Claims

9.401 Policy.
9.402 Statutes pertaining to administrative claims of infringement.
9.403 Claims for copyright infringement.
9.404 Requirements for filing an administrative claim for patent infringement.
9.405 Indirect notice of patent infringement claims.
9.406 Investigation and administrative disposition of claims.
9.407 Notification and disclosure to claimants.
9.408 Settlement of indemnified claims.
9.409 Patent releases, license agreements, and assignments.
9.409–1 Required clauses.
9.409–2 Clauses to be used when applicable.
9.409–3 Additional clauses—contracts except running royalty contracts.

tional security, such application should be placed under an order of secrecy or the issuance of a patent should be otherwise delayed under pertinent U.S. statutes or regulations.

(c) Where the subject matter of this contract is classified for reasons of security, the Contractor shall not file, or cause to be filed in any country, other than in the United States as provided in (a) and (b) of this clause, an application or registration for a patent containing any of said subject matter without first obtaining written approval of the Contracting Officer.

(d) When filing any patent application coming within the scope of this clause, the Contractor shall observe all applicable security regulations covering the transmission of classified subject matter, and shall also promptly furnish to the Contracting Officer the serial number, filing date, and name of country of any such patent application. When transmitting the application to the U.S. Patent Office, the Contractor shall by separate letter identify by agency and number the contract or contracts which require security classification markings to be placed on the application.

[32 F.R. 522, Jan. 1, 1967]

### § 9.106–1 Classified contracts—contracting officer's duties.

(a) Upon receipt from the contractor of a patent application, not yet filed, which has been submitted by the contractor in compliance with paragraphs (a) or (b) of the clause in § 9.106, the contracting officer shall ascertain the proper security classification of the patent application. Upon a determination that the application contains classified material, the contracting officer shall inform the contractor of any instructions deemed necessary or advisable relating to transmittal of the application to the United States Patent Office in accordance with procedures in the Department of Defense Industrial Security Manual for Safeguarding Classified Security Information. If the material is classified "Secret" or higher, the contracting officer shall make every effort to notify the contractor of the determination within 30 days pursuant to paragraph (a) of the clause.

(b) In the case of all applications filed under the provisions of this section, the contracting officer, upon receiving the application serial number, the filing date, and the information furnished by the contractor under paragraph (d) of the clause, shall promptly submit that information to personnel having cognizance of patent matters in order that necessary steps may be taken to insure the security of the application.

(c) A request for the approval referred to in paragraph (c) of the clause in § 9.106 must be considered and acted upon promptly in order to avoid the loss of valuable patent rights of the contractor.

[32 F.R. 523, Jan. 1, 1967]

### § 9.106–2 Classified contracts relating to atomic energy.

Where the contract contains a Patent Rights clause which includes paragraph (l) of § 9.107–7, the instructions contained in such paragraph shall be followed in processing information regarding any Subject Invention (Classified or Unclassified), relating to the production or utilization of special nuclear material or atomic energy.

[32 F.R. 523, Jan. 1, 1967]

### § 9.107 Patent rights under contracts for research and development.

[29 F.R. 9754, July 21, 1964]

### § 9.107–1 Introduction.

On October 10, 1963, the President promulgated a Statement of Government Patent Policy applicable to all Executive Departments and Agencies (28 F.R. 10943–10946, October 12, 1963). This Statement is set forth almost verbatim in §§ 9.107–2 and 9.107–3. Essentially, the goal of the Statement of Government Patent Policy is to promote the development of inventions resulting from Federally sponsored research, so that the public can benefit from early civilian use of such inventions. The Statement identifies three categories of procurement situations in which the use of three different patent rights clauses will best serve this goal. In a first category of procurement situations, the goal of the Policy will be best served by the Government acquiring title to the inventions. In the second category, where the contractor has demonstrated a technical competence in the area and an ability to commercialize his inventions, the Policy Statement calls for the contractor or grantee to obtain title to the resulting patent, subject to a license in the Government. In such a situation, the normal incentives provided by the patent system are sufficient guarantee that the inventions will be exploited and developed for civilian use. In the third and final category, the division of patent rights is deferred until the invention is disclosed. This may be necessary where

67



the commercial interests of the contractor are not sufficiently established to give title to the contractor at the time of contracting. This brief general summary of the Policy Statement does not attempt, of course, to define the categories with precision; and, in any event, exceptions to the general rules are provided by the Policy for special situations.

[29 F.R. 9754, July 21, 1964]

## § 9.107-2 General.

(a) *Basic considerations.* (1) The Government expends large sums for the conduct of research and development which results in a considerable number of inventions and discoveries.

(2) The inventions in scientific and technological fields resulting from work performed under Government contracts constitute a valuable national resource.

(3) The use and practice of these inventions and discoveries should stimulate inventors, meet the needs of the Government, recognize the equities of the contractor, and serve the public interest.

(4) The public interest in a dynamic and efficient economy requires that efforts be made to encourage the expeditious development and civilian use of these inventions. Both the need for incentives to draw forth private initiatives to this end and the need to promote healthy competition in industry must be weighed in the disposition of patent rights under Government contracts. Where exclusive rights are acquired by the contractor, he remains subject to the provisions of the antitrust laws.

(5) The public interest is also served by sharing of benefits of Government-financed research and development with foreign countries to a degree consistent with our international programs and with the objectives of United States foreign policy.

(6) There is growing importance attaching to the acquisition of foreign patent rights in furtherance of the interest of United States industry and the Government.

(7) The prudent administration of Government research and development calls for a Government-wide policy on the disposition of inventions made under Government contracts reflecting common principles and objectives, to the extent consistent with the missions of the respective agencies. The policy must recognize the need for flexibility to accommodate special situations.

(b) *Availability of Government-owned patents.* Government-owned patents shall be made available and the technological advances covered thereby brought into being in the shortest time possible through dedication or licensing and shall be listed in official Government publications or otherwise.

(c) *Definitions.* As used in §§ 9.107—9.107-9, the stated terms are defined as follows:

(1) "Invention or invention or discovery" includes any art, machine, manufacture, design or composition of matter, or any new and useful improvement thereof, or any variety of plant, which is or may be patentable under the Patent Laws of the United States of America or any foreign country;

(2) "Contractor" means any individual, partnership, public or private corporation, association, institution, or other entity which is a party to the contract:

(3) "Contract" means any actual or proposed contract, agreement, grant, or other arrangement, or subcontract entered into with or for the benefit of the Government where a purpose of the contract is the conduct of experimental, developmental, or research work;

(4) "Made," when used in relation to any invention or discovery, means the conception or first actual reduction to practice of such invention in the course of or under the contract;

(5) "Governmental purpose" means the right of the Government of the United States (including any agency thereof, state, or domestic municipal government) to practice and have practiced (make or have made, use or have used, sell or have sold) throughout the world by or on behalf of the Government of the United States.

(6) "To the point of practical application" means to manufacture in the case of a composition or product, to practice in the case of a process, or to operate in the case of a machine or system and, in each case, under such conditions as to establish that the invention is being worked and that its benefits are reasonably accessible to the public.

[29 F.R. 9755, July 21, 1964]

## § 9.107-3 Policy.

(a) *Category I.* The Government shall normally acquire or reserve the right to acquire the principal or exclusive rights throughout the world in and to

any inventions made in the course of or under a contract where:

(1) A principal purpose of the contract is to create, develop or improve products, processes, or methods which are intended for commercial use (or which are otherwise intended to be made available for use) by the general public at home or abroad, or which will be required for such use by governmental regulations; or

(2) A principal purpose of the contract is for exploration into fields which directly concern the public health or public welfare; or

(3) The contract is in a field of science or technology in which there has been little significant experience outside of work funded by the Government, or where the Government has been the principal developer of the field, and the acquisition of exclusive rights at the time of contracting might confer on the contractor a preferred or dominant position; or

(4) The services of the contractor are

(i) For the operation of a Government-owned research or production facility; or

(ii) For coordinating and directing the work of others.

