IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPARTON CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | No. 92-580 |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**REPLY BRIEF OF THE UNITED STATES**
**ON APPLICATION OF THE CHRISTIAN DOCTRINE**

GREGORY G. KATSAS
Assistant Attorney General

JOHN FARGO
Director

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

August 25, 2008

# TABLE OF CONTENTS

I. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. SPARTON MISSES THE POINT IN ARGUING THAT THE '-0465 CONTRACT WAS A SUPPLY CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. THE ASPR DID NOT PRECLUDE THE INCLUSION OF A PATENT RIGHTS CLAUSE IN A FIXED PRICE SUPPLY CONTRACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C. SPARTON'S CHANGES CLAUSE ARGUMENT ALSO MISSES THE MARK. . . . . . . . . . . 9

D. IN LIGHT OF THE PRESIDENTIAL POLICY STATEMENTS, THERE IS NO ROOM FOR DEFERENCE TO THE NAVY'S ALLEGED PRACTICES. . . . . . . . . . . . . . . . 10

E. SPARTON'S "CONTEMPORANEOUS ACTIONS" ARGUMENT LACKS MERIT. . . . . . . 14

F. SPARTON'S ARGUMENT ON CONCEPTION AND REDUCTION TO PRACTICE FAILS TO ACCOUNT FOR THE FEDERAL CIRCUIT'S REVERSAL OF THE SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES

*Atlantic Coast Line Ry. v. St. Joe Paper Co.*,
216 F.2d 832 (5th Cir. 1954) . . . . . . . . . . 18

*Butler v. Eaton*,
141 U.S. 240 (1891).. . . . . . . . . . . 17, 18

*CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*,
499 F.3d 184 (3d Cir. 2007) . . . . . . . . . . 18

*De Nafo v. Finch*,
436 F.2d 737, 740 (3d Cir. 1971) . . . . . . . . . . 18

*Federal Crop Ins. Corp. v. Merrill*,
332 U.S. 380 (1947).. . . . . . . . . . . 16

*G. L. Christian & Assoc. v. United States*,
312 F.2d 418 (*Christian I*),
aff'd on reh'g, 320 F.2d 345 (Ct. Cl. 1963) . . . . . . . . . . 4, 14

*G. L. Christian & Assoc. v. United States*,
320 F.2d 345 (Ct. Cl. 1963) (*Christian II*).. . . . . . . . . . . 4, 13

*IBI Security Service, Inc. v. United States*,
19 Cl. Ct. 106 (1989) . . . . . . . . . . 11, 12

*Keller v. Hall*,
111 F.2d 129 (9th Cir.1940). . . . . . . . . . . 18

*Khadr v. United States,*
529 F.3d 1112 (D.C. Cir. 2008) . . . . . . . . . . 17

*Matchett v. Rose*,
36 Ill. App. 3d 638, 344 N.E.2d 770 (1976) . . . . . . . . . . 17

*New Hampshire v. Maine*,
532 U.S. 742 (2001) . . . . . . . . . . 19

*No East-West Highway Committee, Inc. v. Chandler*,
767 F.2d 21 (1st Cir. 1985). . . . . . . . . . . 17, 18

*Pontarelli Limousine, Inc., v. City of Chicago*,
929 F.2d 339 (7th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Porter v. United States,*
496 F.2d 583 (1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*S.J. Amoroso Const. Co. v. United States*,
12 F.3d 1072 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

*Sparton Corp. v. United States*,
399 F.3d 1321 (Fed. Cir. 2005) (*Sparton II*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Sparton Corp. v. United States*,
57 Fed. Cl. 455 (2003) (*Sparton I*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

*U.S. Philips Corp. v. Sears Roebuck & Co.*,
55 F.3d 592 (Fed. Cir. 1995) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Udall v. Tallman*,
380 U.S. 1 (1964).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wheeler v. John Deere Co.*,
935 F.2d 1090 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Yosemite Park & Curry Co. v. United States,*
582 F.2d 552 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Regulations

32 C.F.R. § 1.201-4 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

32 C.F.R. § 1.201-4 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

32 C.F.R. § 7.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

32 C.F.R. § 7.101 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

32 C.F.R. § 7.101 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

32 C.F.R. § 7.101 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

32 C.F.R. § 7.103-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

32 C.F.R. § 7.104 (1969). . . . . . . . . . 6

32 C.F.R. § 7.104-7. . . . . . . . . . 6, 7

32 C.F.R. § 7.104-7 (1969). . . . . . . . . . 6, 7

32 C.F.R. § 7.104-7 (1970) . . . . . . . . . . 6, 7

32 C.F.R. § 7.301. . . . . . . . . . 7

32 C.F.R. § 9.107 . . . . . . . . . . 3, 11, 13

32 C.F.R. § 9.107-2 (1969) . . . . . . . . . . 3

32 C.F.R. § 9.107-2(c)(3) (1969). . . . . . . . . . 3, 4

32 C.F.R. § 9.107-2(c)(3) (1970). . . . . . . . . . 3, 4, 8

32 C.F.R. § 9.107-5. . . . . . . . . . 2

32 C.F.R. § 9.107-5(a) . . . . . . . . . . 20

32 C.F.R. § 9.107-5(b) . . . . . . . . . . 20

Armed Services Procurement Regulation (ASPR),
32 C.F.R., Chapter I (1960-76). . . . . . . . . . 2, 3, 5-9, 13, 20

Memorandum of August 23, 1971, Government Patent Policy,
36 Fed. Reg. 16887-16892 (Aug. 23, 1971). . . . . . . . . . 2, 4, 11-13

Memorandum of October 10, 1963 [Government Patent Policy],
28 Fed. Reg. 10943-10946 (Oct. 12, 1963). . . . . . . . . . 2-4, 11, 13

## OTHER AUTHORITIES

5 C.J.S. Appeal and Error § 1106 (2007) . . . . . . . . . . 18

Black's Law Dictionary WL (8th ed. 2004).. . . . . . . . . . 14

*Merriam-Webster's Collegiate Dictionary* (11th ed., 2003). . . . . . . . . . 12

## TABLE OF APPENDICES

E Extract of Armed Services Procurement Regulation, 32 C.F.R. Parts 1 and 7 (1969).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A51

F Extract of Armed Services Procurement Regulation, 32 C.F.R. Parts 1 and 7 (1970).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A73

G Extract of Armed Services Procurement Regulation, 32 C.F.R. Parts 1 and 7 (1973).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A98

**REPLY BRIEF OF THE UNITED STATES
ON APPLICATION OF THE CHRISTIAN DOCTRINE**

The United States herein responds to "Sparton Corporation's Post Trial Brief on the Christian Doctrine In Compliance With the Court's July 1, 2008 Order," Docket No. 372 (Aug. 12, 2008) (Sparton's Post-Tr. Br.). Through its brief, Sparton raises numerous issues that are only set forth in cursory fashion. Many of the arguments contain no citations to either legal authority or to facts of record. *See, e.g.*, Sparton Post-Tr. Br. at 10-11 (arguing that "[a] rational basis exists for the Navy construction of the ASPR because it invokes the Changes clause in fixed-price production supply contracts to obtain an improved product" by allowing the Navy to develop an improved product at lower cost than executing a separate research and development contract). Such arguments fail to comply with the court's Order of July 1, 2008, Docket No. 370, which specifically required citation to facts of record. Accordingly, we only address those arguments for which Sparton has cited some authority or which are significantly argued.

None of Sparton's arguments (including those not specifically addressed below) can overcome the clear evidence and legal authority that establish that the Government is entitled to a royalty-free license to use the claimed inventions of United States Patents Nos. 3,921,120 (the '120 patent) and 4,029,233 (the '233 patent). The Government is entitled to such a license because a Patent Rights clause must be incorporated into the Mod 4 of the '-0465 contract by operation of law under the *Christian* doctrine.

## I. DISCUSSION

In its Post-Trial Brief, Sparton argues that the *Christian* doctrine does not apply because the contract at issue, No. N00019-69-C-0465, was a supply contract and the use of any of the

Patent Rights clauses, 32 C.F.R. § 9.107-5, in the 1960-1976 versions Armed Services Procurement Regulation (ASPR),[1] 32 C.F.R., Chapter I, was precluded in fixed price supply contracts. Sparton Post-Tr. Br. at 8-9. As is discussed below, Sparton's argument is erroneous in virtually all respects.

### A. SPARTON MISSES THE POINT IN ARGUING THAT THE '-0465 CONTRACT WAS A SUPPLY CONTRACT

Sparton begins from the premise that because the contract was a fixed price supply contract, the *Christian* doctrine is inapplicable. This is so, according to Sparton, because the Patent Rights clause was not required in supply contracts, but only in research and development contracts. Sparton Post-Tr. Br. at 8-9. The issue, however, is not whether the contract was categorized as a "supply contract," but whether the work performed was "research and development work."

The controlling authority as to the Presidents' policy statements are the statements themselves and their implementing ASPR regulations. Neither President Kennedy's "Memorandum of October 10, 1963 [Government Patent Policy]," 28 Fed. Reg. 10943-10946 (Oct. 12, 1963) (Gov. Post-Tr. Br., Append. A) (the 1963 Policy Statement), nor President Nixon's "Memorandum of August 23, 1971, Government Patent Policy," 36 Fed. Reg. 16887-

---

[1] A caution on nomenclature: Sparton refers to a version of the ASPR that was used by contracting practitioners, which was in looseleaf form and updated periodically by replacing pages with new conforming pages. Sparton offers portions of four versions, first published in 1960, 1963, 1969 and 1976, respectively. The Government refers to the version of the ASPR published annually in the Code of Federal Regulations. Despite the differing source of the regulations, we have discerned no difference in content. There is, however, a difference is nomenclature: the locations of the hyphen and period are reversed. Thus, 32 C.F.R. § 7.104-7 in the Government brief is the same as ASPR § 7-104.7 in Sparton's brief.

16892 (Aug. 23, 1971) (Gov. Post-Tr. Br., Append. B) (the 1971 Policy Statement), distinguish between "supply contracts" and "research and development contracts." And the respective implementing ASPR regulation, 32 C.F.R. § 9.107, does not distinguish based on whether the *contract* is denominated a supply contract or a research and development contract. *See* 32 C.F.R. § 9.107-2 (1969) (Gov. Post-Tr. Br., Append. C); 32 C.F.R. § 9.107-2 (1971) (Gov. Post-Tr. Br., Append. D).

Rather, the policy statements and implementing regulations focus on *the nature of the work to be performed.* In each of the policy statements and implementing regulations, "contract" is defined for purposes of the policy as

> any actual or proposed contract … entered into with or for the benefit of the government where *a purpose of the contract is the conduct of experimental, developmental or research work.*

1963 Policy Statement, § 3(d) (Gov. Post-Tr. Br., Append at A5) (emphasis added); 1971 Policy Statement, § 3(e) (Gov. Post-Tr. Br., Append at A12); 32 C.F.R. § 9.107-2(c)(3) (1969) (Gov. Post-Tr. Br., Append. at A17); 32 C.F.R. § 9.107-2(c)(3) (1971) (Gov. Post-Tr. Br., Append. at A36). As is clear from each of these authorities, the focus is not on how one may categorize the contract, but rather on how one categorizes the work being performed. Notably, policy statements and implementing regulations specify that research, development or experimental work need not be the *sole* purpose of the contract: it need be only *a* purpose of the contract. Thus, as long as *any* of the work performed under the contract is research, developmental or experimental work, the patent policy applies.

Sparton's argument would elevate the form of the contract over its substance and allow the very type of "avoid[ance] or eva[sion]" and "sapping by subordinates" against which the

*Christian* doctrine is meant to protect. *G. L. Christian & Assoc. v. United States*, 320 F.2d 345, 351 (Ct. Cl.) (*Christian II*), *aff'g on reh'g*, 312 F.2d 418 (1963) (*Christian I*). Under Sparton's analysis, the actual work being performed would be of little consequence, what would be important is whether the contracting officer categorized the contract as one for "supplies or services" rather than as being for "research and development." And, under that analysis, the contracting officer would be able to evade or avoid the policy simply by labeling the contract as one for supplies or services, even if all of the contract effort was for "research and development."

The proper approach – the one followed in the Presidential policy statements and implementing regulations – is to look to the work being performed. If *any* part of the work being performed has as its purpose research, development or experimentation, then Presidential policy statements *require* the inclusion of Patent Rights clause. 1963 Policy Statement, § 3(d) (Gov. Post-Tr. Br., Append at A5); 1971 Policy Statement, § 3(e) (Gov. Post-Tr. Br., Append at A12); 32 C.F.R. § 9.107-2(c)(3) (1969) (Gov. Post-Tr. Br., Append. at A17); 32 C.F.R. § 9.107-2(c)(3) (1971) (Gov. Post-Tr. Br., Append. at A36).

In a similar vein, Sparton argues that "the Presidential policy statements … are inapplicable to fixed-price supply contracts." Sparton Post-Tr. Br. at 12. Once again, Sparton cites no authority for its proposition. The policy statements, as noted above, are to the contrary. Both the policy statements and the implementing regulations are phrased in terms of "research and development work," not "research and development contracts." 1963 Policy Statement, § 3(d) (Gov. Post-Tr. Br., Append at A5) (emphasis added); 1971 Policy Statement, § 3(e) (Gov. Post-Tr. Br., Append at A12); 32 C.F.R. § 9.107-2(c)(3) (1969) (Gov. Post-Tr. Br., Append. at A17); 32 C.F.R. § 9.107-2(c)(3) (1971) (Gov. Post-Tr. Br., Append. at A36). It is nature of the

work, not the categorization of the contract that is significant. On the facts of this case, Mod 4 required development work. Sparton's ECP states that the purpose is to "verify feasibility of [the] design approach." J11.1. And the accompanying Form ME-1017 indicated that the proposed design would only be incorporated into production during "future procurement." J12.1. And the statement of work stated that Sparton, in phase one, would design and construct engineering models and perform sea tests. D130.15 at ¶ 2.0. Further, each of the three SSQ-53 contractors received a similar engineering change modification at approximately the same time to address the same issue. Jt. Stip. of Fact at 8, ¶ 42; D17.4; D123.4 ¶ 3.1. Indeed, the ultimate goal of all three engineering change modifications, was to produce a small quantity of sonobuoys so that the Navy could obtain data from routine use of the dual depth sonobuoys and thereafter evaluate their efficacy. D17.4; D123.4 ¶3.1.

### B. The ASPR Did Not Preclude The Inclusion of a Patent Rights Clause in a Fixed Price Supply Contract

Sparton next asserts that "[t]he ASPR regulations pertaining to fixed-price supply contracts not only do not mandate the insertion of a Patent Rights clause, they also preclude its insertion therein by operation of law, discretion or otherwise." Sparton Post-Tr. Br. at 9. Syntactical issues aside,[2] this statement is based on a false premise.

Conspicuously absent from the Sparton's brief is any citation of authority for the proposition that the ASPR *precludes* the use of a Patent Rights clause in supply contracts. Rather, Sparton seems to contend that the relevant ASPR provisions were re-written in 1969,

---

[2] It is unclear whether "by operation of law, discretion or otherwise" is meant to be a series or whether "discretion or otherwise" is an appositive.

after which the "Navy did not have regulatory authority to include a Patent Rights clause in the '0465 contract." Sparton Post-Tr. Br. at 9.

To fully understand this argument, one must return to Sparton's historical review of the ASPR at pages 2 through 5 of Sparton's Post-Trial Brief. Essentially, Sparton argues that from 1960 through March of 1969, the Navy had discretionary authority to include a Patent Rights clause in supply and service contracts. Sparton Post-Tr. Br. at 3-4 (citing the Table of Contents for the 1960, 1963 and 1969 versions of the ASPR); *see also* Append. at A59, A69 (Patent Rights clause a clause "to be used when applicable" in fixed price supply contracts under 32 C.F.R. §§ 7.104, 7.104-7(1969)). Further, according to Sparton, that discretionary authority was somehow withdrawn due to the removal of 32 C.F.R. § 7.104-7 during 1969. Sparton Post-Tr. Br. at 4-5 (citing the Table of Contents for the 1973 and 1976 versions of the ASPR); *compare* Gov. Append. A59, A69 (1969 ASPR containing § 7.104-7) *with* Gov. Append. A82, A93 (1970 ASPR without § 7.104-7).

The difficulty with Sparton's argument is that it relies solely on the Table of Contents of the regulations, not on substance of the underlying regulatory provisions, and that it ignores other pertinent parts of the regulation. Indeed, contrary to Sparton's argument, the ASPR *at all times* required that contracting officer include a Patent Rights clause in fixed price supply contracts, if the contract also included research and development work.

In ASPR, Chapter I, Part 7, all contracts were divided into approximately 15-16 "types," depending on the method of pricing (*e.g.*, fixed price, cost plus fixed fee, incentive fee, etc.) and the nature of goods or services being procured (*e.g.*, supplies, research, development, construction, laundry, etc.). *See* Sparton Append. B-E. According to Sparton, the relevant

"type" of contract is fixed price supply contract (ASPR, Chapter I, Part 7, Subpart A) rather than a fixed price research and development contracts (ASPR, Chapter I, Part 7, Subpart C). *Compare* Gov. Append. A58-59, A68-69, A80-81 & A92 (Clauses for Fixed-Price Supply Contracts) *with id.*, A61, A72, A82-83 & A95 (Clauses for Fixed-Price Research and Development Contracts).