In exceptional circumstances, the contractor may acquire greater rights than a nonexclusive license at the time of contracting, where the Secretary certifies that such action will best serve the public interest. Greater rights than a nonexclusive license may be acquired by the contractor after the invention has been identified, where the invention when made in the course of or under the contract is not a primary object of the contract: *Provided*, The acquisition of such greater rights is consistent with the intent of this section and is a necessary incentive to call forth private risk capital and expense to bring the invention to the point of practical application.

(b) *Category II*. In other situations, where the purpose of the contract is to build upon existing knowledge or technology to develop information, products, processes, or methods for use by the Government, and the work called for by the contract is in a field of technology in which the contractor has acquired technical competence (demonstrated by factors such as know-how, experience, and patent position) directly related to an area in which the contractor has an established nongovernmental commercial position, the contractor shall normally acquire the principal or exclusive rights throughout the world in and to any resulting inventions, subject to the Government's acquiring at least an irrevocable nonexclusive royalty-free license throughout the world for governmental purposes.

(c) *Category III*. Where the commercial interests of the contractor are not sufficiently established to be covered by the criteria specified in paragraph (b) of this section, the final determination of rights shall be made by the contracting officer after the invention has been identified, in a manner deemed most likely to serve the public interest as expressed in this Policy Statement (see § 9.107-2 and other paragraphs of this section), taking particularly into account the intentions of the contractor to bring the invention to a point of commercial application and the guidelines of paragraph (a) of this section: *Provided*, That in the special situations set forth in § 9.107-4(c) (2), the contractor may acquire at the time of contracting greater rights than a nonexclusive license. In any case, the Government shall acquire at least a nonexclusive royalty-free license throughout the world for Governmental purposes.

(d) In the Category II and Category III situations, when two or more potential contractors are judged to have presented proposals of equivalent merit, willingness to grant the Government principal or exclusive rights in resulting inventions will be an additional factor in the evaluation of the proposals. In no event will contractors be asked to state their willingness to grant the Government principal or exclusive patent rights prior to a determination that proposals of equivalent merit have been presented.

(e) Where the principal or exclusive (except as against the Government) rights in an invention remain in the contractor, he should agree to provide written reports at reasonable intervals, when requested by the Government, on the commercial use that is being made or is intended to be made of inventions made under Government contracts.

(f) Where the principal or exclusive (except as against the Government) rights in an invention remain in the contractor, unless the contractor, his licensee, or his assignee has taken effective steps within three years after a patent issues on the invention to bring the invention to the point of practical appli-

57



cation or has made the invention available for licensing royalty-free or on terms that are reasonable in the circumstances, or can show cause why he should retain the principal or exclusive rights for a further period of time, the Government shall have the right to require the granting of a license to an applicant on a nonexclusive royalty-free basis.

(g) Where the principal or exclusive (except as against the Government) rights to an invention are acquired by the contractor, the Government shall have the right to require the granting of a license to an applicant royalty-free or on terms that are reasonable in the circumstances to the extent that the invention is required for public use by governmental regulations or as may be necessary to fulfill health needs, or for other public purposes stipulated in the contract.

(h) Where the Government may acquire the principal rights and does not elect to secure a patent in a foreign country, the contractor may file and retain the principal or exclusive foreign rights subject to retention by the Government of at least a royalty-free license for governmental purposes and on behalf of any foreign government pursuant to any existing or future treaty or agreement with the United States.

[29 F.R. 9755, July 21, 1964, as amended at 30 F.R. 6003, Apr. 29, 1965]

### § 9.107–4 Procedures.

(a) After appropriate consultation with legal, patent, and technical advisors, the contracting officer shall determine whether the Government or the contractor should acquire the principal or exclusive rights (hereafter these rights are referred to as "title") to any or all inventions made in the course of or under each contract and shall document the contract file to support his determination. The basic considerations and policy set forth above together with procedures in this part shall govern the making of this determination. The Preaward Patent Rights Documentation Checklist set forth in paragraph (h) of this section may be used in determining the appropriate Patent Rights clause to be incorporated in a request for proposals in procurements involving experimental, developmental, or research work. If the contracting officer determines that the Patent Rights (Title) clause (§ 9.107–5(a)) is applicable, that clause shall be the only Patent Rights clause used. If it is determined that the Patent Rights (Title) clause (§ 9.107–5(a)) is not applicable, the contracting officer shall include both the Patent Rights (License) (§ 9.107–5(b)) and Patent Rights (Deferred) (§ 9.107–5(c)) clauses in the request for proposals together with the statement: "The contracting officer will determine during negotiation which of these two patent rights clauses will be used in the contract, and the determination will be made in accordance with the guidelines set forth in ASPR 9–107." Except where the Patent Rights (Title) clause is applicable, DD Form 1564, "Preaward Patent Rights Documentation", may be included in each request for proposal. In the case of an unsolicited proposal, the contractor may be requested to complete that DD Form. The Checklist and the DD Form, if used, shall be made a part of the contract file.

(b) Category I—Where the contracting officer determines that proposed experimental, developmental, or research work falls within Category I set forth in § 9.107–3(a), the Patent Rights (Title) clause set forth in § 9.107–5(a) shall be included in the contract. When said determination is based on § 9.107–3(a)(3) notice to that effect will be included in the solicitation. If the contractor to whom the award is to be made challenges the applicability of this provision, the contracting officer will review the basis for his determination and provide the contractor with the reason for his conclusion. If the contracting officer and the contractor cannot then resolve the issue, the contracting officer will promptly forward the problem to the Head of the Procuring Activity for resolution. If award of the contract cannot be delayed, the contracting officer may proceed with the procurement pending resolution of the issue, provided the contract contains the Patent Rights (Title) clause set forth in § 9.107–5(a), accompanied by the following statement: "Contractor agrees to accept the Patent Rights Clause which is ultimately determined, in accordance with departmental procedures, to be the appropriate one." The contracting officer shall consider the following in making his determination:

(1) In the situation in Category I(i) in § 9.107–3(a), a principal purpose of the contract or a series of related contracts must be research or development work on an end item (a product or process) either (i) intended for use in the civilian economy, or (ii) which the general public

will be required by governmental regulation to use. End items of this nature would most likely be found in the field of Civil Defense.

(2) In the situation in Category I(ii) in § 9.107–3(a), a principal purpose of the contract must be directly concerned with the public health or public welfare (e.g., drugs, medical instruments, water desalinization, and weather modification or control), and not solely items of only military application.

(3) Under Category I(iii) in § 9.107–3 (a), the contract must be for an end product in a field of science or technology in which, at the time the contract is entered into, there has been little or no significant experience except for work funded by the Government or where the Government has been the principal developer. If the contracting officer determines that the proposed contract is in such a field of science or technology, he then shall determine whether the contractor would likely get a preferred or dominant commercial position in that field if he were permitted to acquire title to inventions made under the contract. It would be inequitable to other commercial manufacturers or sources to permit a contractor to acquire such a preferred or dominant commercial position based principally upon work funded by the Government.

(4) Under Category I(iv)(A) in § 9.107–3(a), a contract for the operation of a Government-owned production facility must call for experimental, developmental, or research work at such a facility. In Category I(iv)(B) the words "coordinating and directing the work of others" do not refer to the normal prime contractor-subcontractor relationship, but refer instead to a relationship in which a potential organizational conflict-of-interest exists. See § 1.113–2.

Notwithstanding any determination in accordance with this paragraph, in exceptional circumstances the contractor may acquire greater rights than a nonexclusive license at the time of contracting if the Secretary certifies that such action will best serve the public interest.