The significant provisions, however, are 32 C.F.R. §§ 7.101 (Applicability) and 7.104-7. Prior to June 1969, the ASPR required inclusion of a Patent Rights clause *where such a clause was applicable. See* 32 C.F.R. §§ 7.101, 7.104-7 (1969). And 32 C.F.R. § 1.201-4 (1969) defines a "contract" as including "awards and notices of award, contracts of a fixed price, cost, cost-plus-a-fixed-fee, or incentive type; …," and also includes "amendments and supplemental agreements with respect to any of the foregoing." *See also* Append. A79 (same in 32 C.F.R. § 1.201-4 (1970)). Thus, for purposes of applying the contract "types" in the ASPR, an amendment is itself a "contract."

But even if the Navy had discretion to incorporate a Patent Rights clause in 1969, the Navy lacked *any* discretion in 1971 when Sparton submitted ECP 0465-2 and when Mod 4 became effective. After the 1969 amendment to the ASPR, the section previously codified as 32 C.F.R. § 7.104-7 (1970) was removed. The import that Sparton attributes to this change is illusory, however, in light of an amendment to 32 C.F.R. § 7.101 (1970). As amended, the latter section provides:

> As used throughout this subpart, the term "fixed-price supply contract" shall mean any contract (a) entered into either by formal advertising or by negotiation other than (1) purchase orders …, (2) short form negotiated supply contracts …, (3) letter contracts, (4) notices of award, and (5) supplemental agreements to contacts …, which do not effect new procurement; (b) at a fixed price …; and (c) for supplies other than (1) the construction, alteration, or repair of …real property, (2) experimental developmental, or research work, or (3) facilities to be provided by the Government …. *However, there are supply*

> *contracts in which performance involves ... research and development, or other special factors. In such cases, see the particular subparts containing additional applicable clauses.*

32 C.F.R. § 7.101 (1970) (emphasis added); *see also* 32 C.F.R. § 7.101 (1973) (same provision still codified two years later). Where, as here, a contract involves *both* research and development work and supplies, the contracting officer is directed to include *both* the required clauses for the fixed price supply contracts and the required clauses for fixed price research and development contracts.

Further, Sparton concedes that the Patent Rights clause was required in fixed price research and development type contracts both before and after the change to the regulation in 1969. Sparton Post-Tr. Br. at 3 (stating that the Patent Rights clause was a "required clause" in fixed price research and development contracts in accordance with ASPR, §§7.302 and 7.302-23 (1960)); *id.* at 3-4 (same for 1963 version of ASPR); *id.* at 4 (same for the 1969 version of ASPR); *id.* at 4-5 (same for the 1973 and 1976 versions of ASPR). Therefore, the contracting officer was also obligated to incorporate a Patent Rights clause in Mod 4 because Mod 4 was a "contract" pursuant to 32 C.F.R. §§ 1.201-4 & 9.107-2(c)(3) (1970) and Mod 4 had as its purpose "research" or "development" work, as described in 32 C.F.R. § 9.107-2(c)(3).

With the incorporation of Mod 4 into the contract on July 13, 1971 (D17.10-11; D1.9 & .11), the '-0465 contract included a research and development component, as stated in the ECP and Sparton's cover letter (*see* D130.15 ¶ 2.0; D128.1). And 32 C.F.R. § 7.101 (1970) had already been amended, as described above, to require the contracting officer to incorporate in a fixed-priced supply contract, which had a research and development component, at least those

provisions of the ASPR that were required to be incorporated in research and development contracts.

Thus, contrary to Sparton's argument the ASPR certainly did not *preclude* the use of a patent rights clause in the supply contracts having a research and development component. Rather, where a supply contract also includes a research and development component, the ASPR specifically directs the contracting officer to apply the appropriate clauses for research and development contracts, as well as those for supply contracts.

### C. SPARTON'S CHANGES CLAUSE ARGUMENT ALSO MISSES THE MARK

Sparton further contends that "defendant [cannot] establish that the Navy's use of the '0465 contract's Changes clause was improper" and that "the Changes clause clearly trumped the Patent Rights clause" Sparton Post-Tr. Br. at 12-13. Sparton's argument is specious.

It appears that Sparton is attempting to argue that unless the Navy's use of the Changes clause was improper, then the failure to include a Patent Rights clause was proper. The second proposition, however, does not follow from the first.

The Changes clause does not specify what modifications may be made to the contract (or, conversely, which cannot). 32 C.F.R. § 7.103-2. Rather, the Changes clause specifies the *procedure* that must be followed, specifically: if the contract cost changes, then, under certain circumstances, the contracting officer must make an equitable adjustment to the contract. 32 C.F.R. § 7.103-2. As this court has seen, Sparton did request an equitable adjustment and the Navy modified the contract to reflect that equitable adjustment. *See* D1.1 &.3 ("supplemental agreement" finalizing equitable adjustment at $ 282,000), D1.5 (increasing limit for Mod 4 from

$ 198,000 to $ 294,000); D1.9 (setting limit of $ 198,000 on any equitable adjustment unless modified by the contracting officer); D128.1 (Sparton agrees to perform Mod 4 for an equitable adjustment in the fixed price of $ 198,000).

But nothing in the Changes clause allows a contracting officer to avoid or evade established policies. Rather, the determination as to which clauses are required stems from the nature of the modifications to the contract, not from application of the Changes clause. In this case, Mod 4 transformed the very nature of the contract: before Mod 4 became effective, the contract was strictly a supply contract; after Mod 4, the '-0465 contract included a research and development component.[3]

### D. In Light of the Presidential Policy Statements, There Is No Room for Deference to the Navy's Alleged Practices

Sparton next argues that "[b]ased on long standing (decades), deeply ingrained Navy procurement practice (policy) to obtain development work using ECPs under fixed-price production supply contracts … and the Navy's interpretation of the relevant procurement regulations to permit the same, to which deference must be given under *IBI*, *supra*, no Patent Rights clause should be incorporated into fixed-price supply contract … merely because a

---

[3] Although the research and development aspect of the ECP is undeniable, we repeat the salient evidence for the court's convenience: (1) the cover letter submitting the ECP states that the purpose is to "verify feasibility of [the] design approach" (J11.1); (2) the accompanying Form ME-1017 indicated that the proposed design would only be incorporated into production during "future procurement" (J12.1); (3) the statement of work stated that Sparton, in phase one, would design and construct engineering models and perform sea tests (D130.15 at ¶ 2.0); (4) the Navy had publicized its desire for a dual depth sonobuoy at meetings attended by the sonobuoy manufactures (D126.91:13-.94:4; Tr. (Boyle) 590:22-591:25, 593:12-594:3 & 3495:23-3497:16); and (5) each of the three SSQ-53 contractors received a similar contract modification implementing an engineering change proposal at approximately the same time to address the same issue (Jt. Stip. of Fact at 8 ¶ 42).

modification thereto … required the contractor to perform development work." Sparton Post-Tr. Br. at 10. Sparton's argument is confused and begins from a series of false premises.

As an initial matter, Sparton's contention that the Navy had a long standing "practice" or "policy" is baseless. Sparton does not provide any citations to support its claim of a "long standing" Navy "practice" or "policy" of using changes to supply contracts to conduct research or develop new products in the sonobuoy art.[4] The most that has been shown is that the Navy acted in that fashion only in the AN/SSQ-53 contracts with Sparton, Magnavox and Sanders. D17.4; D123.4 ¶ 3.1.

Sparton's reliance on *IBI Security Service, Inc. v. United States*, 19 Cl. Ct. 106, 110 (1989) is also misplaced. *IBI* stemmed from a contracting officer's denial of a contract price adjustment to account for a Department of Labor Wage Determination (which required that the plaintiff pay certain employees wages in accordance with certain collective bargaining agreements). *Id.* at 107. Plaintiff argued that, under certain temporary procurement regulations and the *Christian* doctrine, a price adjustment clause was a required clause that had to be incorporated by law into its contract. *Id.* The court found that publication of a Federal Acquisition Circular demonstrated that the drafters of the acquisition regulations had manifested their intention that the wage adjustment provisions would no longer be mandatory. *Id.* at 109.

---

[4] Sparton's argument regarding this putative practice or policy is also confused. Sparton's argument assumes that the government is contending that the Navy erred in modifying a supply contract to add research and development work. The government does not so contend. The Navy's error was in failing to include a Patent Rights clause when issuing the modification. The 1963 and 1971 Policy Statements and 32 C.F.R. § 9.107 only require that a Patent Rights clause be incorporated into the contract if the contract calls for "research and development work." Once the contracting officer decided to employ the '-0465 contract as a vehicle for performing research and development work, the contracting officer was obligated to include the appropriate Patent Rights clause.

The court then went on to find that the temporary regulations on which the plaintiff relied expired before the government sought the bids for the contracts at issue, and thus those regulations could not be the legal basis for incorporating a contract clause under the *Christian* doctrine. *Id.* And, finally, the court found the Department of Labor, which is charged with issuing the Wage Determinations, did not share plaintiff's expansive view of the temporary regulations. *Id.* at 110. Citing to *Udall v. Tallman*, 380 U.S. 1, 16 (1964), the court concluded that "[w]hen a court is asked to construe the meaning of an administrative regulation, deference to the agency's interpretation is in order."

Here, however, the policy statements and implementing ASPR provisions were created specifically to limit agency discretion and to create a uniform policy throughout the Federal government. Appendix A at A2, 28 Fed. Reg. at 10943 ("there is need for greater consistency in agency practices in order to further the governmental and public interests in promoting the utilization of federally financed inventions"); Appendix B at A9 ¶ G, 36 Fed. Reg. at 16889 ("[t]he prudent administration of Government research and development calls for a Government-wide policy on the disposition of inventions made under Government contracts reflecting common principles and objectives"). Thus, the policy would have been frustrated if the agency contracting officers, or even the Navy as an agency, had discretion to ignore or avoid it.

Further, Sparton confuses "practice" with "policy." Sparton Post-Tr. Br. at 10 ("deeply ingrained Navy procurement practice (policy)"). A "practice" is an activity done or performed "often, customarily or habitually." *Merriam-Webster's Collegiate Dictionary* 974 (11th ed., 2003). On the other hand, a "policy" is "a high-level overall plan embracing the general goals and acceptable procedures [especially] of a governmental body." *Id.* at 960. At most, Sparton

has shown a Navy *practice* of using existing supply contracts as a vehicle for conducting research and development work in some instances. But that putative practice could never trump the Presidents' declared *policy* as embodied in the 1963 Policy Statement or the 1971 Policy Statement or the implementing regulations in the ASPR. Indeed, as *Christian II* counsels that

> [o]bligatory Congressional enactments are held to govern federal contracts because there is a need to guard the dominant legislative policy against *ad hoc* encroachment or dispensation by the executive. There is a comparable need to protect the significant policies of superior administrators from sapping by subordinates.

320 F.2d at 351 (citation omitted). To the extent that Navy contracting officers had a practice of failing to incorporate a Patent Rights clause in supply contracts that called for "research and development work," the contracting officers were acting contrary to the directives of superior administrators embodied in the policy statements and implementing ASPR provisions. Sparton expressly argues that the actions of the Navy contracting officers should control over the collective will of two Presidents and the executives responsible for publication of the ASPR. Sparton's argument would encourage the very type of "sapping" that the *Christian* doctrine is designed to prevent.

Sparton's contention that a Patent Rights clause should not be incorporated into the '-0465 contract "*merely because a modification thereto … required the contractor to perform development work*" (Sparton Post-Tr. Br. at 10 (emphasis added)) is similarly misguided. Indeed, Mod 4 to the '-0465 contract should have incorporated a Patent Rights clause precisely because it called for development work. The whole point of both the 1971 Policy Statement and the implementing regulations in 32 C.F.R. § 9.107 was to require the inclusion of a Patent Rights clause, where a contract called for research or development work.

### E. Sparton's "Contemporaneous Actions" Argument Lacks Merit

Sparton next argues that the court should not employ the *Christian* doctrine here because the "parties contemporaneous actions during the performance of the subject '-0465 production supply contract support the conclusion that a Patent Rights clause should not be incorporated therein." Sparton Post-Tr. Br. at 11. Sparton then suggests (without citations to the trial transcript or exhibits) that four actions, or failures to act, demonstrate that the contracting parties treated the contract as not incorporating a Patent Rights clause. Sparton then concludes that "[t]o require [incorporation of a Patent Rights clause] now, decades after the completion of the contract, changes the agreement of the parties without statutory or regulatory authority mandating said change." Sparton Post-Tr. Br. at 11.

The first difficulty with Sparton's argument is that it lacks any logic. It is not surprising that Sparton and the Navy did not treat the contract as having a Patent Rights clause: the Navy did not include one within the four corners of the contract, as written. But the *Christian* doctrine causes a clause to be incorporated by operation of law, whether or not the parties act like one should have been included. *Christian I*, 312 F.2d at 427. Indeed, the term of "operation of law" is defined by lack of intent; it is "[t]he means by which a right or a liability is created for a party *regardless of the party's actual intent.*" Black's Law Dictionary, WL "operation of law" (8th ed. 2004).

Sparton's erroneous logic would mean that the *Christian* doctrine could only be applied where the parties intended to include the omitted clause and failed to do so as a result of ministerial error. *See* Sparton Post-Tr. Br. at 11. *S.J. Amoroso Const. Co. v. United States*, 12 F.3d 1072 (Fed. Cir. 1993), rejected a similar contention:

> Amoroso contends that the *Christian* case is inapplicable because in that case a clause was inadvertently omitted whereas in this case clause 79 was intentionally substituted for clause 34. This distinction, as the Claims Court held, is irrelevant. Application of the *Christian* doctrine turns not on whether the clause was intentionally or inadvertently omitted, but on whether procurement policies are being "avoided or evaded (deliberately or negligently) by lesser officials."

12 F.3d at 1075 (footnote and citations omitted). In most cases, the parties will be unlikely to treat the clause as being present. To be sure, in the extreme case where the omission occurs in an effort to deliberately avoid or evade the regulations (such as by collusion between the contractor and contracting officer) one could hardly expect that the parties would treat a deliberately omitted provision as being present. But even where the provision is negligently omitted by simple failure to recognize the need to insert it, the parties are also unlikely to treat the provision as being incorporated into the contract, if only because they had already failed to recognize that the omitted provision should have been incorporated in the first instance. But the *Christian* doctrine is to be employed regardless of whether the omission is deliberate or through negligence. Accordingly, resort to the Sparton's or the Navy's treatment of the matter is unnecessary.

The second difficulty in accepting Sparton's argument is the lack of authority to support it. Sparton's brief cites no case law or other authority to support its position. Sparton Post-Tr. Br. at 11. Rather, Sparton merely argues that requiring incorporation by operation of law "changes the bargain without statutory or regulatory authority." *Id.* In doing so, Sparton ignores the clear authority in *Christian I* and *Christian II* and their progeny for incorporating required clauses by operation of law. *Christian II*, 320 F.2d at 347, 356 (denying rehearing of *Christian I* and noting that the court "held in our original opinion that …the [ASPR] required, as a matter of law, the inclusion in plaintiff's … contract of the standard-form … article providing for the

termination of … contracts for the convenience of the Government"); *Christian I*, 312 F.2d at 426 ("We are not, and should not be, slow to find the standard termination article incorporated, as a matter of law, into plaintiff's contract if the [ASPR] can fairly be read as permitting that interpretation"); *see also S. J. Amoroso Const.*, 12 F.3d at 1075 ("Under the … *Christian* doctrine, a mandatory contract clause that expresses a significant or deeply ingrained strand of public procurement policy is considered to be included in a contract by operation of law"). And Sparton also ignores that the basis for such incorporation is "Supreme Court law that the United States is neither bound nor estopped by its agents who act beyond their authority or contrary to statute and regulations." *S. J. Amoroso Const.*, 12 F.3d at 1075 (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Yosemite Park & Curry Co. v. United States,* 582 F.2d 552, 558 (1978); and *Porter v. United States,* 496 F.2d 583, 590 (1974)).

Sparton's argument regarding the contemporaneous actions of Sparton and the Navy is contrary to law and therefore irrelevant to whether this court should apply the *Christian* doctrine.

### F. SPARTON'S ARGUMENT ON CONCEPTION AND REDUCTION TO PRACTICE FAILS TO ACCOUNT FOR THE FEDERAL CIRCUIT'S REVERSAL OF THE SUMMARY JUDGMENT

Finally, Sparton contends that this court "has already ruled on the conception and reduction to practice issues" and that the Government "appears to contest these rulings, citing to *Sparton Corp. v. United States*, 57 Fed. Cl. 455 (2003) (*Sparton I*). Sparton Post-Tr. Br. at 14-15. Sparton is misinformed as to the law.

This court's opinion and judgment in *Sparton I* was reversed by the Federal Circuit in *Sparton Corp. v. United States*, 399 F.3d 1321 (Fed. Cir. 2005) (*Sparton II*). The question of the

effect of the reversal on the court's findings of fact arose during the trial. *See* Tr. 286:22 - 290:16 (colloquy between court and counsel over admission of exhibits used in summary judgment motion). Sparton was thus aware of countervailing arguments to its position. Yet, without citation to any authority, Sparton urges that the "court has ruled on these issues." Sparton Post-Tr. Br. at 14-15.