(c) Category II: Where the contracting officer determines that proposed experimental, developmental, or research work does not fall within Category I but does fall within Category II set forth in § 9.107–3(b) or within the special situations set forth in subparagraph (2) of this paragraph, the Patent Rights (License) clause set forth in § 9.107–5(b) shall be included (except when greater rights are acquired by the Government pursuant to § 9.107–3(d)).

(1) In determining whether such work falls within Category II, the contracting officer shall first determine whether the work is in a field of technology directly related to an area in which the contractor has an "established nongovernmental commercial position." In making this determination, the contracting officer should recognize that the ultimate goal of the policy is to move inventions into the stream of commerce through domestic sales or exports or through domestic and foreign licensing programs. A nongovernmental commercial position can be based upon sales or licensing of military or nonmilitary items to foreign governments, multinational organizations, or foreign nationals. In determining whether a contractor has an established nongovernmental commercial position, the contracting officer will consider and evaluate each known factor which relates to the contractor's ability and willingness to move inventions into the stream of commerce. Factors which typically should be considered as appropriate are:

(i) Whether the contractor is known in the trade as a manufacturer or source of products or services in the area involved; and

(ii) Whether the contractor either (*a*) is regularly engaged in the sale or licensing, whether domestic or foreign, of such products or services to the general public (including business concerns), foreign governments, multinational organizations or foreign nationals; or (*b*) has a record of developing nongovernmental commercial markets for inventions in the area involved.

(iii) Have a record of developing nongovernmental commercial markets for inventions in the area involved. A nongovernmental commercial position shall be deemed to include sales of military items to foreign governments or multinational organizations or licensing programs with respect thereto, as well as the export of nonmilitary items to foreign governments or foreign nationals or foreign licensing programs in connection therewith.

(2) The following are the special situations where the public interest in the availability of inventions would best be served by permitting the contractor to acquire greater rights than a nonexclu-

sive license at the time the contract is entered into:

(i) An educational or nonprofit institution has a definite, established policy, approved and promulgated by its governing body, of retaining title to inventions made by its employees or of requiring its employees to assign title to such inventions to a patent holding entity for the benefit of the institution, and which patent policy has been approved by the Department of Defense;

(ii) A newly-formed research and development contractor or a new independent, research and development division or subsidiary of an older contractor has a definite program for establishing a nongovernmental commercial position which is dependent on the protection afforded by title in inventions which may be made in the course of or under the contract (a contractor or division established more than five years shall not be considered "newly-formed");

*Provided, however,* That, in either case the procurement involved does not fall within Category I.

(d) *Category III.* Where the contracting officer determines that proposed experimental, developmental, or research work falls within Category III (set forth in § 9.107-3(c)) because it is not covered by the instructions in paragraphs (b) and (c) of this section, the Patent Rights (Deferred) clause in § 9.107-5(c) shall be included. However, in the case of prospective contractors organized for profit only considered under paragraph (c) of this section, the contracting officer shall affirmatively determine that the proposed contractor does not have a qualifying commercial position before the Deferred Clause is used, thereby settling as many questions as possible at the time of contracting. Many educational institutions or nonprofit organizations do not wish to acquire patents or do not have an approved patent policy; in such cases, the contract may include either the Patent Rights (Title) clause in § 9.107-5(a) or the Patent Rights (Deferred) clause in § 9.107-5(c), as appropriate. In the event an educational or nonprofit institution files an application for approval of its patent policy (see paragraph (c)(2)(i) of this section) the above procedure shall be followed pending such approval, and in such cases the contract may provide for substitution of the Patent Rights (License) clause in § 9.107-5 (b), in lieu of the patents rights clause used at the time of contracting, if such approval is obtained, except in procurements where the contemplated work under contract falls within the provisions of § 9.107-3(a).

(e) Where a contractor has acquired the title to an invention under a contract, the contracting officer may, in accordance with § 9.107-5, request written reports from the contractor as to:

(1) The commercial use that is being made or is intended to be made of such invention; and

(2) The steps taken by the contractor to bring the invention to the point of practical application, or to make the invention available for licensing.

(f) In the special cases covered by the sections listed below, the contracting officer shall follow the instructions and include the clauses required in such sections:

(1) Section 9.107-6, concerning foreign contracts;

(2) Section 9.107-7, concerning contracts relating to atomic energy;

(3) Section 9.107-8, concerning contracts placed for the National Aeronautics and Space Administration;

(4) Section 9.107-9, concerning contracts relating to space; and

(5) Section 9.108, concerning contracts for personal services.

(g) By definition, the term "contract" includes subcontracts; hence, the policy in §§ 9.107-2 and 9.107-3 applies where a purpose of a subcontract is experimental, developmental, or research work. So that the policy is carried out at all contract and subcontract levels, subcontracts generally shall include the same patent rights provision (Title or License) contained in the prime contract. However, there may be exceptions to this general rule, as for example where the prime contract comes within subparagraphs (3) or (4) in § 9.107-3(a), but the subcontract is not subject to the same considerations. Another exception, though less likely, may occur where the prime contract is subject to the provisions of Category II, but the nongovernmental commercial position of the subcontractor is not sufficiently established and, consequently, the subcontract falls within the provisions of Category III.

(h) *Preaward patent rights documentation checklist.*

(Authorized for local reproduction)

PREAWARD PATENT RIGHTS DOCUMENTATION CHECKLIST

Procurement Identification: ______________________

Purpose of Proposed Procurement: ______________________

1. Is a principal purpose of the proposed contract, either by itself or as one of a series of directly related contracts, to create, develop or improve an end item intended for use in the civilian economy?[1] (See ASPR 9-107.3 (a)(i) and 9-107.4(b)(1).) ______ ☐ Yes ☐ No

If "Yes," identify the end item and briefly describe its intended use in the civilian economy.

2. Is a principal purpose of the proposed contract, either by itself, or as one of a series of directly related contracts to create, develop or improve an end item which will be required for use by the general public by a Government regulation ______ ☐ Yes ☐ No

If "Yes," identify the end item and cite applicable regulation. (See ASPR 9-107.3(a)(i) and 9-107.4(b)(1).)

3. Is a principal purpose of the contract exploration into a field directly concerned with public health or public welfare (as distinguished from items predominantly of military concern)? (See ASPR 9-107.3(a)(ii) and 9-107.4(b)(2).) ______ ☐ Yes ☐ No

If "Yes," identify such principal purpose of the contract and briefly describe its relationship to the public health or public welfare.

4. Is the contract for procurement in a field of science or technology in which there has been little significant experience outside of work funded by the Government?[2] (See ASPR 9-107.3(a)(iii) and 9-107.4(b)(3).) ______ ☐ Yes ☐ No

If "Yes," briefly describe such field.

5. Is the contract for procurement in a field of science or technology in which the Government has been the principal developer of the field?[2] (See ASPR 9-107.3(a)(iii) and 9-107.4(b)(3).) ______ ☐ Yes ☐ No

If "Yes," briefly describe such field.

6. If the answer to either 4 or 5 is "Yes," would the contractor be likely to get a preferred or dominant commercial position in that field if he were permitted to acquire title to inventions made under the contract? (See ASPR 9-107.3(a)(iii) and 9-107.4(b)(3).) ______ ☐ Yes ☐ No

Explain the answer.

7. Does the contract require that the contractor both (i) provide services for operation of a Government-owned research or production facility and (ii) perform experimental, developmental or research work at that facility? (See ASPR 9-107.3(a)(iv)(A) and 9-107.4(b)(4).) ______ ☐ Yes ☐ No

8. Does the contract require contractor to coordinate and direct the work of others (as distinguished from the normal contractor-subcontractor relationship) which might result in a potential organizational conflict of interest?[4] (See ASPR 1-113.2, Appendix G, and 9-107.3(a)(iv)(B), 9-107.4(b)(4).) ______ ☐ Yes ☐ No

If "Yes," explain briefly why such a potential conflict of interest is considered to exist.