The Federal Circuit has concluded that a reversal causes the lower court's orders and opinions to be of no effect. *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 598 (Fed. Cir. 1995) (applying Seventh Circuit law). In *Philips*, the Federal Circuit quoted with approval *Pontarelli Limousine, Inc., v. City of Chicago*, 929 F.2d 339, 340-41 (7th Cir. 1991), as stating:

> [The question on appeal] is whether the district judge erred in refusing to give the judgment in Chicago Courtesy collateral estoppel effect in this case. … He did not err. A vacated judgment has no collateral estoppel or res judicata effect under Illinois law, *Matchett v. Rose*, 36 Ill. App. 3d 638, 649, 344 N.E.2d 770, 779 (1976) (or any other law, *No East-West Highway Committee, Inc. v. Chandler*, 767 F.2d 21, 24 (1st Cir. 1985)).

The reference to "any other law" is of particular import here. The Federal Circuit then went on to quote the First Circuit in *No East-West Highway*, 767 F.2d at 24, for the proposition that a vacated judgment "has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case." *Philips*, 55 F.3d at 598. This is consistent with the view of other courts. *Khadr v. United States,* 529 F.3d 1112, 1115-16 (D.C. Cir. 2008) ("It has long been well established that the reversal of a lower court's decision sets aside that decision, leaves it 'without any validity, force, or effect,' and requires that it be treated thereafter as though it never existed," citing *Butler v. Eaton*, 141 U.S. 240, 243-44 (1891) ("The judgment complained of is based directly upon the judgment of the supreme judicial court of Massachusetts, which we have just reversed. It is apparent from an inspection of the record that the whole foundation of that

part of the judgment which is in favor of the defendant is, to our judicial knowledge, without any validity, force, or effect, and ought never to have existed.”)); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991) (“Once we reversed the original judgment incorporating the first jury’s verdict and our mandate issued, the first verdict became null and void in its entirety. The district court could no more reinstate the damages portion of the first verdict than it could substitute the second jury’s award with a larger sum pulled out of a magically appearing hat.” (citation omitted)); *Atlantic Coast Line Ry. v. St. Joe Paper Co.*, 216 F.2d 832, 833 (5th Cir. 1954) (“To reverse a judgment … means to overthrow it by a contrary decision, to make it void, to undo or annul it for error”); *Keller v. Hall*, 111 F.2d 129, 131 (9th Cir.1940) (“the judgment theretofore rendered in the case, after it was reversed, was ‘without any validity, force, or effect,’” quoting *Butler*)); *CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, 499 F.3d 184, 188 n.2 (3d Cir. 2007) (citing 5 C.J.S. Appeal and Error § 1106 (2007) (the effect of a reversal of a judgment “is to nullify it completely and to leave the case standing as if such judgment ... had never been rendered, except as restricted by the opinion of the appellate court”)); *De Nafo v. Finch*, 436 F.2d 737, 740 (3d Cir. 1971) (cited in *No East West Highway*, 767 F.2d at 24)).

As a result, *Sparton I* is of “no effect,” and the only facts established, as law of case, are those necessary to the judgment in *Sparton II.* Thus, Sparton is quite clearly wrong when it argues that this court has ruled on the “issues” of conception and reduction to practice.

In any event, Sparton does not contest that the date of conception was after Mod 4 had been adopted. To be sure, Sparton argued before the Federal Circuit that “[c]onception of the 120 and 233 claimed inventions occurred between July 29, 1971 and November 23, 1971, when

this single part release plate was conceived for use in the dual depth sonobuoy." D17.13. The Federal Circuit accepted that fact in determining that the alleged barring event – ECP 0465-2 – could not have been an offer of the claimed invention. 399 F.3d at 1325 (quoting 57 Fed. Cl. at 468). Sparton is thus barred by either judicial estoppel or law of the case from arguing any other conception date. *New Hampshire v. Maine*, 532 U.S. 742, 742-43 (2001) ("[u]nder the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him"); *Toro Co. v. White Consolidated Inds.*, 383 F.3d 1326 (Fed. Cir. 2004) (law of the case doctrine precludes a party from rearguing issues that were actually decided, either explicitly or by necessary implication, earlier in the litigation).

On the other hand, Sparton offers no argument as to when the invention was reduced to practice other than a simple conclusory statement that it was "in the summer of 1972 when the inventions were tested under actual service conditions." Sparton Response Br. at 15. Sparton's failure to cite any evidence is fatal to its argument.

As demonstrated in the preceding section (and in Government's Post-Trial Brief, sections I.C. and II.E) the claimed inventions were reduced to practice in course of the '-0465 contract. In support of its conclusion, the Government has cited to Sparton's own documents establishing at least five tests, all performed under the contract, between November 1971 and March 9, 1972, any of which could be considered the first reduction to practice.[5]

---

[5] In its prior opinion on summary judgment, the court had found that the March 9, 1971 test was the first actual reduction to practice. *Sparton I*, 57 Fed. Cl. at 477-78.

## II. CONCLUSION

For the reasons stated above and in the "Post-Trial Brief of the United States on Application of the *Christian* Doctrine," the ASPR Patent Rights clause at either 32 C.F.R. § 9.107-5(a) or 32 C.F.R. §9.107-5(b) was required to be inserted in Mod 4 of the '-0465 contract. Under either clause, the government obtains a royalty-free license to manufacture and use the claimed inventions of the '120 and '233 patents. Accordingly, at least the clause at 32 C.F.R. § 9.107-5(b) should be incorporated in the '-0465 contract by operation of law under the *Christian* doctrine. As a result, the United States has a lawful right to use the claimed inventions of '120 and '233 patents and, consequently, did not engage in unauthorized use of either patent. Sparton's claim, therefore, should be dismissed.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN FARGO
Director

*s/Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

August 25, 2008

# APPENDICES

## TABLE OF APPENDICES

E Extract of Armed Services Procurement Regulation, 32 C.F.R. Parts 1 and 7 (1969).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A51

F Extract of Armed Services Procurement Regulation, 32 C.F.R. Parts 1 and 7 (1970).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A73

G Extract of Armed Services Procurement Regulation, 32 C.F.R. Parts 1 and 7 (1973).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A98

**REPLY BRIEF OF THE UNITED STATES**
**ON APPLICATION OF THE CHRISTIAN DOCTRINE**

**APPENDIX E**

Extract of Armed Services Procurement Regulation,
32 C.F.R. Parts 1 and 7 (1969)

# CODE OF FEDERAL REGULATIONS

**TITLE 32**

**Parts 1 to 8**

**Revised as of January 1, 1969**

---

CONTAINING A CODIFICATION OF DOCUMENTS OF GENERAL APPLICABILITY AND FUTURE EFFECT AS OF JANUARY 1, 1969

***With Ancillaries***

Published by the Office of the Federal Register, National Archives and Records Service
General Services Administration, as a Special Edition of the Federal Register
Pursuant to Section 11 of the Federal Register Act as Amended

---

# CHAPTER I—OFFICE OF THE SECRETARY OF DEFENSE

(Parts 1–8)

SUBCHAPTER A—ARMED SERVICES PROCUREMENT REGULATIONS


| *Part* | |
|---|---|
| 1 | General provisions. |
| 2 | Procurement by formal advertising. |
| 3 | Procurement by negotiation. |
| 4 | Special types and methods of procurement. |
| 5 | Interdepartmental and coordinated procurement. |
| 6 | Foreign purchases. |
| 7 | Contract clauses. |
| 8 | Termination of contracts. |


CROSS REFERENCE: For table of contents, Subchapters B–Q, see volume containing Parts 40 to 399.

## SUBCHAPTER A—ARMED SERVICES PROCUREMENT REGULATIONS

### PART 1—GENERAL PROVISIONS

#### Subpart A—Introduction


| Sec. | |
|---|---|
| 1.100 | Scope of subpart. |
| 1.101 | Purpose of subchapter. |
| 1.102 | Applicability of subchapter. |
| 1.103 | Arrangement of subchapter. |
| 1.103–1 | General plan. |
| 1.103–5 | Dating contract clauses. |
| 1.104 | Content of subchapter. |
| 1.105 | Amendment of subchapter. |
| 1.106 | Other Department of Defense publications. |
| 1.106–1 | Department of Defense directives, instructions, manuals, and circulars. |
| 1.106–2 | Defense Procurement Circulars. |
| 1.106–3 | Armed Services procurement manuals. |
| 1.107 | Dissemination and effective date of the subchapter, revisions, supplements, and manuals. |
| 1.108 | Departmental procurement instructions and ASPR, implementations. |
| 1.109 | Deviations from this subchapter and Department of Defense publications governing procurement. |
| 1.109–1 | Applicability. |
| 1.109–2 | Deviations affecting one contract or transaction. |
| 1.109–3 | Deviations affecting more than one contract or contractor. |
| 1.109–4 | Deviations required by Government-to-Government agreements. |
| 1.109–5 | Request for approval of proposed deviation. |
| 1.110 | Reports of purchases and contracts. |
| 1.111 | Reports of suspected criminal conduct and non-competitive practices. |
| 1.111–1 | Reporting procedures. |
| 1.111–2 | Non-competitive practices. |
| 1.111–3 | Subcontractor kickbacks. |
| 1.111–4 | Contractor gratuities to Government personnel. |

dministration proce-

s.

Cost or Funds Under
t Type Contracts

t.
ɔst or funds.

isions of this Part 1
secs. 2202, 2301–2314,
U.S.C. 301, 10 U.S.C.

ntroduction

ɔpart.

ɪrth (a) introduc-
ining to the sub-
applicability, con-
nt), and (b) in-
ng, implementing,
viating from the

30]

bchapter.

ed by the Assist-
ise (Installations
tion of the Secre-
in coordination
the Army, Navy,
Director of the
, establishes for
efense, uniform
relating to the
es and services
f Chapter 137,
States Code, or
uthority.
]

subchapter.

apply to all pur-
ade by the De-
ithin or outside
see § 1.109–4),
upplies or serv-
ropriated funds
ract authoriza-
pecified herein,
rvices procured
ts, transporta-
ling, and simi-
(Procurement
portation serv-
e with specific
ons issued by
nagement and
y Sea Trans-
y Airlift Com-
its.

### § 1.103 Arrangement of subchapter.

[25 F.R. 14079, Dec. 31, 1960]

### § 1.103–1 General plan.

The subchapter is divided into parts, each one of which deals with a separate aspect of procurement, and each part is further subdivided into subparts and sections.

[25 F.R. 14079, Dec. 31, 1960]

### § 1.103–5 Dating contract clauses.

Contract clauses in this subchapter are identified by showing the year and month of issuance of the clause, as most recently revised, in parentheses immediately after the title, e.g., "Incentive Price Revision (Firm Target) (April 1968)". Where an alternative paragraph is provided for insertion in a clause, the identifying date is shown in parentheses immediately following the text of the paragraph. In contract forms using ASPR clauses, each clause should be shown with its identifying date in the manner prescribed above, except that (a) standard forms are not subject to this requirement and (b) Department of Defense forms and departmental forms that were issued prior to October 1, 1960, should not be revised solely to meet this requirement. Where a clause to be used in a contract represents a deviation from this subchapter, a date will not be shown.

[33 F.R. 15380, Oct. 17, 1968]

### § 1.104 Content of subchapter.

(a) This subchapter will contain policies and procedures relating to the procurement of supplies and services and is designed to achieve maximum uniformity throughout the Department of Defense. Hence, implementation of this subchapter by and within the Military Departments, the Defense Supply Agency, the Defense Communications Agency and the Defense Atomic Support Agency shall be only in accordance with § 1.108. This subchapter will be amended, from time to time, to set forth improved procedures which reduce contract preparation time, simplify and standardize contract forms within the Department of Defense, and improve the contracting process by standardizing procedures and instructions. In this connection, personnel at all levels, particularly the contracting level are encouraged to submit through appropriate channels suggestions, based on operating experience, to reduce administrative burden, simplify contract forms and procedures, and otherwise accomplish the foregoing objectives.

(b) A supplement to the regulations in this subchapter, entitled USEUCOM Supplement (not published in the C.F.R.), is applicable to all purchasing offices of the Department of Defense in the North Atlantic-Mediterranean area, including all of Europe. The USEUCOM Supplement and changes thereto are developed by USEUCOM and concurred in by the Offshore Procurement Policy Coordinating Committee representing the purchasing offices in that area and, after adoption and approval by the Armed Services Procurement Regulation Committee, are published and distributed by the Headquarters, U.S. European Command, as an integral part of the Armed Services Procurement Regulation. In addition, Headquarters USEUCOM publishes Tabs to the USEUCOM Supplement which contain source and informational material (such as government-to-government agreements and tax information) and which do not require approval by the Armed Services Procurement Regulation Committee.

[30 F.R. 5959, Apr. 29, 1965, as amended at 30 F.R. 6965, May 25, 1965]

### § 1.105 Amendment of subchapter.

This subchapter may be amended from time to time by the issuance of "Revisions," by the Assistant Secretary of Defense (Installations and Logistics) after coordination with the Secretaries of the Army, Navy, and Air Force and the Director of the Defense Supply Agency. Unless otherwise directed in a particular case by the Assistant Secretary of Defense (Installations and Logistics), proposed amendments shall be submitted to the Armed Services Procurement Regulation Committee. Proposals for amendments originating within the Military Departments shall be submitted to the Chairman of the Armed Services Procurement Regulation Committee by the Departmental members of the Committee. However, where unusual circumstances warrant, the Secretaries may submit proposals for amendments to the Assistant Secretary of Defense (Installations and Logistics).

[26 F.R. 5296, June 14, 1961, as amended at 27 F.R. 11643, Nov. 27, 1962]

### § 1.106 Other Department of Defense publications.

[25 F.R. 14079, Dec. 31, 1960]

shall be included
and requests for
after, unless a dif-
expressed in the
unless otherwise
ar, the new or re-
need not be in-
already in process
their inclusion
delay in the solici-

4, as amended at 30

ices procurement

the authority in
ces procurement
hed when deter-
sable. They shall
for training and
hall not contain
ctive in nature.
as Armed Serv-
als shall first be
Services Procure-
ittee. Such pub-
thereto will be
rocurement cir-

nd effective date
evisions, supple-

and revisions
ed by the De-
d activities and
Department of
and manuals
tributed sepa-
indicate. The
ll obtain from
Office the num-
apter, revisions
manuals, re-
bution. Private
ers outside the
y obtain copies
purchase from
cuments, U.S.
ce, Washing-

med Services
hall be effec-
ions 90 days
ess otherwise
sion. Supple-
be effective
wise provided
and forms
shall be used

in all invitations for bids and requests for proposals issued after the effective date thereof, unless otherwise provided in any such revisions.

[30 F.R. 6965, May 25, 1965]

### § 1.108 Departmental procurement instructions and ASPR implementations.

(a) The Departments and their subordinate organizations shall not issue instructions, including directives, regulations, contract forms, contract clauses, policies, or procedures implementing this subchapter or covering the procurement of supplies or services or the administration of contracts for such supplies or services, unless permitted by one of the following and if consistent with paragraph (b) of this section:

(1) Internal procurement management instructions such as designations and delegations of authority, assignments of responsibilities; work flow procedures, and internal reporting requirements;

(2) Any special contract clause of a non-repetitive nature designed specifically to accomplish the peculiar requirements of an individual procurement, provided a clause relating to the subject matter is not set forth in this subchapter;

(3) A variation of any contract clause which is set forth in this subchapter but not for use verbatim: *Provided*, That such variation is not inconsistent with the intent, principle, and substance of the ASPR clause or related coverage of the subject matter;

(4) Interim instructions having an effective duration not exceeding 6 months (unless approved for a longer period by the ASPR Committee) essential to meet current operational needs or to effect greater efficiency in procurement management, including service tests of new techniques or methods of procurement, provided such instructions are submitted prior to issuance or immediately thereafter for consideration by the ASPR Committee;

(5) Procurement procedures specifically identified as being essential for carrying out the peculiar needs of specialized commodity areas when authorized by: For the Army, Director of Procurement Policy and Review, Office of the Assistant Secretary of the Army (Installations and Logistics); for the Navy, Deputy Chief of Naval Material (Procurement); for the Air Force, Director of Procurement Policy, Office of the Deputy Chief of Staff (Systems and Logistics); for the Defense Supply Agency, Executive Director, Procurement and Production, and notification is given to the ASPR Committee immediately upon such authorization for the purpose of determining whether such procedures should be included in this subchapter;

(6) Procurement instructions specifically identified as being essential for carrying out the peculiar needs of overseas commands when authorized by the cognizant unified commander and notification is given to the ASPR Committee immediately upon such authorization for the purpose of determining whether such instructions should be included in this subchapter;

(7) Material determined by the ASPR Committee to be inappropriate for ASPR coverage, but appropriate for inclusion in Departmental publications.

(b) Instructions issued in accordance with paragraph (a) of this section shall not contain material which duplicates, is inconsistent with, or increases or restricts the use of, any authority contained in this subchapter.

(c) Each Department shall furnish to the other Departments one copy of each Departmental procurement instruction issued in accordance with paragraphs (a) and (b) of this section.

(d) Each Department shall screen all existing instructions as well as those subsequently issued pursuant to paragraphs (a) through (c) of this section to assure strict compliance with this section, and for the purpose of determining if the subject matter is appropriate for inclusion in this subchapter.

[29 F.R. 6911, May 27, 1964, as amended at 29 F.R. 14815, Oct. 31, 1964; 30 F.R. 14071, Nov. 9, 1965; 32 F.R. 16398, Nov. 30, 1967]

### § 1.109 Deviations from this subchapter and Department of Defense publications governing procurement.

[25 F.R. 14079, Dec. 31, 1960]

### § 1.109-1 Applicability.

The regulations of this subchapter are not intended to stifle the development of new techniques or methods of procurement. Innovations to attain desirable objectives will occasionally necessitate deviations from the regulations of this subchapter, and it is the responsibility of contracting officers to request such deviations whenever they are required in the best interest of the Government.