______________________

(Typed name, office, and signature of person completing this form)

The Patents Rights (Title) Clause, ASPR 9-107.5(a), will ____ will not ____ be used in the solicitation. (Give reasons for determination.)

______________________

(Typed name and signature of contracting officer or representative)

[1] The contract or series of contracts need not necessarily require delivery of the end item. The end item may be a product, a process or data.

[2] The mere fact that the Government has been or is the principal funder or developer funder or developer in a field of science or technology which encompasses the piece of hardware.

[29 F.R. 9756, July 21, 1964, as amended at 30 F.R. 12005, Sept. 21, 1965; 32 F.R. 523, Jan. 18, 1967; 33 F.R. 15391, Oct. 17, 1968]

57



**§ 9.107-5 Clauses for domestic contracts.**

(a) *Patent Rights (Title) Clause.* If the contracting officer has determined that the contract comes within § 9.107-4 (b) or (d), he shall include the following clause in the contract. This clause provides for the Government to acquire title in "Subject Inventions," subject to the contractor's retaining a royalty-free license in such inventions; however, the Government may permit the contractor, under certain circumstances, to acquire greater rights than the license.

PATENT RIGHTS (TITLE) (SEPTEMBER 1968)

(a) *Definitions used in this clause.* (1) "Subject Invention" means any invention or discovery, whether or not patentable, conceived, or first actually reduced to practice in the course of or under this contract. The term "Subject Invention" includes, but is not limited to, any art, method, process, machine, manufacture, design, or composition of matter, or any new and useful improvement thereof, or any variety of plant, which is or may be patentable under the patent laws of the United States of America or any foreign country.

(2) "Governmental purpose" means the right of the Government of the United States (including any agency thereof, State or domestic municipal government) to practice and have practiced (make or have made, use or have used, sell or have sold) any Subject Invention throughout the world by or on behalf of the Government of the United States.

(3) "Contract" means any contract, agreement, grant, or other arrangement, or subcontract entered into with or for the benefit of the Government where a purpose of the contract is the conduct of experimental, developmental, or research work.

(4) "Subcontract and subcontractor means any subcontract or subcontractor of the Contractor, any lower-tier subcontract or subcontractor under this contract.

(5) "To bring to the point of practical application" means to manufacture in the case of a composition or product, to practice in the case of a process, or to operate in the case of a machine or system and, in each case, under such conditions as to establish that the invention is being worked and that its benefits are reasonably accessible to the public.

(b) *Rights granted to the Government.* Except as provided in (e) and (h) of this clause, the Contractor agrees to grant the Government all right, title, and interest in and to each Subject Invention (made by the Contractor), subject to the reservation of a nonexclusive and royalty-free license to the Contractor. The license shall extend to existing and future associated and affiliated companies, if any, within the corporate structure of which the Contractor is a part and shall be assignable to the successor of that part of the Contractor's business to which such Invention pertains. Nothing contained in this Patent Rights clause shall be deemed to grant any rights with respect to any invention other than a Subject Invention.

(c) *Invention disclosures and reports.* (1) With respect to Subject Inventions (made by the Contractor), except those which are obviously unpatentable under the patent laws of the United States, the Contractor shall furnish to the Contracting Officer:

(i) A written disclosure of each invention within six (6) months after conception or first actual reduction to practice, whichever occurs first under this contract, sufficiently complete in technical detail to convey to one skilled in the art to which the Invention pertains a clear understanding of the nature, purpose, operation, and to the extent known the physical, chemical, or electrical characteristics of the Invention; when unable to submit a complete disclosure, the Contractor shall within said six (6) month period submit a disclosure which includes all such technical detail then known to him and shall, unless the Contracting Officer authorizes a different period, submit all other technical detail necessary to complete the disclosure within three (3) months of the expiration of said six (6) month period.

(ii) Interim reports at least every twelve (12) months, the initial period of which shall commence with the date of this contract, each report listing all such Inventions conceived or first actually reduced to practice more than six (6) months prior to the date of the report and not listed on a prior interim report, or certifying that there are no such unreported Inventions;

(iii) Prior to final settlement of this contract, a final report listing all such Inventions including all those previously listed in interim reports, or certifying that there are no such unreported Inventions (This Final Report and any Interim Report under (ii) above shall be submitted on DD Form 882 or other format acceptable to the Contracting Officer.);

(iv) Information in writing, as soon as practicable, of the date and identity of any public use, sale, or publication of such Invention made by or known to the Contractor or of any contemplated publication by the Contractor;

(v) Upon request, such duly executed instruments and other papers (prepared by the Government) as are deemed necessary to vest in the Government the rights granted it under this clause and to enable the Government to apply for and prosecute any patent application, in any country, covering such Invention where the Government has the right under this clause to file such application; and

(vi) Upon request, an irrevocable power of attorney to inspect and make copies of each U.S. patent application filed by, or on behalf of, the Contractor covering any such Invention.

(2) With respect to each Subject Invention in which the Contractor has been granted greater rights under paragraph (h) of this clause, the Contractor agrees to provide written reports at reasonable intervals, when requested by the Government as to:

(i) The commercial use that is being made or is intended to be made of such Invention;

(ii) The steps taken by the Contractor to bring the Invention to the point of practical application, or to make the Invention available for licensing.

(d) *Subcontracts*. (1) The Contractor shall, unless otherwise authorized or directed by the Contracting Officer, include a patent rights clause containing all the provisions of this Patent Rights clause except provision (g) in any subcontract hereunder where a purpose of the subcontract is the conduct of experimental, developmental, or research work. In the event of refusal by a subcontractor to accept this Patent Rights clause, or if in the opinion of the Contractor this Patent Rights clause is inconsistent with the policy set forth in ASPR 9-107.2 and 9-107.3, the Contractor:

(i) Shall promptly submit a written report to the Contracting Officer setting forth the subcontractor's reasons for such refusal or the reasons Contractor is of the opinion that the inclusion of this clause would be so inconsistent, and other pertinent information which may expedite disposition of the matter; and

(ii) Shall not proceed with the subcontract without the written authorization of the Contracting Officer.

The Contractor shall not, in any subcontract or by using such a subcontract as consideration therefor, acquire any rights to Subject Inventions for his own use (as distinguished from such rights as may be required solely to fulfill his contract obligations to the Government in the performance of this contract). Reports, instruments, and other information required to be furnished by a subcontractor to the Contracting Officer under the provisions of such a patent rights clause in a subcontract hereunder may, upon mutual consent of the Contractor and the subcontractor (or by direction of the Contracting Officer) be furnished to the Contractor for transmission to the Contracting Officer.

(2) The Contractor, at the earliest practicable date, shall also notify the Contracting Officer in writing of any subcontract containing a patent rights clause, furnish to the Contracting Officer a copy of such subcontract, and notify him when such subcontract is completed. It is understood that the Government is a third party beneficiary of any subcontract clause granting rights to the Government in Subject Inventions, and the Contractor hereby assigns to the Government all the rights that the Contractor would have to enforce the subcontractor's obligations for the benefit of the Government with respect to Subject Inventions. If there are no subcontracts containing patent rights clauses, a negative report is required. The Contractor shall not be obligated to enforce the agreements of any subcontractor hereunder relating to the obligations of the subcontractor to the Government in regard to Subject Inventions.