For the purpose of this section, a deviation shall be considered to be any of the following:

(a) When a contract clause is set forth in this subchapter for use verbatim, use of a contract clause covering the same subject matter which varies from the ASPR coverage, or use of a collateral provision which modifies either the clause or its prescribed application constitutes a deviation; however, in the case of a purchase or contract of an offshore contracting activity with a foreign contractor made outside the United States, its possessions, or Puerto Rico, such contract clauses may (subject to the direction of authority above the level of the contracting officer) be modified if no change in intent, principle, or substance is made (offshore contracting activities shall keep the cognizant unified Commander advised of significant deviations effected under this paragraph);

(b) When a contract clause is set forth in this subchapter but not for use verbatim, use of a contract clause covering the same subject matter which is inconsistent with the intent, principle and substance of the ASPR clause or related coverage of the subject matter;

(c) Omission of any mandatory contract clause constitutes a deviation;

(d) When a Standard, DD, or other form is prescribed by this subchapter or a Department of Defense Directive, use of any other form for the same purpose constitutes a deviation;

(e) Alteration of a Standard, DD, or other form (other than Departmental forms), except as authorized by this subchapter or a Department of Defense Directive constitutes a deviation;

(f) When limitations are imposed in this subchapter or a Department of Defense Directive upon the use of a contract clause, form, procedure, type of contract, or any other procurement action, including but not limited to the making or amendment of a contract, or actions taken in connection with the solicitation of bids or proposals, award, administration or settlement of contracts, the imposition of lesser or greater limitations constitutes a deviation; or

(g) When a policy, procedure, method or practice of conducting procurement actions of any kind at any stage of the procurement process is covered by this subchapter, any policy, procedure, method, or practice which is inconsistent with that set forth constitutes a deviation.

(h) Issuance of any instructions described in § 1.108(a) (including an instruction for any additional contract clause, form, or type, or additional procurement policy, procedure, method or practice, not covered in ASPR or in Department of Defense Directives) constitutes a deviation unless permitted under § 1.108(a) (1) through (7).

[30 F.R. 14071, Nov. 9, 1965, as amended at 33 F.R. 7347, May 18, 1968]

## § 1.109-2 Deviations affecting one contract or transaction.

Deviations from this subchapter or a Department of Defense Directive which affect only one contract or procurement may be made or authorized in accordance with Departmental procedures provided (a) special circumstances justify a deviation and (b) written notice of such deviation is furnished to the Assistant Secretary of Defense (Installations and Logistics); and in the case of the Department of the Army, to the Assistant Secretary of the Army (I&L), Attention: ASPR Policy Member; the Department of the Navy, the Chief of Naval Material, Attention: Code MAT02G; Department of the Air Force, Director of Procurement Policy, DCS/S&L, Attention: AFSPP-S; and the Defense Supply Agency, Executive Director, Procurement and Production, Attention: DSAH-PM. Such written notice shall be given in advance of the effective date of such deviations unless exigency of the situation requires immediate action.

[32 F.R. 16398, Nov. 30, 1967]

## § 1.109-3 Deviations affecting more than one contract or contractor.

Except as authorized in § 1.109-2, deviations from this subchapter or a Department of Defense Directive will not be effected unless approved in advance by the Assistant Secretary of Defense (Installations and Logistics): *Provided, however,* That unanimous approval by the members of the ASPR Committee will constitute approval of the Assistant Secretary of Defense (Installations and Logistics) of all matters except those involving major policy. Written requests for such approval will be submitted to the Assistant Secretary of Defense (Installations and Logistics) through the ASPR Committee as far in advance as exigencies of the situation will permit, or alternatively, at the option of the

Materiel Secreta
use of the Mater
Conference.

[26 F.R. 5296, June

§ 1.109-4 Devia
ernment-to-G

Notwithstandin
3, any deviation
that is required
with a treaty or
which the Unite
authorized unles
substantively aff
subchapter that i
ments of a law e
of the treaty or
In the latter eve
in accordance wi
cedures, be ref
Committee for c
cognizant unified
advised of such a
action which c
from an ASPR p
a requirement of
abeyance pendin
ASPR Committee
ject matter of t
not covered in su
agreement and i
the subject matte
vision in the co
must be in accor
ciple, and substa
vision; provided
involves a signifi
clause set forth
chapter, the co
mander shall be a

[26 F.R. 5296, June

§ 1.109-5 Requ
posed deviati

Request for ap
shall be forwarde
thority through
Each submission
mum:

(a) Identificati
of this subchapte
is sought;

(b) A full desc
and the circumst
be used;

(c) A descripti
fect of the deviat

(d) A copy of a
including forms c
posed contractor's

ıstructions de-
cluding an in-
ional contract
ıdditional pro-
:re, method or
.SPR or in De-
:ctives) consti-
ɜrmitted under
).
. as amended at

ɜcting one con-

.bchapter or a
irective which
r procurement
:ed in accord-
rocedures pro-
:tances justify
:ten notice of
: to the Assist-
(Installations
.e case of the
to the Assist-
ıy (I&L), At-
nber; the De-
Chief of Naval
MAT02G; De-
ɜ, Director of
/S&L, Atten-
efense Supply
Procurement
: DSAH-PM.
ɜ given in ad-
of such devia-
the situation

cting more
ontractor.

in § 1.109-2,
pter or a De-
tive will not
l in advance
' of Defense
): *Provided*,
approval by
Committee
he Assistant
ıllations and
ept those in-
ten requests
ubmitted to
Defense (In-
through the
advance as
will permit,
tion of the

Materiel Secretary concerned, through use of the Materiel Secretaries' Weekly Conference.

[26 F.R. 5296, June 14, 1961]

**§ 1.109-4 Deviations required by Government-to-Government agreements.**

Notwithstanding §§ 1.109-2 and 1.109-3, any deviation from this subchapter that is required in order to comply with a treaty or executive agreement to which the United States is a party is authorized unless the deviation would substantively affect a provision of this subchapter that is based on the requirements of a law enacted after execution of the treaty or executive agreement. In the latter event, the deviation shall, in accordance with Departmental procedures, be referred to the ASPR Committee for consideration, and the cognizant unified Commander shall be advised of such action. Any procurement action which constitutes a deviation from an ASPR provision based on such a requirement of law shall be held in abeyance pending consideration by the ASPR Committee. However, if the subject matter of the ASPR provision is not covered in such a treaty or executive agreement and it is decided to treat the subject matter of such an ASPR provision in the contract, the treatment must be in accord with the intent, principle, and substance of the ASPR provision; provided that, if such treatment involves a significant deviation from a clause set forth verbatim in this subchapter, the cognizant unified commander shall be advised.

[26 F.R. 5296, June 14, 1961]

**§ 1.109-5 Request for approval of proposed deviation.**

Request for approval of any deviation shall be forwarded to the approving authority through procurement channels. Each submission shall contain as a minimum:

(a) Identification of the requirement of this subchapter from which deviation is sought;

(b) A full description of the deviation and the circumstances in which it will be used;

(c) A description of the intended effect of the deviation;

(d) A copy of any pertinent document, including forms or clauses and the proposed contractor's request, if any;

(e) A statement of the period of time for which the deviation is needed; and

(f) Detailed reasons supporting the request.

[25 F.R. 14815, Oct. 31, 1964]

**§ 1.110 Reports of purchases and contracts.**

Periodic and special reports on purchases and contracts are prescribed by the Department of Defense. These reports are designed to meet statutory and other Congressional requirements, requirements of Federal agencies, and provide all levels of management with data on which to formulate procurement policy as well as to determine the extent of adherence to prescribed policy. Basic to the preparation of all these regular and special reports, so far as they affect individual contracting officers, is DD Form 350 (Individual Procurement Action Report). Each item of this form enters into the preparation of reports furnished the President, the Congress, and other Federal agencies, and is used for management purposes within the Department of Defense. The accuracy, completeness, and timeliness of these reports are fully dependent on the careful preparation and prompt submission of DD Form 350.

[25 F.R. 14080, Dec. 31, 1960, as amended at 26 F.R. 9633, Oct. 12, 1961; 27 F.R. 8869, Sept. 6, 1962]

**§ 1.111 Reports of suspected criminal conduct and non-competitive practices.**

[25 F.R. 14080, Dec. 31, 1960]

**§ 1.111-1 Reporting procedures.**

Reports of suspected criminal conduct, noncompetitive practices, kickbacks, and other procurement irregularities shall be made by each Department in accordance with procedures set forth in Subpart F of this part.

[30 F.R. 5959, April 29, 1965]

**§ 1.111-2 Noncompetitive practices.**

(a) Unless bids or proposals are genuinely competitive, contract prices tend to be higher than they should be. If the Secretary concerned or his representative considers that any bid received after formal advertising evidences a violation of the antitrust laws, he is required by 10 U.S.C. 2305(d) to refer such bids to the Attorney General for appropriate action. Similarly, evidence of

r ordering instru-
to the terms of
he Government's
e met from an-

make the deter-
paragraph (d) of
shall not be dele-
low the level of
activity.
ion is suspected
is indication of
ll be processed in
l. For rejection
ted of being col-
otiation of pro-
such rejection,
d 3.215 of this

0, as amended at

ns of Terms

his subchapter,
ned in this sub-
nings set forth
a) the context
clearly required
(b) a different
or a particular

written order
officer, direct-
changes which
contract au-
officer to order
he contractor.

ication.

eans any writ-
ification, de-
very, contract
other contract
ng contract,
y unilateral
contract pro-
of the parties
(a) bilateral
ental agree-
actions such
rative notices
act changes,
option.

### § 1.201-3 Contracting officer.

"Contracting Officer" means any person who, either by virtue of his position or by appointment in accordance with procedures prescribed by this subchapter, is currently a contracting officer (see § 1.400) with the authority to enter into and administer contracts and make determinations and findings with respect thereto, or with any part of such authority. (NOTE: Recent assignments of contract administration responsibilities have necessitated a separation of duties related to procurement, with some duties normally performed at a purchasing office and some normally performed at a contract administration office. For convenience of expression, when requiring performance of specific duties by a contracting officer, this subchapter may refer to a contracting officer at the purchasing office as the procuring contracting officer (PCO), and to a contracting officer at a contract administration office as an administrative contracting officer (ACO). Additionally, a contracting officer, responsible for the settlement of terminated contracts, may be referred to as the termination contracting officer (TCO). It is recognized that a single contracting officer may be responsible for duties in any or all of these areas, and reference in this subchapter to PCO, ACO, or TCO does not of itself require that duty be performed at a particular office or activity or restrict in any way a contracting officer in the performance of any duty properly assigned. For example, a duty specified by this subchapter to be performed by the ACO will be performed by a contracting officer at the purchasing office when contract administration or responsibility for that duty has been retained in the purchasing office.)

[30 F.R. 11997, Sept. 21, 1965, as amended at 31 F.R. 1039, Jan. 27, 1966]

### § 1.201-4 Contracts.

"Contracts" means all types of agreements and orders for the procurement of supplies or services. It includes awards and notices of award; contracts of a fixed-price, cost, cost-plus-a-fixed-fee, or incentive type; contracts providing for the issuance of job orders, task orders or task letters thereunder; letter contracts, letters of intent, and purchase orders. It also includes amendments and supplemental agreements with respect to any of the foregoing.

[25 F.R. 14081, Dec. 31, 1960]

### § 1.201-5 Department and Military Department.

Department and Military Department include the Department of the Army, the Department of the Navy, the Department of the Air Force, the Defense Supply Agency, the Defense Communications Agency, and the Defense Atomic Support Agency.

[30 F.R. 5960, Apr. 29, 1965]

### § 1.201-6 Department of Defense.

"Department of Defense" comprises the Office of the Secretary of Defense and the military departments.

[25 F.R. 14081, Dec. 31, 1960]

### § 1.201-7 Head of a procuring activity.

"Head of a procuring activity" includes, for the Army, the chiefs of the technical services, the Zone of Interior Army commanders, the Chief of the National Guard Bureau, the Commanding General of the Military District of Washington, U. S. Army and the commanding generals of the major oversea commands; for the Navy, the Chief of each Bureau, the Chief of Naval Research, the Aviation Supply Officer, the Commander, Military Sea Transportation Service, and the Commandant of the United States Marine Corps; for the Air Force, the Commander, Air Materiel Command. It also includes the Executive Director of the Military Medical Supply Agency, the Executive Director of the Military Petroleum Supply Agency, and the head of any other procuring activity hereafter established. The number and designation of Heads of Procuring Activities within any military department may be changed by directive of the Secretary.

[25 F.R. 14081, Dec. 31, 1960]

### § 1.201-8 Includes.

"Includes" means "includes but is not limited to."

[25 F.R. 14081, Dec. 31, 1960]

### § 1.201-9 Labor surplus area concern.

See § 1.801-1.

[25 F.R. 14081, Dec. 31, 1960]

### § 1.201-10 May.

May is permissive. However, the words "no person may * * *" mean that no person is required, authorized, or permitted to do the act prescribed.

[29 F.R. 6912, May 27, 1964]

ng approval

r shall refer
) the appro-
elow when:
offer in ex-
s the lowest
y more than
dollar cost

: U.S. dollar

ve offer in
exceeds the
U.S. dollars.
r shall refer
ribing, as a
nvolved; the
n each cur-
; responsive
ate or dates
his recom-
fer, if any,

he Military
of Defense
he Directors
ne Assistant
inistration),
determine
rement de-
this section
U.S.-owned
dollars.

f nonfeasi-
ications.

'd, the con-
ine whether
ign currency

ting officer
asible under
to use U.S.-
payment of a
a Contract
ing format.

ION

ot feasible to
ntract in the
------ in the
Inited States-
reason stated.

ire)

------------
and title of
officer)

oreign cur-
ombined for
ollar amount

shown in the Contract Certification shall be that amount which is to be paid in U.S. dollars.

(d) The original and one copy of each Contract Certification shall be furnished to the disbursing officer designated to make payments under the contract; and one signed copy shall be filed with the contract. Other distribution may be made in accordance with Departmental instructions.

### § 6.1108 Criteria for nonfeasibility determinations.

The following criteria shall be used in determining that payment of contracts in whole or in part in U.S.-owned foreign currency is not feasible:

(a) The Department of the Treasury is not holding excess or near-excess foreign currency in the country concerned;

(b) The contract is to be awarded in a foreign country where there is U.S.-owned foreign currency but where a Treaty, Executive Agreement, or law of the country concerned requires payments to be made in U.S. dollars;

(c) Responsive offers require payment in U.S. dollars in whole or in part;

(d) The only responsive offers received require payment entirely in U.S. dollars;

(e) The procurement is for a compelling need and of such urgency that serious injury to the U.S. Government would likely be incurred if payment in excess or near-excess foreign currency were to be insisted upon;

(f) Offers in excess or near-excess foreign currency were unreasonably overpriced in relation to the U.S. dollar cost or the normal local foreign currency cost to non-Department of Defense users of the same or similar items or services and payment in U.S. dollars has been authorized by the proper authority under § 6.1106-3(c).

[33 F.R. 7361, May 18, 1968, as amended at 33 F.R. 19912, Dec. 28, 1968]

### § 6.1109 Excess and near-excess currency countries.

(a) The Department of the Treasury holds excess foreign currency in the following countries.

| *Country* | *Currency* |
|---|---|
| Burma | Kyat. |
| Ceylon | Rupee. |
| Guinea | Franc. |
| India | Rupee. |
| Israel | Pound. |
| Morocco | Dirham. |
| Pakistan | Rupee. |
| Poland (see also Subpart D of this part). | Zloty. |
| Tunisia | Dinar. |
| United Arab Republic (Egypt) | Pound. |
| Yugoslavia | Dinar. |

(b) The Department of the Treasury holds near-excess foreign currency in the following countries.

| *Country* | *Currency* |
|---|---|
| Bolivia | Peso. |
| Ghana | New Ghanian Cedis. |
| Indonesia | Rupiah. |
| Morocco | Dirham. |
| Libya | Pound. |
| Sudan | Pound. |

(c) Changes in the currency position of the countries in which excess and near-excess foreign currency is held are disseminated periodically by the Military Departments to their disbursing officers.

[33 F.R. 19912, Dec. 28, 1968]

### § 6.1110 Contracts with domestic concerns.

The following clause shall be included in any contract with a domestic concern (see § 6.001(e)) when the contracting officer anticipates the contract will be performed in any U.S.-owned foreign currency country.

ACQUISITION AND USE OF EXCESS AND NEAR-EXCESS CURRENCY (DECEMBER 1967)

The Contractor shall not expend U.S. dollars for the performance of this contract in any of the countries set forth in the Schedule of this contract for the purchase of currency of such countries or for the purchase of goods or services needed for performance under this contract. The Contractor shall purchase all such currencies from U.S. disbursing officers in such countries at the rates of exchange used by such officers at the times of purchase.

## PART 7—CONTRACT CLAUSES


Sec.
7.000 Scope of part.

Subpart A—Clauses for Fixed-Price Supply Contracts

7.100 Scope of subpart.
7.101 Applicability.
7.102 Contracts subject in part to incentive price revision.
7.103 Required clauses.
7.103-1 Definitions.
7.103-2 Changes.
7.103-3 Extras.
7.103-4 Variation in quantity.
7.103-5 Inspection.
7.103-6 Title and risk of loss.
7.103-7 Payments.
7.103-8 Assignment of claims.
7.103-9 Additional bond security.