(e) *Domestic filing of patent applications by contractor*. (1) If greater rights are granted in and to a Subject Invention pursuant to paragraph (h) of this clause, the Contractor shall file in due form and within six (6) months of the granting of such greater rights a U.S. Patent application claiming the Invention referred to in said paragraph, and shall furnish, as soon as practicable, the serial number and filing date of each such application and the patent number of any resulting patent. As to each Invention in which the Contractor has been given greater rights, the Contractor shall notify the Contracting Officer at the end of the six (6) month period if he has failed to file or caused to be filed a patent application covering such invention. If the Contractor has filed or caused to be filed such an application within the six (6) month period, but elects not to continue prosecution of such application, he shall notify the Contracting Officer not less than sixty (60) days before the expiration of the response period. In either of the situations covered by the two immediately preceding sentences, the Government shall be entitled to all rights, title, and interest in such Invention subject to the reservation to the Contractor of a license as specified in paragraph (b).

(2) The following statement shall be included within the first paragraph of any patent application filed and any patent issued on an Invention which was made under Government contract or subcontract thereunder: "The Invention herein described was made in the course of or under a contract or subcontract thereunder (or grant) with (here state the Department or Agency)."

(f) *Foreign filing of patent applications*. (1) If the Contractor acquires greater rights in a Subject Invention pursuant to paragraph (h) of this clause and has filed a U.S. patent application claiming the Invention, the Contractor, or those other than the Government deriving rights from the Contractor, shall as between the parties hereto, have the exclusive right, subject to the rights of the Government under paragraph (i) of this clause, to file applications on the Inventions in each foreign country within:

(i) Nine (9) months from the date a corresponding U.S. patent application is filed;

(ii) Six (6) months from the date permission is granted to file foreign applications where such filing has been prohibited for security reasons; or

(iii) Such longer period as may be approved by the Contracting Officer.

The Contractor shall notify the Contracting Officer of each foreign application filed and, upon written request of the Contracting Officer, furnish an English translation of such application, and, convey to the Gov-

ernment the entire right, title, and interest in the Invention in each foreign country in which an application has not been filed within the time specified above, subject to the reservation of a royalty-free license as specified in paragraph (b).

(2) If the Contratcor does not acquire greater rights pursuant to paragraph (h) of this clause and the Government determines not to file a patent application on any Subject Invention (made by the Contractor) in any particular foreign country, the Contracting Officer, upon request of the Contractor, may authorize the Contractor to file a patent application on such Invention in such foreign country and retain ownership thereof, subject to an irrevocable, nonexclusive and royalty-free license to practice and have practiced such Subject Invention throughout the world for Governmental purposes, including the practice of each such Subject Invention (i) in the manufacture, use, and disposition of any article or material, (ii) in the use of any method, or (iii) in the performance of any service, acquired by or for the Government or with funds derived through the Military Assistance Program of the Government or funds otherwise derived through the Government.

(g) *Withholding of payment.* (1) Final payment under this contract shall not be made before the Contractor delivers to the Contracting Officer the final report required by (c) (1) (iii), all written invention disclosures required by (c) (1) (i), and all information as to subcontracts required by (d) (ii).

(2) If at any time before final payment under this contract the Contractor fails to deliver an interim report required by (c) (1) (ii), or a written invention disclosure required by (c) (1) (i), the Contracting Officer shall withhold from payment $50,000 or five percent (5%), of the amount of this contract whichever is less (or whatever lesser sum is available if payments have exceeded ninety-five percent (95%) of the amount of this contract) until the Contractor corrects all such failures.

(3) After payments total eighty percent (80%) of the amount of this contract, and if no amount is required to be withheld under (2) above, the Contracting Officer may, if he deems such action warranted because of the Contractor's performance under the Patent Rights clause of this contract or other known Government contracts, withhold from payment such sum as he considers appropriate, not exceeding $50,000 or five percent (5%), of the amount of this contract whichever is less, to be held as a reserve until the Contractor delivers all the reports, disclosures, and information specified in (1) above. Subject to the five percent (5%) or $50,000 limitation, the sum withheld under this subparagraph (3) may be increased or decreased from time to time at the discretion of the Contracting Officer.

(4) No amount shall be withheld under this paragraph (g) while the amount specified by this paragraph is being withheld under other provisions of this contract. The total amount withheld under (2) and (3) above shall not exceed $50,000 or five percent (5%), of the amount of this contract whichever is less. The withholding of any amount or subsequent payment thereof to the Contractor shall not be construed as a waiver of any rights accruing to the Government under this contract. This paragraph shall not be construed as requiring the Contractor to withhold any amounts from a subcontractor to enforce compliance with the patent provision of a subcontract. As used in this paragraph (g), "this contract" means "this contract as from time to time amended." In cost-type contracts, "amount of this contract" means "estimated cost of this contract."

(h) *Contractor's request for greater rights.* The Contractor at the time of first disclosing a Subject Invention pursuant to paragraph (c) (1) (i) of this clause, but not later than three (3) months thereafter, may submit in writing to the Contracting Officer, in accordance with applicable regulations, a request for greater rights than the license reserved to the Contractor in paragraph (b) of this clause if:

(i) The Invention is not the primary object of this contract; and

(ii) The acquisition of such greater rights is consistent with the intent of ASPR 9–107.3 (a) and is necessary to call forth private risk capital and expense to bring the Invention to the point of practical application.

The Contracting Officer will review the Contractor's request for greater rights and will notify the Contractor whether such request is granted in whole or in part. Any rights granted to the contractor shall be subject to, but not necessarily limited to, the provisions of paragraph (i) of this clause.

(i) *Reservation of Rights to the Government.* (1) In the event greater rights in any Subject Invention are vested in or granted to the Contractor pursuant to paragraph (h) above, such greater rights shall, as a minimum, be subject to an irrevocable, nonexclusive and royalty-free license to practice and have practiced each such Subject Invention (made by the Contractor) throughout the world for Governmental purposes, and including the practice of each such Subject Invention (i) in the manufacture, use, and disposition of any article or material, (ii) in the use of any method, or (iii) in the performance of any service, acquired by or for the Government or with funds derived through the Military Assistance Program of the Government or funds otherwise derived through the Government.

(2) In the event greater rights are vested in the Contractor, the Contractor further agrees to and does hereby grant to the Government the right to require the granting of a license to an applicant under any such Invention:

(i) On a nonexclusive, royalty-free basis, unless the Contractor, his licensee or his assignee demonstrates to the Government, at

its request, that effective steps have been taken within three (3) years after a patent issues on such Invention to bring the Invention to the point of practical application or that the Invention has been made available for licensing royalty-free or on terms that are reasonable in the circumstances, or can show cause why the title should be retained for a further period of time; or

(ii) Royalty-free or on terms that are reasonable in the circumstances to the extent that the Invention is required for public use by Governmental regulations or as may be necessary to fulfill health needs, or for other public purposes stipulated in the Schedule of this contract.

(j) *Right to disclose subject inventions.* The Government may duplicate and disclose reports and disclosures of Subject Inventions required to be furnished by the Contractor pursuant to this Patent Rights clause.

(k) *Forfeiture of rights in unreported subject inventions.* The Contractor shall forfeit to the Government all rights in any Subject Invention which he fails to report to the Contracting Officer at or prior to the time he (i) files or causes to be filed a United States or foreign application thereon, or (ii) submits the final report required by (c)(iii) of this clause, whichever is later: *Provided,* That the Contractor shall not forfeit rights in a Subject Invention if (A) contending that the invention is not a Subject Invention, he nevertheless reports the invention and all the facts pertinent to his contention to the Contracting Officer within the time specified in (i) or (ii) above, or (B) he establishes that the failure to report was due entirely to causes beyond his control and without his fault or negligence. The Contractor shall be deemed to hold any such forfeited Subject Invention, and the patent applications and patents pertaining thereto, in trust for the Government pending written assignment of the Invention. The rights accruing to the Government under this paragraph shall be in addition to and shall not supersede any other rights which the Government may have in relation to unreported Subject Inventions. Nothing contained herein shall be construed to require the Contractor to report any invention which is not in fact a Subject Invention.