Sec.
7.103–10 Federal, State and local taxes.
7.103–11 Default.
7.103–12 Disputes.
7.103–13 Renegotiation.
7.103–14 Discounts.
7.103–15 Communist areas.
7.103–16 Contract Work Hours Standards Act—overtime compensation.
7.103–17 Walsh-Healy Public Contracts Act.
7.103–18 Equal opportunity.
7.103–19 Officials not to benefit.
7.103–20 Covenant against contingent fees.
7.103–21 Termination for convenience of the Government.
7.103–22 Authorization and consent.
7.103–23 Notice and assistance regarding patent infringement.
7.104 Clauses to be used when applicable.
7.104–1 Clauses for contracts involving construction work.
7.104–2 Workmen's compensation insurance overseas.
7.104–3 Buy American Act.
7.104–4 Notice to the Government of labor disputes.
7.104–5 Patent indemnity.
7.104–6 Filing of patent applications.
7.104–7 Patent rights.
7.104–8 Reporting of royalties.
7.104–9 Rights in data.
7.104–10 Ground and flight risk.
7.104–11 Excess profit.
7.104–12 Military security requirements.
7.104–13 Preference for certain domestic commodities.
7.104–14 Utilization of small business concerns.
7.104–15 Examination of records.
7.104–16 Gratuities.
7.104–17 Convict labor.
7.104–18 Priorities, allocations and allotments.
7.104–19 Employment of ocean-going vessels—ocean transport of Government-owned supplies.
7.104–20 Utilization of concerns in labor surplus areas.
7.104–21 Limitation on withholding of payments.
7.104–22 Small Business Subcontracting Program.
7.104–23 Subcontracts.
7.104–24 Government property.
7.104–25 Special tooling.
7.104–28 Quality program.
7.104–29 Price reduction for defective cost or pricing data.
7.104–30 Humane slaughter of livestock.
7.104–31 Duty-free entry.
7.104–32 Duty-free entry of listed Canadian supplies.
7.104–33 Taxes.
7.104–34 Advance payments.
7.104–35 Progress payments.
7.104–37 Required source for jewel bearings.
7.104–38 Labor Surplus Area Subcontracting Program.
7.104–39 Interest.

Sec.
7.104–40 Competition in subcontracting.
7.104–41 Audit and records.
7.104–42 Subcontractor cost and pricing data.
7.104–43 United States Products (Military Assistance Program).
7.104–44 Value engineering incentive.
7.104–45 Value engineering program requirements.
7.104–46 Nonuse of foreign-flag vessels engaged in Cuban and North Vietnam trade.
7.104–47 Multiyear procurement.
7.104–48 New material.
7.104–49 Government surplus.
7.104–50 Procurement of natural rubber for aircraft tires, tubes, tire recapping, and recapping materials.
7.104–51 Production progress report.
7.104–52 Special test equipment.
7.104–53 Government property furnished "as is".
7.104–54 Extent of quantity variation.
7.104–55 First article approval.
7.104–56 Order of precedence.
7.104–59 Aluminum.
7.104–60 Contractor-furnished returnable gas cylinders and other containers.
7.104–61 Frequency authorization.
7 104–62 Material inspection and receiving report.
7.104–63 Protection of Government buildings, equipment, and vegetation.
7.104–64 Recovery of nonrecurring costs on foreign sales of major defense equipment.
7.104–65 Insurance.
7.104–66 Use of excess and near-excess currency.
7.104–67 Clauses for preservation, packaging, and packing requirements.
7.104–68 Marking of shipments.
7.104–69 F.O.B. point for delivery of Government-furnished property.
7.104–70 F.O.B. origin.
7.104–71 F.O.B. destination.
7.104–72 F.O.B. origin—Minimum size of shipments.
7.104–73 Loading, bracing, and blocking of freight car shipments.
7.104–74 Shipments to ports—export releases and MILSTAMP documentation.
7.104–75 Diversion of shipment under F.O.B. destination contracts.
7.104–76 F.O.B. destination—evidence of shipment.
7.104–77 Government delay of work.
7.105 Additional clauses.
7.105–1 Alterations in contract.
7.105–2 Approval of contract.
7.105–3 Stop work orders.
7.105–4 Report of shipment (REPSHIP).
7.105–5 Liquidated damages.
7.105–6 Bill of materials.
7.105–7 Supply warranty.
7.105–8 Commercial warranty.

Sec.
7.106 Price escala lished pri
7.106–1 Escalation aluminum per mill p
7.106–2 Escalation ard steel i
7.106–3 Escalation supplies.
7.106–4 Escalation ard suppli
7.107 Price escala material)
7.108 Incentive p
7.108–1 Firm targets
7.108–2 Successive t
7.109 Price redete
7.109–1 General.
7.109–2 Prospective mination
7.109–4 Retroactive after com

Subpart B—Clauses for Supply

7.200 Scope of sub
7.202 Applicabilit
7.203 Required cl
7.203–1 Definitions.
7.203–2 Changes.
7.203–3 Limitation
7.203–4 Allowable c
7.203–5 Inspection tion of de
7.203–6 Assignment
7.203–7 Examinatio
7.203–8 Subcontrac
7.203–9 Utilization cerns.
7.203–10 Terminatio
7.203–11 Excusable
7.203–12 Disputes.
7.203–13 Renegotiati
7.203–14 [Reserved]
7.203–15 Convict lab
7.203–16 Contract Act—ove
7.203–17 Walsh-Heal Act.
7.203–18 Equal oppo
7.203–19 Officials no
7.203–20 Covenant a
7.203–21 Governmen
7.203–22 Insurance; sons.
7.203–23 Authorizati
7.203–24 Notice an patent in
7.203–25 Communis
7.203–26 Utilization surplus a
7.203–27 Payment fo
7.203–28 Competitio
7.203–29 Audit and
7.203–30 Price redu or pricin
7.203–31 Subcontrac data.
7.204 Clauses to

ontracting.
and pricing
lucts (Military
n).
ncentive.
program re-
lag vessels en-
nd North Viet-
ent.
s.
ural rubber for
es, tire recap-
ng materials.
report.
ent.
rty furnished
variation.
al.
e.
d returnable
ld other con-
ation.
and receiving
rnment build-
ind vegetation.
ecurring costs
major defense
ear-excess cur-
ation, packag-
requirements.
ts.
very of Govern-
roperty.
mum size of
nd blocking of
ents.
ts—export re-
AMP documen-
nt under F.O.B.
cts.
—evidence of
f work.
ict.
t.
(REPSHIP).
y.


Sec.
7.106 Price escalation clauses (established prices).
7.106–1 Escalation clause for basic steel, aluminum, brass, bronze or copper mill products.
7.106–2 Escalation clause for non-standard steel items.
7.106–3 Escalation clause for standard supplies.
7.106–4 Escalation clause for semi-standard supplies.
7.107 Price escalation clause (labor and material).
7.108 Incentive price revision clause.
7.108–1 Firm targets.
7.108–2 Successive targets.
7.109 Price redetermination clauses.
7.109–1 General.
7.109–2 Prospective periodic price redetermination at stated intervals.
7.109–4 Retroactive price redetermination after completion.

Subpart B—Clauses for Cost-Reimbursement Type Supply Contracts

7.200 Scope of subpart.
7.202 Applicability.
7.203 Required clauses.
7.203–1 Definitions.
7.203–2 Changes.
7.203–3 Limitation of cost or funds.
7.203–4 Allowable cost, fee, and payment.
7.203–5 Inspection of supplies and correction of defects.
7.203–6 Assignment of claims.
7.203–7 Examination of records.
7.203–8 Subcontracts.
7.203–9 Utilization of small business concerns.
7.203–10 Termination.
7.203–11 Excusable delays.
7.203–12 Disputes.
7.203–13 Renegotiation.
7.203–14 [Reserved]
7.203–15 Convict labor.
7.203–16 Contract Work Hours Standards Act—overtime compensation.
7.203–17 Walsh-Healey Public Contracts Act.
7.203–18 Equal opportunity.
7.203–19 Officials not to benefit.
7.203–20 Covenant against contingent fees.
7.203–21 Government property.
7.203–22 Insurance; liability to third persons.
7.203–23 Authorization and consent.
7.203–24 Notice and assistance regarding patent infringement.
7.203–25 Communist areas.
7.203–26 Utilization of concerns in labor surplus areas.
7.203–27 Payment for overtime premiums.
7.203–28 Competition in subcontracting.
7.203–29 Audit and records.
7.203–30 Price reduction for defective cost or pricing data.
7.203–31 Subcontractor cost and pricing data.
7.204 Clauses to be used when applicable.

Sec.
7.204–1 Clauses for contracts involving construction work.
7.204–2 Workmen's compensation insurance overseas.
7.204–3 Buy American Act.
7.204–4 Notice to the Government of labor disputes.
7.204–5 Patent indemnity.
7.204–6 Filing of patent applications.
7.204–7 Patent rights.
7.204–8 Reporting of royalties.
7.204–9 Rights in data.
7.204–10 Quality program.
7.204–11 Excess profit.
7.204–12 Military security requirements.
7.204–13 Preference for certain domestic commodities.
7.204–14 Gratuities.
7.204–15 Priorities, allocations and allotments.
7.204–16 Negotiated overhead rates.
7.204–17 Employment of ocean-going vessels—ocean transport of Government-owned supplies.
7.204–18 Limitation on withholding of payments.
7.204–19 Small Business Subcontracting Program.
7.204–20 Changes to make or buy program.
7.204–21 Flight risks.
7.204–22 Duty-free entry.
7.204–23 Duty-free entry of listed Canadian supplies.
7.204–24 Taxes.
7.204–25 Advance payments.
7.204–26 Frequency authorization.
7.204–27 Required source for jewel bearings.
7.204–28 General Services Administration supply sources.
7.204–29 Labor Surplus Area Subcontracting Program.
7.204–30 Interest.
7.204–31 United States Products (Military Assistance Program).
7.204–32 Value engineering.
7.204–33 Non-use of foreign-flag vessels engaged in Cuban and North Vietnam trade.
7.204–34 Multi-year procurement.
7.204–35 New material.
7.204–36 Government surplus.
7.204–37 Procurement of natural rubber for aircraft tires, tubes, tire recapping, and recapping materials.
7.204–38 Special test equipment.
7.204–39 First article approved.
7.204–40 Order of precedence.
7.204–43 Aluminum.
7.204–44 Material inspection and receiving report.
7.204–45 Recovery of nonrecurring costs on foreign sales of major defense equipment.
7.204–46 Use of excess and near-excess currency.
7.204–47 Production progress report.
7.205 Additional clauses.
7.205–1 Alteration in contract.
7.205–2 Approval of contract.

Sec.
7.205–3 Title and risk of loss.
7.205–4 Bill of materials.
7.205–6 Stop work orders.

Subpart C—Clauses for Fixed-Price Research and Development Contracts

7.301 Applicability.
7.302 Required clauses.
7.302–1 Definitions.
7.302–2 Payments.
7.302–3 Standards of work.
7.302–4 Inspection.
7.302–5 Assignment of claims.
7.302–6 Examination of records.
7.302–7 Federal, State, and local taxes.
7.302–8 Utilization of small business concerns.
7.302–9 Default.
7.302–10 Termination for convenience of the government.
7.302–11 Disputes.
7.302–12 Renegotiation.
7.302–13 Buy American Act.
7.302–14 Convict labor.
7.302–15 Walsh-Healey Public Contracts Act.
7.302–16 Contract Work Hours Standards Act—Overtime Compensation.
7.302–17 Equal opportunity.
7.302–18 Officials not to benefit.
7.302–19 Covenant against contingent fees.
7.302–20 Gratuities.
7.302–21 Authorization and consent.
7.302–22 Notice and assistance regarding patent infringement.
7.302–23 Patent rights.
7.302–24 Basic data clause.
7.302–25 Military security requirements.
7.302–26 Utilization of concerns in labor surplus areas.
7.302–27 Government delay of work.
7.302–28 Title and risk of loss.
7.303 Clauses to be used when applicable.
7.303–1 Clauses for contracts involving construction work.
7.303–2 Filing of patent applications.
7.303–3 Reporting of royalties.
7.303–4 Excess profit.
7.303–5 Preference for certain domestic commodities.
7.303–6 Priorities, allocations, and allotments.
7.303–7 Government property.
7.303–8 Communist areas.
7.303–9 Notice to the Government of labor disputes.
7.303–10 Limitation on withholding of payments.
7.303–11 Small Business Subcontracting Program.
7.303–12 Subcontracts.
7.303–13 Material inspection and receiving report.
7.303–14 Frequency authorization.
7.303–15 Quality program.
7.303–16 Price reduction for defective cost or pricing data.
7.303–17 Ground and flight risks.
7.303–18 Duty-free entry.

Sec.
7.303–19 Duty-free entry of listed Canadian supplies.
7.303–20 Taxes.
7.303–21 Advance payments.
7.303–22 Workmen's compensation insurance overseas.
7.303–23 Progress payments.
7.303–24 Required source for jewel bearings.
7.303–25 Labor Surplus Area Subcontracting Program.
7.303–26 Interest.
7.303–27 Competition in subcontracting.
7.303–28 Audit and records.
7.303–29 Subcontractor cost and pricing data.
7.303–30 United States Products (Military Assistance Program).
7.303–31 Value Engineering incentive.
7.303–32 Value engineering program requirement.
7.303–33 Non-use of foreign-flag vessels engaged in Cuban trade.
7.303–34 New material.
7.303–35 Government surplus.
7.303–36 Procurement of natural rubber for aircraft tires, tubes, tire recapping, and recapping materials.
7.303–37 Special test equipment.
7.303–38 Government property furnished "as is".
7.303–39 First article approved.
7.303–40 Order of precedence.
7.303–43 Aluminum.
7.303–44 Care of laboratory animals.
7.303–45 Recovery of nonrecurring costs on foreign sales of major defense equipment.
7.303–46 Insurance.
7.303–47 Use of excess and near-excess currency.
7.304 Additional clauses.
7.304–1 Changes.
7.304–2 Alterations in contract.
7.304–3 Approval of contract.
7.304–4 Bill of materials.
7.304–5 Notice of shipments.
7.304–6 Reports of work.
7.304–7 Liquidated damages.
7.304–8 Warranty.
7.304–9 Stop work orders.

Subpart D—Clauses for Cost-Reimbursement Type Research and Development Contracts

7.400 Scope of subpart.
7.401 Applicability.
7.402 Required clauses.
7.402–1 Definitions.
7.402–2 Limitation of cost or funds.
7.402–3 Allowable cost, fee, and payment.
7.402–4 Standards of work.
7.402–5 Inspection and correction of defects.
7.402–6 Assignment of claims.
7.402–7 Records
7.402–8 Subcontracts.
7.402–9 Utilization of small business concerns.

Sec.
7.402–10 Termina
7.402–11 Disputes
7.402–12 Renegoti
7.402–13 Buy Am
7.402–14 Convict
7.402–15 Walsh-H
7.402–16 Contract Act—C
7.402–17 Equal op
7.402–18 Officials
7.402–19 Covenan
7.402–20 Authoriz
7.402–21 Notice a patent
7.402–22 Patent ri
7.402–23 Basic da
7.402–24 Military
7.402–25 Governm
7.402–26 Insuranc sons.
7.402–27 Utilizati surplu
7.402–28 Payment
7.402–29 Competi
7.402–30 Audit an
7.402–31 Price re or pric
7.402–32 Subcont data.
7.403 Clauses t
7.403–1 Clauses constr
7.403–2 Filing o
7.403–3 Reportin
7.403–4 Excess p
7.403–5 Excusabl
7.403–6 Preferen comm
7.403–7 Prioritie ments
7.403–8 Commu
7.403–9 Negotiat
7.403–10 Notice t disput
7.403–11 Gratuiti
7.403–12 Limitati ments
7.403–13 Small Progra
7.403–14 Changes
7.403–15 Quality
7.403–16 Flight ri
7.403–17 Duty-fre
7.403–18 Duty-fre suppli
7.403–19 Taxes.
7.403–20 Advance
7.403–21 Workme ance o
7.403–22 Require
7.403–23 General suppl
7.403–24 Labor S ing Pr
7.403–25 Interest.
7.403–26 United Assist
7.403–27 Value er

listed Canadian
nsation insur-
jewel bearings.
a Subcontract-
contracting.
t and pricing
ducts (Military
m).
incentive.
program re-
-flag vessels en-
rade.
s.
tural rubber for
ubes, tire re-
ecapping ma-
nent.
erty furnished
ved.
e.
nimals.
urring costs on
major defense
lear-excess cur-
act.
t.
s.
mbursement Type
t Contracts
r funds.
and payment.
rection of de-
ns.
nall business

Sec.
7.402-10 Termination.
7.402-11 Disputes.
7.402-12 Renegotiation.
7.402-13 Buy American Act.
7.402-14 Convict labor.
7.402-15 Walsh-Healey Public Contracts Act.
7.402-16 Contract Work Hours Standards Act—Overtime Compensation.
7.402-17 Equal opportunity.
7.402-18 Officials not to benefit.
7.402-19 Covenant against contingent fees.
7.402-20 Authorization and consent.
7.402-21 Notice and assistance regarding patent infringement.
7.402-22 Patent rights.
7.402-23 Basic data clause.
7.402-24 Military security requirements.
7.402-25 Government property.
7.402-26 Insurance—liability to third persons.
7.402-27 Utilization of concerns in labor surplus areas.
7.402-28 Payment for overtime premium.
7.402-29 Competition in subcontracting.
7.402-30 Audit and records.
7.402-31 Price reduction for defective cost or pricing data.
7.402-32 Subcontractor cost and pricing data.
7.403 Clauses to be used when applicable.
7.403-1 Clauses for contracts involving construction work.
7.403-2 Filing of patent applications.
7.403-3 Reporting of royalties.
7.403-4 Excess profit.
7.403-5 Excusable delays.
7.403-6 Preference for certain domestic commodities.
7.403-7 Priorities, allocations, and allotments.
7.403-8 Communist areas.
7.403-9 Negotiated overhead rate.
7.403-10 Notice to the Government of labor disputes.
7.403-11 Gratuities.
7.403-12 Limitation on withholding of payments.
7.403-13 Small Business Subcontracting Program.
7.403-14 Changes to make or buy program.
7.403-15 Quality program.
7.403-16 Flight risks.
7.403-17 Duty-free entry.
7.403-18 Duty-free entry of listed Canadian supplies.
7.403-19 Taxes.
7.403-20 Advance payments.
7.403-21 Workmen's compensation insurance overseas.
7.403-22 Required source for jewel bearings.
7.403-23 General Services Administration supply sources.
7.403-24 Labor Surplus Area Subcontracting Program.
7.403-25 Interest.
7.403-26 United States Products (Military Assistance Program).
7.403-27 Value engineering incentive.