(l) *Examination of records relating to inventions.* The Contracting Officer, or his authorized representative shall, until the expiration of three (3) years after final payment under this contract, have the right to examine any books, records, documents, and other supporting data of the Contractor which the Contracting Officer or his authorized representative shall reasonably deem directly pertinent to the discovery or identification of Subject Inventions or to compliance by the Contractor with the requirements of this clause.

(b) *Patent rights (license) clause.* Where the contracting officer has determined that the proposed contract comes within § 9.104–4(c) and not within § 9.107–4(b), he shall include the following clause in the contract. This clause provides for the contractor to retain title to "Subject Inventions" and for the Government to acquire a royalty-free license and the additional right to grant sublicenses.

PATENT RIGHTS (LICENSE) (SEPTEMBER 1968)

(a) *Definitions used in this clause.* (1) "Subject Invention" means any Invention or discovery, whether or not patentable, conceived or first actually reduced to practice in the course of or under this contract. The term "Subject Invention" includes, but is not limited to, any art, method, process, machine, manufacture, design or composition of matter, or any new and useful improvement thereof, or any variety of plant, which is or may be patentable under the patent laws of the United States of America or any foreign country.

(2) "Government purpose" means the right of the Government of the United States (including any agency thereof, state or domestic municipal government) to practice and have practiced (make or have made, use or have used, sell or have sold) and Subject Invention throughout the world by or on behalf of the Government of the United States.

(3) "Contract" means any contract, agreement, grant, or other arrangement, or subcontract entered into with or for the benefit of the Government where a purpose of the contract is the conduct of experimental, developmental, or research work.

(4) "Subcontract and subcontractor" mean any subcontract or subcontractor of the Contractor, any lower-tier subcontract or subcontractor under this contract.

(5) "To bring to the point of practical application" means to manufacture in the case of a composition or product, to practice in the case of a process, or to operate in the case of a machine or system and, in each case, under such conditions as to establish that the Invention is being worked and that its benefits are reasonably accessible to the public.

(b) *Rights granted to the Government.* (1) The Contractor agrees to and does hereby grant to the Government an irrevocable, nonexclusive, and royalty-free license to practice and have practiced each Subject Invention (made by the Contractor) throughout the world for Government purposes, and including the practice of each such Subject Invention (i) in the manufacture, use, and disposition of any article or material, (ii) in the use of any method, or (iii) in the performance of any service, acquired by or for the Government or with funds derived through the Military Assistance Program of the Government or funds otherwise derived through the Government.

(2) The Contractor further agrees to grant, upon the request of the Government,

57



a license under any Subject Invention (made by the Contractor) to:

(i) Any applicant on a nonexclusive, royalty-free basis, unless the Contractor, his licensee, or his assignee demonstrates to the Government, at its request, that effective steps have been taken within three years after a patent issues on such Invention to bring the Invention to the point of practical application or that the Invention has been made available for licensing royalty-free or on terms that are reasonable in the circumstances, or can show cause why the principal or exclusive rights should be retained for a further period of time;

(ii) Any applicant royalty-free or on terms that are reasonable in the circumstances to the extent that the Invention is required for public use by governmental regulations or as may be necessary to fulfill health needs, or for other public purposes stipulated in the Schedule of this contract.

Nothing contained in this Patent Rights clause shall be deemed to grant any rights with respect to any invention other than a Subject Invention.

(c) *Invention disclosures and reports.* With respect to Subject Inventions (made by the Contractor), except those which are obviously unpatentable under the patent laws of the United States, the Contractor shall furnish to the Contracting Officer:

(i) A written disclosure of each such Invention within six (6) months after conception or first actual reduction to practice, whichever occurs first under this contract, sufficiently complete in technical detail to convey to one skilled in the art to which the Invention pertains a clear understanding of the nature, purpose, operation, and to the extent known, the physical, chemical, or electrical characteristics of the Invention, together with a written statement making an election as to whether a United States patent application claiming the Invention will be filed by or on behalf of the Contractor; provided, where the Contractor elects to file but is unable to submit a complete disclosure, the Contractor shall within said six (6) months period submit a disclosure which includes all such technical detail then known to him and shall, within six (6) months after his election to file (or such longer period as may be authorized by the Contracting Officer under (d)(i) below), submit all other technical detail necessary to complete the disclosure or a copy of the patent application;

(ii) Interim reports at least every twelve (12) months, the initial period of which shall commence with the date of this contract, each report listing all such Inventions conceived or first actually reduced to practice more than six (6) months prior to the date of the report and not listed on a prior interim report, or certifying that there are no such unreported Inventions;

(iii) Prior to final settlement of this contract, a final report listing all such Inventions including all those previously listed in interim reports, or certifying that there are no such unreported Inventions (This Final Report and any Interim Report under (ii) above shall be submitted on DD Form 882 or other format acceptable to the Contracting Officer.); and

(iv) Written reports at reasonable intervals, prior to and after final settlement, when requested by the Government as to—

(A) The commercial use that is being made or is intended to be made of such Invention;

(B) The steps taken by the Contractor to bring the Invention to the point of practical application, or to make the Invention available for licensing.

(d) *Domestic Filing.* In connection with each Subject Invention referred to in (c)(i) above:

(i) If the Contractor has elected to file a United States patent application claiming such Invention, the Contractor shall, within six (6) months after the election (or such longer period, not to exceed one (1) year after such election, as may be authorized by the Contracting Officer), file or cause to be filed such application in due form, shall notify the Contracting Officer of such filing, and shall deliver to the Contracting Officer, within two (2) months after such filing or within two (2) months of the first written disclosure of such invention if a patent application previously has been filed, a duly executed license, in triplicate, fully confirmatory of all rights to which the Government is entitled under this clause; if the Contractor does not file or cause to be filed such application, he shall so notify the Contracting Officer within the six (6) month period or such longer period as may be authorized above.

(ii) The following statement shall be included within the first paragraph of the specification of any patent application filed and any patent issued on an invention which was made under a Government contract or subcontract thereunder: "The Invention herein described was made in the course of or under a contract or subcontract thereunder, (or grant) with (here state the Department or Agency)."

(iii) If the Contractor has elected not to file or cause to be filed a United States patent application claiming such Invention, or has made the contrary election but has not filed or cause to be filed such application within six (6) months after the election, or such longer period as may be authorized above, the Contractor shall:

(A) Inform the Contracting Officer in writing, as soon as practicable, of the date and identity of any public use, or publication of such Invention made by or known to the Contractor or of any contemplated publication by the Contractor;

(B) Upon written request, convey to the Government the Contractor's entire right, title and interest in such Invention by delivering to the Contracting Officer such duly executed instruments (prepared by the

Government) of assignment and application, and such other papers as are deemed necessary to vest in the Government the entire right, title, and interest aforesaid, and the right to apply for and prosecute patent applications covering such Invention throughout the world, subject to the reservation of a nonexclusive and royalty-free license to the Contractor (and to his existing and future associated and affiliated companies, if any, within the corporate structure of which the Contractor is a part) which license shall be assignable to the successor of that part of the Contractor's business to which such Invention pertains;

(iv) The Contractor shall furnish promptly to the Contracting Officer on request an irrevocable power of attorney to inspect and make copies of each United States patent application filed by or on behalf of the Contractor covering any such Invention; and

(v) In the event the Contractor, or those other than the Government deriving rights from the Contractor, elects not to continue prosecution of any such United States patent application filed by or on behalf of the Contractor, the Contractor shall so notify the Contracting Officer not less than sixty (60) days before the expiration of the response period and, upon written request, deliver to the Contracting Officer such duly executed instruments (prepared by the Government) as are deemed necessary to vest in the Government the entire right, title, and interest in such Invention and the application, subject to the reservation as specified in paragraph (d)(iii)(B) of this clause;

(e) *Foreign filing.* The Contractor, or those other than the Government deriving rights from the Contractor, shall as between the parties hereto, have the exclusive right, subject to the rights of the Government under paragraph (b) of this clause, to file applications on Subject Inventions (made by the Contractor) in each foreign country within:

(i) Nine (9) months from the date a corresponding United States application is filed, or nine (9) months from the date the Contractor discloses a Subject Invention under paragraph (c)(i) above with an election not to file a United States application;

(ii) Six (6) months from the date permission is granted to file foreign applications where such filing had been prohibited for security reasons; or

(iii) Such longer period as may be approved by the Contracting Officer.