Sec.
7.403-28 Value Engineering Program requirement.
7.403-29 Non-use of foreign-flag vessels engaged in Cuban and North Vietnam trade.
7.403-30 New material.
7.403-31 Government surplus.
7.403-32 Procurement of natural rubber for aircraft tires, tubes, tire recapping, and recapping materials.
7.403-33 Special test equipment.
7.403-34 First article approval.
7.403-35 Order of precedence.
7.403-38 Aluminum.
7.403-39 Care of laboratory animals.
7.403-40 Frequency authorization.
7.403-41 Material inspection and receiving report.
7.403-42 Recovery of nonrecurring costs on foreign sales of major defense equipment.
7.403-43 Use of excess and near-excess currency.
7.404 Additional clauses.
7.404-1 Changes.
7.404-2 Alterations in contract.
7.404-3 Approval of contract.
7.404-4 Bill of materials.
7.404-5 Stop work orders.
7.404-6 Reports of work.
7.404-7 Title and risk of loss.

### Subpart E—Clauses for Personal Services Contracts

7.500 Scope of subpart.
7.502 Applicability.
7.503 Required clauses.
7.503-1 Definitions.
7.503-2 Payments.
7.503-3 Assignment of claims.
7.503-4 Disputes.
7.503-5 Officials not to benefit.
7.503-6 Covenant against contingent fees.
7.503-7 Termination.
7.503-8 Approval of contract.
7.503-9 Patents.
7.504 Clauses to be used when applicable.
7.504-1 Military security requirements.
7.504-2 Data and copyrights.
7.504-3 Interest.
7.504-4 Government property.
7.504-5 Order of precedence.
7.504-9 Production progress report.
7.505 Additional clause.
7.505-1 Alterations in contract.

### Subpart F—Clauses for Construction and Architect-Engineer Contracts

7.600 Scope of subpart.
7.601 General.
7.602 Required clauses for fixed-price construction contracts.
7.602-1 Definitions.
7.602-2 Specifications and drawings.
7.602-3 Changes.
7.602-4 Differing site conditions.

Sec.

7.602–5 Termination for default—damage for delay—time extensions.
7.602–6 Disputes.
7.602–7 Payments to contractor.
7.602–8 Assignment of claims.
7.602–9 Material and workmanship.
7.602–10 Contractor inspection system.
7.602–11 Inspection and acceptance.
7.602–12 Superintendence by contractor.
7.602–13 Permits and responsibilities.
7.602–14 Conditions affecting the work.
7.602–15 Other contracts.
7.602–16 Patent indemnity.
7.602–17 Additional bond security.
7.602–18 Covenant against contingent fees.
7.602–19 Officials not to benefit.
7.602–20 Buy American.
7.602–21 Convict labor.
7.602–22 Equal opportunity.
7.602–23 Labor standards provisions.
7.602–24 Nondomestic construction materials.
7.602–25 Gratuities.
7.602–26 Small business.
7.602–27 Federal, State and local taxes.
7.602–28 Renegotiation.
7.602–29 Termination for convenience of the Government.
7.602–30 Notice and assistance regarding patent and copyright infringement.
7.602–31 Authorization and consent.
7.602–32 Composition of Contractor.
7.602–33 Site investigation.
7.602–34 Protection of existing vegetation, structures, utilities, and improvements.
7.602–35 Operations and storage areas.
7.602–36 Modification proposals—price breakdown.
7.602–37 Subcontractors.
7.602–38 [Reserved]
7.602–39 Use and possession prior to completion.
7.602–40 Cleaning up.
7.602–41 Additional definitions.
7.602–42 Accident prevention.
7.602–43 Government inspectors.
7.602–44 Commencement, prosecution and completion of work.
7.602–45 Contract drawings, maps and specifications.
7.602–46 Suspension of work.
7.602–47 Rights in shop drawings.
7.603 Clauses for fixed-price construction contracts to be used when applicable.
7.603–1 Notice to Government of labor disputes.
7.603–2 Communist areas.
7.603–3 Filing of patent applications.
7.603–4 Reporting of royalties.
7.603–5 Contract prices—bidding schedule.
7.603–6 Military security requirements.
7.603–7 Examination of records.
7.603–8 Priorities, allocations, and allotments.
7.603–9 Subcontracts.
7.603–10 Required insurance.

Sec.

7.603–11 Price reduction for defective cost or pricing data.
7.603–12 Workmen's compensation insurance overseas.
7.603–13 Taxes.
7.603–14 Advance payments.
7.603–15 Performance of work by contractor.
7.603–16 Patent rights.
7.603–17 Interest.
7.603–18 Competition in subcontracting.
7.603–19 Duty-free entry.
7.603–20 Audit and records.
7.603–21 Subcontractor cost and pricing data.
7.603–22 Government-furnished property clause for fixed-price contracts.
7.603–23 Fixed-price incentive contract clause.
7.603–24 Shop drawings.
7.603–25 Physical data.
7.603–26 Disputes concerning labor standards.
7.603–27 Variations in estimated quantities contracts.
7.603–28 Identification of Government furnished property.
7.603–29 Salvage materials and equipment.
7.603–30 Availability and use of utility services.
7.603–32 Misplaced material.
7.603–33 Signal lights.
7.603–34 Identification of employees.
7.603–35 Superintendence of subcontractors.
7.603–36 Time extensions for delays to elements of the work.
7.603–37 Payment for mobilization and preparatory work.
7.603–38 Exclusion of periods in computing completion schedules.
7.603–39 Amount of liquidated damages.
7.603–40 Required source for jewel bearings.
7.603–41 Employment of ocean-going vessels by construction contractors.
7.603–42 Architectural designs and data—Government rights.
7.603–44 Aluminum.
7.603–45 N.C. Sales and Use Tax.
7.603–47 Use of excess and near-excess currency.
7.603–48 Progress charts and requirements for overtime work.
7.603–49 Airfield safety precautions.
7.603–50 Quantity surveys.
7.604 Additional clauses.
7.604–1 Alterations in contracts.
7.604–2 Approval of contract.
7.604–3 Layout of work.
7.604–4 Warranty.
7.604–5 Contractor-prepared network analysis system.
7.604–6 Government-prepared network analysis system.
7.605 Required clauses for cost-reimbursement type construction contracts.
7.605–1 Statement of work.
7.605–2 Changes.

Sec.

7.605–3 Estimate riod.
7.605–4 Limitati
7.605–5 Allowabl ment.
7.605–6 Insuranc
7.605–7 Directio
7.605–8 Discount
7.605–9 Direct pa
7.605–10 Approve
7.605–11 Audit an
7.605–12 Price re or pric
7.605–13 Subcont data.
7.605–14 Governm
7.605–15 Examina
7.605–16 Contract
7.605–17 Disputes
7.605–18 Labor.
7.605–19 Equal op
7.605–20 Notice to disput
7.605–21 Special r
7.605–22 Composi
7.605–23 Subcont
7.605–24 Accident
7.605–25 Contract metho
7.605–26 Termina
7.605–27 Convict l
7.605–28 Officials
7.605–29 Covenan
7.605–30 Gratuiti
7.605–31 Assignm
7.605–32 Renegoti
7.605–33 Authoriz
7.605–34 Notice a patent ment.
7.605–35 Patent in
7.605–36 Utilizati cerns.
7.605–37 Competi
7.605–38 Definitic
7.605–39 Excusabl
7.605–40 Rights in
7.606 Clauses cable type c
7.606–1 Incentiv constr
7.606–2 Approval
7.606–3 Buy Ame
7.606–4 Nondom rials.
7.606–5 Prioritie ments.
7.606–6 Interest.
7.606–7 Military
7.606–8 Workme ance (
7.606–9 Use of e rency.
7.606–10 Alteratic
7.606–11 Payment
7.606–12 Small bu gram.
7.606–13 Approval

ɔr defective cost
ensation insur-
ːrk by contractor.
ɔcontracting.
st and pricing
shed property
-price contracts.
ːntive contract
ng labor stand-
nated quantities
Government fur-
and equipment.
se of utility serv-
ɪl.
nployees.
of subcontrac-
or delays to ele-
ɔrk.
obilization and
k.
ds in computing
ədules.
ted damages.
ɔr jewel bearings.
ean-going vessels
contractors.
igns and data—
hts.
ə Tax.
near-excess cur-
nd requirements
rk.
cautions.
tracts.
act.
ed network anal-
ured network
for cost-reim-
ɔe construction

Sec.
7.605-3 Estimated cost, performance period.
7.605-4 Limitation of cost.
7.605-5 Allowable cost, fixed fee, and payment.
7.605-6 Insurance.
7.605-7 Direction of work.
7.605-8 Discounts.
7.605-9 Direct payments.
7.605-10 Approved construction plant.
7.605-11 Audit and records.
7.605-12 Price reduction for defective cost or pricing data.
7.605-13 Subcontractor cost and pricing data.
7.605-14 Government property.
7.605-15 Examination of records.
7.605-16 *Contracting Officer's decisions.*
7.605-17 Disputes.
7.605-18 Labor.
7.605-19 Equal opportunity.
7.605-20 Notice to the Government of labor disputes.
7.605-21 Special requirements.
7.605-22 Composition of contractor.
7.605-23 Subcontracts.
7.605-24 Accident prevention.
7.605-25 Contractor's organization and methods.
7.605-26 Termination.
7.605-27 Convict labor.
7.605-28 Officials not to benefit.
7.605-29 Covenant against contingent fees.
7.605-30 Gratuities.
7.605-31 Assignment of claims.
7.605-32 Renegotiation.
7.605-33 Authorization and consent.
7.605-34 Notice and assistance regarding patent and copyright infringement.
7.605-35 Patent indemnity.
7.605-36 Utilization of small business concerns.
7.605-37 Competition in subcontracting.
7.605-38 Definitions.
7.605-39 Excusable delays.
7.605-40 Rights in shop drawings.
7.606 Clauses to be used where applicable for cost-reimbursement type construction contracts.
7.606-1 Incentive fee clause for cost-type construction contracts.
7.606-2 Approval of wage rates.
7.606-3 Buy American.
7.606-4 Nondomestic construction materials.
7.606-5 Priorities, allocations, and allotments.
7.606-6 Interest.
7.606-7 Military security requirements.
7.606-8 Workmen's compensation insurance (Defense Base Act).
7.606-9 Use of excess and near-excess currency.
7.606-10 Alterations.
7.606-11 Payment for overtime premiums.
7.606-12 Small business subcontracting program.
7.606-13 Approval of contract.

Sec.
7.606-14 Architectural designs and data—Government rights.
7.606-16 Aluminum.
7.606-17 N.C. Sales and Use Tax.
7.606-18 Airfield safety precautions.
7.607 Required clauses for lump sum architect-engineer contracts.
7.607-1 Method of payment.
7.607-2 Architectural designs and data—Government rights.
7.607-3 Contracting officer's decisions.
7.607-4 Disputes.
7.607-5 Changes.
7.607-6 Subcontractors and outside associates and consultants.
7.607-7 Termination for convenience of the Government.
7.607-8 Covenant against contingent fees.
7.607-9 Officials not to benefit.
7.607-10 Assignment of claims.
7.607-11 Accident prevention.
7.607-12 Equal opportunity.
7.607-13 Convict labor.
7.607-14 Contract Work Hours Standards Act—Overtime compensation.
7.607-15 Renegotiation.
7.607-16 Definitions.
7.607-17 Gratuities.
7.607-18 Examination of records.
7.607-19 Interest.
7.607-20 Military security requirements.
7.607-21 Composition of contractor.
7.607-22 Audit and records.
7.607-23 Price reduction for defective cost or pricing data.
7.607-24 Subcontractor cost and pricing data.
7.607-25 Alterations.
7.607-26 Termination for default.
7.608 Clauses to be used when applicable for lump sum architect-engineer contracts.
7.608-1 Insurance.

Subpart G—Clauses for Facilities Contracts

7.701 Applicability.
7.702 Required clauses for consolidated facilities contracts.
7.702-1 Definitions.
7.702-2 Facilities to be provided.
7.702-3 Late delivery, diversion, and substitution.
7.702-4 Changes.
7.702-5 Representations and warranties.
7.702-6 Inspection.
7.702-7 Excusable delays.
7.702-8 Location of the facilities.
7.702-9 Government bills of lading.
7.702-10 Allowable cost and payment.
7.702-11 Limitation of cost.
7.702-12 Use and charges.
7.702-13 Examination of records.
7.702-14 Maintenance.
7.702-15 Title.
7.702-16 Access.
7.702-17 Property control.
7.702-18 Liability for the facilities.
7.702-19 Insurance—liability to third persons.

Sec.
7.702–20 Indemnification of the Government.
7.702–21 Stop work orders.
7.702–22 Termination of work.
7.702–23 Notice of use of the facilities.
7.702–24 Termination of the use of the facilities.
7.702–25 Period of this contract.
7.702–26 Disposition of the facilities.
7.702–27 Failure to perform.
7.702–28 Disputes.
7.702–29 Military security requirements.
7.702–30 Authorization and consent.
7.702–31 Notice and assistance regarding patent and copyright infringement.
7.702–33 Subcontracts.
7.702–34 Utilization of small business concerns.
7.702–35 Utilization of concerns in labor surplus areas.
7.702–36 Buy American Act.
7.702–37 Assignment of claims.
7.702–38 Renegotiation.
7.702–39 Officials not to benefit.
7.702–40 Gratuities.
7.702–41 Covenant against contingent fees.
7.702–42 Payment for overtime premiums.
7.702–43 Convict labor.
7.702–44 Equal opportunity.
7.702–45 Walsh-Healey Public Contracts Act.
7.702–46 Contract Work Hours Standards Act—Overtime Compensation.
7.702–47 Price reduction for defective cost or pricing data.
7.702–48 Audit and records.
7.702–49 Subcontractor cost and pricing data.
7.702–50 Competition in subcontracting.
7.703 Required clauses for facilities acquisition contracts.
7.703–1 Definitions.
7.703–2 Facilities to be provided.
7.703–3 Late delivery, diversion, and substitution.
7.703–4 Changes.
7.703–5 Representations and warranties.
7.703–6 Inspection.
7.703–7 Excusable delays.
7.703–8 Government bills of lading.
7.703–9 Allowable cost and payment.
7.703–10 Limitation of cost.
7.703–11 Examination of records.
7.703–12 Title.
7.703–13 Access.
7.703–14 Liability for the facilities.
7.703–15 Insurance—liability to third persons.
7.703–16 Indemnification of the Government.
7.703–17 Stop work orders.
7.703–18 Termination of work.
7.703–19 Failure to perform.
7.703–20 Disputes.
7.703–21 Military security requirements.
7.703–22 Authorization and consent.

Sec.
7.703–23 Notice and assistance regarding patent and copyright infringement.
7.703–25 Subcontracts.
7.703–26 Utilization of small business concerns.
7.703–27 Utilization of concerns in labor surplus areas.
7.703–28 Buy American Act.
7.703–29 Assignment of claims.
7.703–30 Renegotiation.
7.703–31 Officials not to benefit.
7.703–32 Gratuities.
7.703–33 Covenant against contingent fees.
7.703–34 Payment for overtime premiums.
7.703–35 Convict labor.
7.703–36 Equal opportunity.
7.703–37 Walsh-Healey Public Contracts Act.
7.703–38 Contract Work Hours Standards Act—overtime compensation.
7.703–39 Supersedure.
7.703–40 Price reduction for defective cost or pricing data.
7.703–41 Audit and records.
7.703–42 Subcontractor cost and pricing data.
7.703–43 Competition in subcontracting.
7.703–44 Inspection system.
7.704 Required clauses for facilities use contracts.
7.704–1 Definitions.
7.704–2 Use of charges.
7.704–3 Allowable cost and payment.
7.704–4 Limitation of cost.
7.704–5 Examination of records.
7.704–6 Location of the facilities.
7.704–7 Maintenance.
7.704–8 Inspection.
7.704–9 Title.
7.704–10 Access.
7.704–11 Property control.
7.704–12 Representations and warranties.
7.704–13 Government bills of lading.
7.704–14 Liability for the facilities.
7.704–15 Indemnification of the Government.
7.704–16 Notice of use of the facilities.
7.704–17 Termination of the use of the facilities.
7.704–18 Period of this contract.
7.704–19 Disposition of the facilities.
7.704–20 Failure to perform.
7.704–21 Disputes.
7.704–22 Military security requirements.
7.704–23 Assignment of claims.
7.704–24 Officials not to benefit.
7.704–25 Gratuities.
7.704–26 Covenant against contingent fees.
7.704–27 Payment for overtime premiums.
7.704–28 Convict labor.
7.704–29 Equal opportunity.
7.704–30 Contract Work Hours Standards Act—overtime compensation.
7.704–31 Supersedure.
7.704–32 Price reduction for defective cost or pricing data.
7.704–33 Audit and reports.