The Contractor shall notify the Contracting Officer of each foreign application filed and, upon written request of the Contracting Officer, furnish an English translation of such foreign application, and convey to the Government the entire right, title, and interest in each such Subject Invention in each foreign country in which an application has not been filed within the time above specified, subject to the reservation as specified in paragraph (d)(iii)(B) of this clause.

(f) *Withholding of payment.* (1) Final payment under this contract shall not be made before the Contractor delivers to the Contracting Officer the final report required by (c)(iii), all written Invention disclosures required by (c)(i), all confirmatory licenses required by (d)(i), and all information as to subcontracts required by (g).

(2) If at any time before final payment under this contract the contractor fails to deliver an interim report required by (c)(ii), a written invention disclosure required by (c)(i), or a confirmatory license required by (d)(i), the contracting officer shall withhold from payment $50,000 or five percent (5%) of the amount of this contract whichever is less (or whatever lesser sum is available if payments have exceeded ninety-five percent (95%) of the amount of this contract) until the contractor corrects all such failures.

(3) After payments total eighty percent (80%) of the amount of this contract, and if no amount is required to be withheld under (2) above, the Contracting Officer may, if he deems such action warranted because of the Contractor's performance under the Patent Rights clause of this contract or other known Government contracts, withhold from payment such sum as he considers appropriate, not exceeding $50,000 or five percent (5%), of the amount of this contract, whichever is less, to be held as a reserve until the Contractor delivers all the reports, disclosures, licenses, and information specified in (1) above. Subject to the five percent (5%) or $50,000 limitation, the sum withheld under this subparagraph (3) may be increased or decreased from time to time at the discretion of the Contracting Officer.

(4) No amount shall be withheld under this paragraph (f) while the amount specified by this paragraph is being withheld under other provisions of this contract. The total amount withheld under (2) and (3) above shall not exceed $50,000 or five percent (5%) of the amount of this contract whichever is less. The withholding of any amount or subsequent payment thereof to the Contractor shall not be construed as a waiver of any rights accruing to the Government under this contract. This paragraph shall not be construed as requiring the Contractor to withhold any amounts from a subcontractor to enforce compliance with the patent provision of a subcontract. As used in this paragraph (f), "this contract" means "this contract as from time to time amended." In cost-type contracts, "amount of this contract" means "estimated cost of this contract."

(g) *Subcontracts.* (1) The Contractor shall, unless otherwise authorized or directed by the Contracting Officer, include a patent rights clause containing all of the provisions of this Patent Rights clause except provision (f) in any subcontract hereunder where a purpose of the subcontract is the conduct of experimental, developmental, or research

work. In the event of refusal by a subcontractor to accept this Patent Rights clause, or if in the opinion of the Contractor this Patent Rights clause is inconsistent with the policy set forth in ASPR 9-107.2 and 9-107.3, the Contractor:

(i) Shall promptly submit a written report to the Contracting Officer setting forth the subcontractor's reason for such refusal or the reasons the Contractor is of the opinion that the inclusion of this clause would be so inconsistent, and other pertinent information which may expedite disposition of the matter; and

(ii) Shall not proceed with the subcontract without the written authorization of the Contracting Officer.

The Contractor shall not, in any subcontract or by using such a subcontract as consideration therefor, acquire any rights to Subject Inventions for his own use (as distinguished from such rights as may be required solely to fulfill his contract obligations to the Government in the performance of this contract). Reports, instruments, and other information required to be furnished by a subcontractor to the Contracting Officer under the provisions of such a patent rights clause in a subcontract hereunder may, upon mutual consent of the Contractor and the subcontractor (or by direction of the Contracting Officer) be furnished to the Contractor for transmission to the Contracting Officer.

(2) The Contractor, at the earliest practicable date, shall also notify the Contracting Officer in writing of any subcontract containing a patent rights clause, furnish to the Contracting Officer a copy of such subcontract, and notify him when such subcontract is completed. It is understood that the Government is a third party beneficiary of any subcontract clause granting rights to the Government in Subject Inventions, and the Contractor hereby assigns to the Government all the rights that he would have to enforce the subcontractor's obligations for the benefit of the Government with respect to Subject Inventions. If there are no subcontracts containing patent rights clauses, a negative report is required. The Contractor shall not be obligated to enforce the agreements of any subcontractor hereunder relating to the obligations of the subcontractor to the Government in regard to Subject Inventions.

(h) *Licenses granted by contractor to others subject to Government's rights.* The Contractor recognizes that the Government, or a foreign government with funds derived through the Military Assistance Program or otherwise through the U.S. Government, may contract for property or services with respect to which the vendor may be liable to the Contractor for royalties for the use of a Subject Invention on account of such a contract. The Contractor further recognizes that it is the policy of the Government not to pay in connection with its contracts, or to allow to be paid in connection with contracts made with funds derived through the Military Assistance Program or otherwise through the U.S. Government, charges for use of patents in which the Government holds a royalty-free license. In recognition of this policy, the Contractor agrees to participate in and make appropriate arrangements for the exclusion of such charges from such contracts or for the refund of amounts received by the Contractor with respect to any such charges not so excluded.

(i) *Rights to disclose subject inventions.* The Government may duplicate and disclose reports and disclosures of Subject Inventions required to be furnished by the Contractor or a subcontractor pursuant to this Patent Rights clause.

(j) *Forfeiture of rights in unreported subject inventions.* The Contractor shall forfeit to the Government all rights in any Subject Invention which he fails to report to the Contracting Officer at or prior to the time he (i) files or causes to be filed a United States or foreign application thereon, or (ii) submits the final report required by (c)(iii) of this clause, whichever is later: *Provided,* That the Contractor shall not forfeit rights in a Subject Invention if (A) contending that the invention is not a Subject Invention, he nevertheless reports the invention and all facts pertinent to his contention to the Contracting Officer within the time specified in (i) or (ii) above, or (B) he establishes that the failure to report was due entirely to causes beyond his control and without his fault or negligence. The Contractor shall be deemed to hold any such forfeited Subject Invention, and the patent applications and patents pertaining thereto, in trust for the Government pending written assignment of the invention. The rights accruing to the Government under this paragraph shall be in addition to and shall not supersede any other rights which the Government may have in relation to unreported Subject Inventions. Nothing contained herein shall be construed to require the Contractor to report any invention which is not in fact a Subject Invention.

(k) *Examination of records relating to inventions.* The Contracting Officer or his authorized representative shall, until the expiration of three (3) years after final payment under this contract. have the right to examine any books, records, documents, and other supporting data of the Contractor which the Contracting Officer or his authorized representative shall reasonably deem directly pertinent to the discovery or identification of Subject Inventions or to compliance by the Contractor with the requirements of this clause.