Sec.
7.704–34 Subcontracto data.
7.704–35 Competition
7.705 Clauses to cable.
7.705–1 Rights in da
7.705–2 Filing of pat
7.705–3 Priorities, a ments.
7.705–4 Transfer of
7.705–5 Labor stanc work.
7.705–6 Buy Ameri contracts
7.705–7 Improveme owned by
7.705–8 Patent righ
7.705–9 Required sc
7.705–10 Changes to
7.705–11 Interest.
7.705–12 Negotiated
7.705–13 Advance pa
7.705–14 General S supply s
7.705–15 Order of I
7.705–16 Duty-free e
7.705–19 Aluminum
7.705–20 Insurance.
7.705–21 Use of exc rency.
7.705–22 Facilities tion.
7.706 Facilities profit ec
7.706–1 Purpose.
7.706–2 Accountab
7.706–3 Definition
7.706–4 Use of Go
7.706–5 Allowable
7.706–6 Examinat
7.706–7 Location o
7.706–8 Maintena
7.706–9 Inspectio
7.706–10 Title.
7.706–11 Access.
7.706–12 Property
7.706–13 Represent
7.706–14 Liability
7.706–15 Terminat cilities.
7.706–16 Period of
7.706–17 Dispositi
7.706–18 Disputes.
7.706–19 Officials
7.706–20 Gratuitie
7.706–21 Covenan
7.706–22 Convict
7.706–23 Equal op
7.706–24 Contract Act—C
7.706–25 Supersec

Subpart H—Cla

7.801 Applical
7.802 Require
7.802–1 General
7.802–2 Executic and p

istance regarding
opyright infringe-
aall business con-
oncerns in labor
t.
aims.
enefit.
; contingent fees.
time premiums.
y.
Public Contracts
Hours Standards
compensation.
for defective cost
s.
ost and pricing
ubcontracting.
n.
for facilities use
d payment.
t.
ecords.
cilities.
und warranties.
of lading.
acilities.
of the Govern-
the facilities.
the use of the fa-
tract.
e facilities.
n.
requirements.
aims.
nefit.
t contingent fees.
time premiums.
y.
Hours Standards
compensation.
for defective cost
s.

Sec.
7.704–34 Subcontractor cost and pricing data.
7.704–35 Competition in subcontracting.
7.705 Clauses to be used when applicable.
7.705–1 Rights in data.
7.705–2 Filing of patent applications.
7.705–3 Priorities, allocations, and allotments.
7.705–4 Transfer of title to the facilities.
7.705–5 Labor standards for construction work.
7.705–6 Buy American Act—construction contracts.
7.705–7 Improvements to buildings or land owned by the Government.
7.705–8 Patent rights.
7.705–9 Required source for jewel bearings.
7.705–10 Changes to make-or-buy program.
7.705–11 Interest.
7.705–12 Negotiated overhead rates.
7.705–13 Advance payments.
7.705–14 General Services Administration supply sources.
7.705–15 Order of precedence.
7.705–16 Duty-free entry.
7.705–19 Aluminum.
7.705–20 Insurance.
7.705–21 Use of excess and near-excess currency.
7.705–22 Facilities equipment modernization.
7.706 Facilities use contracts with nonprofit educational institutions.
7.706–1 Purpose.
7.706–2 Accountable facilities.
7.706–3 Definitions.
7.706–4 Use of Government facilities.
7.706–5 Allowable costs and payments.
7.706–6 Examination of records.
7.706–7 Location of the facilities.
7.706–8 Maintenance.
7.706–9 Inspection.
7.706–10 Title.
7.706–11 Access.
7.706–12 Property control.
7.706–13 Representations and warranties.
7.706–14 Liability for the facilities.
7.706–15 Termination of the use of the facilities.
7.706–16 Period of this contract.
7.706–17 Disposition of the facilities.
7.706–18 Disputes.
7.706–19 Officials not to benefit.
7.706–20 Gratuities.
7.706–21 Covenant against contingent fees.
7.706–22 Convict labor.
7.706–23 Equal opportunity.
7.706–24 Contract Work Hours Standards Act—Overtime Compensation.
7.706–25 Supersedure.

Subpart H—Clauses for Letter Contracts

7.801 Applicability.
7.802 Required clauses.
7.802–1 General.
7.802–2 Execution, commencement of work, and priority ratings.

Sec.
7.802–3 Limitation of Government Liability.
7.802–4 Payments clause for letter contracts.
7.802–5 Definitization.

Subpart I—Clauses for Time and Material and Labor Hour Contracts

7.900 Scope of subpart.
7.901 Required clauses.
7.901–1 Definitions.
7.901–2 Changes.
7.901–3 Excusable delays.
7.901–4 Termination.
7.901–5 Government property.
7.901–6 Payments.
7.901–7 Assignment of claims.
7.901–8 Disputes.
7.901–9 Convict labor.
7.901–10 Subcontracts.
7.901–11 Contract Work Hours Standards Act— Overtime Compensation.
7.901–12 Walsh-Healey Public Contracts Act.
7.901–13 Equal opportunity.
7.901–14 Officials not to benefit.
7.901–15 Covenant against contingent fees.
7.901–16 Audit and records.
7.901–17 Examination of records.
7.901–18 Gratuities.
7.901–19 Notice and assistance regarding patent infringement.
7.901–20 Authorization and consent.
7.901–21 Inspection and correction of defects.
7.901–22 New material.
7.901–23 Government surplus.
7.901–24 Renegotiation.
7.901–25 Inspection system.
7.901–26 Quality program.
7.902 Clauses to be used when applicable.
7.902–1 Utilization of small business concerns.
7.902–2 Utilization of concerns in labor surplus areas.
7.902–3 Military security requirements.
7.902–4 Priorities, allocations and allotments.
7.902–5 Buy American Act.
7.902–6 Notice to the Government of labor disputes.
7.902–7 Filing of patent applications.
7.902–8 Patent rights.
7.902–9 Data.
7.902–10 Alterations in contract.
7.902–11 Limitation on withholding of payments.
7.902–12 Communist areas.
7.902–13 Flight risks.
7.902–14 Workmen's compensation insurance (Defense Base Act).
7.902–15 Royalty information.
7.902–16 Technical data—withholding of payments.
7.902–17 Interest.
7.902–18 Price reduction for defective cost or pricing data.
7.902–19 Audit and records.
7.902–20 Subcontractor cost and pricing data.

Sec.
7.902–21 Order of precedence.
7.902–22 Duty-free entry.
7.902–25 Material inspection and receiving reports.
7.902–26 Insurance.
7.902–27 Use of excess and near-excess currency.

**Subpart J—Clauses for Stevedoring Contracts**

7.1000 Scope of subpart.
7.1001 Technical provisions.
7.1001–1 Scope of contract.
7.1001–2 Schedule of rates.
7.1002 Required clauses.
7.1002–1 Definitions.
7.1002–2 Price escalation and price revision.
7.1002–3 Changes.
7.1002–4 Extras.
7.1002–5 Payments.
7.1002–6 Assignment of claims.
7.1002–7 Federal, State, and local taxes.
7.1002–8 Default.
7.1002–9 Disputes.
7.1002–10 Renegotiation.
7.1002–11 Contract Work Hours Standards Act—Overtime Compensation.
7.1002–12 Walsh-Healey Public Contracts Act.
7.1002–13 Equal opportunity.
7.1002–14 Officials not to benefit.
7.1002–15 Covenant against contingent fees.
7.1002–16 Termination.
7.1002–17 Indefinite quantities.
7.1002–18 Employees of contractor.
7.1002–19 Removal of contractor's employees.
7.1002–20 Liability and insurance.
7.1002–21 Records and accounts.
7.1002–22 Examination of records.
7.1002–23 Utilization of small business concerns.
7.1002–24 Gratuities.
7.1002–25 Convict labor.
7.1003 Clauses to be used when applicable.
7.1003–1 Communist areas.
7.1003–2 Workmen's compensation insurance overseas.
7.1003–3 Notice to the Government of labor disputes.
7.1003–4 Military security requirements.
7.1003–5 Priorities, allocations, and allotments.
7.1003–6 Utilization of concerns in labor surplus areas.
7.1003–7 Price reduction for defective cost or pricing data.
7.1003–8 Taxes.
7.1003–9 Interest.
7.1003–10 Audit and records.
7.1003–11 Subcontractor cost and pricing data.
7.1003–12 Order of precedence.
7.1003–13 Duty-free entry.
7.1004 Additional clauses.
7.1004–1 Alterations in contracts.
7.1004–2 Approval of contract.

**Subpart K—Clauses for Indefinite Delivery Type Contracts**

Sec.
7.1100 Scope of subpart.
7.1101 Required clause—ordering.
7.1102 Clauses to be used when applicable.
7.1102–1 Definite quantity contracts.
7.1102–2 Requirements contracts.
7.1102–3 Indefinite quantity contract.
7.1102–4 Material inspection and receiving report.

**Subpart L—Clauses for Mortuary Service Contracts**

7.1200 Scope of subpart.
7.1201 Required clauses for other than port of entry requirements contracts.
7.1201–1 Requirements.
7.1201–2 Contract period.
7.1201–3 Area of performance.
7.1201–4 Specifications.
7.1201–5 Using activities.
7.1201–6 Delivery orders and invoices.
7.1201–7 Delivery and performance.
7.1201–8 Subcontracting.
7.1201–9 Additional default provision.
7.1201–10 Inspection.
7.1201–11 Group interment.
7.1201–12 Professional requirements.
7.1201–13 Facility requirements.
7.1201–14 Preparation history.
7.1201–15 Changes.
7.1201–16 Definitions.
7.1201–17 Payments.
7.1201–18 Assignment of claims.
7.1201–19 Disputes.
7.1201–20 Renegotiation.
7.1201–21 Officials not to benefit.
7.1201–22 Covenant against contingent fees.
7.1201–23 Gratuities.
7.1201–24 Default.
7.1201–25 Federal, State and local taxes.
7.1201–26 Convict labor.
7.1201–27 Contract Work Hours Standards Act—Overtime Compensation.
7.1201–28 Walsh-Healey Public Contracts Act.
7.1201–29 Equal opportunity.
7.1201–30 Termination for convenience of the Government.
7.1201–31 Interest.
7.1202 Clauses to be used when applicable for other than port of entry requirements contracts.
7.1202–1 Examination of records.
7.1203 Clauses for port of entry requirements contracts.

**Subpart M—Clauses for Bakery and Dairy Products Contracts**

7.1300 Scope of subpart.
7.1301 Required clauses.
7.1301–1 Delivery vehicles and conveyances.
7.1301–2 Responsibility for containers and equipment.
7.1301–3 Time of delivery.
7.1301–4 Plant locations.
7.1301–5 Sanitary conditions.

lefinite Delivery
ts
-ordering.
sed when appli-
contracts.
ıtracts.
:y contract.
on and receiving
ortuary Service
; for other than
equirements con-
nce.
ıd invoices.
ormance.
.t provision.
irements.
ents.
ry.
ıims.
nefit.
contingent fees.
l local taxes.
Hours Standards
Compensation.
ublic Contracts
7.
convenience of
t.
.ed when appli-
r than port of
ents contracts.
cords.
of entry require-
s.
:ery and Dairy
:ts
ıd conveyances.
containers and
s.

Sec.
7.1301-6 Disclaimer of export subsidies.
7.1301-7 Remedies under delivery orders.
7.1301-8 "Fluid Milk" contracts.
7.1301-9 Solicitations for fluid milk.
7.1302 Additional required clauses for perishable dairy products contracts.
7.1302-1 Containers and equipment.
7.1302-2 Examination and testing.
7.1302-3 Deficiency adjustment.
7.1303 Clauses to be used when applicable.
7.1303-1 Code dating.
7.1303-2 Marking.

Subpart N—Clauses for Laundry and Dry Cleaning Contracts

7.1400 Scope of subpart.
7.1401 Required clauses.
7.1401-1 Activities.
7.1401-2 Contract period.
7.1401-3 Specifications.
7.1401-4 Pickup and delivery points and times.
7.1401-5 Count of articles.
7.1401-6 Loss or damage.
7.1401-7 Storage and handling.
7.1401-8 Vehicles.
7.1401-9 Requirements or indefinite quantity.
7.1401-10 Ordering.
7.1401-11 Special definitions of Government property.
7.1401-12 Individual laundry.

Subpart O—Clauses for Contracts for Rental of Motor Vehicles

7.1500 Scope of subpart.
7.1501 Required clauses.
7.1501-1 Rental payments.
7.1501-2 Condition of the rented property.
7.1501-3 Responsibility for damage or injury.
7.1501-4 Insurance/Liability.
7.1501-5 Marking of vehicles.
7.1501-6 Other required clauses.
7.1502 Clauses to be used when applicable.
7.1503 Additional clauses.

AUTHORITY: The provisions of this Part 7 issued under R.S. 161, secs. 2202, 2301-2314, 70A Stat. 120, 127-133; 5 U.S.C. 301, 10 U.S.C. 2202, 2301-2314.

### § 7.000 Scope of part.

This part sets forth uniform contract clauses for use in connection with the procurement of supplies and services.

[25 F.R. 14175, Dec. 31, 1960]

## Subpart A—Clauses for Fixed-Price Supply Contracts

### § 7.100 Scope of subpart.

This subpart sets forth uniform contract clauses for use in fixed-price supply contracts as defined in § 7.102.

[25 F.R. 14175, Dec. 31, 1960]

### § 7.101 Applicability.

As used throughout this subpart, the terms "fixed-price supply contract" shall mean any contract (a) entered into either by formal advertising or by negotiation, other than (1) purchase orders (but see §§ 7.104-15 and 7.104-16), (2) Short form negotiated supply contracts (see § 16.102-2(c), (3) letter contracts, (4) notices of award, and (5) supplemental agreements to contracts or purchase orders, which do not effect new procurements; (b) at a fixed price (with or without provision for price redetermination, escalation or other form of price revision as covered in § 3.404 of this chapter; and (c) for supplies other than (1) the construction, alteration, or repair of buildings, bridges, roads, or other kinds of real property, (2) experimental, developmental or research work, or (3) facilities to be provided by the Government under a "Facilities Contract" as defined in Part 13 of this chapter.

[27 F.R. 6133, June 29, 1962, as amended at 28 F.R. 2097, Mar. 5, 1963; 32 F.R. 4258, Mar. 18, 1967]

### § 7.102 Contracts subject in part to incentive price revision.

When a contract is partly a firm fixed-price contract and partly a fixed-price incentive contract, the clauses required for both types of contracts shall be included. When any provision is applicable only to firm fixed-price items, or only to items subject to incentive price revision, such provision shall be so labeled.

[28 F.R. 2097, Mar. 5, 1963]

### § 7.103 Required clauses.

The following clauses shall be inserted in all fixed-price supply contracts:

[25 F.R. 14175, Dec. 31, 1960]

### § 7.103-1 Definitions.

DEFINITIONS (FEB. 1962)

As used throughout this contract, the following terms shall have the meanings set forth below:

(a) The term "head of the agency" or "Secretary" means the Secretary, the Under Secretary, any Assistant Secretary, or any other head or assistant head of the executive or military department or other Federal agency; and the term "his duly authorized representative" means any person or persons or board (other than the Contracting Officer) authorized to act for the head of the agency or the Secretary.

NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (SEPT. 1958)

(a) Whenever the Contractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this contract, the Contractor shall immediately give notice thereof, including all relevant information with respect thereto, to the Contracting Officer.

(b) The Contractor agrees to insert the substance of this clause including this paragraph (b), in any subcontract hereunder as to which a labor dispute may delay the timely performance of this contract; except that each such subcontract shall provide that in the event its timely performance is delayed or threatened by delay by any actual or potential labor dispute, the subcontractor shall immediately notify its next higher tier subcontractor, or the prime contractor, as the case may be, of all relevant information with respect to such dispute.

[25 F.R. 14178, Dec. 31, 1960]

## § 7.104–5 Patent indemnity.

In accordance with the requirements of § 9.103 of this chapter, insert the appropriate contract clause, with additional provisions as prescribed, set forth in said section.

[25 F.R. 14178, Dec. 31, 1960]

## § 7.104–6 Filing of patent applications.

In accordance with the requirements of § 9.106, insert the contract clauses set forth therein.

[32 F.R. 4258, Mar. 31, 1967]

## § 7.104–7 Patent rights.

In accordance with the requirements of § 9.107 of this chapter, insert the appropriate clause with additional provisions as prescribed, set forth in said section.