(c) *Patent Rights (Deferred) Clause.* Where the contracting officer has determined that the proposed contract comes within § 9.107-4(d), he shall include in the contract the Patent Rights (Title) clause set forth in paragraph (a) of this

section, except that the name of the clause shall be changed to "Patent Rights (Deferred)" and paragraph (h) of that clause shall be replaced by the following paragraph (h). The clause, when so modified, differs from the clause set forth in paragraph (a) of this section only in the circumstances under which the Government may permit the contractor to acquire greater rights than the license.

(h) *Contractor's request for greater rights.* The Contractor at the time of disclosing a Subject Invention pursuant to paragraph (c) of this clause, but not later than three (3) months thereafter, may submit in writing to the Contracting Officer, in accordance with applicable regulations, a request for greater rights in such Invention than the license reserved to the Contractor in paragraph (b) of this clause. Each such request shall include, but need not be limited to, information concerning the Contractor's intention and plan to bring the Invention to the point of commercial application. The Contracting Officer shall review the Contractor's request for greater rights and shall notify the Contractor whether, and the extent to which, such request is granted. Any rights granted to the Contractor shall be subject to the provisions of (i) of this clause (MAY 1964).

[32 F.R. 524, Jan. 18, 1967, as amended at 32 F.R. 4260, Mar. 18, 1967; 33 F.R. 7399, May 18, 1968; 33 F.R. 19922, Dec. 28, 1968]

### § 9.107-6 Clause for foreign contracts.

A patent rights clause shall be included in every contract having as one of its purposes experimental, developmental, or research work which is to be performed outside the United States, its possessions, or Puerto Rico. Except as provided in § 9.107-8 with respect to contracts on behalf of the National Aeronautics and Space Administration, the clauses authorized in accordance with § 9.107-5 may be used; however, any clause may be replaced by any other clause tailored to meet requirements peculiar to foreign procurement *provided* the replacement clause incorporates the principles of the clause being replaced.

[29 F.R. 9760, July 21, 1964]

### § 9.107-7 Contracts relating to atomic energy.

(a) Except as provided in paragraph (b) of this section, the following paragraph shall be inserted as a part of the Patent Rights clause set forth in § 9.107-5(b) in all research or development contracts relating to atomic energy.

(1) With respect to any Subject Invention made by employees of the Contractor (except clerical and manual labor personnel who do not have access to technical data), and relating to the production or utilization of special nuclear material or atomic energy within the purview of the Atomic Energy Acts of 1946 (42 U.S.C. 1801-1819) and of 1954 (42 U.S.C. 2011-2296), the Contractor agrees:

(i) To furnish to the U.S. Atomic Energy Commission (hereinafter in this paragraph (1) referred to as "the Commission") through the Contracting Officer complete information regarding such Subject Invention, the Commission to have the sole and conclusive power to determine whether and where a patent application shall be filed, and to determine the disposition of the title to and rights under any such application or any patent that may issue thereon;

(ii) To obtain the execution of and deliver to the Commission, all documents relating to each Subject Invention and to do all things necessary or proper to carry out any determination of the Commission, made under (1) (i) above;

(iii) Unless otherwise authorized in writing by the Commission to obtain patent agreements from all such employees to effectuate the purposes of this paragraph (1); and

(iv) Unless otherwise authorized in writing by the Commission, to insert this paragraph (1) in all subcontracts.

No claim for pecuniary award or compensation under the provisions of the Atomic Energy Acts of 1946 and 1954 shall be asserted by the Contractor or his employees with respect to any Subject Invention covered by this paragraph (OCTOBER 1966).

(b) Where the work to be performed or the material or equipment to be furnished by the contractor is of such character that any such Subject Inventions that may be made will probably (1) relate only incidentally (and not directly) to some phase of the basic research or development work which the Atomic Energy Commission conducts or sponsors, (2) relate to a field or work in which the contractor has an established industrial and patent position, or (3) result from routine development or production work by the contractor, a provision authorizing the contractor to retain license rights may be incorporated in the paragraph set forth in paragraph (a) of this section. Any such provision or any deviation from the paragraph set forth in paragraph (a) of this section, which the Military Department concerned proposes to authorize, shall be forwarded in accordance with Departmental procedures to the Atomic Energy Commission for recommendation and shall not be authorized except with the concurrence of the Atomic Energy Commission.

[29 F.R. 9760, July 21, 1964, as amended at 32 F.R. 528, Jan. 18, 1967]

in and to inventions, the Contractor agrees to be bound by all provisions of Executive Order 10096, dated January 23, 1950, and any orders, rules, regulations, or the like issued thereunder.

(b) The Contractor shall: (i) Make written disclosure promptly to the Contracting Officer of all inventions of the Contractor which are conceived or first reduced to practice during the term of this contract, and sign and execute all papers necessary for conveying to the Government the right to which the Government is entitled in accordance with the determination made under the provisions of Executive Order 10096, or (ii) certify to the Contracting Officer that, to the best of the Contractor's knowledge and belief, no inventions have been conceived or first reduced to practice during the term of this contract.

(b) Where it is contemplated that research, experimental, or developmental work will not be involved, paragraph (b) of the clause may be omitted. Upon written request by the prospective contractor and approval by the Head of the Procuring Activity or his authorized representative, the clause may be modified or omitted where:

(1) The period of employment is to be not more than 90 days in any 1 calendar year; or

(2)(i) The period of employment called for in the contract or in any renewal thereof is more than 90 days but not more than 1 year of full-time service, and

(ii) The prospective contractor is bound by an obligation which existed prior to entering into the proposed contract with the Government and which was not entered into in contemplation thereof, and the discharge of which would be inconsistent with the discharge of any obligation arising under Executive Order 10096.

[32 F.R. 528, Jan. 18, 1967]

### § 9.109 Administration of patent rights clauses.

The President's Statement of Government Patent Policy (see § 9.107) provides that every appropriate effort should be made to realize for the Government and the public the benefit of inventions and discoveries resulting from experimental, research and development contracts even where the inventions are an incidental product of the work. It is important that the Government be in a position to know and exercise its rights in order to avoid payment of royalties on inventions in which it has rights and to defend itself against unjustified claims and suits for patent infringement. To attain these ends, contracts having patent rights clauses should be so administered that:

(a) Subject Inventions are identified and reported as required by the contract clauses;

(b) The rights of the Government in such Inventions are established;

(c) The rights of the Government are documented by formal instruments such as licenses or assignments; and

(d) When appropriate, patent applications on Subject Inventions are timely filed and prosecuted by contractors or by the Government.

[32 F.R. 528, Jan. 18, 1967]

### § 9.109–1 Applicability.

The following policies and procedures apply to all contracts having patent rights clauses, except that these policies and procedures may be modified in their application to a foreign contract so as to be consistent with local law and custom and the provisions of the patent rights clause of the particular contract (see §§ 1.109 and 9.107–6).

[32 F.R. 528, Jan. 18, 1967]

### § 9.109–2 Follow-up by Government.

(a) Each Department shall maintain "followup" systems to assure that Subject. Inventions are identified and that the Government's rights therein are established and protected. Followup activities for contracts which include as part of a patent rights clause either the paragraph set forth in § 9.107–7(a) or the NASA clause referenced in § 9.107–8 (a) shall be coordinated with the Atomic Energy Commission and the National Aeronautics and Space Administration, respectively.

(b) When it is determined after the award of a contract that the contractor or subcontractor may not have a clear understanding of the rights and obligations of the parties under a patent rights clause, a postaward orientation conference or letter should be used to explain these rights and obligations (see Subpart R, Part 1 of this chapter).

(c) The contracting officer administering the contract shall be responsible for receiving invention disclosures, reports, confirmatory instruments, notices, requests, and other documents and information submitted by the contractor pursuant to a patent rights clause. Where the contractor fails to furnish documents or information called for by



99–170—69——3