[25 F.R. 14178, Dec. 31, 1960]

## § 7.104–8 Reporting of royalties.

In accordance with the requirements of § 9.110 of this chapter, insert the contract clause set forth therein.

[25 F.R. 14178, Dec. 31, 1960]

## § 7.104–9 Rights in data.

In accordance with the requirements of Subpart B, Part 9 of this chapter, insert one of the contract clauses set forth in §§ 9.203(b), 9.204–2, or 9.206, as appropriate. When the contract clause in § 9.203(b) is used, the appropriate additional provisions shall be added in accordance with the requirements of § 9.203; and the additional provisions in § 9.204–1 may be added under the circumstances set forth in § 9.204–1. When the clause in § 9.203(b) is used, the appropriate "Technical Data—Withholding of Payment" clause in § 9.207 shall also be used.

[32 F.R. 516, Jan. 18, 1967]

## § 7.104–10 Ground and flight risk.

In all negotiated fixed-price typed contracts for production or modification of aircraft (or missiles having the general characteristics of aircraft), insert the clause set forth in § 10.404 of this subchapter.

[25 F.R. 14178, Dec. 31, 1960]

## § 7.104–11 Excess profit.

(a) Pursuant to 10 U.S.C. 2382 and 7300 and except as provided in (b) and (c) below, any contract in an amount which exceeds or may exceed $10,000 known to be for the construction or manufacture of all or part of any complete aircraft or naval vessel, shall contain the following clause, except that the words "if this contract is in an amount which exceeds $10,000" may be inserted at the beginning of the clause in formally advertised contracts:

EXCESS PROFITS (JUNE 1957)

The Contractor agrees that, unless otherwise provided by law, this contract shall be subject to all the provisions of 10 U. S. C. 2382 and 7300 and shall be deemed to contain all the agreements required by those sections: *Provided, however,* That this clause shall not be construed to enlarge or extend by contract the obligations imposed by those sections. The Contractor agrees to insert in the subcontracts specified in those sections either the provisions of this clause or the provisions required by those sections.

(b) In any contract where only certain items or lots totaling more than $10,000 are subject to 10 U. S. C. 2382 or 7300, the foregoing clause should be modified to make the agreement of the contractor applicable only to such items or lots. In any contract where only certain items or lots totaling $10,000 or less would otherwise be subject to 10 U. S. C. 2382 or 7300, the foregoing clause should not be included in the contract even though the total amount of the entire contract exceeds $10,000.

(c) In any contract, otherwise subject to 10 U. S. C. 2382 or 7300, for scientific equipment used for communication, target detection, navigation or fire control, as designated by the Secretary, the

clause prescrib
be included, a
shall be inserte

EXCESS

The Secretary
plies called for l
tific equipment
target detection
the provisions o
are not applicab
[25 F.R. 14178, D

§ 7.104–12 M
ments.

(a) Except
(b) of this sec
clause in all co
fied by a Depa
including "Co
dling Authoriz
other contracts
will require ac
formation or
where the situ
of the nature
tions under wh
the contract sh
contract provis
rity safeguard
the protection
"Military Secu
is inserted in a
ing officer or h
tive shall prep
contractor, ma
officer of the c
ment having
where the pri
formed, and su
be determined
Security Requ
Form 254) in a
this chapter.
ments Check L
by the contrac
to the cogniza
classified subc
prime contract
tary Security
However, if the
search contra
graphic arts
services, or ot
ices in which th
a breakdown b
ious elements c
tract, a letter
classification f
be used in lieu
ments Check Li

ment of natural rub- tires, tubes, tire re- ıpping materials.

.th § 1.323 of this clause set forth

1964]

test equipment.

h the requirements chapter, insert the ːin.

1965]

icle approval.

ı Subpart S, Part 1 ːrt the appropriate 1.1906 of that sub- ː in cost-reimburse-

1965]

f precedence.

h § 7.104-56, insert therein.

1965]

ım.

h §1.327, insert the 1.327-2.

ː966]

. inspection and re-

ln § 7.104-62 except tence procurements tanker/barge ship- ıleum products.

1967]

y of nonrecurring sales of major de- t.

t forth in § 7.403-42.

. 1967]

excess and near-

h the requirements chapter, insert the ːn.

1968]

ion progress report.

h the requirements chapter, insert the ːn.

1968]

clauses.

ses shall be inserted ıt type supply con-

tracts in accordance with Department procedures when it is desired to cover the subject matter thereof in such contracts.

[25 F.R. 14199, Dec. 31, 1960]

§ 7.205-1 Alteration in contract.

The contract clause set forth in § 7.105-1 may be inserted.

[25 F.R. 14200, Dec. 31, 1960]

§ 7.205-2 Approval of contract.

The contract clause set forth in § 7.105-2 may be inserted.

[25 F.R. 14200, Dec. 31, 1960]

§ 7.205-3 Title and risk of loss.

Insert the clause set forth in § 7.103-6.

[33 F.R. 15391, Oct. 17, 1968]

§ 7.205-4 Bill of materials.

The contract clause set forth in § 7.105-6 of this regulation may be inserted pursuant to the provisions of that section.

[25 F.R. 14200, Dec. 31, 1960]

§ 7.205-6 Stop work orders.

The clause set forth in § 7.105-3, if modified by changing (a) the words "the 'Termination for Convenience' clause of this contract" to "the 'Termination' clause of the contract" and (b) the words "an equitable adjustment shall be made in the delivery schedule or contract price, or both" to "an equitable adjustment shall be made in the delivery schedule, the estimated cost, the fee, or a combination thereof, and in any other provisions of the contract that may be affected," is authorized for use in any cost-reimbursement type contract under the criteria and in accordance with the instructions in § 7.105-3.

[33 F.R. 19918, Dec. 28, 1968]

## Subpart C—Clauses for Fixed-Price Research and Development Contracts

§ 7.301 Applicability.

As used throughout this subpart, the term "fixed-price research and development contract" means any contract (other than a letter contract, a notice of award, or a modification not affecting new procurement) which (a) is entered into at a fixed price in an amount exceeding $2,500 (with or without any provision for price redetermination, escalation, or other form of price revision as covered in § 3.404 of this chapter) and (b) is for experimental, developmental, or research work. See § 3.403(b) of this chapter for use of types of contracts for research and development work.

[33 F.R. 19918, Dec. 28, 1968]

§ 7.302 Required clauses.

The following clause shall be inserted, as required, in all fixed-price research and development contracts, except as may otherwise be indicated in this subpart.

[25 F.R. 14200, Dec. 31, 1960]

§ 7.302-1 Definitions.

Insert the contract clause set forth in § 7.103-1. Additional definitions may be included in such clause provided they are not inconsistent with such clause or the provisions of this subchapter.

[25 F.R. 14200, Dec. 31, 1960]

§ 7.302-2 Payments.

PAYMENTS (JUNE 1959)

The Contractor shall be paid, upon submission of proper invoices or vouchers, the prices stipulated herein for work delivered or rendered and accepted, less deductions, if any, as herein provided. Unless otherwise specified, payment will be made upon acceptance of any portion of the work delivered or rendered for which a price is separately stated in the contract.

[25 F.R. 14200, Dec. 31, 1960]

§ 7.302-3 Standards of work.

STANDARDS OF WORK (JUNE 1959)

The Contractor agrees that the performance of work and services pursuant to the requirements of this contract shall conform to high professional standards.

[25 F.R. 14200, Dec. 31, 1960]

§ 7.302-4 Inspection.

(a) The following clause shall be used where the primary contract objective is delivery of end items other than designs, drawings, or reports, except where the contracting officer determines that the use of such clause is impracticable. Where this clause, or this clause as modified in paragraph (c) of this section, is not used, the clause in paragraph (b) of this section shall be used.

INSPECTION (JUNE 1959)

(a) All work under this contract shall be subject to inspection and test by the Government, to the extent practicable, at all times (including the period of performance) and places, and in any event prior to acceptance. The Government through any authorized representative may inspect the premises of

the Contractor or any subcontractor engaged in the performance of this contract.

(b) The Government may reject any work that is defective or otherwise not in conformity with the requirements of this contract. If the Contractor fails or is unable to correct or to replace such work, the Contracting Officer may accept such work at a reduction in price which is equitable under the circumstances. Failure to agree on the reduction in price shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes."

(c) If any inspection or test is made by the Government on the premises of the Contractor or a subcontractor, the Contractor shall provide, without additional charge, all reasonable facilities and assistance for the safety and convenience of the Government inspectors in the performance of their duties. If the Government inspection or test is made at a point other than the premises of the Contractor or subcontractor, it shall be at the expense of the Government. All inspections and tests by the Government shall be performed in such a manner as not unduly to delay the work. Final inspection and acceptance or rejection of the work shall be made as promptly as practicable after delivery except as otherwise provided in this contract; but failure to inspect and accept, or reject the work shall neither relieve the Contractor from responsibility for such of the work as is not in accordance with the contract requirements nor impose liability on the Government therefor.

(d) The inspection and test by the Government of any work shall not relieve the Contractor from any responsibility regarding defects or other failures to meet the contract requirements which may be discovered prior to acceptance. Except as otherwise provided in this contract, acceptance shall be conclusive except as regards latent defects, fraud, or such gross mistakes as amount to fraud.

(e) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the work hereunder. Records of all inspection work by the Contractor shall be kept complete and available to the Government during the performance of this contract and for such longer period as may be specified elsewhere in this contract.

(b) The following clause shall be inserted in all contracts subject to this part where the clause in paragraph (a) of this section is not used.

INSPECTION (JUNE 1959)

The Government, through any authorized representatives, has the right, at all reasonable times, to inspect, or otherwise evaluate the work performed or being performed hereunder and the premises in which it is being performed. If any inspection, or evaluation is made by the Government on the premises of the Contractor or a subcontractor, the Contractor shall provide and shall require its subcontractors to provide all reasonable facilities and assistance for the safety and convenience of the Government representatives in the performance of their duties. All inspections and evaluations shall be performed in such a manner as will not unduly delay the work.

(c) Where it is desired to require contractors to maintain an inspection system in accordance with Military Specification MIL-I-45208 (see § 14.303 of this chapter), the clause set forth in paragraph (a) of this section shall be included in the contract, except that the following shall be added as the second sentence of paragraph (e) of this section.

The inspection system shall be in accordance with the edition of Military Specification MIL-I-45208 in effect on the date of this contract. (August 1967)

[25 F.R. 14200, Dec. 31, 1960, as amended at 29 F.R. 11821, Aug. 19, 1964; 32 F.R. 16406, Nov. 30, 1967]

### § 7.302-5 Assignment of claims.

In accordance with the instructions set forth in § 7.103-8, insert the contract clause set forth therein.

[25 F.R. 14200, Dec. 31, 1960]

### § 7.302-6 Examination of records.

In negotiated fixed-price research and development contracts, insert the clause set forth in § 7.104-15 in accordance with the requirements set forth therein.

[25 F.R. 14200, Dec. 31, 1960]

### § 7.302-7 Federal, State, and local taxes.

In accordance with the requirements of § 11.401 of this chapter, insert the contract clause set forth in §§ 11.401-1 or 11.401-2 of this chapter as appropriate.

[25 F.R. 14200, Dec. 31, 1960]

### § 7.302-8 Utilization of small business concerns.

In accordance with the requirements of § 1.707-3(a) of this subchapter, insert the clause set forth therein.

[27 F.R. 3451, Apr. 11, 1962]

### § 7.302-9 Default.

In accordance with the requirements of § 8.710 of this chapter, insert the clause set forth therein.

[25 F.R. 14200, Dec. 31, 1960]

### § 7.302-10 Termination for convenience of the government.

In accordance with the requirements of §§ 8.701 and 8.704 of this chapter, insert the appropriate contract clause.

[25 F.R. 14200, Dec. 31, 1960]

### § 7.302-11

In accorda
§ 7.103-12, in
forth in § 7.
[25 F.R. 1420C

### § 7.302-12

In accorda
of § 7.103-13,
tract clause
[25 F.R. 1420C

### § 7.302-13

In accorda
of § 6.104-5
contract cla
[25 F.R. 1420C

### § 7.302-14

In accorda
of § 12-202, i
forth in ASI
[25 F.R. 14200,

### § 7.302-15 tracts Ac

In accorda
of Part 12, su
sert the cor
§ 12.605 of th
[25 F.R. 14200

### § 7.302-16 Standard tion.

In accorda
§12.303 of th
set forth ther
[30 F.R. 1736,

### § 7.302-17

In accorda
of § 12.802 c
contract clau
[30 F.R. 1736,

### § 7.302-18

Insert the
in § 7.103-19.
[25 F.R. 14201

### § 7.302-19 fees.

Insert the
§ 7.103-20.
[25 F.R. 14201,

### § 7.302-20

In accorda
of § 7.104-16,
set forth ther
[25 F.R. 14201,

ntractor or a subcon-
ır shall provide and
ontractors to provide
and assistance for the
of the Government
performance of their
and evaluations shall
a manner as will not

ired to require con-
an inspection sys-
ith Military Speci-
(see § 14.303 of this
set forth in para-
ection shall be in-
ct, except that the
lded as the second
ι (e) of this section.
a shall be in accord-
of Military Specifica-
ct on the date of this

1960, as amended at
1964; 32 F.R. 16406,

ıt of claims.
ı the instructions
insert the contract
in.
1960]

on of records.
price research and
s, insert the clause
in accordance with
orth therein.
1960]

ite, and local taxes.
the requirements
ter, insert the con-
in §§ 11.401–1 or
as appropriate.
1960]

of small business

the requirements
subchapter, insert
erein.
2]

the requirements
apter, insert the
n.
1960]

on for conven-
ment.
the requirements
of this chapter,
contract clause.
960]

**§ 7.302–11 Disputes.**

In accordance with the instructions in § 7.103–12, insert the contract clause set forth in § 7.103–12.

[25 F.R. 14200, Dec. 31, 1960]

**§ 7.302–12 Renegotiation.**

In accordance with the requirements of § 7.103–13, insert the appropriate contract clause set forth therein.

[25 F.R. 14200, Dec. 31, 1960]

**§ 7.302–13 Buy American Act.**

In accordance with the requirements of § 6.104–5 of this chapter, insert the contract clause set forth therein.

[25 F.R. 14200, Dec. 31, 1960]

**§ 7.302–14 Convict labor.**

In accordance with the requirements of § 12–202, insert the contract clause set forth in ASPR 12–203.

[25 F.R. 14200, Dec. 31, 1960]

**§ 7.302–15 Walsh-Healey Public Contracts Act.**

In accordance with the requirements of Part 12, subpart F of this chapter, insert the contract clause set forth in § 12.605 of this chapter.

[25 F.R. 14200, Dec. 31, 1960]

**§ 7.302–16 Contract Work Hours Standards Act—Overtime compensation.**

In accordance with the instructions of §12.303 of this chapter, insert the clause set forth therein.

[30 F.R. 1736, Feb. 9, 1965]

**§ 7.302–17 Equal opportunity.**

In accordance with the requirements of § 12.802 of this chapter, insert the contract clause set forth therein.

[30 F.R. 1736, Feb. 9, 1965]

**§ 7.302–18 Officials not to benefit.**

Insert the contract clause set forth in § 7.103–19.

[25 F.R. 14201, Dec. 31, 1960]

**§ 7.302–19 Covenant against contingent fees.**

Insert the contract clause set forth in § 7.103–20.

[25 F.R. 14201, Dec. 31, 1960]

**§ 7.302–20 Gratuities.**

In accordance with the requirements of § 7.104–16, insert the contract clause set forth therein.

[25 F.R. 14201, Dec. 31, 1960]

**§ 7.302–21 Authorization and consent.**

In accordance with the requirements of § 9.102 of this chapter, insert the appropriate contract clause set forth therein.

[25 F.R. 14201, Dec. 31, 1960]

**§ 7.302–22 Notice and assistance regarding patent infringement.**

In accordance with the requirements of § 9.104 of this chapter, insert the contract clause set forth therein.

[25 F.R. 14201, Dec. 31, 1960]

**§ 7.302–23 Patent rights.**

In accordance with the requirements of § 9.107 of this chapter, insert the appropriate contract clause set forth therein with additional or alternate paragraphs as prescribed therein. However, in the case of contracts awarded on the basis of no profit, the percentage amount specified to be withheld under paragraph (g) of the clause set forth in § 9.107–5(a) of this chapter or paragraph (f) of the clause set forth in § 9.107–5(b) of this chapter may be changed from "five percent (5%)" in all four places where this appears to "one percent (1%)." In contracts with educational institutions and nonprofit organizations, paragraphs (g) and (f) of the clauses set forth in § 9.107–5 (a) and (b) of this chapter, respectively, may be omitted.

[32 F.R. 518, Jan. 18, 1967]

**§ 7.302–24 Basic data clause.**

In accordance with requirements of § 9.202 of this chapter, insert the clause set forth in § 9.203(b) of this chapter with appropriate additional or alternate paragraphs as prescribed by the instructions in §§ 9.203 and 9.204–1 of this chapter, and the appropriate "Technical Data—Withholding of Payment" clause as set forth in § 9.207 of this chapter.

[32 F.R. 518, Jan. 18, 1967]

**§ 7.302–25 Military security requirements.**

(a) Except as provided in paragraph (b) of this section, insert an appropriate security requirements clause in accordance with the provisions of § 7.104–12.

(b) In any research and development contract with an educational institution when the contract is awarded on the basis of no profit, insert an appropriate security requirements clause in accordance with the provisions of § 7.402–24(b).